**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>Plaintiff,<br><br>v.<br><br>SYMANTEC CORPORATION,<br><br>Defendant. | Civil Action No. 3:13-cv-808 |

**MEMORANDUM IN SUPPORT OF DEFENDANT SYMANTEC CORPORATION'S MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     FACTUAL BACKGROUND .............................................................................4

        A.      The Parties ..............................................................................................5

        B.      Columbia's Patent Infringement Claims .................................................6

                1.      The Accused Products....................................................................6

                2.      The Named Inventors of the Asserted Patents ...............................8

                3.      Columbia's Allegations Regarding Notice of the Asserted Patents ..........10

        C.      Columbia's Claims For Correction Of Inventorship, Fraudulent
                Concealment, Unjust Enrichment And Conversion................................10

III.    LEGAL STANDARD.......................................................................................12

IV.     ARGUMENT ...................................................................................................13

        A.      This Action Could Have Been Brought In The Central District Of
                California ..............................................................................................14

        B.      Considerations Of Access To Proof, Convenience, And Justice
                Overwhelmingly Commend Transfer To The Central District of California ........15

                1.      Factor One: Columbia Has Chosen to Litigate Away from in Its
                        Home District..............................................................................15

                2.      Factor Two: Key Sources of Proof and Witnesses are Located in
                        California ....................................................................................18

                3.      Factor Three: It Would Be More Convenient for the Parties to
                        Litigate in California....................................................................25

                4.      Factor Four: The Interests of Justice Weigh In Favor of a Transfer..........26

V.      CONCLUSION.................................................................................................27

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acterna LLC v. Adtech, Inc.*,
 129 F. Supp. 2d 936 (E.D. Va. 2001) ........................................................................17, 18, 21

*Agilent Techs. v. Micromuse, Inc.*,
 316 F. Supp. 2d 322 (E.D. Va. 2004) ........................................................................13, 18, 26

*AMP Inc. v. Burndy of Midwest, Inc.*,
 340 F. Supp. 21 (N.D. Ill. 1971) ...........................................................................................18

*Burger King Corp. v. Rudzewicz,*
 471 U.S. 462 (1985).............................................................................................................13

*Coors Brewing Co. v. Oak Beverage, Inc. et al.*,
 549 F. Supp. 2d 764 (E.D. Va. 2008) ............................................................................15, 26

*Ethicon, Inc. v. U.S. Surgical Corp.*,
 135 F.3d 1456 (Fed. Cir. 1998)............................................................................................23

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
 71 F. Supp. 2d 517 (E.D. Va. 1999) ....................................................................3, 13, 18, 19

*JTH Tax, Inc. v. Lee*,
 482 F. Supp. 2d 731 (E.D. Va. 2007) ...................................................................................25

*Koh v. Microtek Int'l, Inc.*,
 250 F. Supp. 2d 627 (E.D. Va. 2003) ..........................................................12, 13, 14, 15, 19

*LG Elecs. v. Advance Creative Computer Corp.*,
 131 F. Supp. 2d 804 (E.D. Va. 2001) ........................................................................13, 14, 16

*Lugus IP LLC v. Volvo Car Corp.*,
 No. 11-CV-811-HEH, 2012 U.S. Dist. LEXIS 67999 (E.D. Va. May 15, 2012)........17, 21, 25

*Lycos, Inc. v. TiVo, Inc.*,
 499 F. Supp. 2d 685 (E.D. Va. 2007) ...................................................................................16

*Pragmatus AV, LLC v. Facebook, Inc.*,
 769 F. Supp. 2d 991 (E.D. Va. 2011) ............................................................................17, 21

*Samsung v. Rambus*,
 386 F. Supp. 2d 708 (E.D. Va. 2005) ......................................................................21, 22, 23

*Schlegel U.K. Holdings Ltd. v. Cooper Tire & Rubber Co., Inc.*,
 No. 970522-A (E.D. Va. June 10, 1997) ................................................................................4

*Telepharmacy Solutions v. Pickpoint*,
   238 F. Supp. 2d 741 (E.D. Va. 2003) ...............................................................4, 26

*Univ. of Pittsburgh v. Hedrick*,
   573 F.3d 1290 (Fed. Cir. 2009)............................................................................23

## **Statutes**

28 U.S.C. § 1391(c) .................................................................................................13, 14

28 U.S.C. § 1391(c)(2).................................................................................................16

28 U.S.C. § 1400(b) .........................................................................................12, 13, 14

28 U.S.C. § 1404(a) ..........................................................................................1, 12, 26, 27

Cal. Code. Civ. P. § 410.10..........................................................................................14

## I.      INTRODUCTION

Defendant Symantec Corporation ("Symantec") respectfully requests that the Court

transfer this action to the United States District Court for the Central District of California,

Western Division, pursuant to 28 U.S.C. § 1404(a).

Plaintiff The Trustees of the Columbia University in the City of New York ("Columbia")

has filed this action outside of its home district, against Defendant Symantec, a corporation that

is headquartered in Mountain View, California.  Columbia's suit alleges patent infringement

against products that Symantec designs and develops in Los Angeles and San Francisco, and

seeks to correct inventorship of a patent for which the underlying technology was developed in

Los Angeles by the named inventor who currently resides in Los Angeles.  This case has no

meaningful connection to Virginia – neither through witnesses, nor through evidence, nor

through the parties.  Indeed, Columbia's First Amended Complaint ("FAC") identifies nothing

more than glancing, incidental connections to Virginia, none of which meaningfully grounds

venue in this district as compared to California.

To suggest otherwise, Columbia seems to have sprinkled the word "Virginia" across its

FAC as many times as it can:[1]

- Initially, Columbia alleges that "Symantec's Security Operations Center in this judicial

  district is ***integrally involved in the infringing activity*** that is the subject of this First

  Amended Complaint."  (FAC ¶ 5 (emphasis added).)  This allegation is false, as the

  accompanying declarations attest.  In fact, none of the accused products is designed or

  developed at the Security Operations Center or anywhere else in Virginia.

---

[1]   *See* FAC ¶¶ 5, 8, 12, 32, 33 and 35.

- Furthermore, Symantec's Herndon, VA-based Security Operations Center does not have any connection to Columbia's *other* claims for correction of inventorship, conversion, fraudulent concealment and unjust enrichment.  The factual allegations that form the gravamen of these claims – arising out of interaction between Symantec engineers and Columbia professors, and Symantec's preparation and filing of a patent application – occurred in Los Angeles and New York.  Although Columbia identifies a single Symantec employee, Brian Witten, as having worked at the Security Operations Center in 2006 (*id*. ¶ 33), Columbia tellingly does *not* allege that Mr. Witten's work at the Herndon Security Operations Center is relevant to its *claims*.  Moreover, Mr. Witten currently resides in Los Angeles, and thus his potential role as a witness points straight to the Central District of California as the most convenient forum.

