IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

TRUSTEES OF COLUMBIA UNIVERSITY IN
THE CITY OF NEW YORK,

                                             Plaintiff,

        v.

SYMANTEC CORPORATION,

                                             Defendant.

Civil Action No. 3:13-CV-808

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Transfer Case to the Central District of California ("Motion to Transfer") (ECF No. 21) and a Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") (ECF No. 18) filed by Defendant Symantec Corporation ("Symantec"). Plaintiff Trustees of Columbia University in the City of New York ("Columbia") initiated this lawsuit on December 5, 2013. The First Amended Complaint ("FAC") contains eleven counts. Counts One through Six each claim that Symantec infringed a different patent owned by Columbia; Count Seven asserts a claim for fraudulent concealment; Count Eight asserts a claim for unjust enrichment; Count Nine asserts a claim for conversion; and Counts Ten and Eleven assert claims for correction of inventorship on a patent owned by Symantec. The Motion for Transfer seeks transfer of the entire action. The Motion to Dismiss seeks dismissal of only Counts Seven, Eight, and Nine, which allege state law tort claims.

## I.    BACKGROUND

Columbia is a non-profit educational corporation formed by special act of the Legislature of the State of New York located in New York, New York. The patents at issue arose from research conducted by employees and students of Columbia's School of Engineering and Applied Sciences. Professor Salvatore Stolfo is a Professor of Computer Science at Columbia, and Professor Angelos Keromytis is an Associate Professor of Computer Science at Columbia,

but is currently on leave while he works as a Program Director at the National Science Foundation in Arlington, Virginia.

Symantec is a corporation registered under the laws of the State of Delaware and having its headquarters in Mountain View, California. Symantec conducts business and operations throughout the world, but has its most substantial research and development facilities in California. Among Symantec's other facilities is a Security Operations Center ("SOC")—one of five similar centers worldwide—located in Herndon, Virginia. Columbia has alleged that the Herndon SOC "is integrally involved in the infringing activity that is the subject of this First Amended Complaint." (FAC ¶ 5.)

The Parties' relationship began in or around 2004 when collaborations between Symantec and Columbia University's Intrusion Detection Systems Laboratory ("IDS Lab") were initiated. Professor Stolfo heads Columbia's IDS Lab, which builds tools to detect malicious intruders in computer systems. To facilitate this collaboration, the Parties entered into a Mutual Non-Disclosure Agreement in 2004 ("2004 NDA"), which identifies as confidential information "all unpublished current and past research performed in Professor Sal Stolfo's computer sciences laboratories" and which states that the parties shall use confidential information "only for the purpose for which it was disclosed" and not "use or exploit such information for their own benefit." (FAC ¶ 31.)

In 2006, the Parties further collaborated on a series of federal grant proposals related to technology that used decoys in detecting and thwarting malicious computer intrusions by baiting the attacks with false information. The technology outlined in these grant proposals was—at least in part—developed by Professors Stolfo and Keromytis. In 2006, Professor Keromytis prepared initial drafts of a joint grant proposal ultimately submitted to the National Intelligence Community Enterprise Cyber Assurance Program ("NICECAP") regarding the use of decoy technology in computer security. Professor Keromytis communicated with, and submitted these drafts to, Brian Witten, Symantec's Director of Government Research. With Columbia's

consent, Witten incorporated Professor Keromytis's drafts into a grant proposal submitted to NICECAP on May 25, 2006.

The Parties' collaboration continued through 2010, when a second joint grant proposal was submitted to the Defense Advanced Research Projects Agency ("DARPA"). The DARPA grant proposal concerned the same decoy technology disclosed in the prior grant proposal and allegedly also relied on a published 2009 paper related to Professor Stolfo and Keromytis's research. Darren Shou, Director of the Symantec Research Labs Core Research Team, drafted the DARPA grant proposal.

In March 2010, Symantec prepared an internal Invention Disclosure Form ("IDF") concerning the technology that ultimately was embodied in United States Patent No. 8,549,643 ("'643 Patent"), which issued to Symantec and from which Counts Seven through Eleven of the FAC arise. The IDF expressly recited the confidential nature of the working relationship between Symantec and Columbia. Also in March 2010, Delos Larson, an in-house attorney for Symantec, contacted Columbia and proposed filing a patent application covering the use of decoy technology with a data loss prevention system. Larson inquired whether Professors Stolfo and Keromytis believed themselves to be the inventors of such an invention. Professors Stolfo and Keromytis responded that they were the sole inventors of such an invention.

Subsequently, in April 2010, Symantec filed a provisional patent application ("2010 Provisional Application") with the United States Patent and Trademark Office ("PTO") "directed at" the decoy technology on which Symantec and Columbia had previously collaborated. (Pl.'s Mem. Opp'n Mot. Transfer 7.) The application identified two Symantec employees—Shou and Marc Dacier—as the inventors of the described technology and omitted Professors Stolfo and Keromytis. Before Symantec converted the provisional application into a utility patent application, an outside patent attorney for Symantec, Benjamin Kimes, submitted a draft utility patent application, which claimed the disputed technology, to Professors Stolfo and Keromytis, as well as other, undisclosed Columbia personnel. The draft utility application listed Shou,

Dacier, Stolfo, Keromytis, and Columbia researcher Kathleen McKeown as co-inventors of the claimed invention. Professor Stolfo responded by asserting that he was the sole inventor of the claimed technology; Calvin Chu, who at the time worked in Columbia's technology transfer office also told Kimes that Symantec should not file the draft utility application.

