# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

      Plaintiff,

v.
                                        **Civil Action No. 3:13cv808**

SYMANTEC CORPORATION,

      Defendant.

## MEMORANDUM OPINION
### "The *Inter Partes Review* Opinion"

This matter comes before the Court on four motions filed by the Plaintiff the Trustees of

Columbia University in the City of New York's ("Columbia"):

> 1.    the Motion for Partial Summary Judgment[1] Regarding *Inter Partes Review* Estoppel (the "Partial Summary Judgment Motion"),[2] (ECF No. 198);[3]

---

[1] Local Rule of Civil Procedure 56(C) states that "[u]nless permitted by leave of Court, a party shall not file separate motions for summary judgment addressing separate grounds for summary judgment." E.D. Va. Loc. Civ. R. 56(C). On October 5, 2018, the Court granted Columbia leave to file the instant motion without prejudice to its ability to file an additional motion for summary judgment. (ECF No. 197.)

[2] Federal Rule of Civil Procedure 56(a), which governs when a federal court may grant summary judgment, provides, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

[3] Defendant Symantec Corporation ("Symantec") responded to the Partial Summary Judgment Motion, (ECF No. 203), and Columbia replied, (ECF No. 211).

2.     the November 9, 2018 Motion for Leave to File Supplemental Authority (the "First Motion to File Supplemental Authority"), (ECF No. 223);

3.     the February 4, 2019 Motion for Leave to File Supplemental Authority (the "Second Motion to File Supplemental Authority"), (ECF No. 240); and,

4.     the May 9, 2019 Motion for Leave to File Supplemental Authority (the "Third Motion to File Supplemental Authority"), (ECF No. 243).

The Court heard oral argument on the Partial Summary Judgment Motion and the matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[4] For the reasons that follow, the Court will grant the Motion for Partial Summary Judgment, which will preclude Symantec from supporting its invalidity affirmative defense with the dozens of grounds of invalidity it previously raised in its invalidity contentions, but chose not to assert in its petitions for *inter partes review* before the PTAB.[5] For ease of reference, the Court will occasionally refer to this opinion and accompanying order as the "*Inter Partes Review* Opinion," and the companion memorandum opinion and order as the "Markman Opinion."

---

[4] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[5] Symantec does not oppose the First Motion to File Supplemental Authority, (ECF No. 223), and did not respond to either the Second Motion to File Supplemental Authority, (ECF No. 240), or the Third Motion to File Supplemental Authority, (ECF No. 243). Given that the cases cited in the three motions present persuasive authority, the Court will grant the motions, and allow Columbia to file its supplemental authority.

## I. Procedural Background[6]

### A. Litigation Prior to *Inter Partes Review*

On December 24, 2013, Columbia filed an Amended Complaint alleging that Symantec's Norton Antivirus software infringed on six patents[7] owned by Columbia, only two of which remain at issue. (ECF No. 12.) Columbia also raised five claims for relief arising out of one patent owned by Symantec, which Columbia believes Symantec unlawfully obtained.[8] (ECF No. 12.) On January 14, 2014, Symantec answered.[9] (ECF No. 20.) In its Answer, Symantec

---

[6] In recounting the factual history on a motion for summary judgment, the Court will view the undisputed facts and all reasonable inferences therefrom in the light most favorable to Symantec, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). For purposes of the instant motion, the Court need not rely on any substantive allegations in the Amended Complaint. Rather, the Court may resolve the instant Summary Judgment Motion based only on the undisputed procedural history.

[7] These six patents included: (1) Patent No. 7,487,544 (the "544 Patent"); (2) Patent No. 7,979,907 (the "907 Patent"); (3) Patent No. 7,448,084 (the "084 Patent"); (4) Patent No. 7,913,306 (the "306 Patent"); (5) Patent No. 8,074,115 (the "115 Patent"); (6) Patent No. 8,601,322 (the "322 Patent"). (*See* Am. Compl. ¶ 1.) The United States Court of Appeals for the Federal Circuit described the patents as follows:

> The patents can be grouped into three families. The []544 and []907 patents share the same specification and relate to detecting malicious email attachments. The []084 and []306 patents share the same specification, and relate to a method for detecting intrusions in the operation of a computer system. The []115 and the []322 patents also share a specification and relate to detecting anomalous program executions.

*Trs. of Columbia Univ. in the City of New York v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016). Of these six patents, only the claims relating to the 115 Patent and the 322 Patent remain before the Court.

[8] These claims relate to Patent No. 8,549,643 (the "643 Patent"), which belongs to Symantec. The Court has stayed Columbia's challenges to the 643 Patent.

[9] On that same day, Symantec moved to dismiss Columbia's seventh, eighth, and ninth claims for relief (the "Motion to Dismiss"). (ECF No. 18.) These claims allege causes of action for fraudulent concealment, unjust enrichment, and conversion pertaining to the 643 Patent. (*Id.*) On April 2, 2014, the Court denied the Motion to Dismiss. (ECF No. 68.) Columbia's seventh,

asserted several defenses, including that it did not infringe on Columbia's patents and that the patent claims in Columbia's patents do not constitute valid patent claims.[10]

On February 27, 2014, the Court held a pretrial conference. On March 5, 2014, the Court issued a scheduling and pretrial order, which scheduled the trial for January 5–16, 2015. (ECF No. 54.) On March 17, 2014, following a joint request from Columbia and Symantec, the Court entered an order setting the deadlines to file infringement and invalidity contentions. (ECF No. 56.) In that order, the Court ordered Symantec to provide Columbia "a list of *all* prior art on which it relies and a complete and detailed explanation of what it alleges the prior art shows and how that prior art invalidates the claims asserted by plaintiff." (Mar. 17, 2014 Order ¶ 5 (emphasis added), ECF No. 56.) On May 12, 2014, Symantec served this list—its invalidity contentions—on Columbia.

