IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>*Plaintiff*<br><br>v.<br><br>NORTONLIFELOCK INC. f/k/a SYMANTEC CORPORATION,<br><br>*Defendant* | Civil Action No. 3:13-cv-00808-JRS<br><br><br>**JURY TRIAL DEMANDED** |

**NORTONLIFELOCK INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ....................................................................................................1

II.  RULE 56 STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................3

    A.  State Law Claims .................................................................................3

    B.  Doctrine of Equivalents .......................................................................5

III.  LEGAL STANDARD..............................................................................................6

IV.  COLUMBIA'S UNJUST ENRICHMENT AND FRAUDULENT CONCEALMENT CLAIMS FAIL TO THE EXTENT THEY ARE BASED ON THE CONFIDENTIALITY OF THE 2006 NICECAP DRAFTS AND PROPOSAL ............................................................................................................7

    A.  Columbia Must Prove That Norton Violated A Confidential Relationship.............7

    B.  The 2006 NICECAP Draft Proposals Were Not Confidential At The Time Of The Alleged Misuse Of Confidential Information.............................................10

        1.  Columbia placed the 2006 NICECAP draft proposals in the public domain when the '191 Application was published at least as early as 2009 ....................................................................10

        2.  The NDA's confidentiality obligations expired in 2009...........................14

V.  COLUMBIA'S CONVERSION CLAIM IS PREEMPTED BY FEDERAL LAW .........15

VI.  PROSECUTION HISTORY ESTOPPEL ..................................................................21

    A.  Application Community Claims ..............................................................24

    B.  "Combined Model" Limitations Of The '322 Patent...........................................26

    C.  "Combined Model" and "Randomization" Limitations Of The '115 Patent.........29

VII.  CONCLUSION....................................................................................................30

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Advanced Display Sys., Inc. v. Kent State Univ.,*
212 F.3d 1272 (Fed. Cir. 2000)..................................................................................... 11

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)........................................................................................................ 6

*Auburn Univ. v. IBM Corp.,*
No. 3:09cv694-WHA, 2009 WL 3757049 (M.D. Ala. Nov. 9, 2009)..................................... 17

*Biagro W. Sales, Inc. v. Grow More, Inc.,*
423 F.3d 1296 (Fed. Cir. 2005)............................................................................ 22, 23, 29

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
489 U.S. 141 (1989)...................................................................................................... 21

*Brown v. Brown,*
No. CV 13-03318 SI, 2013 WL 5947032 (N.D. Cal. Nov. 5, 2013) ..................................... 17

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)........................................................................................................ 6

*Chimie v. PPG Indus., Inc.,*
402 F.3d 1371 (Fed. Cir. 2005).................................................................................... 23

*Cole v. Kimberly-Clark Corp.,*
102 F.3d 524 (Fed. Cir. 1996)....................................................................................... 21

*Consol. Bus Transit, Inc. v. Treiber Grp., LLC,*
97 A.D.3d 778 (N.Y. App. Div. 2012) ............................................................................. 7

*Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.,*
347 F.3d 1314 (Fed. Cir. 2003)..................................................................................... 29

*Duramed Pharms., Inc. v. Paddock Labs., Inc.,*
644 F.3d 1376 (Fed. Cir. 2011)................................................................................. 21, 22

*Ferrell v. Harris Ventures,*
812 F. Supp. 2d 741 (E.D. Va. 2011) .............................................................................. 6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,*
535 U.S. 722 (2002)................................................................................ 2, 22, 23, 25, 28, 29

*Foster v. Pitney Bowes Corp.,*
No. Civ.A. 11-7303, 2013 WL 487196 (E.D. Pa. Feb. 8, 2013) ......................................... 14

ii

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*,
No. 1:11-cv-01273 LJO BAM, 2012 WL 691758 (E.D. Cal. Mar. 2, 2012)..................... 17, 20

*Glynn v. EDO Corp.*,
710 F.3d 209 (4th Cir. 2013) ..................................................................................... 6

*Haines v. City of New York*,
364 N.E.2d 820 (N.Y. 1977).................................................................................... 15

*Harari v. Lee*,
656 F.3d 1331 (Fed. Cir. 2011)................................................................................ 11

*HIF Bio, Inc. v. Yung Shin Pharmaceuticals Industrial Co., Ltd.*,
600 F.3d 1347 (Fed. Cir. 2010)................................................................ 16, 17, 19

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
370 F.3d 1131 (Fed. Cir. 2004)................................................................................ 28

*Hunter Douglas, Inc. v. Harmonic Designs, Inc.*,
153 F.3d 1318 (Fed. Cir. 1998)......................................................................... 8, 15

*Ketcham v. Hall Syndicate*,
236 N.Y.S.2d 206 (N.Y. Sup. Ct. 1962) .................................................................. 15

*Lawson v. Union Cty. Clerk of Court*,
828 F.3d 239 (4th Cir. 2016) ................................................................................... 6

*Lupin Ltd. v. Abbott Labs.*,
491 F. Supp. 2d 563 (E.D. Va. 2007) ..................................................................... 26

*Maxtech Consumer Prods., Ltd. v. Robert Bosch Tool Corp.*,
255 F. Supp. 3d 833 (N.D. Ill. 2017) ............................................................. 13, 14

*Metricolor LLC v. L'Oreal S.A.*,
No. CV 18-364-R, 2018 WL 5099496 (C.D. Cal. Aug. 15, 2018)
*rev'd in part on other grounds*, 2019 WL 5588874 (Fed. Cir. Oct. 30, 2019)........................ 13

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
175 F.3d 1356 (Fed. Cir. 1999).......................................................................... 8, 16

*N5 Techs. LLC v. Capital One N.A.*,
56 F. Supp. 3d 755 (E.D. Va. 2014) ....................................................................... 26

*Navient Solutions, LLC v. Krohn & Moss, Ltd*,
No. 1:17-cv-1178(LMB/TCB), 2018 WL 6790654 (E.D. Va. July 26, 2018) ......................... 7

*Not Dead Yet Mfg. Inc. v. Pride Solutions, LLC*,
265 F. Supp. 3d 811 (N.D. Ill. 2017)...................................................................... 29

*Old Town Canoe Co. v. Confluence Holdings Corp.*,
    448 F.3d 1309 (Fed. Cir. 2006)..................................................................... 28

*OptoLum, Inc. v. Cree, Inc.*,
    244 F. Supp. 3d 1005 (D. Ariz. 2017) ....................................................... 8, 21

*Pazandeh v. Yamaha Corp. of Am.*,
    718 F. App'x 975 (Fed. Cir. 2018) .................................................................. 25

*Ranbaxy Pharms. Inc. v. Apotex, Inc.*,
    350 F.3d 1235 (Fed. Cir. 2003)....................................................................... 29

*Schonfeld v. Thompson*,
    243 A.D.2d 343 (N.Y. App. Div. 1997) .............................................................. 8

*Smith v. Healy*,
    744 F. Supp. 2d 1112 (D. Or. 2010) ................................................................ 21

*Sorias v. Nat'l Cellular USA, Inc.*,
    124 F. Supp. 3d 244 (E.D.N.Y. 2015) .............................................................. 16

*Speedfit LLC v. Woodway USA, Inc.*,
    226 F. Supp. 3d 149 (E.D.N.Y. 2016) ......................................................... 16, 17

*Tavory v. NTP, Inc.*,
    297 F. App'x 976 (Fed. Cir. 2008) ........................................ 8, 15, 16, 19, 20

*Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*,
    637 F.3d 604 (5th Cir. 2011) .......................................................................... 13

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
    411 F.3d 1369 (Fed. Cir. 2005).......................................................................... 8

*Waner v. Ford Motor Co.*,
    331 F.3d 851 (Fed. Cir. 2003)...................................................................... 8, 21

