IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, | Civil Action No. 3:13-cv-00808-JRS |
| *Plaintiff* | **JURY TRIAL DEMANDED** |
| v. | |
| NORTONLIFELOCK INC. f/k/a SYMANTEC CORPORATION, | |
| *Defendant* | |

**NORTONLIFELOCK INC.'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS OF COLUMBIA'S EXPERTS DR. ERIC COLE AND DR. RYAN SULLIVAN AND EXCLUDE THEIR TESTIMONY AT TRIAL REGARDING THE SAME**

**TABLE OF CONTENTS**

**Page**

I.      BACKGROUND ........................................................................................1

II.     LEGAL STANDARD................................................................................4

III.    THE COURT SHOULD STRIKE AND EXCLUDE CERTAIN OPINIONS OF
        DR. COLE AND DR. SULLIVAN .............................................................5

        A.      Columbia's Experts' Opinions Should Be Struck And Excluded Because
                They Fail To Properly Apportion Damages..............................................5

                1.      Columbia's experts do not account for the conventional elements
                        of SONAR/BASH .................................................................5

                2.      Columbia's apportionment is unreliable speculation................................11

        B.      Dr. Sullivan's Damages Opinions On Foreign Sales Should Be Struck And
                Excluded Because Columbia Cannot Claim Damages For Alleged
                Infringement Abroad ........................................................................13

        C.      Columbia's Experts Fail to Properly Apportion Based on the SSPPU and
                Instead Offer Speculative Apportionment for the Premium Norton
                Products........................................................................................18

        D.      Dr. Sullivan's Testimony Regarding Columbia's Damages For State Law
                Claims Should Be Struck And Excluded As Unreliable And Irrelevant ..............21

                1.      Dr. Sullivan's opinions on the state law claims.......................................21

                2.      Dr. Sullivan's opinions and testimony relying on ██████
                        ███████████████ are unreliable and irrelevant .................................23

                3.      Dr. Sullivan's opinions lack any factual support and are unreliable ........28

IV.     CONCLUSION......................................................................................30

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ...................................................................... 9

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015) .......................................................... 5, 8, 10

*Blue Spike, LLC v. Huawei Techs. Co., Ltd.*,
   No. 6:13-cv-679, 2016 WL 9286102 (E.D. Tex. Oct. 14, 2016) ........................... 13

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015) ................................................................ 14, 17

*ePlus, Inc. v. Lawson Software, Inc.*,
   700 F.3d 509 (Fed. Cir. 2012) ........................................................................ 4

*ePlus, Inc. v. Lawson Software, Inc.*,
   764 F. Supp. 2d 807 (E.D. Va. 2011) ........................................................ 13, 21

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
   879 F.3d 1332 (Fed. Cir. 2018) ............................................................. *passim*

*Fiskars, Inc. v. Hunt Mfg. Co.*,
   279 F.3d 1378 (Fed. Cir. 2002) ...................................................................... 4

*FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*,
   No. 15-cv-1879, 2016 WL 6522808 (S.D. Cal. Nov. 3, 2016).............................. 14

*Gen. Elec. v. Joiner*,
   522 U.S. 136 (1997).................................................................................... 28

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   769 F.3d 1371 (Fed. Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 1923 (2016)................. 16

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51, 69 (Fed. Cir. 2012) ................................................................. 13

*M2M Sols. LLC v. Motorola Sols., Inc.*,
   No. 12-33-RGA, 2016 WL 70814 (D. Del. Jan. 6, 2016)........................... 14, 16, 18

*M2M Sols. LLC v. Motorola Sols., Inc.*,
   No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016)................................. 26

*Md. Cas. Co. v. Therm-O-Disc, Inc.*,
  137 F.3d 780 (4th Cir. 1998) .................................................................................. 5

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) .............................................................................................. 15

*Nease v. Ford Motor Co.*,
  848 F.3d 219 (4th Cir. 2017) ...................................................................... 4, 21, 28

*Oglesby v. Gen. Motors Corp.*,
  190 F.3d 244 (4th Cir. 1999) ............................................................................. 4, 5

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 29

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  904 F.3d 965 (Fed. Cir. 2018) .............................................................................. 19

*Rembrandt Social Media, LP v. Facebook, Inc.*,
  No. 1:13-cv-158, 2014 WL 10190151 (E.D. Va. May 6, 2014) ............................. 6

*Small v. WellDyne, Inc.*,
  927 F.3d 169 (4th Cir. 2019) ................................................................................. 4

*Speedfit LLC v. Woodway USA, Inc.*,
  No. 13-CV-1276, 2019 WL 1436306 (E.D.N.Y. Mar. 29, 2019)........................... 13

*Suffolk Techs. LLC v. Aol Inc.*,
  No. 1:12-cv-625, 2013 WL 12156056 (E.D. Va. Apr. 12, 2013)............... 11, 21, 25

