IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, | Civil Action No. 3:13-cv-00808-MHL |
| *Plaintiff* | |
| v. | |
| NORTONLIFELOCK INC. f/k/a SYMANTEC CORPORATION, | |
| *Defendant* | |

**MEMORANDUM IN SUPPORT OF NORTONLIFELOCK
INC.'S MOTION TO RECONSIDER NORTON'S MOTIONS
*IN LIMINE* NOS. 5 AND 6 AND FOR AN IMMEDIATE
STAY OF THE PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ........................................................................................................1

II.    BACKGROUND .........................................................................................................3

    A.    Quinn Emanuel's Representation of Dr. Dacier ...........................................3

    B.    Norton's Motion for Sanctions ....................................................................4

    C.    The Court's Sanctions Order ........................................................................6

    D.    Motions *in Limine* Nos. 5 and 6 .................................................................7

    E.    The Court's Opinion on Motions *in Limine* Nos. 5 and 6 .........................7

III.    STANDARD OF REVIEW .........................................................................................9

IV.    ARGUMENT .............................................................................................................11

    A.    The Evidence Presented Does Not Meet the "High Bar" of Disqualifying Counsel for a Conflict ...............................................................................11

    B.    The MIL Opinion Went Outside the Adversarial Issues Presented by the Parties .........................................................................................................14

    C.    This Case Should Be Stayed Pending Resolution of Any Conflict of Interest ........................................................................................................15

V.    CONCLUSION .........................................................................................................16

## TABLE OF AUTHORITIES

**Page**

### Cases

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,*
99 F.R.D. 99 (E.D.Va.1983) ............................................................................... 10

*ABS MB Inv. Ltd. P'ship v. IVAX Corp.,*
1996 U.S. Dist. LEXIS 4502 (D. Md. Apr. 10, 1996) ........................................ 16

*American Canoe Ass'n v. Murphy Farms, Inc.,*
326 F.3d 505 (4th Cir. 2003) .............................................................................. 10

*Audio MPEG, Inc. v. Dell, Inc.,*
219 F. Supp. 3d 563 (E.D. Va. 2016) ............................................................ 15, 16

*Biedermann Techs. GmbH & Co. KG v. K2M, inc.,*
2022 WL 337293 (E.D. Va. Jan. 25, 2022) ........................................................ 10

*Carter v. Virginia Dep't of Game & Inland Fisheries,*
2017 WL 4413192 (E.D. Va. Sept. 29, 2017)................................................. 12, 13

*David v. King,*
2022 WL 243330 (E.D. Va. Jan. 24, 2022) ........................................................ 14

*El v. United States Dep't of Com.,*
No. 2:18CV190, 2021 WL 1540467 (E.D. Va. Mar. 25, 2021) ........................... 10

*Fayetteville Investors v. Commercial Builders, Inc.,*
936 F.2d 1462 (4th Cir. 1991) .............................................................................. 9

*Gentile v. Ingram,*
2016 U.S. Dist. LEXIS 79238 (E.D.N.C. Apr. 29, 2016)..................................... 16

*Kronberg v. LaRouche,*
2010 WL 1443898 (E.D.Va. Apr. 9, 2010) ......................................................... 11

*Rd. King Dev., Inc. v. JTH Tax LLC,*
540 F. Supp. 3d 554 (E.D. Va. 2021) .................................................................. 11

*Shaffer v. Farm Fresh, Inc.,*
966 F.2d 142 (4th Cir. 1992) ............................................................................... 13

*Shanklin v. Seals,*
No. 2010 WL 1781016 (E.D. Va. May 3, 2010) ............................................. 10, 14

*Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.,*
727 F. Supp. 2d 469 (E.D. Va. 2010) .................................................................. 13

*Tessier v. Plastic Surgery Specialists, Inc.,*
731 F. Supp. 724 (E.D. Va. 1990) ....................................................................... 13

*Williams v. Kopco,*
162 F.R.D. 670 (D. Kan. 1995)............................................................................ 16

**<u>Rules</u>**

Fed. R. Civ. P. 54(b) ........................................................................................................ 10

Va. R. Prof'l Conduct 1.7 ................................................................................................ 12

## I.      INTRODUCTION

On March 15, 2022, the Court issued a Memorandum Opinion denying the following motions filed by Defendant NortonLifeLock Inc. f/k/a Symantec Corp. ("Norton"): Motion *in Limine* No. 5 to exclude arguments regarding the absence of Dr. Marc Dacier from trial; and Motion *In Limine* No. 6 to exclude hearsay statements from Dr. Dacier.  Dkt. 889 ("MIL Opinion" or "MIL Op.").  Among other erroneous statements and findings, the Court "conclude[d] that a conflict existed" as a result of Quinn Emanuel's representation of both Dr. Dacier and Norton.  *See* MIL Opp.  at 14.

