IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK,

    Plaintiff,

v.

NORTONLIFELOCK INC. f/k/a
SYMANTEC CORPORATION,

    Defendant.

Civil Action No. 3:13cv808
**UNDER SEAL**

## MEMORANDUM ORDER

This matter comes before the Court on the Trustees of Columbia University in the City of New York's ("Columbia") Motion *in Limine* No. 7 (the "Motion"), part of ECF No. 756.

### Initial High Priority Exhibit Matter

In response to this Motion, (ECF. 756), and in the Parties' Notice of Certain PTO Issues, (ECF No. 744), Norton indicates that it reserves its right to introduce any exhibit not on its original exhibit list subject to objections and "absent scurrilous behavior." Columbia opposes that standard.

The Court also rejects that standard. As to High Priority Exhibit Lists, in addition to the agreed-upon language, handling of exhibits shall be as follows: "While the parties represent that their High Priority Exhibit Lists reflect the exhibits that the parties, in good faith, believe they will introduce at trial, each party may introduce, subject to objections, any of the exhibits in their original exhibit lists only upon a showing of good faith and a compelling explanation demonstrating good cause as to why the exhibit was omitted." (*See also* ECF No. 744-1, at 9–18.)

If a party seeks to offer such an exhibit, that party must give twenty-four (24) hours' written notice with no more than a five-page explanation as to the basis for entering the exhibit. Opposing counsel shall file a written response, also no longer than five pages, before trial commences the next day. If the Court does not have sufficient time to rule, that will inure to the detriment of the party causing delay.

To the extent any party added to its High Priority Exhibit list when applying a different standard, those exhibits must be removed from the party's High Priority Exhibit list, and the party must immediately file documents accordingly.

### Columbia's Motion in *Limine* No. 7

As to Columbia's Motion, Federal Rule of Evidence 403 provides that the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Courts have interpreted this rule to mean that evidence should be excluded from the jury when its probative value is outweighed by the prejudicial effect and danger of confusing the issues. *See, e.g., Carlisle v. Alianz Ins. Co. of N.A.*, No. 2:19cv565, 2021 WL 5104694, at *2 (E.D. Va. Oct. 14, 2021); *see also United States v. Smallwood*, 299 F. Supp. 578, 584–85 (E.D. Va. 2004).

In the Motion, Columbia seeks to exclude "a small subset" of "documents reflecting Columbia's [unaccepted] offers to license different patents to third parties as evidence that would purportedly decrease the amount of reasonable royalty" Norton would agree to during a hypothetical negotiation. (ECF No. 753-2, at 17 (emphasis omitted); *see* ECF Nos. 484-17 through 484-20; 484-32 through 484-36.) Columbia primarily argues that *Georgia-Pacific*

2

Factor 1 does not permit evidence of license *offers* (as opposed to agreements), and that such offers are not sufficiently relevant to a hypothetical negotiation.[1] (ECF No. 753-2, at 7.) *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp 1116 (S.D.N.Y 1970).

Norton concedes that it "is not contending that evidence of Columbia's failed licensing efforts is probative of specific terms that would be reached in a hypothetical negotiation;" *i.e.*, Norton does not contend that this evidence would be relevant to *Georgia-Pacific* Factor 1. (ECF No. 793, at 15.) Instead, Norton argues that this evidence is relevant for two other reasons.[2] (ECF No. 793, at 15.)

First, Norton argues that pursuant to *Georgia-Pacific* Factor 4, the "evidence shows that Columbia was a willing licensor who did not attempt to use its licenses to establish or protect a monopoly." (ECF No. 793, at 15.) This precept is unconvincing, as "there is no dispute on this issue." (ECF No. 860-2, at 12.) Columbia expressly concedes that it does not seek, and has never sought, to monopolize its licenses—indeed, Columbia points out that it "can *only* monetize its patents by licensing them to others." (ECF No. 860-2, at 12 (emphasis added).) Norton's expert Mark Hosfield notes in his Expert Report that "Columbia has a policy of licensing its

---

[1] As an initial matter, these offers do not include the '322 Patent. *See* ECF Nos. 484-17 through 484-20; 484-32 through 484-36.) Norton does not contest this. (ECF No. 793, at 14–21.) Therefore, this evidence is wholly irrelevant as a threshold matter as it relates to the '322 Patent. It is excluded as to the '322 Patent pursuant to Federal Rule of Evidence 402.