- Columbia further alleges that the parties submitted joint grant proposals to government agencies in Virginia, (*id*. ¶¶ 32 and 35), but the interaction underlying these proposals occurred in Los Angeles and New York.  There is no reason to believe that discovery from government agencies in Virginia would be necessary to resolve Columbia's claims, and indeed Columbia does not identify any government employees or other nonparty witnesses in Virginia who would benefit from being called to testify before this Court, as opposed to the Central District of California.

- Columbia does identify a single party witness, Professor Angelos Keromytis, as currently residing in Annandale, Virginia.  (*Id*. ¶ 12.)  Symantec is informed and believes that Professor Keromytis moved to Annandale on or around July 2013, *several years after* the events giving rise to Columbia's claims and *mere months before* Columbia filed its instant suit.  None of Professor Keromytis's relevant work occurred in Virginia.

2

Considering that Professor Keromytis is a party witness, any benefit associated with catering to his convenience following his recent move (even as he remains an active professor at Columbia) is far outweighed by the interests of nonparty witnesses, as well as by the interests of multiple Symantec witnesses who continue to work and reside (as they have long worked and resided) in Los Angeles.

Stripping away the puffery of alleged connections to Virginia, Columbia is left with little more than the bare fact that Symantec's accused products are sold in Virginia, just as they are throughout the United States. Such routine sales are an insufficient basis to maintain venue here while the interests of accommodating access to proof and convenience of witnesses point obviously and overwhelmingly elsewhere.

This case is better suited to the Central District of California. Critically, Symantec designs and develops the majority of the accused products at its Culver City Research & Design Center in Los Angeles. Key witnesses who are knowledgeable about the design and development of the accused software are located in Los Angeles, as is documentary evidence that illuminates the software's operation. This Court has recognized, specifically in patent infringement actions, that the "preferred forum" is where the accused activity is centered. *See GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999). Symantec's accompanying declarations prove that Los Angeles is where the accused activity is centered, thereby making the Central District of California the legally preferred forum for trying Columbia's patent infringement claims. Los Angeles is likewise central to Columbia's claims for correction of inventorship, fraudulent concealment, unjust enrichment and conversion because it is the location where the named inventor of Symantec's U.S. Patent No. 8,549,643, Darren Shou, invented the subject matter claimed in the patent, it is the location where Mr. Shou

was when he interacted with Columbia professors, and it is the location where he currently works as a member of Symantec's Culver City Research & Design Center.

The reason this case has been filed in Virginia is ***not*** that it naturally belongs here. Rather, Columbia filed in Virginia presumably because it wants to be on the "rocket docket." That desire for speed has nothing to do with accommodating the witnesses and the proof essential to trial – and it therefore has nothing to do with the considerations on which this motion turns. Recognizing as much, this Court has ordered transfer in these circumstances, noting that it "cannot stand as a willing repository for cases which have no real nexus to this district." *Telepharmacy Solutions v. Pickpoint*, 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) (quoting *Schlegel U.K. Holdings Ltd. v. Cooper Tire & Rubber Co., Inc.*, No. 970522-A, Slip Op. at 18 (E.D. Va. June 10, 1997) ("The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner."). We respectfully request that the Court now transfer this case to the Central District of California, which is where the relevant witnesses and proof are most readily accessed.

## II.     FACTUAL BACKGROUND

Columbia filed its original Complaint on December 5, 2013, alleging infringement of United States Patent Nos. 7,487,544 (the "'544 patent"), 7,979,907 (the "'907 patent"), 7,448,084 (the "'084 patent"), 7,913,306 (the "'306 patent"), and 8,074,115 (the "'115 patent"). (Complaint ("Compl.") ¶¶ 1, 42-101.) The original Complaint also included a claim to correct inventorship for Symantec's U.S. Patent No. 8,549,643 (the "'643 patent"). (*Id.* ¶¶ 3, 102-106.) On December 24, 2013, Columbia filed an FAC that now further alleges infringement of recently issued United States Patent No. 8,601,322 (the "'322 patent"), a continuation of the '115 patent.

(FAC ¶¶ 1, 107-118.)  The FAC also modifies Columbia's inventorship claim so as now to allege sole inventorship and joint inventorship separately (*id.* ¶¶ 145-154), and to add claims for fraudulent concealment, unjust enrichment, and conversion stemming from the same underlying facts as the inventorship claims.  (*Id.* ¶¶ 119-144.)

### A.    The Parties

Columbia is a non-profit educational corporation formed by special act of the Legislature of the State of New York and located at 535 West 116th Street, New York, New York, 10027. (FAC ¶ 4.)  Symantec is a Delaware Corporation that has its headquarters and principal place of business at 350 Ellis Street, Mountain View, California 94043.  (Nachenberg Decl. ¶ 4.)  Since 1982, Symantec has been in the business of designing intelligent software for consumers, businesses and government agencies.  (*Id.* ¶ 5.)  In 1989, Symantec expanded into the field of antivirus software, and in 1990, acquired Peter Norton Computing, Inc.  (*Id.* ¶ 6.)  Over the next two decades, Symantec built upon the acquisition, developing the enormously popular Norton product line, including the Norton AntiVirus, Norton 360, and Norton Internet Security software products.  (*Id.* ¶ 7.)  Symantec has become a leader in antivirus and security software, and today has more than 18,500 employees.  (*Id.* ¶ 8.)

Critical to this action is Symantec's Culver City Research & Design ("R&D") Center in Los Angeles, which is home to approximately 900 Symantec employees.  (*Id.* ¶ 9.)  Engineers at the Culver City R&D Center design and develop Symantec's consumer- and corporate-focused antivirus software, including the accused Norton and Symantec Endpoint Protection products. (*Id.*)  Although Columbia's FAC emphasizes Symantec's facility in Herndon, Virginia, this is nothing but a red herring.  The Herndon facility is not relevant to any aspect of the accused products.  (Sondhi Decl. ¶ 5.)  Instead, it is one of five worldwide Security Operations Centers

("SOCs") dedicated specifically to Symantec's Managed Security Services ("MSS").  (*Id.* ¶ 2.)