Nevertheless, in April 2011, Symantec filed a utility patent application ("'643 Application") with the PTO claiming priority to the 2010 provisional application, substantially matching the claims of the draft utility application, and omitting all Columbia personnel as inventors of the claimed technology. Shou was listed as the sole inventor on the '643 Application. Symantec requested that the '643 Application not be published and, as a result, Columbia claims that it had no knowledge of Symantec's filing. On October 1, 2013, the '643 Patent, entitled "Using decoys by a data loss prevention system to protect against unscripted activity," was issued to Symantec.

On December 5, 2013, Columbia filed a Complaint in this Court alleging five counts of patent infringement and one count for correction of inventorship on Symantec's '643 Patent. On December 24, 2013, prior to Symantec's submission of any responsive pleading or motion, Columbia filed the FAC asserting six counts of patent infringement, two counts for correction of inventorship on Symantec's '643 Patent, and three common law claims arising from Symantec's allegedly unlawful conduct in procuring the '643 Patent.

The six patents that Columbia alleges Symantec has infringed ("Asserted Patents") generally related to computer security and intrusion detection. United States Patent No. 7,487,544 ("'544 Patent"), entitled "System and Methods For Detection of New Malicious Executables," generally relates to "detecting malicious executable programs, and more particularly to the use of data mining techniques to detect such malicious executables in email attachments." United States Patent No. 7,979,907 ("'907 Patent"), entitled "Systems and Methods For Detection of New Malicious Executables," similarly relates to "detecting malicious executable programs, and more particularly to the use of data mining techniques to detect such

malicious executables in email attachments." United States Patent No. 7,448,084 ("'084 Patent"), entitled "System and Methods For Detecting Intrusions In A Computer System By Monitoring Operating System Registry Access," relates to "detecting anomalies in a computer system, and more particularly to the use of probabilistic and statistical models to model the behavior of process which access the file system of the computer." United States Patent No. 7,913,306 ("'306 Patent"), entitled "System and Methods For Detecting Intrusions In A Computer System By Monitoring Operating System Registry Access," similarly relates to "method for detecting intrusions in the operation of a computer system." United States Patent No. 8,074,115 ("'115 Patent"), entitled "Methods, Media And Systems For Detecting Anomalous Program Executions" generally relates to "detecting anomalous program executions." United States Patent No. 8,601,322 ("'322 Patent"), entitled "Methods, Media And Systems For Detecting Anomalous Program Executions" similarly relates to "detecting anomalous program executions."

Columbia alleges that it gave Symantec notice of the Asserted Patents as early as August 14, 2012, by three letters from Calvin Chu to Symantec's Francis DeSouza (President, Products and Services), Janice Chaffin (Group President, Consumer Business), and Anil Chakravarthy (Senior Vice President, Enterprise Security). Further, Columbia alleges that on December 6, 2013, it gave notice to Symantec of the '322 Patent—which was issued by the PTO on December 3, 2013. In Counts One through Six of the FAC, Columbia asserts that Symantec has infringed each of the Asserted Patents "by offering for sale and selling the Symantec antivirus and computer security products and services, including without limitation Symantec's Norton AntiVirus, Norton 360, Norton Internet Security, Symantec Endpoint Protection, Symantec Email Security.cloud, Symantec Mail Security, and related products and services, to users, customers, and potential customers, with knowledge of the '544 patent and knowing that its products are especially made or especially adapted for infringing use." (FAC ¶¶ 55, 67, 79, 91, 103, 115.) In Counts Seven through Nine, Columbia asserts that Symantec's conduct during the

Parties' collaboration and continuing through Symantec's acquisition of the '643 Patent constituted fraudulent concealment, unjust enrichment, and conversion, causing tortious injury to Columbia.

## II.   LEGAL STANDARD

### A. MOTION TO TRANSFER

Pursuant to 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The decision whether to transfer an action under the statute is committed to the sound discretion of the district court." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010) (citing *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004)). District courts determining whether to grant a motion to transfer under § 1404(a) to a transferee forum where the action could initially have been brought "typically consider[]: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Id.* (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)). "The movant bears the burden of showing that transfer is proper." *JTH Tax*, 482 F. Supp. 3d at 736 (citing *Cognitronics Imaging Sys. v. Recognition Research, Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000)).

### B. MOTION TO DISMISS

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th

Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. The Court need not accept legal conclusions that are presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### III.    DISCUSSION

For the reasons that follow, the Motion to Transfer will be denied because Symantec has not demonstrated that transfer would be more convenient and in the interests of justice. The Motion to Dismiss will also be denied because Columbia has sufficiently pled claims for fraudulent concealment, unjust enrichment, and conversion that are not preempted by federal law.