In its invalidity contentions, Symantec identified dozens of prior art that allegedly rendered both the 115 and 322 patents invalid, including 10 patents, 43 printed publications, and the systems DIDUCE and ReVirt.[11] (*Id.* 7–8.) With regard to the DIDUCE and ReVirt systems,

---

eighth, and ninth claims for relief remain at issue in this case, but the Court stayed those claims in 2014.

[10] Based on the Court's decision in this *Inter Partes Review* Opinion, Symantec may no longer support its invalidity affirmative defense with the dozens of grounds of invalidity identified in its invalidity contentions, but that it chose not to assert in its petitions for *inter partes review* before the PTAB. Symantec asserts other defenses, which remain before the Court: limitation on damages and recovery, dedication to the public, no entitlement to an injunction or other equitable relief, unavailability of enhanced damages, unavailability of unjust enrichment, unavailability of conversion, and preemption by federal patent law.

[11] Symantec identified the same prior art as rendering both the 115 Patent and the 322 Patent invalid.

Symantec included two articles—a 2002 article by Sudheendra Hangal and a 2002 article by George Dunlap—and source code publicly available on the Internet.[12] (*Id.* 8.)

On October 7, 2014, following briefing and a hearing,[13] the Court issued a Claim Construction Order. (ECF No. 123.) Columbia then filed a Motion for Clarification of Claim Construction Order (the "Motion for Clarification"). (ECF No. 128.) Specifically, Columbia asked that the Court clarify the meanings of the phrase "probabilistic model of normal computer system usage" as used in the 084 Patent and the 306 Patent, and the word "anomalous" as used in the 115 Patent and the 322 Patent. (Mem. Supp. Mot. Clarification 2–3, ECF No. 129.) On October 23, 2014, the Court issued its Clarified Claim Construction Order. (ECF No. 146.)

Ten days later, based on the Court's 2014 Clarified Claim Construction Order, Columbia and Symantec jointly moved the Court to issue final judgment pursuant to Federal Rules of Civil Procedure 54(b)[14] as to Columbia's first through sixth claims for relief and staying the case as to its seventh through eleventh claims. (Jt. Mot. Entry Final J. 1–2, ECF No. 148.) The parties specifically asked the Court to enter "judgment of non-infringement on all asserted claims and [to] find[] . . . invalidity for indefiniteness of claims 1 and 16 of the []544 [P]atent." *Trs. of Columbia Univ.*, 811 F.3d at 1362. On November 4, 2014, the Court entered the partial final judgment requested by Columbia and Symantec. (ECF No. 150.)

---

[12] In its Opposition to the Summary Judgment Motion, Symantec disputes "that source code is a 'printed publication.'" (Resp. Summ. J. Mot. 3, ECF No. 203.) As discussed later, this one sentence assertion does not suffice to create a genuine dispute of material fact that would prevent the Court from granting summary judgment.

[13] Today's Markman Opinion concludes that, as requested by Symantec, this case requires additional claim construction briefing and an additional Markman hearing as to both terms requested by Symantec. The Court assumes familiarity with the Markman Opinion.

[14] Federal Rule of Civil Procedure 54(b) provides: "When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

## B.    First Appeal to the Federal Circuit:    Claim Construction Orders

Approximately one week later, having seemingly lost its case in this Court, Columbia

filed its Notice of Appeal to the Federal Circuit and appealed the Court's November 4, 2014

Partial Final Judgment Order, (ECF Nos. 150, 151), the Court's original Claim Construction

Order, (ECF No. 123), and the Court's Clarified Claim Construction Order, (ECF No. 146).

(Notice Appeal 1, ECF No. 152.)  In a 2016 opinion, the Federal Circuit affirmed in part, and

reversed and remanded in part, the Court's claim construction orders.  *See Trs. of Columbia*

*Univ.*, 811 F.3d at 1371.  Specifically, the Federal Circuit upheld the judgment of non-

infringement as to the 544, 907, 084, and 306 patents.  *Id.* at 1366–67, 1369.  With regard to the

115 and 322 patents, the Federal Circuit vacated the Court's clarified construction of the term

"anomalous," reversed the Court's judgment as to those two patents, and remanded for

proceedings consistent with the Federal Circuit's opinion.  *Id.* at 1370–71.

This appellate process left only Columbia's causes of action as to the 115 and 322 patents

pending in this district court.  Columbia's seventh through eleventh claims for relief that concern

Symantec's 643 Patent, stayed by the Court in 2014, also remain pending before the Court.