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)........................................................................................... 22

*Wilson v. Corning, Inc.*,
    171 F. Supp. 3d 869 (D. Minn. 2016)............................................................... 14

*X2Y Attenuators, LLC v. Int'l Trade Comm'n*,
    757 F.3d 1358 (Fed. Cir. 2014)........................................................................ 11

## Statutory Authorities

28 U.S.C. § 1338(a) ............................................................................................. 17

iv

35 U.S.C. § 122(b)(2)(A)(iii) ................................................................................................ 12

35 U.S.C. § 122(b)(2)(A) ...................................................................................................... 12

## Rules and Regulations

37 C.F.R. § 1.57(b) (2004) .................................................................................................... 11

37 C.F.R. § 1.57(b) (2007) .................................................................................................... 11

Fed. R. Civ. P. 56(a) ............................................................................................................... 6

## Additional Authorities

*Manual of Patent Examining Procedure at 100-11 col. 2* (Aug. 5, 2006)
    https://www.uspto.gov/web/offices/pac/mpep/old/E8R7_100.pdf. ................................... 12, 13

Pursuant to Federal Rule of Civil Procedure 56, Defendant NortonLifeLock Inc. f/k/a Symantec Corp. ("Norton") respectfully submits this memorandum in support of its Motion for Partial Summary Judgment.  Norton seeks partial summary judgment on the state law claims for fraudulent concealment and unjust enrichment and summary judgment on the state law conversion claim brought by Plaintiff, The Trustees of Columbia University in the City of New York ("Columbia"), in Counts Seven through Nine of the First Amended Complaint.  Dkt. 12 ¶¶ 119-44. Norton also seeks partial summary judgment on certain of Columbia's claims for patent infringement under the doctrine of equivalents.

## I.      INTRODUCTION

Columbia's fraudulent concealment and unjust enrichment claims allege that Norton misused confidential materials to obtain United States Patent No. 8,549,643 (the "'643 patent").  Columbia alleged that Norton and Columbia entered into the Mutual Non-Disclosure Agreement ("NDA") in 2004 and that the parties then exchanged drafts of proposals, as well as final proposals, for a government grant program—the  National Intelligence Community Enterprise Cyber Assurance Program ("NICECAP") in 2006—that were confidential under the NDA.  Columbia also alleged that Norton violated this confidential relationship by misusing these drafts and proposals when filing patent applications in 2010 and 2011 that ultimately matured into the '643 patent.

Columbia's theory fails, however, because the 2006 NICECAP drafts and final proposal were not confidential when Norton filed the patent applications that led to the '643 patent in 2010 and 2011.  Columbia publicly disclosed the 2006 NICECAP drafts when it included them in a patent application and that application was published to the public at least as early as 2009, and the NDA's confidentiality obligations upon which Columbia relies expired in 2009.  Accordingly, none of those materials was confidential when Norton filed the patent applications relating to the '643 patent. Accordingly, the Court should grant partial summary judgment to Norton on any claim for

1

fraudulent concealment and unjust enrichment that relies on the 2006 NICECAP drafts and final proposal being confidential.

The Court should also grant summary judgment on Columbia's state law conversion claim. Under the Supremacy Clause of the United States Constitution, federal law preempts any and all inconsistent state laws. Because federal law governs patents, states cannot regulate patents, nor can courts hear *state* law tort claims that are based on matters governed by *federal* patent law. Columbia's state law conversion claim based on the inventorship of the '643 patent is therefore preempted. Columbia's conversion claim alleges that Norton converted the 2006 NICECAP drafts and proposal and the 2010 DARPA proposal by "fil[ing] and prosecut[ing] a utility patent application" for the '643 patent and "omitt[ing] Professors [Salvatore] Stolfo and [Angelos] Keromytis as inventors[.]" Dkt. 12 ¶ 142. But inventorship is a matter of federal law. Because Columbia cannot succeed on its state law conversion claim without proving that Professors Stolfo and Keromytis are inventors of the '643 patent, the claim is preempted and the Court should grant summary judgment to Norton.

Furthermore, Columbia alleges that Norton infringes claims of U.S. Patent Nos. 8,074,115 (the "'115 patent") and 8,601,322 (the "'322 patent") under the doctrine of equivalents. Columbia's application of the doctrine of equivalents to certain limitations, however, runs afoul of the Supreme Court's decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002). Columbia narrowed the claims of its patents by way of amendment in order to obtain the claims asserted in this case, and, accordingly, Columbia "may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Id*. at 733-34. Norton is entitled to summary judgment with respect to claims of infringement under the doctrine of equivalents with respect to these limitations.

2

## II.    RULE 56 STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    State Law Claims

On November 29, 2004, Norton and Columbia entered into the NDA for the stated purpose of exchanging "Confidential Information" to "facilitat[e] discussions between the parties regarding a possible collaboration." Ex. 1 ("NDA") § 1(c). Specifically, the parties agreed that they would "not disclose any Confidential Information to third parties for five (5) years following the effective date of th[e] Agreement" subject to certain exceptions. *Id.* § 2(a). "Confidential Information" was defined to "mean[] information not generally known to the public, in written, oral, or in any other form . . . that a Party marks as confidential, proprietary, or other such marking," including certain "types of information" specifically enumerated. *Id.* § 1(a). Norton and Columbia also agreed that "Confidential Information shall not include that information that the Receiving Party can establish: (i) is, or has subsequently become, rightfully in the public domain without the Receiving Party's breach of any obligation owed to the Disclosing Party[.]" *Id.* § 1(b).

After discussing a potential submission, on May 14, 2006, Norton and Columbia exchanged a draft proposal listing Mr. Witten and Professors Keromytis and Stolfo as the authors. Ex. 3, COL00149506; Ex. 4, COL00149507-18.

On May 31, 2006, Columbia filed a provisional patent application, U.S. Provisional Patent Application 60/809,898 (the "'898 Application"), that included both drafts of the NICECAP proposals. Ex. 7, COL00016189. Specifically,

3

██████████████████ *Compare* █████████████████████████████████████████ ,

*with* Ex. 7, COL00016189 ('898 Application).  The May 14, 2006 NICECAP draft proposal, minus the "Organizational Capabilities" section (Ex. 4 at COL00149514-515), also was included in Appendix A of '898 Application.  *Compare* Ex. 4, COL00149507 (May 14, 2006 NICECAP draft proposal), *with* Ex. 7 ('898 Application).

█████████████████████████████████████████████████████████████████████████

██████████████████

On December 13, 2007, Columbia's International Application Number PCT/US2007/012811 published as International Publication No. WO 2007/143011.   Ex. 9, COL00015905 (WO 2007/143011).   WO 2007/143011 claims priority to Columbia's '898 Application, which the International Publication "incorporate[s] by reference . . . in its entirety."  *Id*. at -906.  At this time, the '898 Application became publicly available as part of the International Publication, meaning that the May 2006 NICECAP draft proposals contained in the body of the '898 Application and Appendix A also became public.

On September 24, 2009, Columbia's U.S. Patent Application No. 12/302,774 published as U.S. 2009/0241191 (the "'191 Application").  Ex. 10, US 2009/0241191.  The '191 Application claims priority to and incorporates by reference the '898 Application.  *Id.* at [0001].  When the '191 Application was published, the '191 Application and the contents of the '898 Application (incorporated by reference), including May 2006 NICECAP draft proposals (included in the '898 Application) all became "publically available" through the United States Patent and Trademark Office.  Ex. 11, Pub. No. US-2009-0241191-A1. ████████████████████████

█████████████████████████████████████████████████████████████████████████

4

On November 29, 2009, "five (5) years following the [NDA's] effective date," the NDA's confidentiality obligations expired.  Ex. 1, NDA § 2(a).