*Symantec Corp. v. The Trs. of Columbia Univ. in N.Y.*,
  No. IPR2015-00375, 2016 WL 3574961 (P.T.A.B. June 30, 2016)........................ 9

*Tex. Advanced Optoelectronic Sols., Inc. v. Intersil Corp.*,
  No. 4:08-CV-451, 2015 WL 602284 (E.D. Tex. Feb. 11, 2015)............................ 18

*Trell v. Marlee Elecs. Corp.*,
  912 F.2d 1443 (Fed. Cir. 1990) ............................................................................ 26

*Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*,
  29 F.3d 137 (4th Cir. 1994) ............................................................................ 20, 21

*Virnetx, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ..................................................................... 1, 6, 19

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) .............................................................................. 9

*Ziptronix, Inc. v. Omnivision Techs., Inc.*,
   71 F. Supp. 3d 1090 (N.D. Cal. 2014) ..................................................................... 16

**Statutory Authorities**

35 U.S.C. § 271(a) ......................................................................................................... 14

35 U.S.C. § 284 ......................................................................................................... 5, 19

**Rules and Regulations**

Fed. R. Civ. P. 26 ......................................................................................................... 24

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................................... 25

Fed. R. Evid. 702 ............................................................................................. 4, 21, 22, 24

Defendant NortonLifeLock Inc. ("Norton") f/k/a Symantec Corp. respectfully submits this memorandum in support of its Motion to Strike Portions of the Expert Reports of Plaintiff, The Trustees of Columbia University in the City of New York's ("Columbia") Experts Dr. Eric Cole and Dr. Ryan Sullivan and to Exclude Their Testimony at Trial Regarding the Same.

## I.      BACKGROUND

Columbia has brought claims against Norton seeking damages for Norton's alleged infringement of U.S. Patent Nos. 8,074,115 (the "'115 patent") and 8,601,322 (the "'322 patent") and for various state law claims based on Norton's alleged misappropriation of Columbia's technology.  For the patent infringement claims, Columbia asserts that Norton's SONAR/BASH malware detection engine, which is incorporated into various Norton security software products (the "Accused Products"), infringes both patents.  Because the Accused Products and SONAR/BASH itself are multi-component products (*i.e.*, they "contain[] several non-infringing features with no relation to the patented feature," *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014)), Columbia may only obtain damages for revenues attributable to the allegedly infringing elements of SONAR/BASH.

To attempt to satisfy this requirement, Dr. Sullivan ███████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████.

For the third step, Dr. Sullivan relied on another Columbia expert—Dr. Eric Cole—to

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████ Dr. Cole also fails to offer any

explanation for how he determined that at least ███ of SONAR/BASH's value was attributable to

Columbia's patents.  In sum, Dr. Cole is attempting to calculate, not the very incremental

improvement of the claimed invention over prior approaches, but rather a value including Norton's

use of conventional elements that can be used without infringing the asserted claims.  Thus, Dr.

Cole's technical apportionment opinion must be excluded, and Dr. Sullivan's damages opinion ████

█████████ must be excluded as well, because both opinions fail to properly apportion Columbia's

damages to only the revenues allegedly attributable to the '115 and '322 patents.

Under the same principle, Dr. Cole's technical apportionment opinion and Dr. Sullivan's

opinion regarding the damages for Norton's sale of premium products should also be excluded.  One

common method to prevent a patentee from recovering damages for more than the value of the

patented technology is to base the royalty calculation on the smallest saleable patent practicing unit

("SSPPU").  Here, that is Norton's base product, Norton AntiVirus.  Norton also has premium

products that include the same allegedly infringing features as Norton AntiVirus and, because they

are the same features, the revenues allegedly generated by those features should be the same.

Indeed, Columbia's experts acknowledge ██████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████  Thus, Columbia's experts base their opinions for the premium products on more than just the value of the allegedly infringing technology.  In addition, they fail to offer evidence or explain how they determined exactly how much more value was attributable to Columbia's technology in the premium products.  *See generally* Ex. 1, Updated Sullivan Report; Ex. 2, Updated Cole Report.  For these reasons, their opinions should be excluded.

Separately, Dr. Sullivan's damages opinion regarding Norton's foreign sales should also be excluded.  ██████████████████████████████████████

███████████████████████████████████████████████████

But United States patent laws only apply to conduct in the United States.  Indeed, Columbia seeks compensation for worldwide sales based on conduct indistinguishable from the Supreme Court's holding in *Microsoft v. AT&T Corp.*, 550 U.S. 437 (2007), which found no liability for software developed in the United States, copies of which were sold and installed abroad.  Dr. Sullivan's opinion on Norton's foreign sales revenue is thus unreliable for being contrary to established law.

Finally, Dr. Sullivan's testimony regarding the damages Columbia purportedly suffered as a result of Norton filing patent applications that matured into U.S. Patent No. 8,549,643 (the "'643 patent") should be excluded as unreliable and irrelevant.  Dr. Sullivan opined that  ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████ Notably, it is undisputed that the Norton DLP product does not practice the '643 patent. █████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████ He also failed to provide any factual support for the assumptions underlying his analysis. This testimony is unreliable and irrelevant and should also be excluded.