Rather than focusing on the discrete issues presented by the two motions *in limine* before it, and without notice to the parties, the Court revisited the parties' May 2020 dispute regarding the improper contact of a represented witness by Columbia's counsel, as detailed in Norton's Motion for Sanctions.  Dkt. 477, 478, 562.  The Court denied that motion, finding that "Columbia's contact with Dr. Dacier [ ] was in good faith and [ ] not sanctionable," even though—oddly—the Court did ***not*** find that Dr. Dacier was ***not*** represented by Quinn Emanuel at the time: "It remains undetermined whether Dr. Dacier was or was not represented by Norton's attorneys in October 2019."  Dkt. 663 at 5, n.3 ("Dacier Order").  The Dacier Order did not mention the opinion of Columbia's hired ethics expert, Leslie Haley, which Columbia had submitted in opposition to Norton's motion.  Dkt. 547-3 ("Haley Decl.").  With emphasis, though, the Court ***now*** observes with approval: "*Ms. Haley determined that 'the only [] reasonable conclusion is that Dr. Dacier [was] not represented by Norton's counsel' in 2019.*"  *Id.* at 10 (citations omitted).  The Court arrives at this conclusion notwithstanding—and ignoring—the sworn declaration of Dr. Dacier himself, who stated unequivocally: "Quinn Emanuel has represented me since June 16, 2014, and continues to represent me, in connection with the Columbia case."  Dkt. 562-1 (June 18, 2020).

The MIL Opinion also includes a remarkable number of factual errors in Columbia's favor and draws a significant number of baseless adverse inferences against Norton. The adverse inferences are largely from the result of a Catch-22 created by the Court, unbeknownst to Norton. Namely, in connection Norton's sanctions motion in 2020, Norton and its ethics expert did not respond directly to all the tangential issues and accusations made by Columbia for the simple reason that they were not relevant to the question of whether Columbia counsel's conduct was inappropriate. Now, in the MIL Opinion on different issues in 2022, the Court relies on Norton's lack of response to those tangential issues almost two years ago—and disregards without explanation the responses Norton did provide—to find that Columbia's recitation and characterization of events is unrebutted and therefore must be reliable and correct. *E.g.*, MIL Op. at 12 ("*Tellingly, throughout these motions, Norton has never denied that Dr. Dacier made the statements against Norton's interest that Dr. Keromytis says he did.*") (emphasis in original). The Court created this Catch-22 even though the Court never even addressed the tangential conflict assertion in its opinion on Norton's 2020 sanction motion. Further, in a classic exercise of bootstrapping, the Court then relies on those findings to justify, for example, its finding that hearsay statements allegedly made by Dr. Dacier to a Columbia witness "satisfy the 'hallmark' of reliable hearsay" and will be permitted at trial. MIL Op. at 18.

The myriad underlying flaws in the MIL Opinion contribute to its ultimate failing. Even though the Court never issued such findings in connection with Norton's sanctions motion, the Court's MIL Opinion appears to have adopted nearly wholesale all the opinions expressed in the Haley Declaration. MIL Op. at 9-12. Specifically, the Haley declaration noted that, if "Quinn Emanuel continued to represent Dr. Dacier after his deposition," this "would necessarily mean that Quinn Emanuel has violated Rule 1.7 and could be disqualified from representing both Norton and

Quinn Emanuel." Dkt. 547-3 ¶ 22. (Quinn Emanuel did so.) The Haley Declaration also cited a committee note to opine that "[o]rdinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails." Dkt. 547-3 at 13 n.5. In other words, Ms. Haley suggested that Quinn Emanuel must withdraw from its representations of both Norton and Dr. Dacier upon a conflict finding. The Court's MIL Opinion includes such findings. *E.g.*, MIL Op. at 11, 14.