Moreover, Columbia's offer to and correspondence with ▌ does not relate to *either* the '115 or '322 Patent. (*See* ECF No. 484-32 through 484-36.) Again, Norton does not appear to contest this. (ECF No. 793, at 14–21.) This evidence is wholly irrelevant as it relates to neither of those patents, and the Court excludes it pursuant to Federal Rule of Evidence 402. For the reasons explained below, the Court also independently will exclude this evidence on several other bases.

[2] Although Norton offers three bases to introduce this evidence, the second two—*Georgia-Pacific* Factor 15 and the small economic value of the patents in the marketplace—involve identical rationales. (ECF No. 793, at 15.) The Court analyzes them together.

patents." (Hosfield R. at 56 & n.318.) Given the parties' agreement as to this fact, the Court finds that allowing evidence of these license offers would be "needlessly . . . cumulative." Fed. R. Evid. 403.

Second, Norton argues that "evidence that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ demonstrates that there was no market demand for the claimed technology," and that "[t]he lack of market demand for the claimed technology informs the value that Columbia would have agreed upon and the royalty Norton would have been willing to pay, two considerations" under *Georgia-Pacific* Factor 15. (ECF No. 793, at 17.) This evidence, however, is not sufficiently probative as to the '115 Patent's market value for at least four reasons.

First, the hypothetical negotiation framework under *Georgia Pacific* Factor 15 assumes validity and infringement (which necessarily increases the value of the patent during the hypothetical negotiation)—but this is not the case when a party merely conveys an offer to another.[3] Second, Columbia's offers involved *portfolios* of patents—not simply one or both of the patents at issue. Whether a party chooses to license an entire *group* of patents is not particularly probative of the value of *one* patent within that portfolio. Third, different parties— who may, for example, employ different technologies and face distinct financial circumstances— may assess a patent's value to them as dramatically greater or lesser than another party would assess the same patent's value to it. Norton has introduced no evidence to show that it and the offerees are sufficiently similar such that their decisions not to license Columbia's patents are

---

[3] Norton argues that under such an approach, "any 'real world' evidence would be excluded from the hypothetical negotiation analysis because in the real world, infringement is not assumed." (ECF No. 793, at 19.) Because this is not the Court's only basis for finding this evidence not sufficiently probative, the Court will not address it this argument.

4

probative of Norton's value assessment of the '115 Patent during the hypothetical negotiation. Moreover, nothing on the record suggests these are representative of the most relevant licenses. Finally, and relatedly, parties may choose not to license patents for myriad reasons other than their assessed value of *one* of the patents in the portfolio. Again, Norton has introduced no evidence to suggest that these parties refused the offers because of qualms about the price of any of the patents, let alone with the price of the '115 Patent in particular.

Norton cannot fairly conclude or argue, based on this group of marketing offers, that "there was no market demand for the claimed technology" at the time. (ECF No. 793.) These offers are not probative of the value Norton would have paid during the hypothetical negotiation, and introduction of the offers would present a risk of unfair prejudice, as the jury may diminish the patents' market value based on these offers when they should not do so. Finally, their lack of relevance risks confusing the jury. The Court thus concludes that even if evidence of such offers were relevant, its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. This finding would also govern the '322 Patent had it been included in the documents at issue.

In sum, Federal Rules of Evidence 402 and 403 bar the admission of "documents reflecting Columbia's [unaccepted] offers to license different patents to third parties as evidence that would purportedly decrease the amount of reasonable royalty" Norton would agree to during a hypothetical negotiation. (ECF No. 753-2, at 17 (emphasis omitted).)

Case 3:13-cv-00808-MHL   Document 1014   Filed 04/01/22   Page 6 of 6 PageID# 43530

Accordingly, the Court GRANTS Columbia's Motion *in Limine* No. 7. (Part of ECF No. 756.) Norton SHALL NOT introduce Exhibits DX0036, DX0037, DX0038, DX0039, DX0158, DX0159, DX0160, DX0161, or DX0162.

It is SO ORDERED.

Date: 3/15/2022
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

6