MSS is a centralized service that protects organizations against security threats such as hackers

and cybercriminals.  (*Id.*)  MSS identifies threats by monitoring its customers' security-event

logs, which contain information about network and firewall activity.  (*Id.* ¶ 3.)  When MSS

detects abnormal log activity, such as a spike in attempts to access a customer's firewall, it

notifies the customer of the potential threat.  (*Id.*)  For serious threats, the system notifies an SOC

analyst who determines whether further action is required, and if so, recommends to the

customer's IT personnel how to handle the threat.  (*Id.*)  As a large-scale log-monitoring service,

MSS does not use any of the techniques claimed in the asserted patents, such as email-

attachment analysis (FAC ¶¶ 50, 62), modeling of operating system registries or file systems (*id.*

¶¶ 74, 86), or running potentially corrupt executable files in an emulator (*id.* ¶¶ 98, 110).  (*See*

Sondhi Decl. ¶ 4.)  MSS is unrelated to the accused products, and in fact is agnostic to the

customer software with which it interacts.  (*Id.*)  Columbia has not accused MSS itself of

infringing the asserted patents.  (*See*, *e.g.*, FAC ¶ 51.)

### B.     Columbia's Patent Infringement Claims

### 1.     The Accused Products

Columbia's infringement allegations target Symantec's Norton AntiVirus, Norton 360,

Norton Internet Security, Symantec Endpoint Protection, Symantec Mail Security, and Symantec

Email Security.cloud products.  (*See*, *e.g.*, FAC ¶ 55.)

Norton AntiVirus, Norton 360, and Norton Internet Security are consumer-focused

products that protect against viruses, malware, phishing, corrupt downloads, and online scams.

(Nachenberg Decl. ¶ 10.)  Symantec's primary facilities for design and development of the full

Norton product line are in Los Angeles and Mountain View, California, with the majority of

design and development work occurring in Los Angeles.  (*Id.* ¶ 11.)  Symantec maintains the majority of documents detailing the structure and operation of the Norton product line in Los Angeles.  (*Id.*)  Symantec engineers most knowledgeable about the design, development, and operation of the Norton product line and its source code are based in Los Angeles.  (*Id.*)  For example, the lead developer of the Norton product line works at Symantec's Culver City R&D Center.  (*Id.*)

Symantec Endpoint Protection is an antivirus and firewall product designed for consumers and corporate environments.  (*Id.* ¶ 12.)  Symantec's primary facilities for design and development of Symantec Endpoint Protection are in Los Angeles and Mountain View, California, with the majority of design and development work occurring in Los Angeles.  (*Id.* ¶ 13.)  Symantec maintains the majority of documents detailing the structure and operation of Symantec Endpoint Production  in Los Angeles.  (*Id.*)  Symantec engineers most knowledgeable about the design, development, and operation of Symantec Endpoint Protection and its source code are based in Los Angeles.  (*Id.*)  For example, the lead developer of Symantec Endpoint Protection works at Symantec's Culver City R&D Center.  (*Id.*)

Symantec Mail Security is email protection software that guards against viruses, spam, phishing, and other email-borne attacks.  (*Id.* ¶ 14.)  Symantec engineers design and develop Symantec Mail Security in San Francisco, California.  (*Id.* ¶ 15.)  Symantec maintains the majority of documentary evidence detailing the structure and operation of Symantec Mail Security in San Francisco.  (*Id.*)  Engineers most knowledgeable about the design and operation of Symantec Mail Security and its source code are based in San Francisco.  (*Id.*)  For example, the lead developer of Symantec Mail Security works at Symantec's San Francisco site.  (*Id.*)

Symantec Email Security.cloud is also email protection software.  Symantec engineers design and develop Symantec Email Security.cloud primarily in San Francisco.  (Baggiolini Decl. ¶ 5.)  Symantec maintains the majority of documentary evidence detailing the structure and operation of Symantec Email Security.cloud in San Francisco and Gloucester, United Kingdom. (*Id*.)  Engineers most knowledgeable about the design and operation of Symantec Email Security.cloud and its source code are based primarily in San Francisco.  (*Id*.)

Notably, Columbia's patent infringement claims do not take issue with Symantec's MSS service.  (*See*, *e.g.*, FAC ¶ 51.)  This is not surprising, because unlike the accused Norton, Symantec Endpoint Protection, and Symantec Mail Security products, MSS is a centralized ***service***, not standalone software designed to run on a customer's computer or network.  (Sondhi Decl. ¶ 4.)  Moreover, unlike the accused Symantec Email Security.cloud and Symantec Mail Security products, MSS does not analyze email activity.  (*Id*.)  And again, MSS does not employ any of the techniques claimed in the asserted patents, such as email-attachment analysis, modeling of operating system registries or file systems, or running executable files in an emulator.  (*Id*.)

## 2.   The Named Inventors of the Asserted Patents

Across Columbia's six asserted patents, there are a total of ten named inventors.  Upon information and belief, these inventors work and reside in the following locations:

1. Eleazar Eskin, a named inventor on the '544, '907,084, and '306 patents, is a professor at the University of California Los Angeles.  (Newton Decl. ¶ 2.)

2. Matthew Shultz, a named inventor on the '544 and '907 patents, is a technology principal at Forrester Research in Philadelphia, Pennsylvania.  (*Id*. ¶ 3.)

3.  Erez Zadok, a named inventor on the '544 and '907 patents, is an associate professor at Stony Brook University in Stony Brook, New York. (*Id*. ¶ 4.)

4.  Manasi Bhattacharyya, a named inventor on the '544 and '907 patents is an attorney at the law firm Latham & Watkins in Chicago, Illinois.  (*Id*. ¶ 5.)

5.  Salvatore Stolfo, a named inventor on all of the asserted patents, is a professor at Columbia in New York, New York.  (FAC ¶ 11.)

6.  Frank Apap, a named inventor on the '084 and '306 patents, is a senior director at Pegasystems in the greater New York area.  (Newton Decl. ¶ 6.)

7.  Andrew Honig, a named inventor on the '084 and '306 patents, is a software engineer at Google in Seattle, Washington.  (*Id*. ¶ 7.)

8.  Shlomo Hershkop, a named inventor on the '084 and '306 patents, is a professor at Columbia in New York, New York.  (*Id*. ¶ 8.)

9.  Angelos Keromytis, a named inventor on the '115 and '322 patents is an associate professor at Columbia and a program director at the National Science Foundation in Arlington, Virginia.  (*Id*. ¶ 9; *see also* FAC ¶ 12.)  Columbia has alleged that Professor Keromytis, resides in Annandale, Virginia (*see id*.), and upon information and belief, he moved to Annandale in July 2013.  (Newton Decl. ¶ 9.)

10.  Stelios Sidiroglou, a named inventor on the '115 and '322 patents, is a research scientist at the Massachusetts Institute of Technology in Cambridge, Massachusetts.  (*Id*. ¶ 10.)