A.  MOTION TO TRANSFER

The FAC includes two distinct sets of claims, and therefore, two distinct sets of operative fact are at issue in this litigation. The first set of claims (Counts One through Six) ("Infringement Claims") relates to Symantec's alleged infringement of Columbia's six Asserted Patents. The second set of claims (Counts Seven through Eleven) ("Tort and Inventorship Claims") relates to Symantec's alleged tortious conduct with regard to its procurement of the '643 Patent. Considering the facts relevant to each set of claims in light of the section 1404(a) factors, the

Court finds that the arguments in favor of, and against, transfer are essentially in equipoise. However, Symantec bears the burden to show that transfer is appropriate, *see JTH Tax*, 482 F. Supp. 3d at 736 (citing *Cognitronics Imaging Sys. v. Recognition Research, Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000)), and that burden has not been met where equipoise exists with regard to the section 1404(a) factors, *see Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78, 80 (4th Cir. 1967) ("[W]e recognize the primary right of the plaintiff to choose his forum, a selection not easily to be overthrown."). The Motion to Transfer, therefore, will be denied.

     1.   <u>Where the Action Might Have been Brought</u>

Section 1404(a) allows transfer to any district or division where the action "might have been brought." 28 U.S.C. § 1404(a). Transfer, therefore, may be appropriate only to those districts where the plaintiff could have properly filed the action initially. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). To meet this requirement, the party seeking transfer must show that subject matter jurisdiction, personal jurisdiction, and venue would have been proper in the transferee court. *Id*; *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003) (citing *L.G. Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 812 (E.D. Va. 2001)).

Symantec has shown that Columbia could initially have brought this action in the Central District of California, and Columbia does not appear to dispute this argument. First, because this action arises under the patent laws, Title 35 of the United States Code, subject matter jurisdiction exists in any federal district court, including those in the Central District of California. Second, Symantec's headquarters and principal place of business are in Mountain View, California, in the Northern District of California. Second, Symantec asserts that it maintains facilities and employees throughout the state of California, most notably at the Culver City Research and Development Center ("R&D Center") located in the Central District of California. Because of Symantec's continuous business presence in California, district courts in the Central District of California have personal jurisdiction over Symantec. Third, because Symantec is subject to personal jurisdiction in the federal district courts of the Central District

of California, venue is similarly appropriate. *See* 28 U.S.C. § 1391(c)(2). As such, Columbia could have brought this action against Symantec in the Central District of California.

### 2. *Plaintiff's Choice of Forum*

While the plaintiff's choice of forum is generally entitled to substantial weight, the actual weight given to a plaintiff's choice varies considerably "in proportion to the connection between the forum and the cause of action." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999). Specifically, "[w]hen a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight." *Id.* (citing *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 589 (E.D. Va. 1992)). In patent infringement cases in particular, the preferred forum is most often where "the milieu of the infringing device" is located. *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 327 n.3 (E.D. Va. 2004) (quoting *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001)). Where the allegedly infringing activity relates to the making of a product or device, the hub of infringing activity may be located where the accused device is designed and produced. *See GTE Wireless*, 71 F. Supp. 2d 517, 519-20 (quoting *Santrade Ltd. v. Berndorf ICB Int'l Conveyor Belts, Inc.*, No. 6:92-2032-3, 1992 WL 470482, at *2 (D.S.C. Jan. 6, 1993)). However, where only method claims are in issue, the hub of infringing activity may be located where the patented method is allegedly practiced by the defendant. *See Certusview Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13-cv-346, 2013 U.S. Dist. LEXIS 175339, at *10-12 (E.D. Va. Dec. 12, 2013).

Although Columbia concedes that it chose to file this action outside its home forum, the Parties vigorously dispute whether the Eastern District of Virginia has any substantial connection to this litigation. This dispute occurs on two fronts: the disputed connection of the Infringement Claims to this district and the disputed connection of the Tort and Inventorship Claims to this district. With regard to the Infringement Claims, the Parties dispute whether and to what extent the Herndon SOC is involved in Symantec's alleged infringement of the Asserted

Patents. With regard to the Tort and Inventorship Claims, the Parties dispute whether Columbia's communications with Symantec employees located in Virginia and the Parties' submission of grant proposals to the federal government create a substantial connection to this district.

        a.  <u>Infringement Claims</u>

As to the Infringement Claims, the accused products appear to be designed and produced primarily in various parts of California. Specifically, Symantec notes that the only products explicitly named in the FAC are six software products: Norton AntiVirus, Norton 360, Norton Internet Security, Symantec Endpoint Protection, Symantec Email Security.cloud, and Symantec Mail Security. Symantec asserts that the majority of its design and development of the three accused Norton products, as well as Symantec Endpoint Protection, occurred in the R&D Center in the Central District of California. Additionally, Symantec asserts that the design and development of its Mail Security software and Email Security.cloud software occurs primarily in San Francisco, California, in the Northern District of California. Columbia points out that these products are sold worldwide and development occurs in other locations, including the United Kingdom. However, the Parties submissions show that the transferee forum is where the majority of activity surrounding the creation of the accused software products occurred as well as where the majority of witnesses who could testify as to that creation reside.