## C.    The *Inter Partes Review* Proceedings

On December 5, 2014, after the Court issued its partial final judgment order and while

the Federal Circuit considered Columbia's appeal from that order, Symantec (which prevailed

below) filed petitions with the Patent Trial and Appeal Board ("PTAB") of the United States

Patent and Trademark Office ("PTO") requesting, in relevant part, *inter partes review*[15] of the

---

[15] The United States District Court for the Eastern District of Wisconsin has described the *inter partes review* process in succinct terms:

> [A] procedure introduced by the [Leahy–Smith America Invents Act] in which the PTAB may review the patentability of one or more claims in a patent. *See* 35 U.S.C. §§ 311–319.  A party may request that the PTAB institute [*inter*

115 and 322 patents at issue in the litigation.[16] (Notice Pets. *Inter Partes Review* 1, ECF No. 158.) Thus, two avenues of additional proceedings—one started by each party—commenced at approximately the same time. As did this Court's 2014 Claim Construction Orders, Symantec's *inter partes review* proceedings reached the Federal Circuit. The Federal Circuit's *inter partes review* decision, however, took two years longer than its order discussing this Court's 2014 Claim Construction Orders. *Compare Trs. of Columbia Univ. in the City of New York v. Symantec Corp.*, 811 F.3d 1359 (Fed. Cir. 2016), *with Trs of Columbia Univ. in the City of New York v. Symantec Corp.*, 714 Fed. App'x 1021 (Fed. Cir. 2018).

---

partes review] in order to establish that some identified claims are invalid under Sections 102 or 103. *Id.* § 311(a)–(b). The petitioner must rely "only on . . . prior art consisting of patents or printed publications." *Id.* § 311(b). If the PTAB decides to institute [*inter partes review*], the proceeding is conducted before a panel of three administrative patent judges. *Id.* §§ 6(a)–(c), 311. The panel then issues a decision, after hearing argument from both sides, as to whether the claims in question are invalid.

[*Inter partes review*] was created "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs" and "to create a timely, cost-effective alternative to litigation." Changes to Implement *Inter Partes Review* Proceedings, Post–Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48680–01 (Aug. 12, 2012) (codified at 37 C.F.R. §§ 42.100 *et seq.*). For present purposes, the most important streamlining effect of [*inter partes review*] is to estop the unsuccessful petitioner from raising in a later district court action "any ground that the petitioner raised or reasonably could have raised during that *inter partes review*." 35 U.S.C. § 315(e)(2).

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1026–27 (E.D. Wis. 2017).

[16] Symantec sought *inter partes review* for all six patents at issue in this case, but the Court discusses *inter partes review* only as it relates to the two remaining patents: the 115 Patent and the 322 Patent.

Despite having identified dozens of grounds of invalidity while before the District Court as to both the 115 and 322 patents,[17] Symantec plucked only a few of those grounds to assert in its petitions for *inter partes review* before the PTAB. Specifically, in its petition seeking *inter partes review* of the 115 Patent, Symantec asserted only three grounds of invalidity. (Mem. Supp. Summ. J. Mot. 9, ECF No. 199.) Similarly, in its petition relating to the 322 Patent, Symantec asserted only two grounds of invalidity. (*Id.*)

On July 1, 2015, the PTAB construed the terms in the patent claims pursuant to their "broadest reasonable construction"[18] and fully instituted *inter partes review* on all of Symantec's

---

[17] In its 2014 Invalidity Contentions, served on Columbia while proceeding before the District Court, Symantec identified as grounds of invalidity 10 patents, 43 printed publications, and the prior art systems, DIDUCE and ReVirt. (Mem. Supp. Summ. J. Mot. 7–8.) Symantec contended that these same grounds of invalidity rendered both the 115 and 322 patents invalid.

[18] When a district court construes a patent term, it must consider "three primary sources: the claims, the specification, and the prosecution history." *Contentguard Holdings, Inc. v. Amazon.com, Inc.*, Nos. 2:13cv1112, 2:14cv61, 2015 WL 8073722, at *3 (E.D. Tex. Mar. 20, 2015) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)). After considering these sources, the district court assigns the term "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention." *Id.* at *4 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc)). In contrast, when conducting an *inter partes review*, the PTAB construes terms pursuant to their "broadest reasonable construction," a different standard than the one applied in the district court. *See SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016).
In its Final Written Decision regarding the 115 Patent, PTAB stated that "[i]n [the] Decision to Institute, we determined the broadest reasonable construction of anomalous is: 'deviation/deviating from a model of typical computer system usage.'" *Symantec Corp. v. The Trs. of Columbia Univ. in the City of New York*, No. IPR2015-00375, 6 (P.T.A.B. June 30, 2016) (the 115 Patent decision) (ECF No. 180-1). Further, it stated "[w]e specifically recognized that the [s]pecification contemplates that 'attack data' may be used to build the model used as a baseline for comparison to identify anomalous behavior." *Id.* In its Final Written Decision regarding the 322 Patent, PTAB provided the same definition. *Symantec Corp. v. The Trs. of Columbia Univ. in the City of New York*, No. IPR2015-00377, 5 (P.T.A.B. June 30, 2016) (the 322 Patent decision) (ECF No. 180-2).

asserted grounds of invalidity.[19] (*Id.*) On June 30, 2016, the PTAB issued separate final written decisions—one as to the 115 Patent and one as to the 322 Patent. In these decisions, PTAB found that Symantec proved that certain claims of the 115 Patent and the 322 Patent could not be patented but failed to meet that standard as to other patent claims.[20]

### D.   The Second Federal Circuit Appeal: *Inter Partes Review* Appeal

On August 5, 2016, Columbia and Symantec jointly requested a one-year stay in the case pending before this Court to allow the Parties to appeal to the Federal Circuit the PTAB's *inter partes review* decisions concerning the 115 and 322 patents. (ECF No. 167.) On appeal, in an assessment separate from its 2016 decision regarding this Court's Claim Construction Orders, in 2018 the Federal Circuit affirmed PTAB's decisions as to the validity of the patent claims in the 115 and 322 patents in all respects. *Trs. of Columbia Univ. in the City of New York v. Symantec Corp.*, 714 F. App'x 1021, 1022 (Fed. Cir. 2018).[21]

### E.   The Current Posture of the Case

Following both the appeal from this Court's prior orders and the appeal from the PTAB's *inter partes review* decisions, only three patents remain at issue: the 115 Patent, the 322 Patent,

---

[19] By fully instituting Symantec's request for *inter partes review* as to the 115 and 322 patents, PTAB considered all grounds of invalidity that Symantec asserted in its petitions to institute *inter partes review*. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018).