███████████████████████████████████████████████████████████████

████████████████████████████████████████████  On April 2, 2010, Norton filed a provisional patent application, Provisional Application No. 61/320,609.    Ex. 13 at SYMCOL00264358.  On April 4, 2011, Norton filed a non-provisional patent application, U.S. Patent Application No. 13/066,013, for "INTEGRATING DECOYS AND DATA LOSS PREVENTION" listing Darren Shou as the inventor.  *Id.* at -356.  The application was granted and, on October 1, 2013, the '643 patent issued.  *Id.* at -355.

### B.    Doctrine of Equivalents

During prosecution of the application that resulted in the '115 patent, the Examiner rejected the application over a number of references, including rejecting claim 1 over U.S. Patent No. 7,496,898 ("Vu").  Ex. 14 at COL00146180.  In response, Columbia amended the asserted claims to additionally recite "upon identifying the anomalous function call, notifying an application community that includes a plurality of computers of the anomalous function call."  *Id*. at -164; *see id*. at -165 (same for what was then claim 11); *id*. at -166 (claim 21).  Columbia did so to attempt to distinguish the Vu prior art.  *Id*. at -172.

In prosecuting the application that issued as the '322 patent, Columbia initially submitted claims reciting executing a program, comparing a function call, and identifying the function call as anomalous. Ex. 15 at COL00146459.  The Examiner rejected those claims over Vu, but indicated that "[c]laims 44, 45, 54, & 55 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form."  *Id*. at -419.  Those claims added additional limitations, either "wherein the model is a combined model created from at least two models created using different computers" or "wherein the model is a combined model created from at least two

models created at different times," respectively. *Id*. at -459-460. Columbia then amended claims 43, 53, and 63 into independent form to incorporate the subject matter of claim 45, i.e., "combined model created from at least two models created at different times." *Id*. at -350. Columbia also re-wrote dependent claim 44 into independent form, adding all the limitations of former claim 43. *Id*. Columbia argued that these amendments rendered the claims allowable over the art. *Id*. at -356-357.

The *inter partes* review of the '115 patent resulted in the cancellation of all independent claims (i.e., claims 1, 11, 21, 22, 32, 42), leaving only dependent claims reciting creating "a combined model from at least two models created using different computers" (e.g., claim 2) and randomly selecting a model or portion thereof (e.g., claims 9 and 10). Ex. 16, IPR2015-00375 *Inter Partes* Review Certificate.

## III.    LEGAL STANDARD

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "The relevant inquiry in a summary judgment analysis is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Ferrell v. Harris Ventures*, 812 F. Supp. 2d 741, 744 (E.D. Va. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "Summary judgment must be granted if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Further, "the non-moving party cannot solely rely on 'mere allegations or denials of [his] pleadings.'" *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (alteration in original). "He must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Id.* (quoting *Anderson*, 477 U.S. at 252).

6

### IV.    COLUMBIA'S UNJUST ENRICHMENT AND FRAUDULENT CONCEALMENT CLAIMS FAIL TO THE EXTENT THEY ARE BASED ON THE CONFIDENTIALITY OF THE 2006 NICECAP DRAFTS AND PROPOSAL

The Court should grant partial summary judgment in Norton's favor on Columbia's claims for fraudulent concealment and unjust enrichment to the extent such claims are based on the confidentiality of the 2006 NICECAP drafts and proposal. None of those materials was confidential at the time Norton filed the applications that matured into the '643 patent.[1]

#### A.    Columbia Must Prove That Norton Violated A Confidential Relationship

As the Court recognized in its Order on Norton's motion to dismiss, Columbia's fraudulent concealment and unjust enrichment claims can only succeed if Columbia proves that Norton misused confidential information. Thus, to meet the requirements of New York law[2] and avoid federal preemption, Columbia has alleged that Norton used the 2006 NICECAP drafts and final proposal to file the patent applications for the '643 patent and that those materials were confidential under the NDA between Norton and Columbia. Under New York law, "[a] cause of action to recover damages for fraudulent concealment requires, in addition to scienter, reliance, and damages, a showing that there was a fiduciary or confidential relationship between the parties which would impose a duty upon the defendant to disclose material information and that the defendant failed to do so." *Consol. Bus Transit, Inc. v. Treiber Grp., LLC*, 97 A.D.3d 778, 779 (N.Y. App. Div. 2012) (citations

---

[1]    Columbia's claims fail for additional reasons, but Norton does not move for summary judgment on those grounds.

[2]    "Under Virginia's choice of law rules, the doctrine of *lex loci delecti* applies, and claims are analyzed under the law governing the place of the alleged wrong." Dkt. 67 at 20. "The place of the alleged wrong is where the last act necessary to create the injury occurred." *Id.* (footnote omitted). And, for fraud claims, "a plaintiff's reasonable reliance on a misrepresentation is both the last element of a claim for fraud and also that element which constitutes the plaintiff's injury." *Id.* at 20 n.6. Because Columbia claims to have been injured in New York (Dkt. 12 ¶ 4), New York law applies to Columbia's fraudulent concealment claim. *See Navient Solutions, LLC v. Krohn & Moss, Ltd*, No. 1:17-cv-1178 (LMB/TCB), 2018 WL 6790654, at *8 (E.D. Va. July 26, 2018) (applying law of the state where plaintiffs were headquartered and resided for fraud claim).

omitted). Columbia's fraudulent concealment claim therefore fails if there is "no fiduciary or confidential relationship[]" between Norton and Columbia regarding the materials at issue. *Schonfeld v. Thompson*, 243 A.D.2d 343, 343 (N.Y. App. Div. 1997).

Similarly, Columbia's fraudulent concealment and unjust enrichment claims are preempted because there is no alleged breach of a confidential relationship. "Under the Supremacy Clause, state law that conflicts with federal law is without effect." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005). Thus, "application of a state law tort is preempted if, in holding a defendant liable for the conduct alleged and proved by the plaintiff, there would be conflict with federal patent law." *Hunter Douglas, Inc. v. Harmonic Designs, Inc.*, 153 F.3d 1318, 1321 (Fed. Cir. 1998), *overruled in part on other grounds*, *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). Applying this preemption framework, "whether a confidential relationship exist[s] . . . [is] central to [an] unjust enrichment claim" not being preempted. *Tavory v. NTP, Inc.*, 297 F. App'x 976, 983 (Fed. Cir. 2008). This is so because, unless there is some violation of a confidential relationship, an unjust enrichment claim based on the omission of the alleged "true" inventor is nothing more than a claim to correct inventorship—an issue that is governed exclusively by federal law—and also conflicts with Congress's determination that non-confidential ideas are not entitled to additional protections beyond that created by federal patent law. *See id.* at 983-84; *see also Ultra-Precision Mfg.*, 411 F.3d at 1380-82 (holding unjust enrichment claim preempted because plaintiff "never alleged that it enjoyed a confidential relationship with" the defendant); *Waner v. Ford Motor Co.*, 331 F.3d 851, 856 (Fed. Cir. 2003) ("Absent secrecy, state law cannot create a collateral set of rights unavailable as an adjunct or expansion to patent rights."); *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1015 (D. Ariz. 2017) (dismissing unjust enrichment claim where it

was "clear that [the plaintiff] did not have a confidential . . . relationship with [the defendant] regarding the Filament Tower Technology").