## II. LEGAL STANDARD

Fourth Circuit law governs the Court's general "decision whether to admit expert testimony" under Federal Rule of Evidence 702 and *Daubert*, *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 516 (Fed. Cir. 2012), but Federal Circuit law applies to issues that "require[] an understanding of the distinctive characteristics of patent damages law," *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1381 (Fed. Cir. 2002).

"[E]xpert witnesses have the potential to be both powerful and quite misleading." *Small v. WellDyne, Inc.*, 927 F.3d 169, 176 (4th Cir. 2019) (quotation marks omitted). "Given that potential, it is critical for district courts to diligently assess the admissibility of expert testimony." *Id.* Thus, under Rule 702 and *Daubert*, the Court has a "gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). "With respect to reliability, the district court must ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Id.* (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). And, "[t]o be relevant under *Daubert*, the proposed expert testimony

must have 'a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Id.* (quoting *Daubert*, 509 U.S. at 592).  The party offering expert testimony "must come forward with evidence from which the court can determine that the proffered testimony is properly admissible." *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998).

## III.   THE COURT SHOULD STRIKE AND EXCLUDE CERTAIN OPINIONS OF DR. COLE AND DR. SULLIVAN

### A.   Columbia's Experts' Opinions Should Be Struck And Excluded Because They Fail To Properly Apportion Damages

#### 1.   Columbia's experts do not account for the conventional elements of SONAR/BASH

The apportionment opinion of Columbia's expert Dr. Cole should be excluded █████████ ███████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ Dr. Sullivan's damages opinion should also be excluded because ███████████████████ ████████████████ and thereby claims damages beyond the value of Columbia's technology.

For patent infringement, "damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284). Thus, when "the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone." *Id.* at 1338. "In these circumstances, the patent owner must apportion or separate the damages between the patented improvement and the conventional components of the multicomponent product." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018).

Courts must therefore "exercise[] [their] gatekeeping authority to ensure that only theories

comporting with settled principles of apportionment [are] allowed to reach the jury." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014). "As the Federal Circuit has made clear . . . a patentee 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features,' and that evidence must be 'reliable and tangible . . . not conjecture or speculative.'" *Rembrandt Social Media, LP v. Facebook, Inc.*, No. 1:13-cv-158, 2014 WL 10190151, at *2 (E.D. Va. May 6, 2014) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011)).

For example, in *Exmark Manufacturing Co. v. Briggs & Stratton Power Products Group, LLC*, the Federal Circuit addressed a patent claim "directed to a lawn mower having improved flow control baffles."  879 F.3d at 1338.  The "patented improvement relate[d] to the mower's flow control baffle," and the other limitations of the claim merely recited "conventional features of a lawn mower, including a mower deck, a side discharge opening, and a power means for operating the mower."  *Id.* at 1348.  At trial, the patent owner presented a reasonable royalty analysis employing a royalty base of the selling price of the lawn mower and a royalty rate of 5%, and the jury found in its favor.  *Id*. at 1337, 1339-40.

The district court denied the accused infringer's post-trial motion for a new trial on damages, but the Federal Circuit reversed.  *Id*. at 1340, 1351.  The Federal Circuit held that the patent owner's damages opinions were inadmissible for failing to tie the royalty rate to only the value of the patented invention, *i.e.*, the improvement to the baffle, as opposed to the conventional features of the mower.  *Id*. at 1349.  Specifically, the patent owner's expert did not explain how the improvement in the baffle led to her proposed royalty rate under "Georgia-Pacific factors nine (utility and advantage of the patented technology) and ten (the nature of the patented invention)."  *Id*. at 1350.  The expert also "acknowledged that other [unpatented] elements of the mowers affect sales and profits of the

mowers, including durability, reliability, brand position, dealer support, and warranty.  But she failed to conduct any analysis indicating the degree to which these considerations impact the market value or profitability of the mower and therefore impacted her suggested 5% royalty rate."  *Id.*

Just as in *Exmark*, Dr. Cole's apportionment opinion and Dr. Sullivan's damages opinion for the '115 patent and '322 patent tied to Norton's profits from SONAR/BASH should be excluded because these opinions value conventional elements included in SONAR/BASH rather than the patented improvement.  To calculate Columbia's damages, Dr. Sullivan █████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████