Accordingly, under the guise of a ruling on Norton's motions *in limine*, the Court's MIL Opinion in fact issues new rulings based on Norton's 2020 sanctions motion that disallow Quinn Emanuel from continuing to represent either Norton or Dr. Dacier.[1] As explained below, such rulings should be promptly reconsidered and reversed because they exceeded the scope of the motions before the Court and are based on an incorrect and incomplete view of the facts. Regardless, the Court should immediately stay the case to mitigate prejudice to Norton resulting from the MIL Opinion and to allow Norton to submit briefing and evidence so that the Court can address the matter of whether counsel can represent Norton and Dr. Dacier on an appropriate record.

## II.   BACKGROUND

### A.   Quinn Emanuel's Representation of Dr. Dacier

Marc Dacier is the former senior director of the Symantec Collaborative Advanced Research Department. Ex. __ Dacier Tr. at 31:1-25. Dr. Dacier left Norton in April 2014. As is common for former employees of parties in a litigation, since at least June 16, 2014, Dr. Dacier has been represented in his personal capacity by Quinn Emanuel. On June 16, 2014, Quinn Emanuel informed

---

[1]  In light of the findings and conclusions set forth in the MIL Opinion—specifically the finding that a conflict of interest exists as a result of Quinn Emanuel's representation of both Dr. Dacier and Norton—Quinn Emanuel is unable to act on behalf of either client. This necessarily impacts counsel's ability to appear for hearings and submit further pretrial materials.

Columbia that it was "representing Marc Dacier in connection with this action." Dkt. 478-2, Email from D. Elihu at 1. Although at the time, Dr. Dacier was a French resident whose deposition could not be compelled, Dr. Dacier agreed to appear voluntarily for deposition, and to travel to Brussels to do so. *Id.* During that deposition, Quinn Emanuel attorney Dave Nelson stated on the record that he was representing both Norton and Dr. Dacier. Dkt. 478-3, Dacier Dep. Tr. at 8:19-20 ("Dave Nelson from Quinn Emanuel on behalf of [Norton] and the witness."). Norton also served initial disclosures stating that Dr. Dacier should be contacted through Quinn Emanuel, including in supplemental disclosures in December 2018 stating that Dr. Dacier should be "[c]ontact[ed] through counsel for [Norton]," *i.e.*, through Quinn Emanuel. Dkt. 478-4, Norton's Sixth Supp. Initial Disclosures at 4. Norton did not include such an instruction for all former employees, only those employees whom Quinn Emanuel continued to represent in their personal capacity. *Id.*

Dr. Dacier's engagement of Quinn Emanuel was for the entirety of this litigation between Columbia and Norton. Dkt. 562-4, Dacier Engagement Letter. Dr. Dacier has not terminated Quinn Emanuel's representation. Dkt. 562-7, Hamstra Decl. Dr. Dacier continues to be represented by Quinn Emanuel. Dkt. 562-1, Dacier Decl.

### B.     Norton's Motion for Sanctions

In October 2019, Angelos Keromytis, a former Columbia professor, reached out to Dr. Dacier to introduce Columbia's counsel Dustin Guzior, after which Mr. Guzior asked to speak to Dr. Dacier, presumably about the litigation. Dkt. 547-5. Dr. Keromytis reached out to Dr. Dacier at the request of Mr. Guzior. Dkt. 478-5 at 2-3 (Mr. Guzior stating that he asked "Professor Keromytis [to] make an introduction" to Dr. Dacier). *Ex parte* contact continued until early March 2020 (Dkt. 478-5 at 4), at which time Quinn Emanuel learned of these communications.

Norton subsequently filed its Motion for Sanctions to address counsel for Columbia's violation of Virginia Rule of Professional Conduct 4.2. Dkts. 477, 478. In opposition, Columbia

argued that (1) Dr. Dacier was not represented by Quinn Emanuel at the time of the communications (Dkt. 542 at 15-22), and (2) that Columbia's counsel had developed a subjective belief that Dr. Dacier was no longer represented by counsel, such that even if he were represented, the contact would not be a violation of Virginia Rule of Professional Conduct 4.2 (Dkt. 542 at 22-27).   In connection with those arguments, Columbia alleged a conflict between Quinn Emanuel's concurrent representation of Dr. Dacier and Norton.   Specifically, Columbia contended that Dr. Dacier's testimony was adverse to Norton's motion for partial summary judgment relating to a 2006 joint proposal between Columbia and Norton (the "NICECAP" proposal) and that Dr. Dacier's position on inventorship was contrary to that of Norton.   *Id*. at 20.   Columbia further raised "the failure by Norton to produce an engagement letter."   Dkt. 542 at 19-21.