Looking solely at these named inventors and where they fall on the map, four of them reside in the Southern District of New York.  Yet Columbia chose not to file its complaint there, instead selecting this venue where just one named inventor on two asserted patents recently moved (Professor Keromytis) and where there is no meaningful nexus to the accused products or

to Columbia's allegations surrounding same.  Los Angeles, in contrast, is where the named

inventor on four asserted patents (Professor Eskin) resides and where most of the accused

products are actually designed and developed.

### 3.   Columbia's Allegations Regarding Notice of the Asserted Patents

Regarding alleged notice of the asserted patents, Columbia's FAC states as follows:

> On August 14, 2012, Calvin Chu, Senior Technology Licensing Officer at
> Columbia Technology Ventures, the technology transfer arm of Columbia, sent
> letters to Symantec's Francis deSouza (President, Products and Service), Janice
> Chaffin (Group President, Consumer Business), and Anil Chakravarthy (Senior
> Vice President, Enterprise Security).  The letters informed Symantec that
> Columbia "is the owner of many issued patents and pending applications ('patent
> documents') with a sampling identified in Exhibit A" and that "Columbia's
> technology provides and confers important competitive advantages including new
> features and capabilities."

(FAC ¶ 25.)  Of the identified individuals, Francis deSouza is currently the President of Illumina

Corporation and resides in San Francisco, California. (deSouza Decl. ¶¶ 1, 2.)  Janice Chaffin is

currently self employed and resides in Saratoga, California.  (Chaffin Decl. ¶ 3.)  And upon

information and belief, Anil Chakravarthy is a Vice President at Informatica Corporation in San

Francisco and Calvin Chu is a managing director for the R/GA Connected Devices Accelerator

in New York, New York.  (Newton Decl. ¶¶ 11, 12.)

### C.   Columbia's Claims For Correction Of Inventorship, Fraudulent Concealment, Unjust Enrichment And Conversion

In addition to claims for patent infringement, Columbia seeks to correct inventorship of

Symantec's '643 patent, alleging that two of its professors, Salvatore Stolfo and Angelos

Keromytis, "invented the subject matter claimed in the '643 patent and are the sole inventors."

(FAC ¶ 146.)  Columbia alleges in the alternative that "Professors Stolfo and Keromytis invented

the subject matter claimed in the '643 patent in collaboration with the other named inventor and

are joint inventors."  (*Id*. ¶ 151.)  The FAC also includes claims for fraudulent concealment,

unjust enrichment, and conversion stemming from the same core of facts as the inventorship claims.  (*See generally id*. ¶¶ 30-46, 119-144.)

First, Columbia alleges that, in 2004, the parties entered into a "Mutual Non-Disclosure Agreement," pursuant to which they collaborated on drafting and submitting grant proposals to government agencies in Alexandria and Arlington, Virginia.  (*Id*. ¶¶ 31-32.)  Regarding a 2006 proposal to the National Intelligence Community Enterprise Cyber Assurance Program ("NICECAP"), Columbia alleges that its "contact at Symantec was Symantec's Director of Government Research, Brian Witten, who Columbia is informed and believes, and [on] that basis alleges, worked at Symantec's Herndon, Virginia facility at the time."  (*Id*. ¶ 33.)  Regarding a 2010 proposal to the Defense Advanced Research Projects Agency ("DARPA"), Columbia alleges that an individual named Darren Shou participated on behalf of Symantec and that Professor Keromytis "specifically directed" Mr. Shou to the 2006 NICECAP proposal and to a 2009 publication, which, Columbia alleges were the "bases" for the 2010 proposal.  (*Id*. at ¶ 35.)

Second, Columbia alleges that "Symantec prepared an internal invention disclosure form based upon the materials that Professors Stolfo and Keromytis provided to Symantec," and that a Symantec in-house attorney named Delos Larson contacted the professors regarding a potential patent application related to the invention disclosure.  (*Id*. at ¶¶ 37-39.)  Columbia then alleges that Symantec, through an outside attorney named Benjamin Kimes, filed provisional and utility patent applications that "sought claims based directly on Professor Stolfo and Keromytis's work…."  (*Id*. ¶¶ 40-43.)  Columbia alleges that Symantec improperly omitted Professors Stolfo and Keromytis from both applications – and that Symantec instead named Mr. Shou and a Symantec employee, Marc Dacier, as inventors of the provisional application, and Mr. Shou as

the sole inventor of the utility application.  (*Id*.)  The utility application issued as Symantec's

'643 patent, which is the subject of Columbia's correction-of-inventorship claim.  (*Id*. ¶ 45.)

Of the individuals identified in Columbia's FAC, Brian Witten is currently a Senior

Director of Mobile Engineering at Symantec's Culver City R&D Center, and resides in Hermosa

Beach, California.  (Witten Decl. ¶¶ 1-3.)  Darren Shou is currently a Director of Research at

Symantec's Culver City R&D Center, and resides in La Jolla, California.  (Shou Decl. ¶¶ 1-3.)

Delos Larson is Deputy General Counsel for Merit Medical Systems in South Jordan, Utah, and

resides in Draper, Utah.  (Larson Decl. ¶¶ 1, 3-4.)  And Benjamin Kimes is an attorney with the

law firm of Lowenstein Sandler LLP in Palo Alto, California, and resides in San Carlos,

California.  (Kimes Decl. ¶¶ 1, 3-4.)

## III.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  "[I]n considering whether to transfer venue, a district court must make two

inquiries:  (1) whether the claims might have been brought in the transferee forum, and

(2) whether the interest of justice and convenience of the parties and witnesses justify transfer to

that forum.  *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).

With respect to the first inquiry, claims "might have been brought in the transferee

forum" if venue is proper there and if the transferee court has personal jurisdiction over the

defendant.  *Id*.  Specifically in patent infringement actions, venue is proper "in the judicial

district where the defendant resides, or where the defendant has committed acts of infringement

and has a regular and established place of business."  28 U.S.C. § 1400(b).  "For purposes of

venue ... a defendant that is a corporation shall be ***deemed to reside*** in any judicial district in

which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C.

§ 1391(c) (emphasis added).  Thus, with respect to corporate defendants, the question of whether

a particular court initially has venue collapses into the question whether it has personal

jurisdiction.  *LG Elecs. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 810 (E.D.

Va. 2001) ("In essence, under § 1400(b), having incorporated the general venue provisions of

§ 1391(c), the tests for venue and personal jurisdiction are interchangeable for corporations.")