If only the enumerated software products were accused, this factor would weigh in favor of transfer; however, Columbia has implicated the SOC located in Herndon, Virginia, in its infringement accusations. Although the SOC and the service it provides—Managed Security Services ("MSS")—are not explicitly accused in Counts One through Six as infringing the Asserted Patents, the FAC accuses "Symantec antivirus and computer security products *and services*" of infringement. (FAC ¶¶ 55, 67, 79, 91, 103, 115 (emphasis added).) Further, the FAC alleges that the SOC "is integrally involved in the infringing activity that is the subject of" the FAC. (FAC ¶ 5.) As such, although Symantec makes much of the fact that MSS is not enumerated

among the accused infringing products and services, the FAC can be reasonably read to include this accusation.

Importantly, the SOC is located in this judicial district and is the only domestic center of its kind. Columbia has argued that the SOC gathers large quantities of information from security logs and has implied that this function either directly infringes the Asserted Patents or supports Symantec's alleged infringement activity. (*See* Mem. Opp'n Mot. Transfer 15.) The exhibits proffered by Columbia indicate that the SOC "analyze[s] more than 12 billion logs worldwide each day" and "leverages threat intelligence from the Symantec Global Intelligence Network." (Pl.'s Mem. Opp'n Mot. Transfer Ex. 1.) Columbia argues that the Global Intelligence Network ("GIN") relates to certain claims in the Asserted Patents and, because Symantec's MSS "leverages" the GIN and "advanced correlation and analysis capabilities to deliver a prioritized list of actionable security incidents," the SOC engages in infringing activity of at least some part of the Asserted Patents.

To support this conclusion, Columbia notes that the Asserted Patents claim processes that may be carried out at the SOC. For example, Columbia points out that claim 1 of the '306 patent specifies "*gathering* features from records of normal processes that access the file system of the computer" and "*generating a probabilistic model* of normal computer system usage." Columbia asserts that the SOC is a part of the GIN and that the GIN mines and generates data used by some of the accused software products (namely, Symantec Endpoint Protection), creating a connection between the allegedly infringing activity and this forum. (Pl.'s Mem. Opp'n Mot. Transfer 6.)

Symantec responds to this argument with the submission of a declaration from Tarun Sondhi, a Product Manager currently working at the SOC. Sondhi denies that MSS analyzes individual email attachments, engages in modeling, or executes potentially corrupt files in an emulator; however, these functions appear to address only the final claim limitations in the Asserted Patents. Sondhi does not deny Columbia's specific allegation that the MSS aggregates

data at the SOC for use by the GIN in ways that infringe the Asserted Patents. At bottom, Symantec argues that Columbia has not proven that the SOC directly infringes the Asserted Patents and, therefore, that Columbia's choice of forum should be given no deference.

Symantec's arguments are unavailing. At this stage in the litigation, Symantec—not Columbia—bears the burden of proving that there is no substantial connection to this forum. *See Certusview*, 2013 U.S. Dist. LEXIS 175339, at *10 (denying transfer in part because the defendants failed to meet their burden despite being the sole possessors of evidence concerning their connection to the forum). Further, the different steps of a patented method may be practiced in more than one location, *see NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (4th Cir. 2005) (finding a claim of infringement precluded where one step of the patented method was performed outside the United States), and each of these locations may be relevant to a determination of infringement.

Columbia has plausibly alleged that the SOC is involved in infringement of the Asserted Patents, and Symantec has failed to show that activity occurring at the SOC is unrelated to this litigation. Accordingly, Columbia has shown that there is a slight connection between this forum and the Infringement Claims.

      b.  Tort and Inventorship Claims

As to the Tort and Inventorship Claims, Columbia argues that these claims all stem from events and communications occurring in this district.[1] Specifically, Columbia argues that Symantec engaged in a course of conduct that culminated in the common law torts of fraudulent concealment, unjust enrichment, and conversion, as well as the omission of Professors Stolfo and Keromytis as inventors of the '643 Patent. The origin of this course of conduct was the collaboration between the Parties regarding the 2006 NICECAP grant proposal and the 2010 DARPA grant proposal. This collaboration occurred in large part through communications

---

[1] The fact that the PTO is located in this district and that Symantec filed documents with the PTO is insufficient to create a substantial connection to this forum. *See Finmeccanica S.p.A. v. GMC*, No. 1:07-cv-794, 2007 U.S. Dist. LEXIS 85268, at *10-11 (E.D. Va. Nov. 19, 2007).

between Columbia employees and Symantec employees located at the Symantec Research Laboratory in Virginia. For example, Symantec employees Witten and Elder communicated with Professors Stolfo and Keromytis from Virginia while collaborating on, and drafting, the 2006 and 2010 grant proposals. As such, a substantial number of events that gave rise to the cause of action occurred in this district.