[20] Specifically, PTAB found 12 claims of the 115 Patent patentable: claims 2, 9, 10, 12, 19, 20, 23, 30, 31, 33, 40, and 41. (Mem. Supp. Summ. J. Mot. 9.) It also found 6 claims of the 322 Patent patentable: claims 2, 8, 11, 17, 25, and 27. (*Id.*) PTAB concluded that Symantec succeeded in showing that Columbia could not lawfully patent the remaining 30 claims in the 115 Patent and the remaining 21 claims in the 322 Patent in light of the asserted prior art. Neither Columbia nor Symantec disputes that the PTAB's decisions as to the patentability of the 115 Patent and the 322 Patent narrowed the claim terms before this Court.

[21] The Federal Circuit addressed the PTAB's *inter partes review* decisions as to the 115 Patent and the 322 Patent in a single opinion. *See Trs. of Columbia Univ.*, 714 F. App'x at 1022.

and the 643 Patent.[22]  Only those twelve patent claims in the 115 Patent and six patent claims in the 322 Patent that the PTAB found valid remain.

After the issuance of the Federal Circuit's 2018 mandate regarding the PTAB's *inter partes review* decisions as to the 115 and 322 patents, Columbia filed an unopposed Motion to Reopen Proceedings (the "Motion to Reopen"), (ECF No. 179), which the Court granted, (ECF No. 181).  On October 4, 2018, both Parties attended a pretrial conference.  Following that pretrial conference, Columbia sought leave to file for partial summary judgment.  (ECF No. 195.)  The Court granted Columbia's unopposed request, (ECF No. 197), and on October 5, 2018, Columbia filed the Partial Summary Judgment Motion.  Symantec responded and Columbia replied.

## II.  Standard of Review:  Summary Judgment

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial.  *Celotex Corp.*, 477 U.S. at 322–24.  These facts must be presented in the form of exhibits and sworn affidavits.  Fed. R. Civ. P. 56(c).

---

[22] Neither appeal concerned the 643 Patent because in 2014 this Court stayed the case as to Columbia's claims concerning this patent prior to entering partial final judgment.  Each of Columbia's original seventh through eleventh causes of action, which pertain to the 643 Patent, remain.

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24).

### III. Analysis

First, the Court finds that no genuine dispute of material fact exists that precludes summary judgment on the issue of statutory estoppel. As to the merits, the Court concludes that the plain language of 35 U.S.C. § 315(e)(2) unambiguously estops Symantec from asserting as grounds of invalidity those dozens of additional grounds presented in its invalidity contentions which Symantec chose not to raise in its petitions for *inter partes review*. Contrary to Symantec's argument otherwise, the Federal Circuit's decision in *Shaw* does not preclude this result. Rather, the purpose of *inter partes review* and fundamental principles of fairness nearly compel it. For these reasons, the Court will grant the Partial Summary Judgment Motion.

### A.    No Genuine Dispute of Material Fact Exists

Symantec seemingly attempts to preclude summary judgment by arguing that a genuine dispute of material fact exists. Specifically, in a single sentence Symantec asserts, that it "disputes that source code is a 'printed publication,'" such that it could be raised during *inter partes review*. (Resp. Summ. J. Mot. 3.) This one sentence assertion does not create a dispute of

11

material fact that would prevent the Court from granting summary judgment for two reasons: first, it fails to satisfy Local Rule 56(B) or Fourth Circuit precedent; and, even were the Court to consider the merits of this argument, it would likely fail. *See* E.D. Va. Loc. Civ. R. 56(B); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).

First, procedurally, when a party claims the existence of a genuine, material factual dispute, the party must support its claim with evidence from the record. *See* E.D. Va. Loc. Civ. R. 56(B); *Bouchat*, 346 F.3d at 522 (finding that "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing there is a genuine issue for trial.'" (quoting Fed. R. Civ. P. 56(e))); *see Rodriguez v. Fanning*, No. 1:15-cv-1654, 2016 WL 10586250, at *2 (E.D. Va. Nov. 22, 2016). Here, Symantec cites only a prior version of 35 U.S.C. § 102(b) as support for its contention that source code does not constitute a "printed publication." (Resp. Summ. J. Mot. 3.) In accordance with Local Rule of Civil Procedure 56(B) and the Fourth Circuit's holding in *Bouchat*, the Court finds that this single, unsupported sentence does not suffice to raise an issue of disputed material fact. *See* E.D. Va. Loc. Civ. R. 56(B); *Bouchat*, 346 F.3d at 522.

Second, even were the Court to consider this argument, it would likely find that source code could constitute a printed publication. A "printed publication" may include information that "is printed, handwritten, or on microfilm or a magnetic disc or tape, etc." *In re Wyer*, 655 F.2d 221, 227 (C.C.P.A. 1981). If a party seeks to characterize information as a "printed publication" it "should produce sufficient proof of its dissemination or that it has otherwise been available and accessible to persons concerned with the art to which the document relates and thus most likely to avail themselves of its contents." *Id.* (citation omitted). Here, Columbia has

submitted specific evidence to show the public availability of both the DIDUCE and ReVirt source codes. (*See* Guzior Decl.; Reply Summ. J. Mot., Ex. 8 "Hangal Decl.," ECF No. 211-8.) Columbia also asserts that Symantec itself identified the two source codes as prior art in its invalidity contentions. (Reply Summ. J. Mot. 18, ECF No. 211 (citing Guzior Decl. Exs. A-1, A-2, A-5).) Because Symantec proffers no evidence to find otherwise, the Court would likely find that the DIDUCE and ReVirt source codes constitute a printed publication.