To meet its burden under New York law and avoid federal preemption, Columbia has alleged that the parties "ensure[d] confidentiality" by "enter[ing] into a 'Mutual Non-Disclosure Agreement' dated November 29, 2004[.]" Dkt. 33 at 4. Thus, Columbia's theory of liability is that Norton "exploited its confidential working relationship with Professors Stolfo and Keromytis for the improper purpose of gaining early access to . . . Columbia's research on decoy technology reflected in the 2006 drafts of the NICECAP grant proposals that Columbia disclosed to Symantec in confidence" to obtain the '643 patent. *Id.* at 14-15; *see, e.g.*, Dkt. 12 ¶ 130 (alleging, for fraudulent concealment, that Norton damaged Columbia by preventing Professors Stolfo and Keromytis from being "declared true inventors of the claimed subject matter of the '643 patent"); *id.* ¶ 136 (alleging that Norton has been "unjustly enriched by obtaining the incremental benefit unavailable to the public of securing a patent on decoy technology developed by Columbia and disclosed to Symantec in confidence").[3]

Relying on Columbia's allegations about these materials' confidentiality, the Court held in its motion to dismiss Order that Columbia's claims were not preempted, "[s]pecifically, because a confidential relationship did exist between the Parties, [such that] Columbia has plausibly alleged that Symantec was obligated to disclose beneficial uses of confidential materials[.]" Dkt. 67 at 20;

---

[3] *See also* Dkt. 12 ¶ 31 ("To facilitate these and future discussions without granting reciprocal intellectual property licenses to their respective confidential information, Columbia and Symantec entered into a 'Mutual Non-Disclosure Agreement' dated November 29, 2004[.]"); *id.* ¶ 121 (alleging, for fraudulent concealment, that Norton's "duty of full and complete disclosure arose from . . . the confidential working relationship [Norton] had with Professors Stolfo and Keromytis . . . and the preparation of confidential grant proposals to government agencies relating to . . . decoy technology"); *id.* ¶ 134 (alleging, for unjust enrichment, that "Columbia conferred a benefit on [Norton] by disclosing in confident to [Norton] Columbia's materials and technology . . . reflected in . . . the 2006 drafts of the NICECAP grant proposal").

*see also id.* at 19 (holding that fraudulent concealment claim was not preempted because of "Symantec's alleged duty to refrain from using confidential materials for its . . . benefit"). But as explained below, that is not the case—the NDA had expired and the materials in question were publicly available before the relevant date, namely, the filing of the application that led to the '643 patent.

**B.      The 2006 NICECAP Draft Proposals Were Not Confidential At The Time Of The Alleged Misuse Of Confidential Information**

Columbia's unjust enrichment and fraudulent concealment claims fail to the extent that they are based on the 2006 NICECAP draft proposals being confidential at the time Norton prepared the ████████████████████████████████, filed the provisional application for the '643 patent on April 2, 2010, and filed the non-provisional application for the '643 patent on April 4, 2011. ████████ ████████████████████████; Ex. 13 at SYMCOL00264356. This is so for two reasons: (1) the 2006 NICECAP draft proposals were published in patent applications filed by Columbia and made public no later than September 24, 2009; and (2) the NDA's confidentiality obligations expired on November 29, 2009. Thus, even if Norton used the 2006 NICECAP drafts and proposal for the applications for the '643 patent, Norton did not violate any confidential relationship because those materials were not confidential at the time the applications were prepared and filed in 2010 and 2011.

**1.      Columbia placed the 2006 NICECAP draft proposals in the public domain when the '191 Application was published at least as early as 2009**

The NDA only restricts the parties' disclosure and use of "Confidential Information." Ex. 1, NDA § 2(a) & (b). The NDA expressly defines Confidential Information to "not include that information that the Receiving Party can establish: (i) is, or has subsequently become, rightfully in the public domain without the Receiving Party's breach of any obligation[.]" *Id.* § 1(b). Thus, under

the NDA, materials that are initially Confidential Information are no longer Confidential Information if they "subsequently" come into the public domain as a result of Columbia's public disclosure.

Columbia voluntarily published the 2006 draft NICECAP proposals by incorporating them by reference (as filed as part of the '898 Application) into the '191 Application, which published on September 24, 2009.  Ex. 10, US 2009/0241191.  The '191 Application "claim[ed] the benefit of [the '898 Application]" and "incorporated by reference" the '898 Application "in its entirety."  *Id.* at [0001].  "Incorporation by reference provides a method for integrating material from various documents into a host document . . . by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein."  *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).  The regulations issued by the Patent and Trademark Office ("PTO"), both at the time the '191 Application was filed and at the time the Application was published, allowed Columbia to incorporate the '898 Application in its entirety.  *See* 37 C.F.R. § 1.57(b) (2007) (allowing incorporation by reference so long as the application "[e]xpress[es] a clear intent to incorporate by reference by using the root words 'incorporat(e)' and 'reference' . . . and [c]learly identif[ies] the referenced  . . . application"); 37 C.F.R. § 1.57(b) (2004) (same); *see, e.g.*, *Harari v. Lee*, 656 F.3d 1331, 1335-36 (Fed. Cir. 2011) (holding that patent application "incorporates the entire disclosures of the two applications").  Thus, the '898 Application was "effectively part" of the published '191 Application "as if [it] w[as] explicitly contained therein."  *X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, 1362-63 (Fed. Cir. 2014) (quotation marks and footnote omitted).

The '898 Application, in turn, included all of the substantive portions of both the May 14, 2006 and May 22, 2006 NICECAP draft proposals.  ██████████████████████

████████████████████████████████████████████████████████████████

11

███████████████████████████████████████████████████████████

████████ *Compare* ████████████████████████████████████████, *with* Ex.

7, COL00016189 ('898 Application). And the May 14, 2006 NICECAP draft proposal, minus the

"Organizational Capabilities" section (Ex. 4 at COL00149514-15), was included in Appendix A of

'898 Application. *Compare* Ex. 4, COL00149507 (May 14, 2006 NICECAP draft proposal), *with*

Ex. 7, COL00016189 ('898 Application).

As a result, the publication of the '191 Application placed the 2006 NICECAP draft

proposals squarely in the public domain. Although provisional applications, by themselves, do not

publish to the public, *see* 35 U.S.C. § 122(b)(2)(A)(iii), non-provisional applications do publish

absent the filing of a non-publication request, *id.* § 122(b)(1)(A). Because Columbia did not submit

a non-publication request, the '191 Application was published on September 24, 2009, eighteen

months after it was submitted. Ex. 10, US 2009/0241191. Confirming this, the PTO issued a

"Notice of Publication of Application" on September 24, 2009, stating that the '191 Application

"may be accessed through the USPTO's publically available Searchable Databases via the Internet at

www.uspto.gov." Ex. 11, Pub. No. US-2009-0241191-A1. Further, the PTO's Manual of Patent

Examining Procedure in effect at the time provided that "if a U.S. patent application publication . . .

claims benefit under 35 U.S.C. 119(e). . . to a U.S. patent application," as the '191 Application did

here to the '898 Application, a copy of that priority application (i.e., the '898 Application) is

"available through the public PAIR system if the application is maintained in the IFW system." Ex.