Dr. Cole, however, ███████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████  Columbia only asserts a small number of claims in the '115 and '322 patents against SONAR/BASH, because many claims (including all independent claims of the '115 patent) were previously found to be invalid.  *See* Ex. 6, Updated Bailey Report ¶ 43 (asserting that SONAR/BASH infringes dependent claims 2, 9, 10, 19, 20, 23, 30, 31, 33, 40, and 41 of the '115 patent); *id.* (asserting that SONAR/BASH infringes dependent claims 17 and 25 of the '322 patent).  During *inter partes* review, the Patent Trial and Appeal Board ("PTAB") cancelled multiple

independent claims in both the '115 and '322 patents that these dependent claims rely upon and incorporate. *See* Ex. 7, '115 IPR Certificate (cancelling claims 1, 3-8, 11, 13-18, 21-22, 24-29, 32, 34-39, and 42 in the '115 patent); Ex. 8, '322 IPR Certificate (cancelling claims 1, 3-7, 9-10, 12-16, 18-24, and 26 in the '322 patent).  The PTAB therefore found that, for example, elements of the claims relating to use of an emulator to execute a program, comparison of a function call to a model, use of a combined model (*see* cl. 3 of the '115 patent), and application communities were conventional or known steps or approaches.



Dr. Cole's ▮ figure thus attributes value to conventional elements of SONAR/BASH (the invalidated claims) for which Columbia cannot obtain damages. *AstraZeneca*, 782 F.3d at 1343 ("damages cannot include activities that do not constitute patent infringement").  This is made most plain by the fact that ▮▮▮  In 2014, before the PTAB cancelled those independent claims, Dr. Cole similarly asserted that Columbia's technology amounted to at least ▮ of SONAR/BASH's value.[1]  That Dr. Cole's ▮▮▮

---

[1]     Before *inter partes* review, Columbia alleged that ▮▮▮ PTAB cancelled claims 1, 3-8, 11, 13-18, 21-22, 24-29, 32, 34-39, and 42 in the '115 patent, Ex. 7, '115 Patent IPR Certificate, and claims 1, 3-7, 9-10, 12-16, 18-24, and 26 in the '322 patent, Ex. 8, '322 Patent IPR Certificate.

███ [2] "suggest[s] that the rate was never tied to the specific patents at issue." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1325 n.5 (Fed. Cir. 2014), *abrogated on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). It certainly shows that Dr. Cole's analysis did not reflect the incremental value of the invention (*i.e.*, the value of the valid claims) over the prior art. Accordingly, Dr. Cole's apportionment opinion and Dr. Sullivan's damages opinion ███ ███ suffer the same fatal defect as the expert in *Exmark*, as Dr. Cole did not "apportion or separate the damages between the patented improvement and the conventional components" of SONAR/BASH, a "multicomponent product." *Exmark Mfg.*, 879 F.3d at 1348.

Consider claim 2 of the '115 patent as an example. Claim 2 is a dependent claim that further refines the steps of claim 1. Ex. 11, '115 Patent at col. 20:47-49. Claim 1 is for a specific "method for detecting anomalous program executions . . ." *Id.* at col. 20:37-46. Claim 2 recites "[t]he method of claim 1, further compromising creating a combined model of at least two models created using different computers." *Id.* at col. 20:47-49. In other words, claim 2 is the same as claim 1 but with an additional step further limiting the "model" to a certain type of "combined model."[3] Thus, one can practice claim 1 without practicing claim 2, if, *e.g.*, the model used is not a "combined model" or if it is not a combined model created from at least two models created using different computers.[4] The PTAB held that claim 1 (among many other claims) was "unpatentable." *Symantec Corp. v. The Trs. of Columbia Univ. in N.Y.*, No. IPR2015-00375, 2016 WL 3574961, at *18 (P.T.A.B. June 30, 2016). Because claim 1 is no longer patented, claim 1's steps for detecting

---

[2] ███████████████████████████████████████████████████████████████

[3] Of note, other claims that recited different types of combined models, like claim 3 ("The method of claim 1, further comprising creating a combined model from at least two models created at different times") were also invalidated.

[4] For example, claim 3 recites another approach to creating a combined model, in that case by combining models created at different times. Claim 3 was held to be invalid.

anomalous program executions is merely one of the "conventional elements recited in" claim 2. *AstraZeneca*, 782 F.3d at 1338.  Thus, if a product infringes claim 2, Columbia can only recover the incremental value created by the method recited in claim 2 as compared to the method recited in claim 1 that does not practice claim 2—the value from "creating a combined model from at least two models created using different computers," Ex. 11, '115 Patent at col. 20:47-49.  *See AstraZeneca*, 782 F.3d at 1338 (when "the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone").

But, again, ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ Dr. Cole has violated plain Federal Circuit precedent and his apportionment testimony should be excluded. *See Exmark Mfg.*, 879 F.3d at 1348.[5]

The Court should also exclude Dr. Sullivan's opinions on the damages from Norton's alleged infringement of the '115 and '322 patents because ████████████████████████████

---

[5]  The same analysis applies to all remaining claims.  By failing to account for the incremental of value of the claims the PTAB found invalid over those not found invalid, Dr. Cole failed to follow Federal Circuit precedent.