Also in connection with its opposition, Columbia submitted the Haley Declaration, which opined that "Dr. Dacier's testimony is adverse to Norton's interests and would have triggered an obligation under Rule 1.7 for Quinn Emanuel to perform a conflicts analysis if it believed that it continued to represent Dr. Dacier after his deposition."   Dkt. 547-3, Haley Decl. ¶ 21. Ms. Haley's conclusory opinions did not cite any specific portions of Dr. Dacier's deposition transcript (i.e., his only "testimony" in the case), explain how Columbia's counsel was characterizing Norton's position, or identify any position advanced by Norton that Dr. Dacier's testimony allegedly contradicted.

In reply, Norton submitted Dr. Dacier's engagement letter, which showed that a conflicts analysis had been performed and that Dr. Dacier had given his informed consent to Quinn Emanuel's concurrent representation of Dr. Dacier and Norton.   Norton also rebutted the conflicts allegations. Dkt. 566 at 15.   Norton further explained that Dr. Dacier's deposition testimony was consistent with

Norton's interests (Dkt. 566 at 15-16), and that Columbia's conflict allegations were based on a mischaracterization of Dr. Dacier's testimony (*id*. at 16-17).

As Norton explained, even if Dr. Dacier's interests diverged from Norton's, Dr. Dacier could not offer testimony on the correct inventorship of the '643 patent because he lacked personal knowledge about the issued patent.  Specifically, Dr. Dacier testified at deposition that ██████████

████████████████████████████████████████████████████████████

████████████████ Dkt. 566-1, Dacier Tr. at 202:23-203:8. ██████████████████████

████████████████████████████████. *Id*. at 204:2-7.

In sur-reply, Columbia retreated from its primary argument in opposition, that Dr. Dacier was not ***actually*** represented by Quinn Emanuel, instead arguing that Columbia counsel had a ***reasonable belief*** that Dr. Dacier was no longer represented by Quinn Emanuel.  Dkt. 664 at 12.

## C.    The Court's Sanctions Order

On September 29, 2021, the Court denied Norton's Motion for Sanctions on the basis that "Columbia reasonably believed that Dr. Dacier was not represented by defense counsel." Dkt. 663 at 3-5.  The Motion requested that the Court enter sanctions against Columbia for contacting Dr. Dacier when he was represented by counsel in violation of Virginia Rule of Professional Conduct 4.2. *Id.* at 3.  In its opinion, the Court addressed Columbia's assertion that they did not know Dr. Dacier was represented by counsel and Dr. Dacier's communications with Columbia's counsel.  *Id.* at 3-6.  The Court did not evaluate, address, or even mention Columbia's ethics expert, Ms. Haley.  *See id.*  The Court did not assess Ms. Haley's opinion that a conflict of interest existed.  *Id.*  And the Court did not rule on whether a conflict of interest existed, and in fact never used the word "conflict" anywhere in the opinion.  *Id.*

### D.      Motions *in Limine* Nos. 5 and 6

Almost two years after filing its motion for sanctions, Norton moved *in limine* to exclude Columbia arguments about Dr. Dacier's absence from trial (because he resides in Saudi Arabia, cannot be compelled to attend a U.S. trial, and chooses not to attend trial) (MIL 5), and to exclude certain hearsay statements of Dr. Dacier (MIL 6).

Columbia's Opposition does not raise any potential conflict between Quinn Emanuel's representation of Norton and its representation of Dr. Dacier.  Columbia's arguments instead focused on the assumption that Dr. Dacier would somehow provide additional or different testimony than the testimony he provided at his deposition in 2014.  Dkt. 801 at 25.  For example, Columbia argued that, although Dr. Dacier did provide deposition testimony in 2014, if he appeared at trial, he would "expand, supplement, and clarify his deposition testimony."  Dkt. 801 at 25.  These arguments are contrary to Dr. Dacier's statement in late 2019 that, if he came to trial, he would merely "repeat what I have already said in 2014."  Dkt. 546-2, Dacier Email at 3.

### E.      The Court's Opinion on Motions *in Limine* Nos. 5 and 6

The Court denied Norton's Motions *in Limine* Nos. 5 and 6.  The MIL Opinion, however, went far beyond denying the issues presented by the motions, finding that Quinn Emanuel's concurrent representation of Norton and Dr. Dacier was a conflict of interest.  *E.g.*, MIL Op. at 11. As noted above, the Court made a remarkable number of factual errors and drew numerous unwarranted inferences against Norton in doing do.  A non-exhaustive list is below.