Personal jurisdiction is proper if the defendant has sufficient minimum contacts with the forum,

such as if the defendant has purposely directed his activities at residents of the forum and the

subject litigation arises from or relates to those activities.  *Koh*, 250 F. Supp. 2d at 631 (citing

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

      With respect to the second inquiry, this Court specifically considers:  (1) plaintiff's

choice of forum; (2) convenience of witnesses and access to sources of proof; (3) party

convenience; and (4) the interests of justice.  *See Koh*, 250 F. Supp. 2d at 633-640.  And,

specifically when it confronts "a patent infringement action," the Court recognizes "a general

rule [whereby] the preferred forum is that which is the center of the accused activity."  *GTE*

*Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (internal quotations

omitted); *see also Agilent Techs. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 327 n. 3 (E.D. Va.

2004) ("The preferred forum in patent infringement cases is generally the center of the accused

activity, which is often where the offending device is produced.") (internal quotations omitted).

## IV.    ARGUMENT

      This is a patent case, and the Central District of California is clearly the preferred forum

for it.  Were Columbia fixated on accommodating the convenience of its own witnesses, then it

might perhaps have initially filed in its home venue of New York.  In the face of this motion to transfer, however, there is no good reason for the case to remain in Virginia.

### A. This Action Could Have Been Brought In The Central District Of California

There is no doubt, for purposes of the first inquiry, that Columbia may bring its claims against Symantec "in the transferee forum."  *Koh*, 250 F. Supp. 2d at 630.  Symantec has more than sufficient "minimum contacts" – indeed, it has *maximal* contacts – to ground personal jurisdiction there.  *See Koh*, 250 F. Supp. 2d at 631.  Symantec's headquarters and principal place of business are in Mountain View, California, and Symantec maintains facilities and employees throughout the State of California.  (Nachenberg Decl. ¶¶ 4, 9.)  One such facility is Symantec's Culver City R&D Center in Los Angeles, which is home to approximately 900 employees and is where Symantec designs and develops the accused Norton AntiVirus, Norton 360, Norton Internet Security, and Symantec Endpoint Protection products.  (*Id*. ¶ 9.)  These contacts amply suffice for courts throughout California to exercise personal jurisdiction over Symantec.  *See Koh*, 250 F. Supp. 2d at 631.[2]  Because personal jurisdiction is proper in California, Symantec "resides" in each of its judicial districts.  *See* 28 U.S.C. § 1391(c).  In sum, venue will indisputably lie in the Central District of California.  *See* 28 U.S.C. § 1400(b); *see also LG Elecs.* 131 F. Supp. 2d at 810.  ("In essence, under § 1400(b), having incorporated the general venue provisions of § 1391(c), the tests for venue and personal jurisdiction are interchangeable for corporations.").[3]

---

[2]   Personal jurisdiction is also proper under California's long-arm statute, which provides that "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  Cal. Code. Civ. P. § 410.10.

[3]   As discussed in greater detail below, the center of accused activity and location of key witnesses centers around Symantec's Culver City R&D Center in Los Angeles County, (footnote continued)

**B.     Considerations Of Access To Proof, Convenience, And Justice Overwhelmingly Commend Transfer To The Central District of California**

The more substantial question for this Court arises under the second inquiry – specifically "whether the interest of justice and convenience of the parties and witnesses justify transfer." *Koh*, 250 F. Supp. 2d at 630.  That inquiry, too, is readily resolved in favor of the Central District of California, where the key proof, witnesses, and accused operations are all clustered.  The lure of this Court's rocket docket is well removed from those considerations, which are the only ones that should matter to this submission.

**1.     Factor One: Columbia Has Chosen to Litigate Away from in Its Home District**

By abandoning its home forum, Columbia has abandoned most of the deference it could otherwise claim from its initial selection of forum.  To be sure, "the plaintiff's choice of forum is ordinarily entitled to substantial weight."  *Koh*, 250 F. Supp. 2d at 633.  Yet "a plaintiff's chosen venue is not given such substantial weight when the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum."  *Id.*; *see also Coors Brewing Co. v. Oak Beverage, Inc. et al.*, 549 F. Supp. 2d 764, 772 (E.D. Va. 2008) ("Plaintiff's choice of forum is entitled to little weight because the Eastern District of Virginia is a foreign forum rather than Plaintiffs home forum, as Plaintiff is a Colorado corporation with its principal place of business in Colorado.").

Here, Columbia is an educational corporation formed by special act of the Legislature of the State of New York that has its principal place of business in New York City.  (FAC ¶ 4.) Columbia's home forum, therefore, is the Southern District of New York.  *See* 28 U.S.C.

---

California.  (*See, e.g.*, Nachenberg Decl. ¶ 9.)  Los Angeles County lies in the Western Division of the Central District of California.  (Newton Decl. ¶ 13.)

§ 1391(c)(2).  Rather than litigate in its home forum, however, Columbia has chosen to travel well down the East Coast and file this action in the Eastern District of Virginia, a forum to which it has no apparent connection.  Nowhere in its FAC does Columbia allege that it has operations, employees, or any other presence in Virginia.  The closest Columbia comes is alleging the presence of Professor Keromytis, (FAC ¶ 12), who apparently moved to Virginia in July 2013, some six months ago.  (Newton Decl. ¶ 9.)  Under these circumstances, Columbia's contrivance to take its suit on the road and plot a course specifically to Virginia deserves little weight.  *See Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692-93 (E.D. Va. 2007) (granting TiVo's motion to transfer where "Lycos has no employees or other physical presence within the Commonwealth.").

Columbia's selection of this forum is all the less deserving of weight because Virginia has only a glancing connection to Columbia's alleged causes of action once the Court examines the actual substance of those claims, as distinct from Columbia's recurring invocation of "Virginia" in the FAC.  *See LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 814 ("When a plaintiff chooses a foreign forum, and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to substantial weight.").  None of Columbia's purported connections finds fair root in the Commonwealth.

*First*, Columbia's claims for patent infringement target software that Symantec designs and develops primarily in Los Angeles and San Francisco.  (Nachenberg Decl. ¶¶ 9, 11, 13, 15.)  None of the accused products is designed or developed in Virginia.  (*Id*. ¶ 16; Baggiolini Decl. ¶ 6.)  The MSS service that Symantec operates out of its SOC in Herndon, Virginia is separate, distinct, and unrelated to the accused products, and itself is not accused.  (Sondhi Decl. ¶ 5.)  Tellingly, despite generally referencing the Herndon facility, the FAC does not so much as

identify any discernible connection between the facility and Columbia's infringement claims.

*See Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 996 (E.D. Va. 2011)

("Pragmatus also argues that transfer is improper because Facebook and Google have servers in

the Eastern District of Virginia, but Pragmatus does not claim that these servers contain any

evidence that would be presented in this civil action.").