Symantec is correct to assert that California also has a connection to this litigation as a result of its communication related to the '643 Application. For example, Symantec employees Shou, Kimes, and Larson appear to have communicated with Columbia employees in New York with regard to the IDF, the draft provisional application, and the draft utility application that ultimately issued as the '643 Patent. However, such a connection does not vitiate the existence of a parallel connection with this forum. The contents of the 2006 and 2010 grant proposals are likely to be highly relevant evidence in resolving the Tort and Inventorship Claims. As such, the fact that they were drafted in this district creates some connection to the forum.

On balance, Columbia has demonstrated that there is at least some connection between this forum and the claims at issue. However, Columbia has chosen to bring this action outside its home forum, decreasing the deference to which its choice is entitled. As such, while Columbia's initial choice of forum is not entitled to substantial weight, it does garner some deference.

### 3.  *Convenience of the Parties*

The first point to consider in assessing party convenience is generally the Parties' respective residences. *See JTH Tax, Inc. v. Lee,* 482 F. Supp. 2d 731, 738 (E.D. Va. 2007). Where a plaintiff files suit in a foreign jurisdiction, "this fact militates in favor of a transfer to the district where the defendant resides, because the plaintiff will be inconvenienced by having to travel whether the action is transferred or not." 17-111 Moore's Fed. Prac. § 111.13; *see also Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 593 (E.D. Va. 1992). As noted, Columbia brought this action in a foreign district, whereas Symantec seeks transfer of this

action to its home forum. As such, while both parties would be required to travel and transport documents if litigation were held in this district, only Columbia would be burdened by the inconvenience of travel to the Central District of California. While Columbia describes this as merely shifting inconvenience between the parties, the net inconvenience to the Parties would be decreased by transfer.

Columbia strenuously argues that the Court should deny transfer because of substantial inconvenience to Professors Stolfo and Keromytis, who have substantial obligations to the federal government while they are on leave from teaching duties at Columbia. However, "party witnesses . . . can be persuaded by their employer to attend a different forum; consequently, the inconvenience to [party] witnesses is entitled to less weight in the transfer analysis." *Uretek USA, Inc. v. Applied Polymerics, Inc.*, No. 3:11-CV-542, 2011 U.S. Dist. LEXIS 139349, at *9 (E.D. Va. Dec. 5, 2011). In light of the fact that Professors Stolfo and Keromytis both continue to be employed by Columbia and also appear to travel regularly, the Court will afford little weight to the inconvenience they will experience if required to travel to California to participate in this action. (Def. Reply Mem. Supp. Mot. Transfer Ex. 1, at 6-56.)

Finally, in assessing the convenience to the parties, the Court may consider the location of relevant documentary evidence. While this factor has less significance in the age of electronic discovery, *see Kabat v. Bayer Cropscience LP*, 2008 U.S. Dist. LEXIS 41187, at *10 (E.D. Va. May 22, 2008) (quoting *Finmeccanica*, 2007 U.S. Dist. LEXIS 85268 , at *22), it should not be entirely discounted, *see In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2008). This is particularly true where the transferee forum likely houses the vast majority of documentary evidence relevant to the case and where little or no documentary evidence exists in the transferor forum. Based on the Parties' submissions, it appears that more relevant documentary evidence is located in the transferee forum than in this district.

In sum, while Columbia asserts that this district is convenient for it, it will be required to travel whether or not the Motion to Transfer is granted and can persuade its employees to travel

California if necessary for litigation. On the other hand, inconvenience to Symantec will be substantially lessened and the court would have easier access to relevant documentation if the Motion to Transfer is granted. Accordingly, this factor weighs in favor of transfer.

###### 4.   *Witness Convenience*

In contrast, convenience to the non-party witnesses weighs against transfer. The Parties have identified a large number of potential witnesses in this action who reside all across the United States. The third-party witnesses most important to litigation of the Infringement Claims will be the inventors of the Asserted Patents and the attorneys who prosecuted those patents. The third-party witnesses most important to litigation of the Tort and Inventorship Claims will be: (1) those witnesses with knowledge of Columbia's and Symantec's relative contributions to the Parties' collaborations; and (2) those individuals who procured the '643 Patent. Significantly less likely to be important to this litigation are third party witnesses who were only minimally involved in communications between the Parties.

While an approximately equal number of significant non-party witnesses reside in this district and the Northern District of California,[2] the Court must also take into account the relative inconvenience to third party witnesses residing outside either district. Such inconvenience will be significantly greater if third-party witnesses are required to travel cross-country, rather than only along the east coast. *Cf. Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 316 (E.D. Va. 2013) (finding transfer appropriate where travel time and flight availability made the transferee forum more convenient). Columbia points out that five of the seven the non-party inventors are located significantly closer to this district than to

---

[2] Five third-party witnesses—Eskin, Kimes, Chakravarthy, Chaffin, and DeSouza—appear to reside in or very near the Northern District of California; four third-party witnesses—Salem, Abraham, Matthews, and Kessler—appear to reside in or very near the Eastern District of Virginia. However, three of the five witnesses residing in California likely will not provide substantial testimony as their only relevance to this litigation appears to be their receipt of Columbia's notice of the Asserted Patents. As such, the Court considers the weight of these facts in assessing the propriety of transfer to be approximately equal.