For these reasons, no genuine dispute of material fact exists. The Court will enter summary judgment on the issue of statutory estoppel for the reasons stated below.

### B. Applicable Legal Standards Regarding Statutory Estoppel

Three legal concepts guide the Court's analysis: fundamental principles of statutory interpretation, statutory estoppel under 35 U.S.C. § 315(e)(2); and the types of *inter partes review*.

### 1. Fundamental Principles of Statutory Interpretation

The purpose of statutory interpretation is "to try to determine congressional intent." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990). The analysis must "begin, as always, with the language of the statutory text," and "[i]n the absence of a definition from Congress, [the Court] accord[s] words in a statute their ordinary, contemporary, common meaning." *United States v. Midgett*, 198 F.3d 143, 145–46 (4th Cir. 1999) (internal citation and quotation marks omitted); *see also Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993) ("Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979))).

A Court must look to the statute as a whole in determining the meaning of individual words because "the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991); *see also Dole*, 494 U.S. at 35 ("[I]n expounding a statute, we are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." (internal citation and quotation marks omitted)). And courts should read statutes, "where possible[,] as effecting a 'symmetrical and coherent regulatory scheme.'" *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 99 (2006) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). When "the terms of [a] statute are unambiguous on their face, or in light of ordinary principles of statutory interpretation," judicial inquiry normally ends. *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988).

## 2. Section 315(e)(2) Estoppel

The resolution of the Partial Summary Judgment Motion turns on the interpretation of Title 35, Section 315(e)(2), which estops *inter partes review* petitioners who have received a final written decision from asserting in a subsequent civil action grounds of invalidity that it "raised or reasonably could have raised during that *inter partes review*." 35 U.S.C. § 315(e)(2). Specifically, the provision states

> The petitioner in an *inter partes review* of a claim in a patent under this chapter that results in a final written decision under section 318(a) . . . may not assert either in a civil action arising in whole or in part under section 1338 of title 28 : . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes review*.

35 U.S.C. § 315(e)(2). This provision applies to two types of grounds for invalidity: "(1) grounds that a petitioner raises in [her or] his [*inter partes review*] petition, but upon which the PTAB declines to institute review ('non-instituted grounds'); and (2) grounds that a

14

petitioner does not raise in [her or] his petition, but reasonably could have raised ('non-petitioned grounds')." *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4478236, at *2 (E.D. Tex. Sept. 26, 2017) (citing *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15-CV-1067, 2017 WL 3278915, at *4 (N.D. Ill. Aug. 2, 2017)).

### 3. Types of *Inter Partes Review*

*Inter partes review* begins when a party files a petition to institute *inter partes review* before the PTAB. 35 U.S.C. § 311(a). Congress created *inter partes review* "to create a timely, cost-effective alternative to litigation" in order "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." *Milwaukee Elec. Tool Corp.*, 271 F. Supp. 3d at 1027. Prior to 2018, the PTAB had the choice of fully or partially instituting an *inter partes review* after receiving a petition. When the PTAB fully instituted *inter partes review* it considered all grounds of invalidity that the petitioner asserted in its petition for *inter partes review*. Partial institution occurred when the PTAB—not the petitioner—chose to institute *inter partes review* on only *some* of the asserted grounds of invalidity, creating the non-instituted grounds recognized in *Network-1 Techs*, 2017 WL 4478236 at *2. The PTAB seemingly made this decision to expedite the *inter partes review* process, but it raised fairness concerns because it was the Director of the PTAB, not the petitioner, who defined the scope of the *inter partes review*.

In light of the Supreme Court of the United States' decision in *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018), courts will no longer face issues stemming from partial institution. In *SAS Institute*, the Supreme Court found that the regulatory scheme establishing *inter partes review* did not allow for partial institution and struck down the process because "it's the petitioner, not the Director [of the PTAB], who gets to define the contours of the

proceeding." *Id.* at 1354, 1359–60. The PTAB must now institute review on all grounds of invalidity asserted in the requesting party's petition for *inter partes review*, or completely reject the petition. *See id.*

Because PTAB fully instituted *inter partes review* on all of Symantec's asserted claims, (Mem. Supp. Summ. J. Mot. 3), this case involves only the non-petitioned grounds recognized in *Network-1 Techs*, not non-instituted grounds. 2017 WL 4478236 at *2.

### C. The Terms of § 315(e) Plainly Preclude Symantec From Relying on Those Grounds of Invalidity That It Knew Existed and Reasonably Could Have Raised in Its *Inter Partes Review* Petition

Both parties contend that the plain text of the statute supports their position. Columbia's argument centers on the phrase "reasonably could have raised." 35 U.S.C. § 315(e)(2). (Mem. Supp. Summ. J. Mot. 13.) It highlights that Symantec identified dozens of grounds in its invalidity contentions, but plucked out only a few of those grounds to include in its petitions to institute *inter partes review*. Because Symantec previously identified the additional grounds, Columbia contends that Symantec reasonably could have raised those grounds in its petitions to institute *inter partes review*, meaning that § 315(e)(2) estoppel bars Symantec from now raising those additional grounds before this Court.