17, Manual of Patent Examining Procedure at 100-11 col. 2 (Aug. 5, 2006),

https://www.uspto.gov/web/offices/pac/mpep/old/E8R7_100.pdf (also noting that such applications

"may be provided upon written request"). The '898 Application was (and still is) available as an

"Image File Wrapper (IFW)." *Id.* at 100-10 col. 1 ("All new applications filed on or after June 30,

12

2003 are stored in this system as an Image File Wrapper (IFW), and the IFW is the official record of the application.").[4] ████████████████████████████████████

████████████████████████████

Through publication of the '191 Application on September 24, 2009, the 2006 NICECAP draft proposals "bec[a]me, rightfully in the public domain without [Norton's] breach of any obligation" (Ex. 1, NDA § 1(b)) and thus were no longer confidential at the time Norton filed the provisional and non-provisional applications for the '643 patent on April 2, 2010 and April 4, 2011 Ex. 13 at SYMCOL00264358.  Interpreting a similar non-disclosure agreement that made any information that "is or becomes generally known or available to the public" non-confidential, the Central District of California held that "the information" in a published patent application "is not 'confidential information' under the NDA because it was already 'generally known or available to the public[.]'" *Metricolor LLC v. L'Oreal S.A.*, No. CV 18-364-R, 2018 WL 5099496, at *5 (C.D. Cal. Aug. 15, 2018), *rev'd in part on other grounds*, 2019 WL 5588874 (Fed. Cir. Oct. 30, 2019) (holding that breach of contract claim failed because plaintiff "fail[ed] to allege that [the defendant] used any confidential information beyond what the '587 Patent application disclosed to the public"). So too here.  Indeed, "[t]here can be no dispute that a published patent application, like a patent, is readily available [to the public]—the United States Patent and Trademark Office and Google both allow free online searching of published patent applications." *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*, 637 F.3d 604, 612 (5th Cir. 2011) (holding, in accordance with "the weight of authority from other jurisdictions," that "a published patent application destroys the secrecy of its contents for trade secret purposes"); *see also Maxtech Consumer Prods., Ltd. v. Robert Bosch Tool*

---

[4]  The public can download the '898 Application through the PTO's Patent Application Information Retrieval web site at https://portal.uspto.gov/pair/PublicPair.

13

*Corp.*, 255 F. Supp. 3d 833, 840 (N.D. Ill. 2017) ("Both applications were published (and thus made publicly available)"); *Wilson v. Corning, Inc.*, 171 F. Supp. 3d 869, 882-83 (D. Minn. 2016) (holding that there "can be no claim for misappropriation for use [of a trade secret] that occurs after publication" of a patent application); *Foster v. Pitney Bowes Corp.*, No. Civ.A. 11-7303, 2013 WL 487196, at *6-7 (E.D. Pa. Feb. 8, 2013) (holding that trade secret claim failed because "[w]hen the patent application was published, it became a matter of public record" and "was available to anyone who reviewed the application"). ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ Because the 2006 NICECAP draft proposals were made public with the publication of the '191 Application in 2009, those materials were not confidential when Norton prepared and filed the applications for the '643 patent in 2010 and 2011, and Norton therefore could not have violated any confidential relationship with Columbia in doing so.

### 2.   The NDA's confidentiality obligations expired in 2009

The 2006 NICECAP drafts and final proposal (submitted in August 2006) were not confidential when Norton filed the application for the '643 patent because the NDA expired two years earlier in 2009. The NDA limited its confidentiality obligations to a period of "five (5) years following the [NDA's] effective date[.]" Ex. 1, NDA § 2(a) ("The Receiving Party shall not disclose any Confidential Information to third parties for five (5) years following the effective date of this Agreement"). Because the NDA's effective date was November 29, 2004 (*id.* at COL00149691), it expired five years later on November 29, 2009.[5]

---

[5]   Columbia may argue that the five-year expiration date does not apply to § 2(b) of the NDA, but the five-year expiration date applies to all of the Restrictions listed in § 2. Further, the NDA is governed by New York law (Ex. 1, NDA § 7(d)), and "it is well settled in New York, that a contract (footnote continued)

14

Norton prepared and filed the provisional and non-provisional applications for the '643 patent well after the NDA expired—on April 2, 2010 and April 4, 2011, respectively. Ex. 13 at SYMCOL00264358. Because the NDA's confidentiality obligations had expired, Norton had no obligation to refrain from disclosing or using the 2006 NICECAP drafts and final proposal. Accordingly, filing the applications for the '643 patent could not have violated any confidential relationship with Columbia.

The Court should therefore grant partial summary judgment to Norton on Columbia's fraudulent concealment and unjust enrichment claims to the extent they rely on the confidentiality of the 2006 NICECAP drafts and final proposal.[6]

## V.   COLUMBIA'S CONVERSION CLAIM IS PREEMPTED BY FEDERAL LAW

Columbia's state law conversion claim is preempted by federal patent law. "Federal Circuit law governs whether federal patent law preempts a state law claim[.]" *Tavory v. NTP, Inc.*, 297 F. App'x 976, 982 (Fed. Cir. 2008). Under Federal Circuit precedent, "[i]f a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." *Hunter Douglas, Inc. v. Harmonic Designs, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled in part on*

---

will not be construed to require perpetual performance where another construction is available." *Ketcham v. Hall Syndicate*, 236 N.Y.S.2d 206, 212 (N.Y. Sup. Ct. 1962) (citations omitted); *see Haines v. City of New York*, 364 N.E.2d 820, 822 (N.Y. 1977) ("[T]he law will not imply that a contract calling for continuing performance is perpetual in duration." (citations omitted)). Failure to apply the five-year expiration date to all of § 2 would therefore contravene New York law by interpreting the NDA to implicitly require perpetual performance of, e.g., § 2(b).

[6]   Columbia has also alleged that Norton misused a 2010 grant proposal to the Defense Advanced Research Projects Agency ("DARPA"). However, that proposal too is not confidential because it was nothing more than a restatement of the 2006 NICECAP drafts and proposal. Nevertheless, Norton does not move for summary judgment on the issue of whether the 2010 DARPA proposal is confidential because it involves disputed issues of material fact.

15

*other grounds*, *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).

Stated differently, "[t]o survive preemption," a plaintiff must set forth evidence of "conduct in violation of state law that is separate and independent from its patent law claim." *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 261-62 (E.D.N.Y. 2015) (quotation marks omitted). "Thus, according to controlling precedent, a state law claim that either seeks 'patent-like' protections not provided by federal patent law, or turns on a determination of inventorship, is preempted by federal patent law." *Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149, 160 (E.D.N.Y. 2016).

The Federal Circuit's opinion in *Tavory v. NTP, Inc.*, 297 F. App'x 976 (Fed. Cir. 2008), is illustrative. In that case, the plaintiff Tavory had collaborated with others while creating a computer program to display emails on pagers. *Id.* at 977-78. The collaborators later filed a patent application for the program but did not list Tavory as an inventor, even though they "appended a copy of code Tavory helped write . . . to the application." *Id.* at 978. Tavory sued for state law unjust enrichment, copyright infringement, and correction of inventorship. *Id.* The district court dismissed the state law unjust enrichment claim as preempted and the Federal Circuit affirmed. *Id.* at 984. The Federal Circuit reasoned that the claim was preempted because "Tavory's entitlement here to a portion of any benefits from [the patents] stems solely from his entitlement to being joined as a co-owner." *Id.* Because "Tavory's status as a co-owner depends entirely on whether he was a co-inventor, the dispositive issue is Tavory's alleged co-inventorship, which is governed exclusively by federal patent law." *Id.* (footnote omitted); *see also id.* at 984 n.8 (observing that Tavory's unjust enrichment claim would not have been preempted if it "did not depend on resolving inventorship or any other issue governed exclusively by federal law").

The Federal Circuit reached the same result in *HIF Bio, Inc. v. Yung Shin Pharmaceuticals Industrial Co., Ltd.*, 600 F.3d 1347 (Fed. Cir. 2010). There, the Court held that the plaintiff's state

16

law slander of title claim was preempted because it was based on the defendants allegedly slandering the plaintiff's title to the patent by not listing him as an inventor on the patent application.[7]  *Id.* at 1355.