█████████████████████████████████████████

### 2.    Columbia's apportionment is unreliable speculation

As set forth above, Columbia admits that ████████████████████████████████

████████████████████████████████████████████████████

████████████, and Columbia's damages analysis should therefore be stricken and excluded.

Independently, Dr. Cole's testimony about apportionment and Dr. Sullivan's testimony on the damages from SONAR/BASH's alleged infringement of the '115 and '322 patents must also be excluded because Dr. Cole's ████ apportionment analysis is pure speculation.  As explained above, because SONAR/BASH contains elements that are not alleged to infringe the '115 and '322 patents, as well as conventional elements, Columbia must set forth a royalty analysis that properly reflects the value of the patented invention.  "To carry this burden, the patentee must sufficiently tie the expert testimony on damages to the facts of the case."  *Suffolk Techs. LLC v. Aol Inc.*, No. 1:12-cv-625, 2013 WL 12156056, at *1 (E.D. Va. Apr. 12, 2013) (ellipsis, quotation marks, and brackets omitted).  "If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded."  *Id.* (quotation marks omitted).

Here, in the technical apportionment analysis that Dr. Sullivan ████████ for his damages opinions, Dr. Cole failed to provide any explanation for how he determined that ████ of SONAR/BASH's value is attributable to the '115 and '322 patents.  Dr. Cole addresses the ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████ At

most, during his deposition, Dr. Cole testified that █████████████████████████

███████████████████████████████████████████████

██████ Moreover, that █████████████████████████████

████████████████████████████ confirms that the valuation is not

tethered to the facts of the case, including the scope of the remaining claims.

Because Dr. Cole fails to explain how he reached the conclusion that ███ of

SONAR/BASH's value is attributable to the claimed invention of the '115 and '322 patents and fails

to tie that conclusion to the facts of the case, Dr. Cole's testimony on the issue should be excluded.

Without providing an explanation, the Court cannot assess whether Dr. Cole's opinion is the product

of reliable methods, whether those methods were properly applied to the facts of this case, and

whether Dr. Cole's opinion is tied to the facts. All the Court—and the jury—have to go on is Dr.

Cole's unsupported guess. *Exmark* is again instructive. There, the plaintiff's expert "concluded with

little explanation that [the parties] would have agreed to a 5% reasonable royalty rate on the sales of

the accused lawn mowers as the value for the improved baffle." 879 F.3d at 1349. Although the

expert "acknowledged that other elements of the mowers affect sales and profits of the mowers," the

Court held that her analysis was deficient because she "was required to support her opinion to that effect with sound economic reasoning." *Id.* at 1350. "It is not enough for an expert to simply assert that a particular royalty rate is reasonable in light of the evidence without tying the proposed rate to that evidence." *Id.* at 1351. The Court therefore affirmed the district court's exclusion of the expert's testimony. *Id.* Dr. Cole "does not offer any 'credible economic analysis' to support his conclusion," so his ███ figure is "seemingly 'plucked out of thin air based on vague qualitative notions' and thus excludable." *Blue Spike, LLC v. Huawei Techs. Co., Ltd.*, No. 6:13-cv-679, 2016 WL 9286102, at *4 (E.D. Tex. Oct. 14, 2016) (quoting *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012)); *LaserDynamics,* 694 F.3d at 69 (affirming district court's exclusion of apportionment testimony where there was a "complete lack of economic analysis to support the [expert's] apportionment"); *Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276, 2019 WL 1436306, at *8 (E.D.N.Y. Mar. 29, 2019) (excluding testimony where expert "ha[d] not provided a sufficient basis, much less an explanation or calculation, to admit the 8% royalty rate"); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 815 (E.D. Va. 2011) (excluding expert testimony as "quintessential *ipse dixit*").

Because Dr. Cole failed to adequately explain how he apportioned ███ of SONAR/BASH's value to the '115 and '322 patents, Dr. Cole's opinion should be excluded. And, because Dr. Sullivan ████████████████████████████████████████████████ ████ Dr. Sullivan's opinion should also be excluded.

### B.  Dr. Sullivan's Damages Opinions On Foreign Sales Should Be Struck And Excluded Because Columbia Cannot Claim Damages For Alleged Infringement Abroad

Dr. Sullivan's opinion on damages premised on Norton's sales of the Accused Products outside the United States should also be excluded because United States patent law does not apply extraterritorially. "The Supreme Court has confirmed that the patent laws, like other laws, are to be

understood against a background presumption against extraterritorial reach." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1306 (Fed. Cir. 2015). "The background principle applies not just to identifying the conduct that will be deemed infringing but also to assessing the damages that are to be imposed for domestic liability-creating conduct." *Id.*

Accordingly, Norton could only infringe Columbia's patents if Norton makes, uses, offers to sell, or sells Columbia's patented inventions within the United States. "United States patent laws 'do not [ ] provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15-cv-1879, 2016 WL 6522808, at *4 (S.D. Cal. Nov. 3, 2016) (quotation marks omitted) (alteration in original). 35 U.S.C. § 271(a)[6] provides "a clear definition of what conduct Congress intended to reach— making or using or selling in the United States or importing into the United States, even if one or more of those activities also occur abroad." *Carnegie Mellon Univ.*, 807 F.3d at 1306. "It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft*, 550 U.S. at 441.