First, the Court erred as to the named inventors of the '643 patent, identifying Dr. Dacier as a co-inventor (with Mr. Shou) of the '643 patent.  MIL Op. at 1 ("The '643 Patent—listing Mr. Shou and Dr. Dacier as inventors").

Second, the Court erred in finding that Drs. Keromytis and Stolfo informed Norton that they "considered themselves inventors or co-inventors of the '643 technology" around the time of the provisional patent filing. *Id.* at 2.

Third, the Court erred in finding that, around the time of the non-provisional patent filing in April 2011, "Norton attorneys asked Professors Keromytis and Stolfo if they considered themselves to be investors [*sic*]. The professors again said yes." *Id.* at 3.

Fourth, to the extent that the Court inferred that Columbia was not informed that Norton was proceeding with the '643 patent application (*see id.* at 3), the Court erred.

Fifth, the Court erred in finding that the '643 patent issued on April 4, 2011. *Id.* at 3.

Sixth, the Court erred in finding the Quinn Emanuel "only belatedly claimed that Quinn Emanuel personally represented Dr. Dacier after it learned that Dr. Dacier intended to offer testimony at trial." *Id.* at 4.

Seventh, the Court erred in finding that "Columbia presented strong evidence" that Quinn Emanuel did not represent Dr. Dacier. *Id.* at 9.

Eighth, the Court erred in relying on the conclusions of Columbia's retained expert, Dr. Haley, when subsequent developments markedly changed the predicates for Dr. Haley's opinions. *Id.* at 10-11. Indeed, many premises of Dr. Haley's declaration were subsequently shown, or were known at the time, to be incorrect.

Ninth, the Court erred in finding that "Dr. Dacier, a named inventor of the Integrating Decoy and Data Loss Prevention '643 Patent, has worked with Dr. Keromytis while the patent was developed. Dr. Dacier's statements show that he thought Dr. Keromytis should be considered an inventor." *Id.* at 12.

Tenth, the Court incorrectly characterized Norton's Motions *in Limine* No. 5 and 6 as "Norton seek[ing] to exclude information obtained from Dr. Dacier and to exclude any testimony from him at trial."  *Id.* at 12.  Norton moved to exclude "arguments and comments regarding the absence of third party, Dr. Marc Dacier" (MIL 5) and out of court statements made by Dr. Dacier to Dr. Keromytis or to counsel for Columbia (MIL 6).

Eleventh, the Court erred in stating that "Dr. Dacier has not said [that he does not want to travel from Saudi Arabia for trial] directly on this record," including by implying that a witness cannot properly make such a representation through counsel. *Id.* at 12-13.

Twelfth, the Court erred in finding that "[n]othing shows that Dr. Dacier knew he could disengage Quinn Emanuel."  *Id.* at 13.

Thirteenth, the Court erred in drawing the inference: "[t]hat Quinn Emanuel has not offered evidence of a non-conflict shows that it has no such evidence."  *Id.* at 13.

Fourteenth, the Court erred in finding that Dr. Dacier's live trial testimony would be non-cumulative.  *Id.* at 16.

Fifteenth, the Court erred in in finding that Dr. Dacier's correspondence showed that he "had 'no problem' going to New York to testify *in the middle of a pandemic*," when he said precisely the opposite.  *Id.* at 19.

Finally, against this backdrop, the Court adopted as true a number of hearsay statements that appear only in declarations of interested percipient fact witnesses such as Dr. Keromytis, a former Columbia professor with a financial interest in this litigation, and declarations of counsel for Columbia.

## III.   STANDARD OF REVIEW

Interlocutory orders may be reconsidered "at any time prior to the entry of a final judgement." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir.

1991); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action ... and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *see also El v. United States Dep't of Com.*, No. 2:18CV190, 2021 WL 1540467, at *3 (E.D. Va. Mar. 25, 2021) (interlocutory orders may be revised at any time prior to final judgment).