At bottom, the only connection Columbia's infringement claims have to this forum

involves Symantec's alleged "selling and offering for sale infringing products in this judicial

district." (FAC ¶ 8.) But such sales themselves are of "little import." *Lugus IP LLC v. Volvo*

*Car Corp.*, No. 11-CV-811-HEH, 2012 U.S. Dist. LEXIS 67999, at *14 (E.D. Va. May 15,

2012) ("Sales activity alone does not establish a substantial connection to the forum."); *see also*

*Acterna LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938 (E.D. Va. 2001) ("Federal courts are not

solicitous of plaintiffs claiming 'substantial weight' for their forum choice where the connection

with the forum is limited to sales activity without more.").

*Second*, Columbia's claims for correction of inventorship, fraudulent concealment, unjust

enrichment and conversion are likewise divorced from the Eastern District of Virginia. The

alleged facts underlying these claims relate to (i) work performed by Darren Shou, a Symantec

researcher and the named inventor of the '643 patent (*see* Shou Decl. ¶¶ 4, 5), (ii) work

performed by Columbia professors Stolfo and Keromytis at Columbia's research labs in New

York (*id.* ¶ 5), and (iii) events surrounding prosecution of the application by Symantec's

attorneys (*id.* ¶ 6; *see also* FAC ¶¶ 36-44). Although Columbia alleges that Shou, Stolfo, and

Keromytis collaborated to submit research proposals to government agencies in Virginia, the

alleged collaboration and the drafting of these proposals occurred outside of the Commonwealth.

(Shou Decl. ¶¶ 4-6.) Moreover, there is no basis to suppose that discovery from these agencies,

their employees, or any other nonparty in Virginia would be necessary to resolve Columbia's claims.

### 2.    Factor Two: Key Sources of Proof and Witnesses are Located in California

For each of the eleven counts in Columbia's FAC, key sources of proof and relevant witnesses are either located in California or more conveniently accessed there.

#### (a)    The Central District of California is the "Preferred Forum" for Columbia's Patent-Infringement Claims

"In a patent infringement action, as a general rule 'the preferred forum is that which is the center of the accused activity.'" *GTE Wireless*, 71 F. Supp. 2d at 519 (quoting *AMP Inc. v. Burndy of Midwest, Inc.,* 340 F. Supp. 21, 24-25 (N.D. Ill. 1971).) "The center of accused activity will most often be where the offending device is produced." *Acterna*, 129 F. Supp. 2d at 939 (E.D. Va. 2001). "[T]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id.* (quoting *AMP*, 340 F. Supp. at 24-25). "In other words, the preferred forum is the venue where the majority of witnesses and the evidence is located." *Agilent Techs.*, 316 F. Supp. 2d at 327 n. 3.

The center of accused activity in this action is unquestionably Los Angeles, where Symantec designs and develops the accused Norton AntiVirus, Norton 360, Norton Internet Security, and Symantec Endpoint Protection products. (Nachenberg Decl. ¶¶ 9, 11, 13.) Symantec maintains sources of proof for these products in Los Angeles, including documentary evidence detailing their structure and operation. (*Id.*) Los Angeles is also home to witnesses most knowledgeable about Norton AntiVirus, Norton 360, Norton Internet Security, and Symantec Endpoint Protection. (*Id.*) Software engineers at Symantec's Culver City R&D Center are the ones who design and develop these products, and the ones who best understand the products' underlying source code. (*Id.*) Indeed, each product's lead developer is based in

Los Angeles.  (*Id.*)   Testimony from these witnesses will be necessary to explain the products'

design and operation, and as a result, will be critical to resolving Columbia's infringement claims

and Symantec's defenses.  (*Id.*)

Because Los Angeles is the "center of accused activity," the Central District of California

is the "preferred forum" for Columbia's patent infringement claims.  *GTE Wireless*, 71 F. Supp.

2d at 519 (transferring to the Southern District of California where "the central issues concerning

the accused activity revolve around the cellular phones which are designed and manufactured in

San Diego.").[4]

### (b)     Virginia is Not Convenient for Other Witnesses Relevant to Columbia's Patent-Infringement Claims

Consistent with its status as the "preferred forum," the Central District of California is

also the most convenient venue for the witnesses who are most knowledgeable about Columbia's

patent infringement allegations against the accused Norton AntiVirus, Norton 360, Norton

Internet Security, and Symantec Endpoint Protection products.  The accompanying declarations

attest that the Central District of California is especially convenient (or, in some instances, no

less convenient than this forum) for other relevant witnesses.  *Koh*, 250 F. Supp. 2d at 636-37

("Furthermore, it is permissible to infer, absent any contrary evidence from the non-movant, …

that witnesses involved in the design and manufacture of the accused products are material.").

*First*, witnesses relevant to the other accused products – Symantec Mail Security and

Email Security.cloud – are located in San Francisco.  (Nachenberg Decl. ¶ 15; Baggiolini Decl.

---

[4]   Whereas Los Angeles is the "center of accused activity" for this action, Richmond is remote by any measure.  Symantec does not design or develop the accused products in Richmond or anywhere else in Virginia, and Symantec employees most knowledgeable about the accused products are all located outside of the Commonwealth – typically on the other side of the country.  (Nachenberg Decl. ¶ 16; Baggiolini Decl. ¶ 6.)

¶ 5.)  The witnesses include engineers responsible for the design and development of these products, and engineers most knowledgeable about the products' underlying source code. (Nachenberg Decl. ¶ 15; Baggiolini Decl. ¶ 5.)  For instance, the lead developer of the Symantec Mail Security product is based in San Francisco.  (Nachenberg Dec. ¶ 15.)  Testimony from these witnesses will be necessary to explain the design and operation of Symantec Mail Security and Email Security.cloud, and as a result, will be critical to resolving Columbia's infringement claims and Symantec's defenses for those products.  (Nachenberg Decl. ¶ 15; Baggiolini Decl. ¶ 5.)  For these witnesses, the Central District of California is clearly a more convenient forum than the Eastern District of Virginia, as it is geographically closer to where the witnesses live and work.  (Nachenberg Decl. ¶ 17; Baggiolini Decl. ¶ 7.)

*Second*, the named inventors of Columbia's patents will be relevant to Columbia's infringement allegations, as well as to issues concerning the conception and reduction to practice of the asserted patents, invalidity, enforceability, and claim construction.  Seven of the inventors are nonparty witnesses, including Eleazar Ekin, Matthew Shultz, Erez Zadok, Frank Apap, Manasi Bhattacharyya, Andrew Honig, and Stelios Sidiroglou, who are based in Los Angeles, Philadelphia, New York, New York, Chicago, Seattle, and Cambridge, respectively.  (Newton Decl. ¶¶ 2-8, 10, 11.)  While there is no single location that would be convenient to *all* of these nonparty witnesses, the Eastern District of Virginia is convenient for *none* of them.  In contrast, the Central District of California is convenient to at least Dr. Eskin, an associate professor at UCLA.  (*Id*. ¶ 2.)  Dr. Eskin is particularly relevant because he is a named inventor on four of the six asserted patents, more than any other nonparty witness.  (*See* FAC Exs. A-F.)