California.[3] Additionally, of those significant third party witnesses who reside outside both this district and the Northern District of California, seven reside on the east coast, and only four reside on the west coast.[4]

Further, Columbia has declarations from each of its potential witnesses asserting that he or she likely will not be able to "meaningfully participate" in a trial if held in California. Similarly, Symantec has procured from its potential witnesses declarations stating that travel to Virginia would be substantially more inconvenient than travel to California. However, it is undeniable that a two-hour flight within the same time zone is significantly more convenient than a six-hour flight that crosses three time zones. Because the inconvenience to a greater number of non-party witnesses would increase upon transfer, the Court finds that the convenience to non-party witnesses favors retaining this action and denying the Motion to Transfer.[5]

 5. _Interests of Justice_

The "interests of justice" factor is intentionally broad; it is meant to encompass those factors which have not already been considered by the Court and which are commonly directed at preserving systematic integrity and fairness. _Jaffe v. LSI Corp._, 874 F. Supp. 2d 499, 505 (E.D. Va. 2012); _JTH Tax_, 482 F. Supp. 2d at 738. Courts may consider the interest in having local controversies decided at home, knowledge of applicable law, the unfairness of burdening potential jurors, and the interest in avoiding inconsistent judgments. _Jaffe_, 874 F. Supp. 2d at

---

[3] On the east coast, Inventors Apap, Bhattacharyya, Schultz, Sidiroglou, and Zadok reside in New York, Illinois, Pennsylvania, or Massachusetts. On the west coast, Inventor Eskin resides in California, and Inventor Honig resides in Washington State.

[4] In addition to the inventors already enumerated, the third-party witnesses residing on the east coast include Egbert and Poh, who participated in prosecution of the Asserted Patents; the additional third-party witness residing on the west coast is Larson, who was Symantec's in house counsel at the time the '643 Application was filed.

[5] As previously noted, party witnesses can be persuaded by their employers to participate in litigation in a distant jurisdiction, _see Uretek USA_, 2011 U.S. Dist. LEXIS 139349, at *9, and greater weight is afforded to non-party witness convenience, see _Lycos, Inc. v. TiVo, Inc_., 499 F. Supp. 2d 685, 693 (E.D. Va. 2007). As such, the Court does not separately consider party witness convenience under this factor. However, even if the Court did so, Symantec has not shown that the inconvenience to its party witnesses absent transfer would outweigh the inconvenience to Columbia's party witnesses in the event of transfer.

505. Although courts may also consider relative docket conditions, *id.*, the interests of justice are not served when docket considerations are "the primary reason for retaining a case in this district," *Telepharmacy Solutions v. Pickpoint*, 238 F. Supp. 2d 741, 744 (E.D. Va. 2003).

While Columbia argues that several of these factors favor retaining this action, the Court finds that the interests of justice do not weigh strongly in favor of, or against, transfer. For example, Columbia notes that this district's "rocket docket" will result in a swifter resolution of the infringement claims. While Symantec does not respond to this argument, the Court will not consider relative docket conditions to be dispositive on a transfer motion. Further, if Columbia prevails in its infringement allegations, it will be able to seek monetary and injunctive relief making it whole even for infringing activity that occurs during the pendency of this litigation. Columbia also argues that the Parties currently dispute whether Virginia law or New York law is applicable to the '532 patent claims, making transfer to a California court inappropriate. However, the district courts of California are entirely capable of applying either Virginia or New York's laws. *See JTH Tax*, 482 F. Supp. 2d at 739. For all these reasons, the interests of justice do not weigh either in favor of transferring or retaining this action.

In considering the section 1404(a) factors as a whole, Symantec has failed to meet its burden to show that transfer is in the interest of justice and convenience. Columbia's initial choice of forum is entitled to some deference because it is the plaintiff in this action and has shown that the cause of action has some connection to this forum. *See Akers*, 378 F.2d at 80. Although the convenience to the Parties favors transfer, the convenience to the witnesses does not, and the Court "draws a distinction between party witnesses and non-party witnesses and affords greater weight to the convenience of non-party witnesses." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007). Finally, the interests of justice weigh neither in favor of, nor against, transfer. Where there is equipoise, the party bearing the burden of proof cannot prevail. As such, the Motion to Transfer will be denied.

B. MOTION TO DISMISS

      1.   *Preemption of Fraudulent Concealment and Unjust Enrichment Claims*

Under the Supremacy Clause, state law that conflicts with federal law is without effect. U.S. Const. art. VI, cl. 2; *Bonita Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 168 (1989); *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1331 (Fed. Cir. 1998). Preemption can be any of three types: explicit, field, or conflict preemption. *Hunter Douglas,* 153 F.3d at 1332. Because federal patent law does not provide explicit preemption, 35 U.S.C. §§ 1, *et seq.*; *Hunter Douglas,* 153 F.3d at 1332, and because Congress does not intend to occupy exclusively the field of fraudulent concealment and unjust enrichment law, *Univ. of Colo. Foundation, Inc. v. Am. Cyanamid Co.* (*Am. Cyanamid I*), 196 F.3d 1366, 1371 (Fed. Cir. 1999), only conflict preemption might bar Columbia's claims for fraudulent concealment and unjust enrichment. Conflict preemption occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 262 (1979) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)).