Symantec contends that Columbia's position "is premised on an overly broad reading of 35 U.S.C. § 315(e)(2) that conflicts with Federal Circuit precedent." (Resp. Summ. J. Mot. 1 (relying on *Shaw Industries Group, Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293 (Fed. Cir. 2016).) Symantec suggests that Columbia's interpretation ignores the phrase "*during* that *inter partes review*," 35 U.S.C. § 315(e)(2) (emphasis added). (*Id.* 3.) According to Symantec, the plain language, coupled with the Federal Circuit's decision in *Shaw*, compel the Court to find that § 315(e)(2) estoppel does not apply to non-petitioned grounds, because estoppel applies only

to those grounds raised or that reasonably could have been raised, after that *particular inter partes review* began. Thus, they say, only those grounds on which the PTAB actually instituted *inter partes review*, could be estopped.

Because the plain language of the statute comports with Columbia's interpretation, because Symantec's interpretation would only apply in a virtually nonexistent situation,[23] and because and Columbia's interpretation does not render any of § 315(e)'s terms meaningless, the Court readily finds that the plain language of § 315(e)(2) bars Symantec from supporting its invalidity affirmative defense with those grounds of invalidity that it knew existed, but chose not to assert, in its petitions for *inter partes review*. The Federal Circuit's decision in *Shaw* does not preclude this result.

> **1.    The Plain Language of 35 U.S.C. § 315(e)(2) Estops Symantec From Supporting Its Affirmative Defense With Non-Petitioned Grounds of Invalidity It Knew Existed and Chose Not to Assert Before the PTAB**

The plain language of § 315(e)(2) unambiguously supports Columbia's interpretation. Section 315(e)(2) states that a party cannot assert as a ground of invalidity "any ground that the petitioner raised or reasonably could have raised during that *inter partes review*." 35 U.S.C. § 315(e)(2). Several courts have defined those grounds that the petitioner "reasonably could have raised," 35 U.S.C. § 315(e)(2), as grounds that "a skilled searcher conducting a diligent search reasonably could have been expected to discover," *Apotex Inc. v. Wyeth LLC*, No.

---

[23] At least two courts, and the PTAB, have recognized that to adopt Symantec's interpretation would render meaningless the phrase "reasonably could have raised" because it would apply only to an odd situation in which "a petitioner raises a ground in a petition, the PTAB institutes [*inter partes review*] on that ground, the petitioner abruptly changes course and fails to pursue that ground before the PTAB post-institution, and then . . . seeks to raise that invalidity ground in federal court." *Oil-Dri Corp. of Am.*, 2017 WL 3278915 at *8; *see Network-1 Techs., Inc.*, 2017 WL 4478236 at *5; *see also Kingston Tech. Co., Inc. v. Spex Techs., Inc.*, No. IPR2018-01002, 7, (P.T.A.B. Nov. 6, 2018). This Court cannot conclude that such a contrived interpretation of the statutory language comports with the "ordinary, contemporary, common meaning" of the words of the statute. *See Midgett*, 198 F.3d at 146.

IPR2015-00873, 6 (P.T.A.B. Sept. 16, 2015) (citing 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Grassley)); *see, e.g., Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2526231, *8 (E.D. Tex. May 11, 2017). No dispute exists that a "skilled searcher conducting a diligent search reasonably could have been expected to discover" the non-petitioned grounds at issue in this case. *Id.* Indeed, no party disputes that Symantec previously identified the grounds of invalidity in its May 12, 2014 invalidity contentions, and merely chose not to assert them in its December 5, 2014 petitions to institute *inter partes review*.

Contrary to Symantec's contention that it does so, this interpretation does not render the phrase "during that *inter partes review*" meaningless when the Court applies the plain meaning to all words in the statute.[24] Specifically, the Supreme Court has stated that an *inter partes review* begins when the petitioner files a petition requesting the PTAB to institute such a review. *SAS Inst.*, 138 S. Ct. at 1355 ("Start where the statute does. In its very first provision, the statute says that a party may seek *inter partes review* by filing 'a petition to institute an *inter partes review*.'" (citing 35 U.S.C. § 311(a))). The Supreme Court also has found that the substance of the petition drives the *inter partes review* proceeding itself. *Id.* (stating that "the statute envisions that a petitioner will seek an *inter partes review* of a particular kind—one guided by a petition describing 'each claim challenged' and 'the grounds on which the challenge to each claim is based.'" (citing 35 U.S.C. § 312(a)(3))). *Inter partes review* is "a process in which it's the petitioner, not the Director [of the PTAB], who gets to define the contours of the proceeding." *Id.* Because the initial petition is an essential part of the *inter partes review* process, the grounds the petitioner asserts in the petition were raised "during that *inter partes*

---

[24] Section 315(e)(2) estops an *inter partes review* petitioner from asserting "that the [patent] claim is invalid on any ground [of invalidity] that the petitioner raised or reasonably could have raised *during that inter partes review*." 35 U.S.C. § 315(e)(2) (emphasis added).

*review*." The Court's interpretation of § 315(e)(2) recognizes this, and does not render the phrase "during that *inter partes review*" meaningless.

For these reasons, the plain language of § 315(e)(2) estops Symantec from relying on those grounds of invalidity that it previously identified in its 2014 invalidity contentions, but that it chose not to assert in its *inter partes review* petitions. The Federal Circuit's interpretation of § 315(e) estoppel in *Shaw* does not preclude this result.