Following this precedent, courts regularly dismiss conversion claims that hinge on determining whether the plaintiff is an inventor of a patent.  For example, in *Brown v. Brown*, the plaintiff brought a state law conversion claim alleging "that [the] defendant wrongfully deprived plaintiff of his ownership rights in the sink concept by omitting defendant as an inventor from the sink utility patent application."  No. CV 13-03318 SI, 2013 WL 5947032, at *7 (N.D. Cal. Nov. 5, 2013).  The court held that the claim was preempted "[b]ecause plaintiff's conversion claim is based on his contention that he was improperly omitted as an inventor[.]"  *Id.*

Other courts have held the same.  *See Speedfit*, 226 F. Supp. 3d at 159-60 (holding conversion claim was preempted where plaintiff alleged that the defendant had "wrongfully exercised dominion over the property of Plaintiffs by refusing to name [Plaintiffs] as either inventors or joint inventors"); *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-cv-01273 LJO BAM, 2012 WL 691758, at *7 (E.D. Cal. Mar. 2, 2012) (holding that conversion claim based on "omitting . . . an inventor" was preempted); *see also Auburn Univ. v. IBM Corp.*, No. 3:09cv694-WHA, 2009 WL 3757049, at *2-4 (M.D. Ala. Nov. 9, 2009) (conversion claim preempted where defendant was alleged to have "converted property" from the plaintiff and "wrongfully exercised control inconsistent with [the plaintiff's] ownership by obtaining patents").

---

[7]  By contrast, the court in *HIF Bio* held that patent law was not essential to the plaintiffs' state law conversion claim, for purposes of jurisdiction under 28 U.S.C. § 1338(a), because the plaintiffs had alleged that the defendants' had misappropriated "experiments, pre-publication experimental data, and nonpublic, pre-publication drafts of papers" so "an alternative, non-patent theory exists which entitles plaintiffs to relief."  600 F.3d at 1355.  In other words, patent law was not essential to the conversion claim because that claim (unlike the slander of title claim) had nothing to do with any patent or a determination of inventorship.

Here, Columbia's conversion claim is based solely on Norton allegedly converting the 2006 NICECAP drafts and proposal and the 2010 DARPA proposal by obtaining the '643 patent without listing Professors Stolfo and Keromytis as inventors. As pleaded in the First Amended Complaint, Columbia's conversion claim is based on the theory that Norton used "the 2006 drafts of the NICECAP grant proposal, for unauthorized purposes . . . by, among other things, filing and prosecuting a utility patent application on that technology which matured into the '643 patent." Dkt. 12 ¶ 141. Columbia's claim is thus based on the premise that Professors Stolfo and Keromytis are the true inventors of the '643 patent.[8] *See, e.g., id.* ¶ 142 (alleging that "[Norton] failed to disclose and deliberately concealed from Columbia that Symantec filed and prosecuted a utility patent application" and "*omitted Professors Stolfo and Keromytis as inventors and instead included a Symantec employee as the sole named inventor*" (emphasis added)). Indeed, Columbia has characterized its conversion claim as being based on Norton's alleged "wrongful exercise of dominion over tangible materials, including the 2006 drafts of the NICECAP grant proposal" and "exclud[ing] Columbia from using its own intellectual property *by secretly filing a patent application that named a single Symantec employee as the inventor and intentionally excluded the true inventors from Columbia.*" Dkt. 33 at 28 (emphasis added). Columbia has also brought claims seeking to correct the inventorship for the '643 patent and to add Professors Stolfo and Keromytis as joint inventors. Dkt. 12 ¶¶ 145-49, 150-54.

---

[8]    *See also* Dkt. 12 ¶ 2 (alleging that Columbia "provided drafts of grant proposals" and that Norton "proceeded to file its own patent applications on Columbia's technology without listing the Columbia researchers as inventors"); *id.* ¶ 3 (explaining that Columbia did not discover Norton's alleged "misconduct" until "the PTO issued [the '643 patent]"); *id.* ¶ 30 ("After Columbia disclosed its decoy technology to Symantec in confidence, Symantec adopted Columbia's work as its own by filing patent applications based on the materials Symantec received from Columbia and naming only Symantec's own employees as inventors. Symantec's patent filings eliminated any mention of the true innovators and inventors (*i.e.*, Professors Stolfo and Keromytis)."); *id.* ¶ 122 ("Professors Stolfo and Keromytis are [the] true inventors of the inventions claimed in the '643 patent[.]").

18

Columbia's claimed damages also establish that its conversion claim is based on a determination of inventorship, because Columbia is seeking damages based on the alleged value of the '643 patent. Columbia's damages expert, Ryan Sullivan, opined in his expert report that ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████ Because Columbia has no right to the '643 patent unless Professors Stolfo and Keromytis are the inventors, Columbia's claimed damages confirm that its conversion claim rests upon determining inventorship for the '643 patent.

Columbia's conversion claim is therefore preempted because, like the state law claims in *Tavory* and *HIF Bio*, Columbia's "sole theory requires a determination of who invented" the '643 patent. *HIF Bio*, 600 F.3d at 1355. Determining inventorship is a necessary ingredient in Columbia's conversion claim because Norton cannot have acted wrongfully or in an unauthorized manner when it obtained the '643 patent unless Professors Stolfo and Keromytis should have been listed as inventors. *See* Dkt. 67 at 21 (listing "exercis[ing] an unauthorized dominion" and "wrongful exercise or assumption of authority" as elements of conversion under New York and Virginia law, respectively).

The Court's Order on the motion to dismiss compels this conclusion.  In the Order, the Court held that Columbia's conversion claim was not preempted only because the Court could "reasonably infer that the 2006 NICECAP grant proposal drafts were . . . employed by [Norton] for ***other beneficial uses not related to obtaining a patent***."  Dkt. 67 at 22 (emphasis added); *see also id.* ("[T]he Court may reasonabl[y] infer from the facts alleged in the [First Amendment Complaint] that [Norton] utilized the 2006 NICECAP grant proposal drafts for some benefit beyond obtaining the '643 Patent.").  The Court's conclusion was based on the allegation in the First Amended Complaint that Columbia had used the proposal drafts to "gain[] a head start in the development of products and services incorporating, based on, or derived from Columbia's decoy technology."  Dkt. 12 ¶ 141. Thus, the Court held that, "to the extent that Columbia asserts a claim for conversion that is not 'dependent on a determination of patent inventorship or ownership,' it has asserted a claim for conversion that is not preempted by the federal patent laws."  Dkt. 67 at 22 (quoting *Gerawan Farming*, 2012 WL 691758, at *7).  But, now that discovery has been completed, there are no facts whatsoever that show Norton used the NICECAP and DARPA drafts and proposals to develop "any particular product . . . based on the disputed technology," *id.*, or that they were used by Norton in any other way.[9]  And, as explained above, Columbia does not claim any damages from Norton's alleged conversion aside from the value of Professors Stolfo and Keromytis being inventors of the '643 patent.  Accordingly, as the Court recognized in its Order on the motion to dismiss, Columbia's conversion claim is therefore preempted because it is "dependent on a determination of patent inventorship" of the '643 patent.  *See id.* (quoting *Gerawan Farming*, 2012 WL 691758, at *7); *see also Tavory*, 297 F. App'x at 982-84 (dismissing state law claim as preempted where lawsuit "only

---

[9]    Norton disputes that it used the NICECAP or DARPA proposals in any way to obtain the '643 patent.  Nevertheless, Norton acknowledges that this is a disputed issue of fact and cannot be resolved on summary judgment.

concern[ed] [the defendant's] activities regarding the patents-in-suit" and there were no "other uses of" the invention by the defendant).

Independently, if the Court holds that any of the 2006 NICECAP drafts or proposals were not confidential when Norton filed the applications that matured into the '643 patent, the Court should grant partial summary judgment to Norton because any state law conversion claim based on the use of non-confidential material to obtain a patent is preempted. "[T]he federal patent laws must determine not only what is protected, but also what is free for all to use." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151 (1989). "Absent secrecy, state law cannot create a collateral set of rights available as an adjunct or expansion to patent rights." *Waner v. Ford Motor Co.*, 331 F.3d 851, 856 (Fed. Cir. 2003). Therefore any state law tort claim based on the alleged misuse of information in the public domain is preempted. *See id.* at 857 (affirming grant of partial summary judgment on unjust enrichment claim where allegedly misappropriated invention "was introduced to and available to the public"); *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1015 (D. Ariz. 2017) (dismissing unjust enrichment claim as preempted because "federal patent law preempts state law unjust enrichment claims seeking to recover damages for use of public domain information"); *Smith v. Healy*, 744 F. Supp. 2d 1112, 1123 (D. Or. 2010) (holding that implied-in-fact contract was "preempted by patent law" because the plaintiffs' alleged invention "was publicly disclosed by Plaintiffs").