██████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████—whatever that may mean—is of no moment; the fact that domestic activity may have some connection to the foreign sales is irrelevant. *M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-33-

---

[6]    35 U.S.C. § 271(a) states "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

RGA, 2016 WL 70814, at *21 (D. Del. Jan. 6, 2016) ("[T]he presumption against extraterritorial application [of federal law] would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010) (alteration and emphasis in original))).  Sales of the Accused Products that occur outside the United States and that are installed abroad are simply not compensable.  *Microsoft*, 550 U.S. at 441.

Nevertheless, Dr. Sullivan  But the Supreme Court has squarely rejected the argument that the domestic possession of master software and the foreign distribution of copies imposes liability for such foreign copies.  *See Microsoft*, 550 U.S. at 442 ("Does Microsoft's liability extend to computers made in another country when loaded with Windows software copied abroad from a master disk or electronic transmission dispatched by Microsoft from the United States?  Our answer is 'No.'").

Yet again, the Supreme Court has held that this does not turn foreign sales into infringement of a U.S. patent.  *Microsoft*, 550 U.S. at 445 (holding that there was no liability for software sold and installed abroad even though the accused product was "designed, authored, and tested at Microsoft's Redmond, Washington, headquarters").

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Even if Dr. Sullivan had

identified such sales, Dr. Sullivan's vague assertion that ██████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ Executing a sales contract in a foreign country for a product to be

delivered outside the United States does not constitute patent infringement within the United States.

*See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1379-81 (Fed. Cir. 2014), *rev'd on other*

*grounds*, 136 S. Ct. 1923 (2016) (holding that there was no infringement even though "pricing and

contracting negotiations" occurred in the United States).  Indeed, even if contracts were signed in the

United States, such sales would still be outside the scope of § 271 because the Accused Products are

delivered (and used) outside of the country.  *Id.*; *M2M Sol.*, 2016 WL 70814, at *20 (holding that

"domestic contracts for foreign sales" are "offer[s] to sell" and "'sales' [that] occurred abroad" and

do not constitute patent infringement); *Ziptronix, Inc. v. Omnivision Techs., Inc.*, 71 F. Supp. 3d

1090, 1096 (N.D. Cal. 2014) ("even accepting Ziptronix's position that . . . the TSMC entities and

OmniVision executed valid contracts in the United States for the 'sale' of the accused wafers, neither

TSMC Ltd. nor TSMC NA is liable for direct infringement because the accused wafers were not sold

'within the United States'").  And pitching a product in the United States to sell outside the country

is also not infringement.  *See Halo Elecs.*, 769 F.3d at 1379 (finding no infringement even though

"marketing activities took place in the United States").  Regardless, by failing to identify particular

sales that ██████████████████████ in the United States, Columbia cannot provide reliable expert

testimony sufficient to entitle it to recovery of such damages under Dr. Sullivan's third theory.

████████████████████████████████████████████████████████████████

16

██████████████████████████████████████████████████████████ does not

show that there was infringing conduct within the United States, or that Columbia would be entitled

to a royalty on foreign sales.  This argument has been rejected by the Federal Circuit where a

plaintiff claimed damages based on the alleged sale of semiconductor chips in the United Sates.  *See*

*Carnegie Mellon Univ.*, 807 F.3d at 1308-11.  Although there was evidence that the defendant

worked closely with foreign buyers in the United States to design the chips and that "specific

contractual commitments for specific volumes of chips were made in the United States" such that it

could be said that the foreign sales were caused by domestic activity, *id.* at 1309, the Court held that

this could not constitute a sale in the United States entitling the patentee to damages without an

actual domestic sale, *id.* at 1310-11 (remanding for new trial because jury should have been

"required . . . to find a domestic location of sale").  So "[a]lthough all of [the defendant's] sales

[were] strongly enough tied to its domestic infringement as a causation matter to have been part of

the hypothetical-negotiation agreement, that conclusion [was] not enough to use the sales as a direct

measure of the royalty except as to sales that are domestic (where there is no domestic making or

using and no importing)."  *Id.* at 1307.  That is, only "sales that are domestic (where there is no

domestic making or using and no importing)" can be used as a measure of the royalties.  *Id.*

     Dr. Sullivan's analysis seems to hinge on ████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ The Supreme Court

has, however, made clear that patent law does not view software in this way.  Rather, it analogized

software to a "blueprint" that "contain[s] precise instructions for the construction and combination of

the components of a patented device, but it is not itself a combinable component of that device."

*Microsoft*, 550 U.S. at 450.  There can only be infringement when that software is installed or used on a computer (or other actual physical medium), which in the case of foreign sales, happens abroad and is not covered by U.S. patents.