Courts in this District have found that "a motion for reconsideration generally should be limited to those instances in which[ ] the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension[.]" *Shanklin v. Seals*, No. 2010 WL 1781016, at *2–3 (E.D. Va. May 3, 2010) (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983)). Reconsideration is not "a vehicle for seeking multiple bites at the same apple, by iteratively refining arguments that could have reasonably been presented in the first instance." *Biedermann Techs. GmbH & Co. KG v. K2M, inc.*, 2022 WL 337293, at *1 (E.D. Va. Jan. 25, 2022). "[I]n order to avoid an unending motions practice, the Court exercises its discretion to consider such motions sparingly." *Shanklin v. Seals*, 2010 WL 1781016, at *2 (E.D. Va. May 3, 2010). However, the interest in judicial economy may be overruled by "[t]he ultimate responsibility of the federal courts," which is, "at all levels, is to reach the correct judgment under law." *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). As explained more fully below, the MIL Opinion rendered decisions "outside the adversarial issues presented to the Court by the parties," and "made an error not of reasoning but of apprehension." *Shanklin*, 2010 WL 1781016 at *3. For these reasons, this case presents the type of extraordinary circumstances that justify this Court revisiting its decisions.

## IV.    ARGUMENT

The MIL Opinion mischaracterizes or misapprehends many key facts—and draws numerous inappropriate adverse inferences—that are relevant to the outcome of the Court's conflicts decision. The Court should therefore reverse its ruling that a conflict exists or, in the alternative, set a briefing schedule to develop a record on the issue. The Court's finding that Quinn Emanuel has a conflict of interest in representing both Dr. Dacier and Norton in connection with this case is also decision outside of the adversarial issues presented by the parties. As a result, the MIL Opinion could not have considered or incorporated adequate briefing or evidence presented by the parties on the issue of whether a conflict exists, and reconsideration is appropriate. Regardless, the Court should immediately stay the litigation until the conflict issue is resolved. As explained further below, undersigned counsel cannot continue to represent either Dr. Dacier or Norton in connection with the upcoming deadlines and trial in light of the Court's ruling that a conflict exists.

### A.    The Evidence Presented Does Not Meet the "High Bar" of Disqualifying Counsel for a Conflict

The Court's finding that a conflict of interest exists was based on improperly-drawn adverse inferences on issues that were tangential (and irrelevant) to Norton's motions *in limine*, is otherwise unsupported, and should be reversed. As discussed in more detail elsewhere in this motion, the Court's finding of a conflict disqualifies counsel from representing both Norton and Dr. Dacier in this litigation. A decision disqualifying counsel for a conflict of interest "is a serious matter which cannot be based on imagined scenarios of conflict," so a "high standard of proof [is required] . . . in order to prove that counsel should be disqualified." *Kronberg v. LaRouche,* 2010 WL 1443898 (E.D.Va. Apr. 9, 2010). Whether a conflict of interest exists is a question of fact. *Rd. King Dev., Inc. v. JTH Tax LLC*, 540 F. Supp. 3d 554, 560 (E.D. Va. 2021). The factual findings in the MIL Opinion are purportedly based on—but notably conflict in many respects with—evidence presented

in connection with Norton's 2020 motion for sanctions and Norton's Motions *in Limine* Nos. 5 and 6. This incomplete factual record—which was compiled without the benefit of notice to either party about the issues in dispute—does not meet the high standard for disqualifying counsel.

This District applies the Rules of the Virginia Supreme Court to govern "ethical standards relating to the practice of law in civil cases." *Carter v. Virginia Dep't of Game & Inland Fisheries*, 2017 WL 4413192, at *7 (E.D. Va. Sept. 29, 2017). Virginia Rule of Professional Conduct 1.7, which governs conflicts of interest, provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*Carter*, 2017 WL 4413192, at *7 *citing* Va. R. Prof'l Conduct 1.7. The MIL Opinion "identifie[d] a conflict of interest for Quinn Emanuel as to Dr. Dacier's 2019 statement that he was 'sorry' about what Norton did as to the 643 Patent and that he felt or expressed his disagreement at the time" (MIL Op. at 11), found that "a conflict existed when Dr. Dacier contacted Quinn Emanuel in 2020" (MIL Op. at 14) and further speculated that such a conflict existed as early as 2014. *Id.* at 19 n.7. In light of such findings, and as set forth in the Haley Declaration endorsed by the Court, "'[o]rdinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails.'" Haley Decl. at 5, 13 n.5.