The three remaining named inventors are Angelos Keromytis, Salvatore Stolfo, and Shlomo Hershkop, all three of whom are Columbia professors.  (*Id*. ¶¶ 11, 12; Newton Decl. ¶ 8,

20

9.) Columbia has alleged that Professor Keromytis resides in Annandale (FAC ¶ 12), and upon information and belief, Professors Stolfo and Hershkop are based in New York (*id*. ¶ 12; Newton Decl. ¶ 8). As an initial matter, the convenience of party witnesses like Professors Stolfo, Keromytis, and Hershkop should not outweigh that of nonparty witnesses. *See Samsung v. Rambus*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005) ("The convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer."). Moreover, Professors Stolfo and Hershkop are based in New York; apart from additional air miles, there is no apparent reason why Los Angeles would be any less convenient for them than Richmond. *Lugus*, 2012 U.S. Dist. LEXIS 67999, at *16 ("[A]part from some additional travel miles, it is unclear why traveling north to the District of New Jersey would prove any less convenient than traveling south to the Eastern District of Virginia.").

Although Professor Keromytis is alleged to live in Virginia, he is believed to have moved there some six months ago, is ostensibly still working and teaching in New York, and is the lone witness among many whose convenience must be considered. Accommodating his convenience should not trump proper identification of the "preferred forum," per all the considerations discussed above. *See Acterna,* 129 F.Supp.2d at 939 ("center of accused activity" in Hawaii outweighed convenience of inventor-witnesses located in Virginia and Maryland). Most importantly, Professor Keromytis performed the work underlying Columbia's claims while in New York. (Shou Decl. ¶ 5.) Not until July 2013, long after the work with Symantec referred to in the FAC ended, did he move to Virginia. (Newton Decl. ¶ 8.) *See Pragmatus*, 769 F. Supp. 2d at 995 (ordering transfer where "the only connection between the Eastern District of Virginia and this plaintiff is that Pragmatus was formed in Alexandria a week before it acquired the patent portfolio and five months before it filed this lawsuit.")

21

**Third**, Columbia alleges that a number of individuals are relevant to its allegations concerning notice of the asserted patents.  (FAC ¶ 25.)  Testimony from these individuals will be relevant at least to issues of indirect infringement and willfulness.  (*See*, *e.g.*, *id*. ¶¶ 55-56.)  All four of the relevant individuals are nonparties outside of the Eastern District of Virginia:  Francis deSouza works in San Diego and resides in San Francisco (deSouza Decl. ¶¶ 3,4), Janice Chaffin resides in Saratoga, California (Chaffin Decl. ¶ 3), and, upon information and belief, Anil Chakravarthy is based in San Francisco and Calvin Chu is based in New York (Newton Decl. ¶¶ 11, 12).  Mr. deSouza and Ms. Chaffin have each submitted declarations in connection with this motion explaining that it would be more convenient for them to attend trial in the Los Angeles area as compared to Richmond.  (*See* deSouza Decl. ¶ 5; Chaffin Decl. ¶ 4.)  Los Angeles is also more convenient for Mr. Chakravarthy, as his place of business in San Francisco is much closer to Los Angeles than to Richmond.  (Newton Decl. ¶ 12.)[5]  Altogether, the convenience of these nonparty witnesses weighs strongly in favor of transfer.  *Samsung*, 386 F. Supp. 2d at 718.

> (c)     **The Central District of California is Central to Columbia's Claims for Correction of Inventorship,  Fraudulent Concealment, Unjust Enrichment and Conversion**

The Central District of California is likewise the right place to find party and nonparty witnesses and sources of proof relevant to Columbia's claims for correction of inventorship, fraudulent concealment, unjust enrichment and conversion.

The Symantec witnesses relevant to these claims are Brian Witten and Darren Shou. (FAC ¶¶ 33, 35-39.)  The Central District of California is convenient for Mr. Witten and

---

[5]   Presumably, the most convenient forum for Mr. Chu would be the Southern District of New York.  There is no apparent reason why Mr. Chu would find Richmond especially convenient.

Mr. Shou, both of whom work at Symantec's Culver City R&D Center in Los Angeles.  (Witten Decl. ¶¶ 1-3, 5; Shou Decl. ¶ 1, 3.)  Mr. Shou is particularly relevant to Columbia's claims, as he communicated with professors Stolfo and Keromytis to prepare and submit the 2010 DARPA proposal and is also the sole named inventor of Symantec's '643 patent on which Columbia claims inventorship.  (*Id.* ¶¶ 4, 5; FAC ¶¶ 35-46.)  To resolve the inventorship claims – and, in turn, the related claims for fraudulent concealment, unjust enrichment, and conversion – the court will have to determine who contributed to the subject matter ***claimed*** in the '643 patent. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  For the sole inventorship claim, Columbia will have to prove by clear and convincing evidence that Mr. Shou did not contribute to the claimed subject matter.  *See Univ. of Pittsburgh v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009) ("The inventors named in an issued patent are presumed correct, and a party alleging misjoinder of inventors must prove its case by clear and convincing evidence . . . .  The movants must also show that the persons to be removed did not contribute to the invention of any of the allowed claims.").

To defend against these claims, Symantec will demonstrate that Mr. Shou invented the subject matter claimed in the '643 patent, and that he did so while working at Symantec's Culver City R&D Center in Los Angeles.  (Shou Decl. ¶ 6.)  Symantec also will demonstrate that Mr. Shou was the primary drafter of the 2010 DARPA proposal at issue, and again, that he wrote the proposal while working in Los Angeles.  (*Id.* ¶ 5.)  As such, the Central District of California is not only convenient for Mr. Shou as a key witness residing in Los Angeles, but also the location of sources of proof related to his work underlying Columbia's claims.  (*Id.* ¶ 7.)  *See Samsung*, 386 F. Supp. 2d 716 n. 11 ("The ease of access to sources of proof refers principally to the discovery component of litigation and is considered as a party convenience factor.").