Columbia argues persuasively that the *American Cyanamid* cases are on point. *See Univ. of Colo. Foundation, Inc. v. Am. Cyanamid Co.* (*Am. Cyanamid II*), 342 F.3d 1298 (Fed. Cir. 2003); *Am. Cyanamid I*, 196 F.3d 1366. In the *American Cyanamid* cases, several doctors brought claims against a pharmaceutical company after it obtained patents based on information and inventions disclosed by the doctors in the context of a confidential relationship. *Am. Cyanamid I*, 196 F.3d 1366. The Federal Circuit held that fraudulent nondisclosure and unjust enrichment causes of action cover a broad range of conduct that does not bear on federal patent policies, and those causes of action are therefore not preempted by federal patent law." *Id.* at 1371. The Court further characterized the fraudulent non-disclosure claim as "spring[ing] from Cyanamid's alleged duty to inform the Doctors of the patent application. Similarly, the unjust enrichment claim springs not from an attempt to enforce intellectual property rights, but instead from Cyanamid's alleged wrongful use of the Doctors' research results." *Id.* at 1371-72.

The facts of this case and the allegations in the FAC are so strikingly similar to the *American Cyanamid* cases that—as Symantec charges—Columbia may have looked to those cases in drafting the FAC. This fact, however, does not bar Columbia's recovery. As in the *American Cyanamid* cases, Columbia has alleged a confidential relationship with Symantec that prohibited Symantec from using confidential disclosure for its sole benefit. As in the *American Cyanamid* cases, Columbia alleges that the breach of that confidence creates a right of recovery and, if proven, allows Columbia to disgorge Symantec of any benefit that accrued to it as a result of its wrongful conduct.

Accordingly, as in the *American Cyanamid* cases, Columbia's right of recovery does not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives" of the patent laws. *Aronson,* 440 U.S. 262. Rather, Columbia seeks to remedy tortious conduct. The fraudulent concealment Columbia seeks to remedy "springs not from an attempt to enforce intellectual property rights," but from Symantec's alleged duty to refrain from using confidential materials for its person benefit. *Am. Cyanamid I*, 196 F.3d at 1371. Similarly, because the remedy for unjust enrichment is disgorgement of a wrongfully obtained benefit rather than "patent-like protections" for intellectual property that is not otherwise patentable, federal patent policies are not implicated. *Am. Cyanamid II*, 342 F.3d at 1305. As such, Columbia's claim for unjust enrichment and fraudulent concealment are not preempted.

Symantec relies heavily on *Ultra-Precision Manufacturing, Ltd. v. Ford Motor Co.*, 411 F.3d 1369 (Fed Cir. 2005); however, this case is easily distinguishable on its facts. In *Ultra-Precision,* the plaintiffs disclosed their invention without the protection of a confidential relationship with the defendants. 411 F.3d at 1372. Subsequently, the plaintiffs obtained a patent on their invention, sued the defendants for rights as joint inventors on a related patent, and sought damages for unjust enrichment. *Id.* at 1372-74. Because the defendants obtained no greater benefit from the plaintiffs' disclosure than the public had obtained through the plaintiff's receipt of a published patent, the Federal Circuit found the state law tort claims preempted. *Id.*

at 1379-80, 1382. Essentially, the Federal Circuit found that the defendants were not enriched by the plaintiff's disclosure and, as such, awarding any remedy would effectively grant the plaintiffs a patent-like benefit to which they were not entitled. *Id.* at 1381. The facts in this action materially differ from those in *Ultra-Precision*. Specifically, because a confidential relationship did exist between the Parties, Columbia has plausibly alleged that Symantec was obligated to disclose beneficial uses of confidential materials and that Symantec was enriched by disclosures it obtained through that confidential relationship. As such, any remedy redressing Symantec's alleged fraudulent concealment or disgorging Symantec of benefits it obtained wrongfully would not be akin to granting an exclusive property right, but rather would make Columbia whole for its tortious injury.

### 2. *Dismissal of Conversion Claim*

A federal court considering state law claims applies the conflict of laws rules prevailing in the state in which it sits—in this case, Virginia. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Virginia's choice of law rules, the doctrine of *lex loci delicti* applies, and claims are analyzed under the law governing the place of the alleged wrong. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir 2009) (citing *Jones v. R.S. Jones & Assocs.*, 431 S.E.2d 33, 34, (Va. 1993). The place of the alleged wrong is where the last act necessary to create the injury occurred.[6] *See Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044(4th Cir 1986); *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006).