> ### 2. The Federal Circuit's Decision in *Shaw* Does Not Preclude the Court's Interpretation of § 315(e)(2)

The Federal Circuit's decision in *Shaw* has led the United States District Courts to differing interpretations of § 315(e)(2). Specifically, courts disagree on whether the Federal Circuit's holding in *Shaw* applies only to non-instituted grounds, such as those at issue in *Shaw*,[25] or to non-petitioned grounds as well, a situation that *Shaw* did not confront but that is now before this Court. *Compare Oil-Dri Corp. of Am.*, 2017 WL 3278915 at *9 (finding that the estoppel provision in § 315(e)(2) applied to non-petitioned grounds, but did not apply to non-instituted grounds), *with Intellectual Ventures I LLC v. Toshiba Corp.*, 221 F. Supp. 3d 534, 553–54 (D. Del. 2016) (finding that the estoppel provision in § 315(e)(2) did not apply to non-

---

[25] In *Shaw*, the petitioner submitted two separate petitions to the PTAB asking it to institute *inter partes review* on several asserted grounds of invalidity. *Shaw*, 817 F.3d at 1296–97. The PTAB instituted *inter partes review* on some of the grounds of invalidity but denied *inter partes review* on other grounds, *id.*, engaging in the kind of "partial institution" that the Supreme Court now forbids, *SAS Inst.*, 138 S.Ct. at 1354. When the petitioner appealed the PTAB's final decision to the Federal Circuit, the Federal Circuit declined to issue a writ of mandamus forcing the PTAB to institute *inter partes review* on those grounds of invalidity on which it had declined to institute *inter partes review*. *Id.* at 1300. The Federal Circuit's conclusion that § 315(e) would not bar the petitioner from later supporting an invalidity argument with those grounds of invalidity on which the PTAB chose not to institute *inter partes review* results, in part, because the *inter partes review* "does not begin until it is instituted" and it was the *PTAB*, not the petitioner, who chose not to institute *inter partes review* on the non-instituted grounds. *Id.*

petitioned grounds). Neither the Supreme Court nor the Federal Circuit has addressed this question.

The majority of courts to have considered this issue, as well as a sister court in this district, have confined *Shaw* to its procedural posture and concluded that it applies only to non-instituted grounds on which the PTAB did not institute *inter partes review*.[26] *See, e.g., Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15cv21, 2017 WL 2605977 (E.D. Va. June 5, 2017); *Oil-Dri Corp. of Am.*, 2017 WL 3278915 at *7 (collecting cases).

Although Symantec contends that the Federal Circuit's decision in *Shaw* controls, the Court concludes that the unique procedure at issue in *Shaw* materially distinguishes it from this case. In *Shaw*, the PTAB instituted *inter partes review* on only a portion of the grounds of invalidity the petitioner identified in its *inter partes review* petition. *Shaw*, 817 F.3d at 1296–97. The Supreme Court struck down this practice of "partial institution," *SAS Inst.*, 138 S. Ct. at 1354, and the Federal Circuit subsequently found that if the PTAB institutes *inter partes review* it must consider all asserted grounds of invalidity, *Adidas AG v. Nike, Inc.*, 894 F.3d 1256, 1257–58 (Fed. Cir. 2018). Moreover, the PTAB fully instituted *inter partes review* on all grounds of invalidity that Symantec asserted in its *inter partes review* petitions for the 115 Patent and the 322 Patent. For this reason, the Federal Circuit's decision in *Shaw* concerns only a unique procedure, not at issue here, and does not control the outcome of this case. *See, e.g., Cobalt Boats, LLC*, 2017 WL 2605977; *Oil-Dri Corp. of Am.*, 2017 WL 3278915 at *7 (collecting cases).

---

[26] The Court recognizes that a minority of courts have concluded that *Shaw* compels the opposite result. *See, e.g., Koninklijke Philips N.V. v. Wangs All. Corp.*, No. 14-12298-DJC, 2018 WL 283893, at *4 (D. Mass. Jan. 2, 2018); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-cv-05501-SI, 2017 WL 235048, at *3 (N.D. Cal. Jan. 19, 2017). These courts interpret *Shaw* to apply to both non-instituted grounds, like those at issue in *Shaw*, and non-petitioned grounds, like those at issue in the instant case. The Court finds these non-binding cases unpersuasive.

The Court concludes that the plain language of § 315(e)(2) estops Symantec from supporting its invalidity affirmative defense with those dozens of additional grounds of invalidity that it identified in its 2014 invalidity contentions, but later chose not to include in its petitions for *inter partes review*. Given its singular procedural posture, *Shaw* does not require otherwise.

**D.    The Purpose of § 315(e) Estoppel and *Inter Partes Review* Supports a Finding that Estoppel Applies to Non-Petitioned Grounds**

Although the unambiguous language of § 315(e) alone compels the Court's holding, *Morison*, 844 F.2d at 1064, the Court further concludes that the purpose behind § 315(e)(2) estoppel and *inter partes review* provide further support for finding that Symantec cannot support its invalidity affirmative defense with the dozens of grounds of invalidity that it knew existed but chose not to assert in its *inter partes review* petitions.

The Federal Circuit has recognized that Congress created *inter partes review* "to 'establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.'"[27] *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1290–91 (Fed. Cir. 2015) (citation omitted). Interpreting the estoppel provision to not apply to non-petitioned grounds, would allow parties to "pursue two rounds of invalidity arguments as long as they carefully craft their [*inter partes review*] petition."