## VI.    PROSECUTION HISTORY ESTOPPEL

Infringement allegations may be for "literal" infringement or infringement under the doctrine of equivalents. Literal infringement exists when every limitation recited in the claim is found in the accused device. *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996). Infringement under the doctrine of equivalents may be found if "there is equivalence between the elements of the accused product . . . and the claimed elements of the patented invention." *Duramed Pharms., Inc. v.*

*Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) (quotation marks omitted).  Infringement under the doctrine of equivalents is a question of fact, but summary judgment is proper "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent[.]"  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n. 8 (1997).

The Supreme Court's decision in *Festo* placed significant limits on the application of doctrine of equivalents, holding:

> When . . . the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent.  On the contrary, by the amendment the patentee recognized and emphasized the difference between the two phrases, and the difference which the patentee thus disclaimed must be regarded as material.

535 U.S. at 733-34 (quotation marks and alterations omitted).  That is, by making an amendment to a claim to avoid prior art, a patentee presumptively is barred from asserting infringement under the doctrine of equivalents as to the subject matter of that amendment.

The Supreme Court explained the basis for this as follows:

> Where the original application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question.  The doctrine of equivalents is premised on language's inability to capture the essence of innovation, but a prior application describing the precise element at issue undercuts that premise.  In that instance the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter.

*Id*. at 734-35.

For example, in one such case, a patent originally recited a fertilizer including a "phosphorous-containing acid or salt thereof[.]"  *Biagro W. Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1299 (Fed. Cir. 2005).  During reexamination proceedings after the grant of the patent, the claims were amended to recite that the "phosphorous-containing acid or salt thereof" be present at

22

"about 30 to about 40 weight percent" in order to distinguish prior art. *Id*. In subsequent litigation, the patentee accused of infringement, under the doctrine of equivalents, fertilizer with a concentration of 59-62%, "well outside the claimed range and thus not literally infringing[.]" *Id*. at 1300. The Federal Circuit held that "the narrowing amendment was made for a reason substantially related to patentability" and that, therefore, the patentee had "presumptively surrendered any equivalents with respect to the amount of phosphorous-containing acid or salt present in the fertilizer." *Id*. at 1306.

The patentee can only overcome this presumption by showing that "[t]he equivalent may have been unforeseeable at the time of the application; the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Festo*, 535 U.S. at 740-41. The patentee bears the "burden of showing that the amendment does not surrender the particular equivalent in question." *Id*. at 740.

"Application of prosecution history estoppel to limit the doctrine of equivalents presents a question of law[.]" *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005).

Here, Columbia has made narrowing amendments as to the claim limitations for which Norton is seeking partial summary judgment. Specifically, Columbia amended claims of the '115 patent to recite the "application community" limitation, amended the claims of the '322 patent to recite the "combined model" limitations, and successfully argued that the dependent claims of the '115 patent reciting a "combined model" and randomization limitations rendered those claims allowable over the art, while the independent claims from which they depended were canceled.

Columbia's infringement expert makes no attempt to rebut the *Festo* presumption. Indeed,

23

███████████████████████████████████████████████ NortonLifeLock is

entitled to partial summary judgment that Columbia cannot pursue equivalents to the limitations in

question.

### A.    "Application Community" Claims

During prosecution of the '115 patent, the Examiner rejected the application over a number

of references, including rejecting claim 1 over Vu (U.S. Patent No. 7,496,898).    Ex. 14 at

COL00146180.  In response, Columbia amended the asserted claims to additionally recite the phrase

"upon identifying the anomalous function call, notifying an application community that includes a

plurality of computers of the anomalous function call":

**Listing of Claims:**

1.    (Currently Amended)  A method for detecting anomalous program executions, comprising:

executing at least a part of a program in an emulator;

comparing a function call made in the emulator to a model of function calls for the at least a part of the program; [[and]]

identifying the function call as anomalous based on the comparison; and

upon identifying the anomalous function call, notifying an application community that includes a plurality of computers of the anomalous function call.

*Id.* at -164; *see id.* at -165 (same for what was then claim 11); *id.* at -166 (claim 21).  Columbia then

argued that this amendment distinguished the claims from the prior art, namely Vu:

In addition, applicants would like to point out to the Examiner that independent claims 1, 11, and 21 have been amended to recite the feature of "notifying an application community that includes a plurality of computers of the anomalous function call." As described in applicants' specification, "the application community member that detects or predicts the fault may not notify the other application community members. Other application members that have succumbed to the fault may be restarted with the protection mechanisms or fixes generated by the application member that detected the fault." (Applicants' specification, paragraph [0096].) Applicants respectfully submit that Vu does not show or suggest notifying an application community of the anomalous function call.  At most, Vu mentions

24

> providing an error message that includes information about the failure mode. (See, e.g., Vu, column 2, lines 37-42.)

*Id.* at -172.

The Examiner allowed the application following this amendment based at least in part on the added "notifying an application community" limitation. *Id.* at -098.

In view of this amendment, "the [C]ourt should presume that the patentee surrendered all subject matter between the broader and the narrower language." *Festo*, 535 U.S. at 740. That is, the Court should presume that the patentee surrendered all subject matter between the broader language (i.e., the claim language without the "application community" limitation) and the narrower language (i.e., the claim language with the "application community" limitation), including all equivalents to the "application community" limitation. Columbia's infringement expert, Dr. Bailey,



_____

10

11

"[E]ntirely conclusory" testimony from an expert is "insufficient to demonstrate that there is a genuine dispute of material fact as to infringement under the doctrine of equivalents." *Pazandeh v. Yamaha Corp. of Am.*, 718 F. App'x 975, 979-80 (Fed. Cir. 2018). Thus, "a finding that the differences between two systems are insubstantial requires particularized testimony and linking argument explaining how and why the differences are insubstantial; conclusory statements or evidence submitted for other purposes will not suffice." *N5 Techs. LLC v. Capital One N.A.*, 56 F. (footnote continued)

As a result, Norton is entitled to summary judgment of on Columbia's claims of infringement under the doctrine of equivalents relating to the "application community" limitation contained in asserted claims of the '115 patent.

### B.    "Combined Model" Limitations Of The '322 Patent

In prosecuting the application that issued as the '322 patent, Columbia initially submitted claims reciting executing a program, comparing a function call to a model, and identifying the function call as anomalous:

> 43.    (New) A method for detecting anomalous program executions, the method comprising:
>
> > executing at least a portion of a program in an emulator;
> > comparing a function call made in the emulator to a model of function calls for the at least a portion of the program; and
> > identifying the function call as anomalous based on the comparison.

Ex. 15 at COL00146459.

The Examiner rejected those claims over the Vu prior art, but indicated that "[c]laims 44, 45, 54, & 55 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form."  *Id*. at -419.  Those claims added additional limitations, either "wherein the model is a combined model created from at least two models created using different computers" or "wherein the model is a combined model created from at least two models created at different times," respectively.  *Id*. at -459.

---

Supp. 3d 755, 763-64 (E.D. Va. 2014); *see also Lupin Ltd. v. Abbott Labs.*, 491 F. Supp. 2d 563, 569 (E.D. Va. 2007) (holding that doctrine of equivalents analysis was insufficient where expert did "not conduct an element-by-element analysis").