Ultimately, Dr. Sullivan provides no basis for Columbia to claim damages arising from Norton's foreign sales of the Accused Products because such sales do not infringe Columbia's patents.  "If [Columbia] desires to prevent copying in foreign countries, its remedy today lies in obtaining and enforcing foreign patents."  *Microsoft*, 550 U.S. at 456.  And "[a]s Supreme Court precedent makes clear," if there is "any doubt regarding whether [Norton's] conduct falls outside the purview of United States patent law," that doubt "should be resolved" in Norton's favor "by the presumption against extraterritoriality."  *M2M Sols.*, 2016 WL 70814, at *22 (quotation marks and brackets omitted); *see, e.g.*, *Microsoft*, 550 U.S. at 454.  Because Columbia cannot claim damages for foreign sales, Dr. Sullivan's opinion on this issue should be excluded because it is not relevant to any issue in this case.  *See Tex. Advanced Optoelectronic Sols., Inc. v. Intersil Corp.*, No. 4:08-CV-451, 2015 WL 602284, at *2 (E.D. Tex. Feb. 11, 2015) (granting motion to exclude expert's opinion "regarding damages" for "extraterritorial sales").

### C.   Columbia's Experts Fail to Properly Apportion Based on the SSPPU and Instead Offer Speculative Apportionment for the Premium Norton Products

Columbia's experts agree that ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████ Norton has also sold premium versions of the Norton products, such as Norton Security, Norton Internet Security, and Norton 360, which include all features of the base product (Norton Antivirus), plus additional features.  Columbia, however, ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████ This is improper.

The law is plain that "[n]o matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *Virnetx*, 767 F.3d at 1326. Columbia's damages opinions with respect to the premium Norton products should be excluded because they violate this critical rule. *Supra*, Part III.A.1. "As a substantive matter, it is the value of what was taken that measures a reasonable royalty under 35 U.S.C. § 284." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) (quotation marks omitted). "Where [like here] small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics*, 694 F.3d at 67. "Thus, it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *Id.* (quotation marks omitted).

Columbia's experts agree that ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

        ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

Columbia's damages model is thus legally flawed because it compensates Columbia for more than "what was [purportedly] taken" by the alleged infringement, and is "based on assumptions which are speculative and are not supported by the record." *Tyger Constr. Co. Inc. v. Pensacola Constr. Co.,* 29 F.3d 137, 142 (4th Cir. 1994). The accused functionality is entirely within the SSPPU, so any additional price customers pay for the premium Norton products is not due to the accused functionality, but rather due to the additional features included in the premium product.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████ His testimony regarding the value of the premium Norton products should be excluded for that reason alone.

In fact, Dr. Cole ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████ This shows that customers of premium products are paying the premium products' price, not for the features of the base product, but for the added premium features.

Dr. Cole's apportionment opinion taken together with Dr. Sullivan's damages opinion, offer opinions that compensate Columbia for more than "what was [purportedly] taken" without factual support from which the Court could test the reliability of their opinions.  Their opinions should be excluded.  *Tyger Const.*, 29 F.3d at 143 (vacating jury award because district court wrongly admitted "[e]xpert opinion that was based on assumptions not supported by the record"); *ePlus*, 764 F. Supp. 2d at 815 (excluding opinions that were speculative and "ask[ed] the jury to accept the expert's view merely because it was expressed by an expert"); *Suffolk Techs.*, 2013 WL 12156056, at *2-3.

### D.   Dr. Sullivan's Testimony Regarding Columbia's Damages For State Law Claims Should Be Struck And Excluded As Unreliable And Irrelevant

Dr. Sullivan's testimony regarding damages for Columbia's state law claims should be excluded because Dr. Sullivan has no factual support for his opinions and offers testimony about the

█████████████████████████████████████████████████ *See* Fed. R. Evid. 702; *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (district courts have a "gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" (quoting *Daubert*, 509 U.S. at 597)).

### 1.   Dr. Sullivan's opinions on the state law claims

Columbia asserts claims for conversion, unjust enrichment, and fraudulent concealment against Norton based on allegations that Norton secretly filed a patent application in its own name in April 2011 that matured into the '643 patent which claims "decoy technology" invented by Columbia Professors Stolfo and Keromytis. Dkt. 12, Counts 8-10.  Columbia alleges that the patent

application should have listed Professors Stolfo and Keromytis as inventors and that Norton failed to disclose to Columbia the fact that a patent application was filed.  *Id*.  Columbia alleges that the Professors shared the technology with Norton in confidence while the Parties were working together on grant proposals in 2006.  *Id*. ¶ 121.  Columbia alleges that, as a result of this conduct, Norton "deprived Columbia of the benefits, financial opportunities, and prestige Columbia would have enjoyed if Norton had not sought and obtained in its own name patents directed to Professors Stolfo and Keromytis's decoy technology and if Columbia and its researchers had been duly recognized and credited with the invention."  *Id*. ¶ 132.