Accepting as correct (for purposes of this discussion only) the Court's unsupported finding that "absolutely no doubt exists that [Dr. Dacier's] 2017-2019 statements *are* adverse with respect to

the three counts at issue" in this litigation (MIL Op. at 16), a path forward where the undersigned counsel could protect both the interests of both Norton and Dr. Dacier does not appear to exist.

"[D]isqualification of counsel is a 'drastic' measure[.]" *Carter v. Virginia Dep't of Game & Inland Fisheries*, 2017 WL 4413192, at *7 (E.D. Va. Sept. 29, 2017). It "may not be rested on mere speculation" about a conflict of interest. *Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.,* 727 F. Supp. 2d 469, 472 (E.D. Va. 2010). Disqualification is only "justified when a conflict of interest is not just conjectural, but is actual or likely. *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990); *see also Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992) ("We have held that disqualification of a litigant's chosen counsel . . . may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.").

Here, the MIL Opinion relies on evidence submitted in connection with motions only tangentially related to the issue of a conflict of interest. As discussion in Section IV.B, the MIL Opinion also relies on incorrect facts and draws numerous adverse inferences based on evidence that undersigned counsel did not submit. *See, e.g.*, MIL Op. at 13 ("That Quinn Emanuel has not offered evidence of a non-conflict shows that it has no such evidence.").[2]  Because the MIL Opinion necessarily halts counsel's ability to represent either Norton or Dr. Dacier in the instant litigation, it should be reversed or, in the alternative, revisited after the Court has an opportunity to evaluate evidence and argument from Norton about the merits of the issue.

---

[2] Of course, there was no reason for Quinn Emanuel to present evidence on these issues in connection with Norton's MILs No 5 and 6, because the issues are unrelated to those motions and were never raised by Columbia in response. Further, the Court neither asked for evidence on these issues in connection with Norton's 2020 sanctions motion, nor mentions the word "conflict" in its order on that motion.

**B.**     **The MIL Opinion Went Outside the Adversarial Issues Presented by the Parties**

If the Court does not reverse, the Court should reconsider its finding that a conflict exists, in part because Norton did not have an opportunity to present evidence or argument about the alleged conflict of interest.  The Court found that a conflict of interest exists even though this issue was not raised by either party in briefing on the underlying motions *in limine*.  Norton respectively requests that the Court reconsider this ruling, which is "outside the adversarial issues presented to the Court by the parties." *Shanklin*, 2010 WL 1781016 at *3.  Motions for reconsideration are appropriate where neither party addressed a key issue underlying the Court's ruling. *David v. King*, 2022 WL 243330, at *5 (E.D. Va. Jan. 24, 2022) ("neither party addressed whether" a former trustee had authorization to act on an estate's behalf . . . therefore when the Court ruled on the scope of his authority "it made a decision outside the adversarial issues presented to [it] by the parties.")

The Court's MIL Opinion faults Norton for failing to present a variety of evidence, including addressing Ms. Haley's opinion from 2020 that a conflict existed, present evidence of a conflict check, or present signed waiver forms.  MIL Opp. at 10-13.  But of course, Norton was not on notice that its ability to represent both Dr. Dacier and Norton was in dispute in connection with ***its own motions*** and accordingly did not have a fair opportunity to collect or present such evidence.  Norton can hardly be faulted for failing to present evidence regarding a conflict of interest in support of a motion it filed to exclude unreliable hearsay testimony and to prevent an inappropriate adverse witness instruction.  The MIL Opinion is based largely on attorney argument and an expert declaration presented during briefing on a Motion for Sanctions that Norton filed after Columbia contacted Dr. Dacier about this litigation, even though Norton's counsel had already disclosed that Dr. Dacier was represented by counsel.  Dkt. 478-2 and Dkt. 478-3, Dacier Dep. Tr. at 8:19-20.  One of several arguments Columbia made in opposition to the Motion for Sanctions was that Dr. Dacier

14

could not be represented by Quinn Emanuel due to a conflict.  The issue of a conflict was—at most—tangential to the 2020 Motion for Sanctions, which would explain why the word "conflict" did not appear anywhere in the Court's opinion denying the Motion.  *See* MIL Op.