The Columbia witnesses relevant to the inventorship and related claims are professors Stolfo and Keromytis.  As discussed above, Professor Stolfo is based in New York City and Professor Keromytis is alleged to reside in Annandale, Virginia.  (FAC ¶¶ 11, 12.)  Professor Keromytis's current residence notwithstanding, he is believed to have performed the work relevant to Columbia's inventorship claims along with Professor Stolfo in New York.  (Shou Decl. ¶ 5.)  Therefore New York – not Virginia – is the location for sources of proof underlying the professors' alleged contributions to subject matter claimed in the '643 patent.  As with Columbia's infringement allegations, there are no relevant sources of proof located in Virginia.

Finally, the nonparty witnesses relevant to Columbia's inventorship and related claims are Delos Larson, a former Symantec in-house attorney currently residing in Draper, Utah (Larson Decl. ¶¶ 1-4), and Benjamin Kimes, an outside attorney currently residing in San Carlos, California (Kimes Decl. ¶¶ 1-4).  Mr. Larson's testimony will be relevant to resolving Columbia's allegations regarding Symantec's preparation of the invention disclosure and provisional application underlying the '643 patent, including communications between Symantec and Columbia.  (FAC ¶¶ 37-39.)  And testimony from both Mr. Larson and Mr. Kimes will shed light on decisions to include or exclude certain subject matter in the claims of the application that issued as the '643 patent.  (*Id*. ¶¶ 37-41.)  Mr. Larson and Mr. Kimes have submitted declarations in connection with this Motion explaining why, as residents of Utah and California, respectively, they would find it substantially more convenient to attend trial in the Los Angeles area as opposed to in Richmond.  (*See* Larson Decl. ¶ 5;  Kimes Decl. ¶ 5.)

In contrast, Columbia has not identified a single nonparty witness located in Virginia that would be at all relevant to any of its claims.  Thus, while Columbia alleges that the parties collaborated to submit research proposals to government agencies in Virginia, Columbia does

not identify any government employees or other nonparties who would likely have relevant testimony on this point.  (*See*, *e.g.*, FAC ¶¶ 32, 33, 35, 36.)  Symantec certainly knows of none.

* * *

In sum, considerations of accommodating access to proof and convenience of witnesses point uniformly towards transfer.  The Central District is the "preferred forum" for Columbia's patent infringement claims, and the central location of sources of proof underlying Mr. Shou's work leading up to Symantec's '643 patent.  The Central District is also convenient for six nonparty witnesses (Eskin, deSouza, Chaffin, Chakravarthy, Larson, and Kimes) and pivotal party witnesses (including key developers of the accused products, Shou, and Witten).  In contrast, there are no sources of proof in Virginia, and only a single party witness, Professor Keromytis, can be found in the Commonwealth (as of July 2013).

### 3.     Factor Three: It Would Be More Convenient for the Parties to Litigate in California

This litigation can best proceed in California.  "When evaluating this factor, the logical starting point is a consideration of the residence of the parties."  *Lugus*, 2012 U.S. Dist. LEXIS 67999, at *17 (quoting *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007) (internal quotations omitted).  Here, Symantec resides in the Central District of California, and as described above, has key witnesses and sources of proof located there.  (*See*, *e.g.*, Nachenberg Decl. ¶¶ 9, 11, 13;  Shou Decl. ¶¶ 1, 3, 4-6.)  On the other side of the coin, Columbia has no operations, employees, or other presence in Virginia; instead, Columbia is a New York educational corporation with its operations – including those relevant to this action – in New York.  (FAC ¶¶ 4, 7.)  Especially given that Columbia's counsel from Irell & Manela are based in Los Angeles, Columbia cannot plausibly complain of being made to litigate precisely where its litigators reside.

Considering the parties' residences, transfer to the Central District of California will serve the convenience of Symantec without corresponding imposition upon Columbia. *See Coors*, 549 F. Supp. 2d at 773 ("Transfer would not 'shift the balance of inconvenience' from Defendants to Plaintiff but only increase the convenience for Defendants."); *see also Agilent Techs.*, 316 F. Supp. 2d at 328-29 ("[T]he Court concludes that New York and Virginia are equally inconvenient to Plaintiff and New York is more convenient to the Defendant and therefore, convenience of the parties considerations favor transferring this matter to the Southern District of New York.")

### 4.      Factor Four: The Interests of Justice Weigh In Favor of a Transfer

Section 1404(a) "requires a court to consider the 'interest of justice,' an analysis encompassing those factors unrelated to witness and party convenience." *Agilent Techs.*, 316 F. Supp. 2d at 329.  One such factor is the extent to which the plaintiff has engaged in forum shopping:

> The interests of justice are not served by such blatant forum shopping. As this court has stated in the past, such docket considerations cannot be the primary reason for retaining a case in this district.  This Court cannot stand as a willing repository for cases which have no real nexus to this district.  The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner.

*Telepharmacy Solutions v. Pickpoint*, 238 F. Supp. 2d 741, 744 (E.D. Va. 2003).  In this case, neither the plaintiff nor the subject matter meaningfully connects to the chosen forum.  Neither do the proof or the witnesses, save one.  By all indications, Columbia filed here simply because it wants to avail itself of the "rocket docket."  Such shopping across federal courts does not serve the interests of justice and certainly should not be the "sole impetus" for retaining jurisdiction here. *Id*.

## V.     CONCLUSION

For the foregoing reasons, Symantec respectfully requests that the Court transfer this case

to the Central District of California pursuant to 28 U.S.C. § 1404(a).


January  14, 2014                                  Respectfully Submitted,

                                                   SYMANTEC CORPORATION


                                                   By: _____/s/_____
                                                                      Of Counsel



Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

David A. Nelson (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN LLP
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
davenelson@quinnemanuel.com

*Counsel for Defendant Symantec Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of January, 2014, I electronically filed the foregoing

pleading with the Clerk of Court using the CM/ECF system, which then will send automatic

notification of such filing (NEF) to the following:


Dana Duane McDaniel (dmcdaniel@spottsfain.com)
John Michael Erbach (jerbach@spottsfain.com)
Spotts Fain PC
411 E Franklin St, Suite 600
PO Box 1555
Richmond, VA 23218-1555
(804) 697-2065
Fax: (804) 697-2165

David I. Gindler (dgindler@irell.com)
Jason G. Sheasby (jsheasby@irell.com)
Richard M. Birnholz (rbirnholz@irell.com)
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, California 90067-4276
Phone: (310) 277-1010
Fax: (310) 203-7199

*Counsel for The Trustees of Columbia University*
*In the City of New York*


                              _____/s/_____
                              Dabney J. Carr, IV, VSB #28679
                              TROUTMAN SANDERS LLP
                              P. O. Box 1122
                              Richmond, Virginia 23218-1122
                              Telephone: (804) 697-1200
                              Facsimile: (804) 697-1339
                              dabney.carr@troutmansanders.com

                              *Counsel for Defendant Symantec Corporation*