The Parties dispute whether New York law or Virginia law applies to Columbia's claim for conversion. However, at this early stage in the litigation, the Court cannot determine which State's law applies to Columbia's conversion claim. Columbia has alleged that Symantec

---

[6] Symantec cites to *Feeley v. Total Realty Management*, 660 F. Supp. 2d 700, 713 (E.D. Va. 2009), for the proposition that the place of the alleged wrong is where the injury was suffered. (Pl.'s Reply 15.) *Feeley* correctly articulates the Virginia conflicts of law rule for fraud claims because a plaintiff's reasonable reliance on a misrepresentation is both the last element of a claim for fraud and also that element which constitutes the plaintiff's injury. *See Insteel Indus. v. Constanza Contr. Co.*, 276 F. Supp. 2d 479, 286-87 (E.D. Va. 2003). However, the generally applicable articulation of Virginia's rules asks where "the last event necessary to make an act liable" took place." *See Quillen*, 789 F.2d at 1044 (citation omitted).

converted to its own use information and property in which Columbia had a superior right of possession and which was subject to the requirements of the 2004 NDA. However, it is not apparent from the FAC where this conversion is alleged to have occurred. Symantec has argued that New York law applies on the basis of the place of injury; however, this assertion is inconsistent with Virginia law. *See supra* note 6. Similarly, Columbia has failed to offer any basis—beyond a conclusory assertion—for concluding that the substantive law of Virginia applies to its state law claims.

Nevertheless, the Court need not resolve the choice of law issue because Columbia appears to have alleged a claim for conversion sufficient to survive a motion pursuant to Rule 12(b)(6) under either forum's law. The parties do not appear to dispute that the elements for conversion are essentially equivalent in New York and Virginia. Under New York law, "the tort of conversion . . . requires: (1) legal ownership or an immediate superior right of possession to a specific identifiable thing; (2) over which a defendant has exercised an unauthorized dominion; (3) to the exclusion of plaintiff's rights." *Buttner v. RD Palmer Enter., Inc.*, No. 13-cv-0342, 2013 WL 6196560, at *2 (N.D.N.Y. Nov. 27, 2013). Under Virginia law, the tort of conversion requires (1) wrongful exercise or assumption of authority; (2) over another's goods; (3) depriving him of possession. *Condo Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 171 (Va. 2011) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956)). Columbia has alleged that it is "the owner of materials and technology" over which "Symantec has wrongfully exercised dominion . . . . for unauthorized purposes without Columbia's knowledge or permission." (FAC ¶¶ 140-41.)

Symantec argues that the claim for conversion fails as a matter of law both because it relates only to intangible intellectual property rights and also because it is preempted by federal patent law. (Def.'s Mem. Supp. Mot. Transfer 6-7.) However, the Court need not address these issues to determine the sufficiency of Columbia's claim. Columbia has asserted that the 2006 NICECAP grant proposal drafts authored by Professor Keromytis "represent tangible property

that is properly the subject of Columbia's conversion claim." (Def.'s Mem. Opp'n Mot. Transfer 26.) To the extent that Columbia asserts a claim for conversion of the 2006 NICECAP grant proposal drafts themselves, it has plausibly asserted a claim for conversion of tangible property. This claim is not preempted by federal law because the 2006 NICECAP grant proposal drafts conveyed no patent right to Columbia. As such, to the extent that Columbia asserts a claim for conversion that is not "dependent on a determination of patent inventorship or ownership," it has asserted a claim for conversion that is not preempted by the federal patent laws. *See Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-cv-01273, 2012 U.S. Dist. LEXIS 28017, at *18-19 (E.D. Cal. Mar. 2, 2012) (collecting cases).

To the extent described above, Columbia has plausibly alleged that Symantec converted the 2006 NICECAP grant proposal drafts to "gain early access to Columbia's groundbreaking work in decoy technology in order to advance Symantec's competitive position in the market" and to "gain[] a head start in the development of products and services incorporating, based on, or derived from Columbia's decoy technology." (FAC ¶ 141.) Although Columbia has not identified any particular product Symantec has developed based on the disputed technology, its allegations are not "'naked assertions' of wrongdoing" as suggested by Symantec. *Francis v. Giancomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Rather, the Court may reasonable infer from the facts alleged in the FAC that Symantec utilized the 2006 NICECAP grant proposal drafts for some benefit beyond obtaining the '643 Patent. Columbia has provided substantial factual detail—much of which is not contested—regarding Symantec's belief in the validity of its exclusive right to the technology embodied in the '643 Patent. In deciding the Motion to Dismiss, the Court must accept as true Columbia's factual allegation that the 2006 NICECAP grant proposal drafts were utilized in obtaining the '643 Patent. *See Edwards*, 178 F.3d at 244. From this factual allegation, the Court may reasonably infer that the 2006 NICECAP grant proposal drafts were similarly employed by Symantec for other beneficial uses not related to obtaining a patent. This is particularly true where Columbia "may only have

so much information at [its] disposal at the outset" and where the Parties are fiercely protective of proprietary information. *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) (noting that the requirement of pleading nonconclusory factual detail at the pleading stage may be tempered by such considerations).

Columbia has plausibly alleged a claim for conversion of tangible property that is not preempted by federal law. As discussed in Part III.B.1., *supra*, Columbia's claims for fraudulent concealment and unjust enrichment are similarly not preempted by federal law. Accordingly, the Motion to Dismiss will be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Motion to Transfer will be DENIED and the Motion to Dismiss will be DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this __1st____ day of April 2014.