---

[27] Because the Court finds the plain language of § 315(e)(2) controlling, the Court need not analyze the legislative history fully. Even were the Court to fully consider the legislative history, it would likely find that the legislative history suggests that § 315(e)(2) estoppel applies to non-petitioned grounds.

Columbia points to two statements in the statute's legislative history. First, a statement from Senator Kyl describing the estoppel provision by saying that it "ensure[s] that if an *inter partes review* is instituted while litigation is pending, that review will completely substitute for at least the patents-and-printed-publications portion of the civil litigation." (Mem. Supp. Summ. J. Mot. 15 (quoting 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl)).) Second, a statement from David Kappos, the director of the PTO at the time, who testified that "[t]hose estoppel provisions mean that your patent is largely unchallengeable again by the same party." (*Id.* (quoting *Biscotti*, 2017 WL 2526231 at *4).) Without relying on them, the Court notes that these statements would support a finding that § 315(e)(2) estoppel applies to non-petitioned grounds.

*Cobalt Boats, LLC*, 2017 WL 2605977 at *3. This dual track would improperly "allow

[Symantec] to reap the benefits of the [*inter partes review*] without the downside of meaningful

estoppel." *Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*, No. 13-2071 (KAJ),

2017 WL 1045912, at *12 (D. Del. Feb. 22, 2017). A more "efficient" patent litigation process

flows from giving plain meaning to the words of the statute and interpreting § 315(e)(2) estoppel

to apply to non-petitioned grounds that entities such as Symantec chose to omit. *See MCM*

*Portfolio LLC*, 812 F.3d at 1290–91.

### E. Fundamental Principles of Fairness Compel Estopping Symantec From Asserting the Grounds of Invalidity That It Knew Existed and Reasonably Could Have Raised in Its *Inter Partes Review* Petition

In addition to the plain language of § 315(e)(2) and the purpose of the estoppel provision

and *inter partes review*, fundamental principles of fairness also support a finding that statutory

estoppel applies to non-petitioned grounds. Symantec argues that the Court should not estop it

from raising those grounds set forth in its invalidity contentions, but not raised in its *inter partes*

*review* petitions, because to do so would be "plainly unfair." (Resp. Summ. J. Mot. 2.)

Symantec states that "[b]ecause the body of law interpreting the [*inter partes review*] estoppel

provision was still in its infancy at the time Symantec petitioned for an *inter partes review*,"

Symantec reasonably relied "on the plain text of the statute in deciding what claims and grounds

to include in its petitions." (*Id.* 11.)

But fairness does not preclude the Court's holding—it compels it. A plain reading of

§315(e)(2) coupled with the purpose of *inter partes review*, makes clear that § 315(e)(2) estoppel

applies to non-petitioned grounds. The language of the statute has not changed since December

2014, when Symantec filed its petition for *inter partes review*.[28] Because the Court finds the

---

[28] The fact that courts have only recently begun to conclude that the § 315(e)(2) estoppel applies to non-petitioned grounds has no bearing on the fairness of this decision. Although

language of the statute plain, Symantec cannot reasonably "expect to hold a second-string invalidity case in reserve in case the [*inter partes review*] does not go [Symantec's] way." *Douglas Dynamics, LLC*, 2017 WL 1382556 at *4; *see Oil-Dri Corp. of Am.*, 2017 WL 3278915, at *9 (finding that estopping a party in a situation where it fails to raise a ground of invalidity that it reasonably could have raised "is both fair—as the party could only blame itself—as well as common" (citing *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1365 (Fed. Cir. 2017))).

Indeed, it would be unfair to interpret § 315(e)(2) to allow a petitioner to assert in the subsequent civil litigation those non-petitioned grounds of invalidity put forth in its invalidity contentions but omitted from its *inter partes review* petition, because to do so would allow the petitioner a "second bite at the apple." *See Parallel Networks Licensing*, 2017 WL 1045912 at *12 (stating that to allow a petitioner to later raise non-petitioned grounds in the district court that it "elected not to raise during the [*inter partes review*] would . . . allow it to reap the benefits of the [*inter partes review*] without the downside of meaningful estoppel"); *Cobalt Boats, LLC*, 2017 WL 2605977 at *3 (concluding that interpreting the estoppel provision not to apply to non-petitioned grounds, would allow parties to "pursue two rounds of invalidity arguments as long as they carefully craft their [*inter partes review*] petition."). For these reasons, the principles of fairness further support the Court's holding that § 315(e)(2) estoppel applies to non-petitioned grounds.

---

Symantec may not have had the benefit of case law at the time it filed its petition, it does not create any unfairness because the statutory language clearly placed Symantec on notice that if it did not assert all grounds of invalidity that it "reasonably could have raised," the estoppel provisions would bar their later use in a civil action. *See* 35 U.S.C. § 315(e)(2).

### IV. Conclusion

Because the Court finds the language of the statute plain, the Court concludes that the statutory estoppel provisions in 35 U.S.C. § 315(e)(2) apply to the non-petitioned grounds of invalidity Symantec now seeks to use to support its invalidity affirmative defense before this Court. The legislative purpose of § 315(e) estoppel and *inter partes review*, as well as fundamental principles of fairness bolster this holding and the Federal Circuit's decision in *Shaw* does not preclude it. For these reasons, § 315(e)(2) estoppel bars Symantec from asserting those grounds of invalidity set forth in its 2014 invalidity contentions, but not raised in its *inter partes review* petitions. The Court will grant the Partial Summary Judgment Motion.

An appropriate order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 7/2/2019
Richmond, Virginia