Columbia then amended claims 43, 53, and 63 into independent form to incorporate the subject matter of claim 45, "combined model created from at least two models created at different times":

43. (Currently Amended) A method for detecting anomalous program executions, comprising:

executing at least a portion of a program in an emulator;

comparing a function call made in the emulator to a model of function calls for the at least a portion of the program, wherein the model is a combined model created from at least two models created at different times; and

identifying the function call as anomalous based on the comparison.

*Id*. at -350. Columbia also re-wrote dependent claims 44 and 54 into independent form, adding all the limitations of former claim 43 to it:

44. (Currently Amended) ~~The method of claim 43,~~ A method for detecting anomalous program executions, comprising:

executing at least a portion of a program in an emulator;

comparing a function call made in the emulator to a model of function calls for the at least a portion of the program, wherein the model is a combined model created from at least two models created using different computers; and

identifying the function call as anomalous based on the comparison.

*Id*. Columbia then argued that these amendments rendered the claims allowable over the art:

Applicants respectfully disagree with the contentions made by the Examiner in the Office Action in connection with these rejections. However, to facilitate allowance, applicants have amended independent claims 43 to incorporate dependent claim 45 and independent claim 53 to incorporate dependent claim 55, which the Examiner indicated to be allowable. Similarly, applicants have amended independent claim 63 to incorporate similar features of allowable claims[.]

Applicants wish to thank the Examiner for indicating that dependent claims 44 and 54 contain allowable subject matter and would be allowable if rewritten in independent form including all of the limitations of the based claim and any intervening claim. Applicants have amended dependent claims 44 and 54 to include the limitations of independent based claims 43 and 53. Applicants have also added

27

new system claim 71 that includes similar features contained in amended independent claims 44 and 54.

*Id*. at -357-58.

These are both amendments that trigger the *Festo* presumption as to the "combined model" limitations. A court "should presume that the patentee surrendered all subject matter between the broader and the narrower language," i.e., between the rejected claim 43, and the amended claim 43 and 44 that were allowed. *Festo*, 535 U.S. at 740. The amendment of claim 43 to recite the "different times" limitation is plainly an amendment for purposes of patentability giving rise to a *Festo* presumption. *Id.* With respect to claim 44, later cases confirmed that re-writing a dependent claim into independent form, as in the case of claim 44, likewise gives rise to the *Festo* presumption when the original (broader) independent claim is no longer pursued. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1134 (Fed. Cir. 2004) (en banc) ("hold[ing] that the rewriting of dependent claims into independent form coupled with the cancellation of the original independent claims creates a presumption of prosecution history estoppel"). These amendments create an estoppel as to all other instances of these "combined model" limitations in the '322 patent. *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1314-15 (Fed. Cir. 2006).

In view of this amendment, "the [C]ourt should presume that the patentee surrendered all subject matter between the broader and the narrower language." *Festo*, 535 U.S. at 740. ██████████

███████████████████████████████

█████████████

As a result, NortonLifeLock is entitled to summary judgment on Columbia's doctrine of equivalents allegations relating to the "combined model" limitations contained in all asserted claims of the '322 patent.

### C.    "Combined Model" and "Randomization" Limitations Of The '115 Patent

Amendments in post-grant proceedings, like reexamination and *inter partes* review, can also give rise to an estoppel. *See Biagro*, 423 F.3d at 1299, 1305-06 (estoppel based on amendment in reexamination). For instance, *Festo* itself related to an amendment in reexamination. *Festo*, 535 U.S. at 728. Courts have similarly extended prosecution history estoppel to *inter partes* review proceedings. *Not Dead Yet Mfg. Inc. v. Pride Solutions, LLC*, 265 F. Supp. 3d 811, 830-31 (N.D. Ill. 2017).

The *inter partes* review of the '115 patent resulted in the cancellation of all independent claims (i.e., claims 1, 11, 21, 22, 32, and 42), leaving only dependent claims reciting creating "a combined model from at least two models created using different computers" (e.g., claim 2) and randomly selecting a model or portion thereof (e.g., claims 9 and 10). Ex. 16, IPR2015-00375 *Inter Partes* Review Certificate. This result was based on patentability arguments over prior art made by Columbia. Ex. 22, IPR2015-00375 Final Written Decision at 34 (recounting Columbia arguments regarding "combined model from at least two models created using different computers"); *id.* at 32 (recounting Columbia arguments regarding the "randomization" claims).

Cancellation of an independent claim and pursuing only the subject matter of the dependent claim gives rise to the *Festo* presumption. *Ranbaxy Pharms. Inc. v. Apotex, Inc.,* 350 F.3d 1235, 1240-41 (Fed. Cir. 2003); *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.,* 347 F.3d 1314, 1325-26 (Fed. Cir. 2003).

Columbia's infringement expert, Dr. Bailey,

29

As a result, NortonLifeLock is entitled to summary judgment of on Columbia's doctrine of equivalents allegations relating to the "combined model" and randomization limitations contained in all asserted claims of the '115 patent.

## VII.    CONCLUSION

For the foregoing reasons, Norton respectfully submits that the Court should: (1) grant partial summary judgment in favor of Norton on Columbia's claims for fraudulent concealment and unjust enrichment to the extent they rely on the 2006 NICECAP drafts and proposal being confidential; (2) grant summary judgment in favor of Norton on Columbia's state law conversion claim because it is preempted by federal patent law; and (3) grant partial summary judgement in favor of Norton on certain of Columbia's doctrine of equivalents allegations.

DATED:  January 23, 2020                    NORTONLIFELOCK INC.


_____
                                            */s/ Dabney J. Carr, IV*

                                            Dabney J. Carr, IV, VSB #28679
                                            TROUTMAN SANDERS LLP
                                            P. O. Box 1122
                                            Richmond, Virginia 23218-1122
                                            Telephone: (804) 697-1200
                                            Facsimile: (804) 697-1339
                                            dabney.carr@troutmansanders.com

                                            David A. Nelson (*pro hac vice*)
                                            davenelson@quinnemanuel.com
                                            Stephen A. Swedlow (*pro hac vice*)
                                            stephenswedlow@quinnemanuel.com
                                            Nathan Hamstra
                                            nathanhamstra@quinnemanuel.com (*pro hac vice*)
                                            191 N. Wacker Drive, Suite 2700
                                            Chicago, Illinois 60606
                                            Telephone: (312) 705-7400
                                            Facsimile: (312) 705-7401
                                            QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP

30

Derek L. Shaffer (*pro hac vice*)
derekshaffer@quinnemanuel.com
777 6th Street NW, 11th floor
Washington, D.C. 20001-3706
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

ATTORNEYS FOR DEFENDANT
NORTONLIFELOCK INC.

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2020, I electronically filed the foregoing pleading

with the Clerk of Court using the CM/ECF system, which then will send automatic notification

of such filing (NEF) to the following:

Dana D. McDaniel (VSB No. 25419)
dmcdaniel@spottsfain.com
John M. Erbach (VSB No. 76695)
jerbach@spottsfain.com
Spotts Fain, P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Phone: (804) 697-2065
Fax: (804) 697-2165

Garrard R. Beeney (*pro hac vice*)
beeneyg@sullcrom.com
Stephen J. Elliott (*pro hac vice*)
elliotts@sullcrom.com
W. Rudolph Kleysteuber (*pro hac vice*)
kleysteuberr@sullcrom.com
Dustin F. Guzior (*pro hac vice*)
guziord@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Phone: (212) 558-4000
Fax: (212) 558-3588

**Counsel for The Trustees of Columbia University**
**In the City of New York**

/s/  Dabney J. Carr, IV
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
*Counsel for Defendant NortonLifeLock Inc.*