Columbia's expert, Dr. Sullivan, opines regarding damages on these claims. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

      ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████

**2.     Dr. Sullivan's opinions and testimony relying on the ██████████ ██████████ are unreliable and irrelevant**

Dr. Sullivan applies the royalty rates from the █████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ Dr. Sullivan's opinions applying the ████████

royalty rate are inadmissible for three reasons: ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████ Dr. Sullivan's Report and testimony do not meet the requirements of Federal Rule

of Civil Procedure 26 or Federal Rule of Evidence 702.  They should be excluded.

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████

Dr. Sullivan's failure to explain why his methodology is reliable or any facts suggesting ███

████████████████████████████████████████████ render his

opinions inadmissible.  *See, e.g.*, *Suffolk Techs. LLC*, 2013 WL 12156056, at *1 ("the Federal

Circuit has made clear that a major determinant in whether an expert should be excluded under

*Daubert* is whether he has justified the application of a general theory to the facts of the case"

(quotation marks omitted)); Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████ His total disregard of this ████████████ makes his opinion unreliable.

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████. This omission again demonstrates that his analysis is unreliable. *See, e.g.*, *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990) (district court's failure to "consider the fact that" an allegedly comparable license "encompassed the right to other inventions" constituted reversible error); *M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-33-RGA, 2016 WL 767900, at *8 (D. Del. Feb. 25, 2016) (excluding expert opinion that "improperly relie[d] on licenses [to large

patent portfolios] that [were] not economically comparable to" a hypothetical negotiation for a license to one patent).

Other circumstances surrounding the negotiation of the ████████ agreement further show that the agreement is not relevant.  Specifically, the circumstances surrounding the ████ ████ negotiation are similar to those surrounding the ████████ negotiation, about which Dr. Sullivan concluded the ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████

As Dr. Sullivan recognized in the context of the ██████ agreement, ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ Applying Dr. Sullivan's own principles for determining whether a negotiation is comparable to one between Columbia and Norton, ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Accordingly, Dr. Sullivan's reliance on it render his opinions unreliable and irrelevant.  They should be excluded.

For these reasons, the ████████████ licensing agreement is irrelevant to the damages at issue here and Dr. Sullivan's testimony relying on it should be excluded as unreliable and irrelevant. *Nease*, 848 F.3d at 229 (district courts have a "gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" (quoting *Daubert*, 509 U.S. at 597)).

### 3.    Dr. Sullivan's opinions lack any factual support and are unreliable

Dr. Sullivan's analysis is also premised on assumptions and assertions that are nothing more than a series of *ipse dixit* statements disconnected to the facts of this case.  His testimony should therefore be excluded.  *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997) (a court must exclude an expert's testimony when it is "connected to existing data only by the *ipse dixit* of the expert").

***First***, Dr. Sullivan assumes that ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████ wholly speculative.[7]

    **Second**, Dr. Sullivan assumes that ████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████ And the scope of the right to

exclude is dictated by the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en

banc) ("claims of a patent define the invention to which the patentee is entitled the right to

exclude"). Dr. Sullivan's reliance on █████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████ A license is only required if a product practices every limitation of a

claim, and no party alleges that Norton ever implemented, or even intended to implement, the

technology of the '643 patent.

    That leaves Dr. Sullivan's assumption that ███████████████████████████████████

---

[7]  To the extent that the technology in the '643 patent was covered by Columbia's own patents,

█████████████████████████████████████████████████████████

██

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████

However, Dr. Sullivan ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ Dr. Sullivan fails to

address the fact that no competitor had attempted to do so despite this purported benefit of taking

customers from Norton.

Dr. Sullivan also admitted that ██████████████████████████████

████████████████████████████████████ Because

Dr. Sullivan fails to tie his general theory that ██████████████████████████

███████ to the facts here, his opinion is purely speculative and unreliable.

## IV.    CONCLUSION

For the foregoing reasons, Norton respectfully submits that the Court should grant Norton's

motion and strike the opinions of Dr. Cole and Dr. Sullivan described above from their expert

reports and exclude their testimony on the same from being presented at trial.

DATED:  March 26, 2020                          NORTONLIFELOCK INC.


By       /s/ _____

Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

David A. Nelson (*pro hac vice*)
davenelson@quinnemanuel.com
Stephen A. Swedlow (*pro hac vice*)
stephenswedlow@quinnemanuel.com
Nathan Hamstra (*pro hac vice*)
nathanhamstra@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
QUINN EMANUEL URQUHART & SULLIVAN,
LLP

Derek L. Shaffer (*pro hac vice*)
derekshaffer@quinnemanuel.com
777 6th Street NW, 11th floor
Washington, D.C. 20001-3706
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
QUINN EMANUEL URQUHART & SULLIVAN,
LLP

ATTORNEYS FOR DEFENDANT
NORTONLIFELOCK INC.