The Court's MIL Opinion thus relies on a series of misstatements and half-truths that Norton had no opportunity to rebut because ***it could not have known the issue was in dispute.***  By way of example only, the Court stated, "[t]hat Quinn Emanuel has not offered evidence of a non-conflict shows that it has no such evidence."  MIL Op. at 13.  The Court also faulted Quinn Emanuel for failing to respond to a legal argument raised by Columbia's expert in a June 2020 declaration (MIL Opp. at 10) ("Haley opined that . . . Norton had an ethical obligation to conduct a Conflict Check . . . *[Norton's] ethics expert did not challenge or even speak to Ms. Haley's finding that a conflict existed.*") (italics in original).  The Court further faults counsel for Norton for failing to obtain a Bar Opinion (*Id.* at 11), failing to present evidence of a conflict check (*id.* at 12), and "fail[ing] to establish a lack of conflict in 'personally' representing Dr. Dacier."  *Id.*  Nothing raised in either party's briefs on Motions *in Limine* Nos. 5 and 6 suggested that any of these issues was live.  Had the Court asked for any evidence or information relevant to this issue prior to entering its MIL Opinion, Norton could have provided it.  Instead, the Court denied Norton's request for a hearing on its Motions *in Limine*—where this issue could have been addressed—and issued its MIL Opinion.

### C.    This Case Should Be Stayed Pending Resolution of Any Conflict of Interest

In light of the serious issues presented by the MIL Opinion and this Motion—and the result that the undersigned counsel will be disqualified from representing Dr. Dacier and Norton at trial—the Court should immediately stay the case until the issues are resolved.  Courts within the Fourth Circuit and elsewhere have stayed case proceedings while the issue of disqualifying counsel is pending.  *See Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563, 567 (E.D. Va. 2016) (a stay was entered "until the resolution of [the] motion to disqualify" counsel due to a conflict of interest);

*Gentile v. Ingram*, 2016 U.S. Dist. LEXIS 79238 at *4-5 (E.D.N.C. Apr. 29, 2016) (noting that proceedings in the case were stayed pending resolution of Plaintiffs' motion to disqualify Defendants' counsel); *ABS MB Inv. Ltd. P'ship v. IVAX Corp.*, 1996 U.S. Dist. LEXIS 4502, at *12 (D. Md. Apr. 10, 1996) (staying discovery pending a motion to disqualify counsel); *Williams v. Kopco*, 162 F.R.D. 670, 672 (D. Kan. 1995) (same).

Counsel cannot proceed with the litigation without first resolving the conflict found by the Court in its MIL Opinion.  *See Audio MPEG, Inc.*, 219 F. Supp. at 575.  A stay is particularly warranted where, as here, the issue has arisen on the eve of trial and poses substantial prejudice to Norton's ability to prepare its case.

## V.      CONCLUSION

For the foregoing reasons, Norton respectfully requests that the Court reverse its decision finding a conflict of interest.  In the alternative, Norton requests that the Court reconsider its MIL Opinion and provide an opportunity to present evidence regarding the alleged conflict of interest prior to ruling on the issue.  In either case, an immediate stay should issue until the conflict of interest issue is resolved.

DATED:  March 22, 2022                    NORTONLIFELOCK INC.

                                          By _____/s/ *Dabney J. Carr*_____
                                          Dabney J. Carr, IV, VSB #28679
                                          TROUTMAN PEPPER
                                          HAMILTON SANDERS LLP
                                          P. O. Box 1122
                                          Richmond, Virginia 23218-1122
                                          Telephone: (804) 697-1200
                                          Facsimile: (804) 697-1339
                                          dabney.carr@troutman.com

                                          David A. Nelson (*pro hac vice*)
                                          davenelson@quinnemanuel.com
                                          Stephen A. Swedlow (*pro hac vice*)
                                          stephenswedlow@quinnemanuel.com
                                          Nathan Hamstra (*pro hac vice*)
                                          nathanhamstra@quinnemanuel.com
                                          191 N. Wacker Drive, Suite 2700
                                          Chicago, Illinois 60606
                                          Telephone: (312) 705-7400
                                          Facsimile: (312) 705-7401
                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP

                                          Nina Tallon (*pro hac vice*)
                                          ninatallon@quinnemanuel.com
                                          1300 I Street NW, Suite 900
                                          Washington, DC 20005
                                          Telephone: (703) 967-9395
                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP

                                          Richard Erwine (*pro hac vice)*
                                          richarderwine@quinnemanuel.com
                                          51 Madison Ave, 22nd Floor
                                          New York, NY 10010
                                          Telephone: (212) 849-7135
                                          Facsimile: (212) 849-7100
                                          ATTORNEYS FOR DEFENDANT
                                          NORTONLIFELOCK INC.