# Exhibit A

## (CORRECTED)

**PROPOSED PRELIMINARY INSTRUCTIONS**

### <u>JOINTLY PROPOSED JURY INSTRUCTION NO. 1:</u>
### INTRODUCTION

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your

guidance on the nature of the case and on your role as jurors.[1]

---

[1] American Intellectual Property Law Association, Model Patent Jury Instructions § II (2020)
(adapted).

**JOINTLY PROPOSED JURY INSTRUCTION NO. 2**
**THE NATURE OF THE ACTION AND THE PARTIES**

This case has two parts.  The first part of this case alleges patent infringement.

Columbia owns two patents that are asserted in this case.  The first patent owned by Columbia is U.S. Patent No. 8,601,322, which may be called the '322 Patent.  The second patent owned by Columbia is U.S. Patent No. 8,074,115, which may be called the '115 Patent.  These patents may also be referred to as the "Asserted Patents."  In the first part of the case, Columbia contends that the Defendant Norton has infringed those two patents, and contends that Columbia is entitled to reasonable royalty as compensation for Norton's alleged infringement of those patents.

Defendant NortonLifelock or Norton is the Defendant.  Until November 2019, the Defendant Norton was known as Symantec.  Norton disputes that it infringes or has infringed the 115 or 322 patent.[2]

---

[2] American Intellectual Property Law Association, Model Patent Jury Instructions § II.1 (2020) (adapted).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 3
### UNITED STATES PATENTS

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO" or "U.S. PTO").  A patent gives the owner the right to exclude others from making, using, offering to sell, or selling the claimed invention or a product made by a process according to the claimed invention within the United States or importing it into the United States.[3]

You may not be familiar with patents, so I will now show you a brief video that explains what a patent is.  **[Play Video]**[4]

---

[3] American Intellectual Property Law Association, Model Patent Jury Instructions § II.1.1 (2020) (adapted).

[4] Transcript of "The Patent Process: An Overview for Jurors," Federal Judicial Center, November 22, 2013; Dkt. No. 963-1 at 14 (parties jointly request playing Federal Judicial Center's video on the patent system); Dkt. Nos. 695 at 2 (ordering that parties play Federal Judicial Center's video).

**DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 4**
**PATENT INFRINGEMENT**

During the term of a patent, patent law gives the owner of a patent the right to exclude others from importing, making, using, offering to sell, or selling the claimed invention within the United States.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.[5]

A patent claim can be infringed either directly or indirectly.  I will first explain direct infringement.  There are two ways in which a patent claim can be directly infringed.  First, a patent claim can be literally infringed.  Second, a patent claim can be infringed under the "doctrine of equivalents."  A patent claim is literally infringed if Norton's products, or the method performed when using those products, literally include each element in the patent claim.  If Norton's products, or the methods performed when using them, do not literally contain one or more elements of the claim, Norton does not literally infringe that claim.  You must determine literal infringement with respect to each Asserted Claim individually.

If you find that Norton's products, or the methods performed when using them, do not literally infringe an Asserted Claim, the accused product or method still can infringe the patent claim under the doctrine of equivalents.  If you decide that Norton's products do not literally contain a claim element or step, you must then decide if the products, or methods performed when using the products, nonetheless include an equivalent element or step.

One way of showing that a component or method step is an equivalent of a claimed element is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the claim element.  Another way of showing

---

[5] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.0 (2020) (adapted).

that a component or method step is an equivalent of a claimed element is to show that it is insubstantially different from the claimed element.[6]

A patent claim can also be indirectly infringed.  Indirect infringement results if Norton actively induces its customers to infringe a patent claim or contributes to its customers' infringement by providing components that are used to infringe a patent claim.[7]

---

[6] American Intellectual Property Law Association, Model Patent Jury Instructions § II.2 (2020) (adapted).

[7] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.0 (2020) (adapted).

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 4**
**PATENT INFRINGEMENT**

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the claimed invention or a product made by a claimed process, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

A party accused of infringing a patent may deny infringement.

I will now briefly explain the parties' basic contentions in more detail.[8]

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 4, which have been filed separately.

---

[8] 2019 AIPLA Model Patent Jury Instructions II.1.2

## JOINTLY PROPOSED JURY INSTRUCTION NO. 5
### CONTENTIONS OF THE PARTIES (PATENT INFRINGEMENT)

Columbia contends that Norton has directly infringed the Asserted Claims of the Asserted Patents, both literally and under the doctrine of equivalents.  Columbia also contends that Norton has indirectly infringed the Asserted Claims of the Asserted Patents by inducing its customers' infringement or contributing to its customers' infringement.  For the '322 Patent, Columbia asserts that claims 2, 11, and 27 are infringed by Norton.  For the '115 Patent, Columbia asserts that claim 2 is infringed by Norton.  Columbia also contends that Norton's  infringement was "willful," which I will instruct you upon later.   Together, these four patent claims may be referred to as the "Asserted Claims."

Columbia contends that the invention claimed in the Asserted Claims has been used in certain products that Norton sold from 2009 through the present.  The Accused Products include several Norton products that have different names.  Although each product has a different name, Columbia contends that all of the Accused Products infringed the Asserted Claims for substantially the same reason, namely, that each product contains a feature referred to as SONAR/BASH or sometimes just SONAR or just BASH.[9]

Columbia bears the burden of proving infringement by a preponderance of the evidence. You might be familiar with the "beyond a reasonable doubt" standard from criminal law, but that standard does not apply here.  The standard is lower here and Columbia satisfies the preponderance

---

[9] American Intellectual Property Law Association, Model Patent Jury Instructions § II.2 (2020) (adapted).

of the evidence standard if all of the evidence, on balance makes it more likely than not that Norton's accused products and methods infringe.[10]

Norton denies that it is infringing the claims of the 322 and 115 patents, directly or indirectly, literally or under the doctrine of equivalents.

---

[10] 3 Kevin F. O'Malley, *et al.*, Federal Jury Practice and Instructions—Civil § 104.03 (6th ed. Jan. 2022) (for language differentiating the beyond a reasonable doubt standard).

## <u>DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 6</u>
### PATENT CLAIMS

Before you decide whether Norton has infringed the Asserted Claims, you will have to understand the patent claims.  The patent claims are numbered sentences at the end of the patent.  The claims are intended to define, in words, the boundaries of the inventor's property rights.  Each of the Asserted Claims must be considered individually.  A patent owner may assert infringement of one or more claims and you should not draw any inference from the fact that some claims are asserted and others are not.[11]

The Asserted Claims include three types of patent claims.  One type of claim asserted by Columbia is what is called a "process" or "method" claim.  These claims describe a series of steps, rather than components in a device or product.  Another type of claim asserted by Columbia is what is called a "computer-readable medium" claim.  This is a claim to a computer-readable medium like a disk, hard drive, or other data storage device that contains program instructions for a computer to perform a particular process.  A third type of claim asserted by Columbia is what is called a "system" claim.  A system claim covers what a product or device is, not what a product or device does.[12]

---

[11] American Intellectual Property Law Association, Model Patent Jury Instructions § V.2.0 (2020) (adapted); Charge to Jury at 25-26, *Brine, Inc.* v. *STX, LLC*, 99-cv-40167, ECF No. 243-1 (D. Mass. Nov. 14, 2003) (instructing jury to only consider the asserted claims).

[12] *ParkerVision, Inc.* v. *Qualcomm Inc.*, 903 F.3d 1354, 1361 (Fed. Cir. 2018) (stating that apparatus claims "cover what a device *is*, not what a device *does*") (emphases in original); *Rembrandt Soc. Media, LP* v. *Facebook, Inc.*, 950 F. Supp. 2d 876, 879 n.2 (E.D. Va. 2013) (noting that a "system claim is a species of apparatus claim"[]); *Coconut Grove Pads, Inc.* v. *Mich & Mich TGR, Inc.*, 222 F. Supp. 3d 222, 230 (E.D.N.Y. 2016) (stating that "a method claim is a series of steps"); *CyberSource Corp.* v. *Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (describing computer readable medium claims as claims to a medium "containing program instructions for a computer to perform a particular process").

The word "comprising" or "comprises" appears in every Asserted Claim.  The word "comprising" means "including the following [elements] but not excluding" additional elements, components, or method steps.  If you find that one or more of Norton's accused products, or the use of those products, meets all of the elements of an Asserted Claim, that finding constitutes infringement of the claim even if the product or method includes additional components or steps.[13]

The validity of the Asserted Claims is not in question and you should assume that all of the Asserted Claims are valid for the purposes of your decisions in this case.  With regard to the patent infringement part of this case, the only issues for you to decide are whether Norton infringed at least one of the Asserted Claims, and if so, the amount of compensation that Norton owes to Columbia for that infringement.[14]

---

[13] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.6 (2020) (adapted).

[14] Jury Instructions at 20, *Ironburg Inventions Ltd.* v. *Valve Corp.*, 2:17-cv-01182, ECF No. 413 (W.D. Wash. Jan. 29, 2021) (instructing jury that validity is not at issue); 35 U.S.C. § 282(a) (a patent is presumed valid).

## DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 6
### PATENT CLAIMS

Before you decide whether Norton has infringed Columbia's '115 and '322 Patents, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. For the '322 Patent, Columbia asserts that claims 2, 11, and 27 are infringed by Norton. For the '115 Patent, Columbia asserts that claim 2 is infringed by Norton. Together, these four patent claims are referred to as the "Asserted Claims."[15]

The claims are intended to define, in words, the boundaries of the inventor's property rights. Only the claims of the patent can be infringed. Each of the Asserted Claims must be considered individually.

The Asserted Claims include three types of patent claims. One type of claim asserted by Columbia is what is called a "process" or "method" claim. These claims describe a series of steps. Another type of claim asserted by Columbia is what is called a "computer-readable medium" claim. This is a claim to a physical, tangible device, such as a disk, hard drive, or other data storage device, that contains program instructions for a computer to perform a particular process. Another type of claim is a "system" claim that describes a computing system, such as a computer or laptop.[16]

---

[15] American Intellectual Property Law Association, Model Patent Jury Instructions § II.1.1.

[16] *CLS Bank Intern. v. Alice Corp. Pty. Ltd.*, 717 F. 3d 1269, 1288 (Fed. Cir. 2013) (en banc) ("Claim 39 thus nominally recites as its subject matter a physical device — a 'computer readable storage medium'"); *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("CyberSource contends that, by definition, a tangible, man-made article of manufacture such as a 'computer readable medium containing program instructions' . . . ).

The preamble of the Asserted Claims use the term "comprising."  The word "comprising" means "including the following but not excluding others."[17]

[Conditional instruction:  The validity of the Asserted Claims is not at issue in this trial and should not be considered by you.]

**<u>The Parties' Dispute:</u>**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 6, which have been filed separately.

---

[17] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.3.6.

**JOINTLY PROPOSED JURY INSTRUCTION NO. 7**
**MEANING OF CLAIM TERMS**

In determining patent infringement, you will determine whether Norton's accused products, or the method performed when they are used, meet each element of an Asserted Claim by comparing the Accused Product, or method performed when the Accused Product is used, to each Asserted Claim one at a time.  It is my job as the judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any Asserted Claim has been infringed.  I will now tell you the meanings of the following words and groups of words from the claims of the patents.[18]

For the '115 and '322 Patents:

1.   The term "emulator" means "software, alone or in combination with hardware, that permits the monitoring and selective execution of certain parts, or all, of a program."

2.   The phrase "model of function calls for a [part/portion] of the program" means "model of function calls created by modeling program executions."

3.   The term "anomalous" means "deviating from normal," and the "model of function calls" used to make that determination can be built with attack data, attack-free data, or both.

For the '115 Patent:

4.   The phrase "application community" means "members of a community running the same program or a selected portion of the program."[19]

For any words in the Asserted Claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those words.[20]

---

[18] American Intellectual Property Law Association, Model Patent Jury Instructions § V.2.1.

[19] Dkt. Nos. 123 (construing "emulator" and "application community"), 307 (construing "model of function calls for a [part/portion] of the program"), 713 at 9 (construing "anomalous").

[20] Federal Circuit Bar Association, Model Patent Jury Instructions § B.2.1 (2020) (adapted for explanation of terms with no construction).

**JOINTLY PROPOSED JURY INSTRUCTION NO. 8**
**THE NATURE OF THE ACTION FOR '643 PATENT**

I have just described the first part of the case: alleged patent infringement.  I will now describe the second part of the case.  The second part of this case relates to a patent obtained and owned by Norton:  U.S. Patent No. 8,549,643 (which may be called "the '643 Patent").  As I will explain in more detail in a moment, Columbia contends that Norton fraudulently concealed material facts related to the filing of the application that later issued as the 643 patent.  Columbia also contends that two Columbia professors, Drs. Salvatore Stolfo and Angelos Keromytis (who may be referred to as the "Columbia Professors"), are sole or joint inventors of the '643 Patent.

Norton disputes each of those contentions.[21]

---

[21] American Intellectual Property Law Association, Model Patent Jury Instructions § II.1 (2020) (adapted).

**DISPUTED -COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 9**
**CONTENTIONS OF THE PARTIES (FRAUDULENT CONCEALMENT)**

With regard to the '643 Patent, Columbia has asserted a claim of fraudulent concealment against Norton. Columbia's claim is based on its allegation that Norton failed to disclose material facts to Columbia despite having a duty to do so in connection with filing the patent applications that became the '643 Patent.

Specifically, Columbia claims that Norton made three omissions of material fact in connection with filing the patent applications that became the '643 Patent:

1. That after (i) Norton raised the issue of inventorship concerning the provisional patent application that became the '643 Patent, (ii) the Columbia Professors confirmed that they were co-inventors, and (iii) Norton assured the Columbia Professors that they had been added to the list of co-inventors and that Norton would ensure that it had inventorship right, Norton failed to inform Columbia that the Columbia Professors were not listed as co-inventors on that application.

2. That after (i) Norton raised the issue of inventorship concerning the non-provisional patent application that became the '643 Patent, (ii) Norton provided Columbia with a draft of that application that listed the Columbia Professors, and (iii) Columbia Professor Salvatore Stolfo confirmed that he was a co-inventor, Norton failed to inform Columbia that the Columbia Professors were not listed as co-inventors on that application.

3. That after Columbia advised Norton not to file the non-provisional patent application that became the '643 Patent, Norton failed to inform Columbia that Norton had filed that application over Columbia's objection.

Columbia contends that Norton had a duty to disclose the alleged omissions for three reasons. *First*, Columbia alleges that Norton had superior knowledge regarding the filing of the provisional and non-provisional applications that became the '643 Patent, and knew that Columbia did not, and could not, know through the exercise of ordinary diligence (i) that the Columbia Professors were not listed as co-inventors on those applications and (ii) that Norton had filed the non-provisional application. *Second*, Columbia alleges that by voluntarily making statements to Columbia about the patent applications that became the '643 Patent, Norton had a duty not to

-15-

suppress or conceal facts which would materially qualify what it said or the omission of which would make what it said materially misleading.  *Third*, Columbia alleges that Norton made incomplete or misleading statements regarding the inventors listed on the provisional and non-provisional applications that became the '643 Patent, and had a duty to complete or clarify these statements.[22]

Columbia also contends that Norton intentionally concealed this material information for the purpose of inducing Columbia to rely upon Norton's silence, that Columbia actually and reasonably relied on Norton's silence, and that Columbia was thereby harmed.

Norton denies these contentions.

To establish fraudulent concealment, Columbia must establish, by clear and convincing evidence, that:

1.   Norton had a duty to disclose material information to Columbia;

2.   Norton failed to disclose the material information to Columbia;

3.   Norton intentionally concealed material information for the purpose of inducing Columbia to rely upon Norton's representations that concealed material information;

4.   Columbia actually and reasonably relied upon the failure to disclose the material information; and

5.   Columbia suffered loss as a result of such reliance.[23]

---

[22] Transcript at 3069:21-3070:22, *Clinton* v. *Brown & Williamson Holdings Inc.*, 7:05-cv-09907 (S.D.N.Y Dec. 10, 2012) (instructing the jury on duty to disclose); *Banque Arabe et Internationale d'Investissement* v. *Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995) (describing duty to disclose arising from partial disclosure and superior knowledge).

[23] Transcript at 3069:19-3073:1, *Clinton* v. *Brown & Williamson Holdings Inc.*, 7:05-cv-09907 (S.D.N.Y Dec. 10, 2012) (instructing the jury on fraudulent concealment).

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  The clear and convincing evidence standard is lower than the "beyond a reasonable doubt" standard that you might be familiar with from criminal law, but higher than the preponderance of the evidence standard that you should apply in assessing patent infringement.[24]

Norton denies all elements of the fraudulent concealment claim.

---

[24] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil §§ 104.02-03 (6th ed. Jan. 2022) (defining clear and convincing evidence).

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 9**
**CONTENTIONS OF THE PARTIES (FRAUDULENT CONCEALMENT)**

With regard to the '643 Patent, Columbia has asserted a claim of fraudulent concealment against Norton.  Columbia's claim is based on its allegations that Norton failed to disclose material facts to Columbia despite having a duty to do so in connection with filing the patent applications that became the '643 Patent.

Specifically, Columbia claims that Norton made three omissions of material facts:

1.    That after Norton raised the issue of inventorship concerning the provisional patent application that became the '643 Patent, and after the Columbia Professors confirmed that they believed they were co-inventors, Norton allegedly failed to inform Columbia that the Columbia Professors would not be listed as co-inventors on that application.

2.    That after Norton raised the issue of inventorship concerning the non-provisional patent application that became the '643 Patent, and after Columbia Professor Salvatore Stolfo confirmed that he believed he was a co-inventor, Norton allegedly failed to inform Columbia that the Columbia Professors would not be listed as co-inventors on that application.

3.    That after Columbia advised Norton not to file the non-provisional patent application that became the '643 Patent, Norton allegedly misled Columbia to believe that Norton would not file that application over Columbia's objection.

Columbia contends that Norton had a duty to disclose the alleged omissions because (1) Norton had superior knowledge regarding the filing of the provisional and non-provisional applications that became the '643 Patent, and knew that Columbia did not, and could not, know that the Columbia Professors were not listed as co-inventors on those applications, and (2) Norton made incomplete or misleading statements regarding the inventors listed on the provisional and non-provisional applications that became the '643 Patent.  Columbia also contends that it relied on the alleged omissions, and that Columbia was thereby harmed.  Norton denies these contentions.

To establish fraudulent concealment, Columbia must establish, by clear and convincing evidence, that:

1.   Norton made a misrepresentation or a material omission of fact which was false and which Norton knew to be false;

2.   The misrepresentation was made for the purpose of inducing Columbia to rely upon it;

3.   Columbia justifiably relied on the misrepresentation or material omission;

4.   Columbia was injured due to its reliance on the misrepresentation or material omission;

5.   If the above criteria are met for a material omission of fact, that Norton had a duty to disclose the material omission.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  The clear and convincing evidence standard is lower than the "beyond a reasonable doubt" standard that you might be familiar with from criminal law, but higher than the preponderance of the evidence standard that you should apply in assessing patent infringement.[25]

Norton denies all elements of the fraudulent concealment claim.

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 9, which have been filed separately.

---

[25] *Clinton, v. Brown & Williamson Holdings Inc.*, , 2012 WL 12297946 (S.D.N.Y.) citing *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007); N.Y. Pattern Jury Instr.--Civil 3:20.

**JOINTLY PROPOSED JURY INSTRUCTION NO. 10**
**CONTENTIONS OF THE PARTIES (INVENTORSHIP)**

Columbia also contends that Columbia Professors Salvatore Stolfo and Angelos Keromytis are inventors of the '643 Patent.  To fulfill your duties as jurors on this issue, you must determine first whether the Columbia Professors are inventors of the '643 patent, and if so, whether they are (i) the sole inventors of the '643 Patent, or (ii) joint inventors of the '643 Patent, along with Norton's employee, Darren Shou.

The named inventors on a patent are presumed to be the true and only inventors.  To prevail on a claim for inventorship, Columbia must establish, by clear and convincing evidence that the Columbia Professors alone conceived of the invention claimed in the '643 Patent, and thus they are the sole inventors, or alternatively, that the Columbia Professors contributed in a substantial way to the conception of any claim or part of a claim of the '643 Patent such that they are joint inventors.[26]

To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of the patent.  Whether the contribution is significant is measured against the scope of the full invention.  If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor.  Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor.  One who merely suggests an idea or a result to be accomplished, rather than the means of accomplishing it, is not a joint inventor.  Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.  Persons may be joint or co-inventors even though they do not physically

---

[26] Final Jury Instructions at 32, *ICU Medical Inc.* v. *RyMed Technologies Inc.*, 1:07-cv-00468, ECF No. 492 (D. Del. Dec. 17, 2010) (adapted for introductory paragraphs).

work together, but they must have some open line of communication during or at approximately the time of their inventive effort.[27]

The test for conception is whether the inventor or inventors had an idea that was definite and permanent enough that one skilled in the field of the invention could understand the invention. It moreover must be so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.  An inventor need not know that his invention will work for conception to be complete; he need only show that he had the idea.[28]

When a party seeks to prove conception via the oral testimony of a putative inventor (i.e. an alleged unnamed inventor), the party must proffer evidence corroborating that testimony. Evidence of the inventive facts must not rest alone on the testimony of the alleged unnamed inventor himself.[29]

Norton denies that the Columbia Professors are inventors of the '643 Patent.

---

[27] Federal Circuit Bar Association, Model Patent Jury Instructions § B.4.3d (2020); *Nartron Corp.* v. *Schukra U.S.A., Inc.*, 558 F.3d 1352, 1359 (Fed. Cir. 2009).

[28] Jury Charge at 11, *Oasis Research, LLC* v. *Carbonite, Inc.*, 4:10-cv-00435, ECF No. 708 (E.D. Tex. Mar. 22, 2013).

[29] *Singh v. Brake,* 317 F.3d 1334, 1340–41 (Fed. Cir. 2003).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 11
### STIPULATIONS

Before the trial of this case, the Court held a conference with the lawyers for both parties. At this conference, the parties entered into certain stipulations or agreements in which they agreed that certain facts could be taken as true without further proof.

The stipulated facts are as follows:

1.  Columbia is a non-profit education corporation located at 535 West 116th Street, New York, New York.

2.  NortonLifeLock Inc. ("Norton") is a corporation headquartered in Tempe, Arizona. Prior to moving its headquarters to Tempe, Arizona, Norton was headquartered in Mountain View, California.

3.  This case was filed on December 5, 2013.

4.  On August 8, 2019, Norton, then known as Symantec Corporation ("Symantec"), entered into an agreement to sell its Enterprise Security Business to Broadcom Inc. ("Broadcom").

5.  On November 4, 2019, Norton completed the sale of its Enterprise Security Business to Broadcom, and Norton changed its name from Symantec to NortonLifeLock Inc.

6.  Norton was called Symantec from 1982 to November 2019.  References to Symantec during that time period (*i.e.*, 1982 to November 2019) can be understood to be references to the defendant in this case, Norton, including references to Symantec in exhibits, videotaped depositions, or other materials that may be played during trial.

7.  Columbia owns U.S. Patent Nos. 8,074,115 ("'115 Patent") and 8,601,322 ("'322 Patent") (collectively, the "Asserted Patents.")

8.  The Asserted Patents are both entitled "Methods, Media And Systems For Detecting Anomalous Program Executions."  The '115 Patent was issued by the U.S. Patent and

Trademark Office on December 6, 2011, and the '322 Patent was issued by the U.S. Patent and Trademark Office on December 3, 2013. The named inventors of both the '115 and '322 Patents are Salvatore J. Stolfo, Angelos D. Keromytis, and Stylianos Sidiroglou.

9.     The Asserted Patents claim priority to U.S. Provisional Application No. 60/730,289, filed on October 25, 2005.

10.     The Asserted Patents expire on October 25, 2026.

11.     Norton has offered the following software products to consumer end-users under its Norton brand:

| Product | Release Date |
| --- | --- |
| Norton Antivirus (version 2010/17.0 and later) | September 2009 |
| Norton Internet Security (version 2010/17.0 and later) | September 2009 |
| Norton 360 (version 4.0 and later) | February 2010 |
| Norton Security | September 2014 |
| Norton Security with Backup | September 2014 |
| Norton Security Standard | March 2015 |
| Norton Security Deluxe | March 2015 |
| Norton Security Premium | March 2015 |
| Norton Antivirus Basic | September 2016 |
| Norton Security Deluxe with LifeLock | May 2018 |
| Norton Antivirus Plus | April 2019 |
| Norton 360 Standard | April 2019 |
| Norton 360 Deluxe | April 2019 |
| Norton 360 with LifeLock | April 2019 |

12.     Norton has offered the following Symantec Endpoint Protection software products to enterprise customers:

| Product | Release Date |
| --- | --- |
| Symantec Endpoint Protection 12.1 | July 2011 |
| Symantec Endpoint Protection 14 | September 2016 |

| Symantec Endpoint Protection 15 | November 2018 |
|---|---|

13.     The products identified in paragraphs 11 and 12 are accused of infringing the Asserted Patents (collectively, the "Accused Products").

14.     SONAR stands for "Symantec Online Network for Advanced Response."  SONAR is used to, among other things, detect malicious computer programs, which also are called malware.

15.     SONAR is a technology available in the Accused Products.

16.     BASH is an acronym that stands for "Behavioral Analysis and Systems Heuristics." In some instances, the terms BASH and SONAR are used interchangeably to refer to the same technology.  In other instances, BASH refers to a technology within SONAR that uses decision trees to analyze information about a running process, including runtime behaviors to identify malware.

17.     BPE is an acronym for "Behavioral Policy Engine."  BPE uses behavioral rules to identify malware.

18.     Norton is the current owner of U.S. Patent No. 8,549,643 ("'643 Patent"), entitled "Using decoys by a data loss prevention system to protect against unscripted activity."  Norton employee Darren Shou is listed as the sole inventor.

19.     In and around March 2010, Columbia and Symantec worked on a joint grant proposal to the United States Government's Defense Advanced Research Projects Agency ("DARPA").

20.     On April 2, 2010, Symantec filed Provisional Patent Application No. 61/320,609.

21.     On April 4, 2011, Symantec filed non-provisional application, U.S. Patent Application No. 13/066,013, that claimed priority to Provisional Patent Application No.

61/320,609.

22.    On October 1, 2013, the United States Patent and Trademark Office issued U.S. Patent Application No. 13/066,013 as the '643 Patent, which lists Darren Shou as the sole inventor.

23.    Norton non-exclusively licensed the '643 Patent to Broadcom on November 4, 2019 as part of Norton's sale of its Enterprise Security Business to Broadcom.

Since the parties have stipulated to these facts and do not dispute them, you are to take these facts as true for purposes of this case.[30]

---

[30] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil § 101.47 (6th ed. Jan. 2022) (adapted for first and last paragraphs); Dkt No. 705-1.

-25-

## JOINTLY PROPOSED JURY INSTRUCTION NO. 12
### PROVINCE OF THE JUDGE AND JURY

We are about to begin the trial of the case that you just heard about.  Before we begin, I am going to give you instructions that will help you to understand what will be presented and how you should conduct yourself during the trial.

I will start by explaining your duties and the general rules that apply to this process.  Then I will explain some rules that you must use in evaluating testimony and evidence.  I also will explain the positions of the parties and the law you will apply in this case.  Last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.  Please listen very carefully to everything that I say.  You will have a written copy of these instructions with you in the jury room for your reference during deliberations.  You also will have a verdict form, which will list the questions that you must answer to decide this case.

During the trial you will hear me use a few terms that you may not have heard before.  Let me briefly explain some of the most common ones to you.  The party who sues is called the Plaintiff.  In this action, the Plaintiff is Columbia University or "Columbia."  The party being sued is called the Defendant.  In this action, the Defendant is NortonLifeLock, Inc. or "Norton," and until November, 2019, the Defendant was known as Symantec.

You will sometimes hear me refer to "Counsel."  "Counsel" is another way of saying "lawyer" or "attorney."  I will sometimes refer to myself as the "Court."

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible.  You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections.

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question.

When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.  When I say "admitted into evidence" or "received in to evidence," I have determined that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.  You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other.  I do not favor one side or the other.

You have been selected to serve in this case to determine what happened.  You are called the judges of the facts and you will decide whether or not you believe what a witness is telling you, what weight you will give any piece of evidence and, of course, the verdict.

I, on the other hand, am the judge of the law.  I will decide all questions of law that arise during the trial.  Additionally, before you begin your deliberation at the end of the case, I will instruct you in more detail on the law, and you must follow and apply the law as I tell it to you, whether you agree with it or not.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.  Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses.  During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.  Sometimes, you may be excused from the courtroom during these discussions.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision.  You will determine the facts from all the testimony and other evidence that is presented.  You are the sole and exclusive judge of the facts.  But you must accept the rules of law that I give you, whether or not you agree with them.[31]

---

[31] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil §§ 101.01 & 101.10 (6th ed. Jan. 2022) (adapted); 1 Edward D. Manzo, Patent Jury Instruction Handbook § 1:17 (Dec. 2020 Update) (adapted for the second paragraph regarding the organization of the instructions).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 13
### JURY CONDUCT

To insure fairness, you must obey the following rules:

1.      Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2.      Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and your friends.  You may tell people you are a juror, but do not tell them anything else about the case or ask them any questions related to the subject matter of the case.

3.      Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended.  If someone should try to talk to you about the case during the trial, please report it to me immediately.

4.      During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case.  The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

5.      Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

6.      Do not do any research, such as checking dictionaries, or make any investigation about the case on the internet on your own.

7.      Do not post any information about this trial or your thoughts concerning the trial on any social media site like Facebook, or any other platform.

8.      If you happen to own or purchase Norton's products at issue in this case, do not

-29-

perform any independent assessment of the products.  The case should be decided exclusively based on the evidence presented at trial.

9.      Do not make up your mind during the trial about what the verdict should be.  Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

If you need to tell me something, simply give a signed note to the clerk to give to me.[32]

---

[32] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil §§ 101.1 & 101.11 (6th ed. Jan. 2022) (adapted).

**JOINTLY PROPOSED JURY INSTRUCTION NO. 14**
**JUDGE'S QUESTIONS TO WITNESSES**

During the trial, I may sometimes ask a witness a question.  Please do not assume that I have any opinion about the subject matter of my questions.  The Court may ask a question simply to clarify a matter—not to help one side of the case or hurt another side.  The Court's questions are not evidence.[33]

---

[33] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil §101.30 (6th ed. Jan. 2022) (adapted).

## <u>DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 15</u>
### EVIDENCE

The evidence that will be presented to you can be either of two types:  direct or circumstantial.  "Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.[34]

I may take judicial notice of certain facts or events.  When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

Depositions may also be received in evidence.  A deposition consists of sworn, recorded answers to questions asked of the witness in advance of the trial by attorneys for the parties to the case.  The testimony of a witness who, for some reason, is not present to testify from the witness stand may be presented by video that will be played in the courtroom, or may be introduced into evidence by reading from their deposition transcript.  Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.[35]

**Sometimes a corporation will designate an individual to speak on its behalf at a deposition, sometimes referred to as a witness designated to testify pursuant to Rule 30(b)(6).**

---

[34] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil § 101.42 (6th ed. Jan. 2022) (adapted).

[35] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil §§ 101.40, 105.02 (6th ed. Jan. 2022) (adapted).

-32-

**If the person designated by the corporation does not possess personal knowledge of the topics that will be covered during the deposition, the corporation is required to prepare the designees so that they may give knowledgeable answers. When you hear that a witness is designated to testify on a particular topic, the witness's testimony on that topic is the testimony of the corporation and the answers are binding for the corporation. Before the deposition video is played, counsel will tell you the topics on which the witness was designated to speak.[36]**

Statements and arguments of the lawyers are not evidence in the case. If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored. During the trial I may not let you hear the answers to some of the questions that the lawyers asked. I also may rule that you cannot see some of the exhibits that the lawyers wanted you to see. And sometimes I may order you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Some evidence is admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited to the statements of the witness. In other words, you are not limited solely to

---

[36] Federal Rule of Civil Procedure 30(b)(6); *Humanscale Corp.* v. *CompX Int'l, Inc.*, 2009 WL 5091648, at *2 (E.D. Va. Dec. 24, 2009) (describing nature of Rule 30(b)(6) deposition testimony).

what you see and hear as the witnesses testified.   You may draw reasonable inferences or conclusions as you feel justified in light of your experience.

At the end of the trial you will have to make your decision based on the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony.  I urge you to pay close attention to the testimony and other evidence as it is presented at trial.  You may take notes during the trial and consult those notes.[37]

---

[37] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil §§ 101.40 (6th ed. Jan. 2022) (adapted); 1 Edward D. Manzo, Patent Jury Instruction Handbook § 1:17 (Dec. 2020 Update) (explaining that excluded evidence must be disregarded).

## DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 15
### EVIDENCE

The evidence that will be presented to you can be either of two types:  direct or circumstantial.  "Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

I may take judicial notice of certain facts or events.  When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

Depositions may also be received in evidence.  A deposition consists of sworn, recorded answers to questions asked of the witness in advance of the trial by attorneys for the parties to the case.  The testimony of a witness who, for some reason, is not present to testify from the witness stand may be presented by video that will be played in the courtroom, or may be introduced into evidence by reading from their deposition transcript.  Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

Statements and arguments of the lawyers are not evidence in the case.  If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.  During the trial I may not let you hear the answers to some of the questions that the lawyers asked.  I also may rule that you cannot see some of the exhibits that the lawyers wanted you to see.  And sometimes I may order you to disregard things that you saw or heard, or that I struck from the record.  You must completely ignore all of these things.  Do not speculate about what a witness

might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Some evidence is admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the statements of the witness.  In other words, you are not limited solely to what you see and hear as the witnesses testified.  You may draw reasonable inferences or conclusions as you feel justified in light of your experience.

At the end of the trial you will have to make your decision based on the evidence.  You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony.  I urge you to pay close attention to the testimony and other evidence as it is presented at trial.  You may take notes during the trial and consult those notes.[38]

**The Parties' Remaining Dispute:**

The parties only dispute a single paragraph in Columbia's proposed instruction, which Norton omits from its proposed instruction.  This paragraph is bolded in Columbia's proposed instruction.

---

[38] *United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996); *Humanscale Corp.* v. *CompX Int'l, Inc.*, 2009 WL 5091648, at *2 (E.D. Va. Dec. 24, 2009).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 16
### LITIGATION AND COVID DELAY

This case started several years ago, and you will learn during the trial that some of the evidence is based on testimony that was offered or documents that were created a long time ago. Relatedly, many of the witnesses may not be available to testify from the witness stand and, as a result, their testimony will be presented at trial as a video played in the courtroom. Legal matters take a long time to resolve under any circumstances, and this trial has been delayed several times for various reasons and because of the COVID pandemic. You should not hold the delay against either party. To the parties, the issues in this case are just as important today as they were when the case began.[39]

---

[39] Dkt. Nos. 594 (rescheduling trial due to COVID-19), 719 (same); E.D. Va. Gen. Order 2020-16 at 5 (postponing all civil jury trials due to COVID-19); Final Jury Instructions at 13, *Burton et al.* v. *General Motors Corp. et al.*, 1:95-cv-1054, ECF No. 223 (S.D. Ind. Jan. 23, 2008) (instructing jury regarding a litigation delay).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 17
### DEMONSTRATIVE EXHIBITS

Certain demonstrative exhibits such as slides, graphics, or animations have been shown to

you.  Those slides, graphics, or animations will be used for convenience and to help explain the

facts of the case.  They are not themselves evidence or proof of any facts.[40]

---

[40]  Seventh Circuit, Pattern Jury Instructions—Civil Cases § 1.24 (2017) (adapted).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 18
### CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility.  In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness's present testimony.  If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.  An act or omission is "knowingly" done, if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.[41]

---

[41] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil §§ 101.43 & 105.04 (6th ed. Jan. 2022) (adapted).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 19
### THE EXPERT WITNESS

During the trial, you will hear testimony from expert witnesses.  An expert witness is a person who by education and experience has become an expert in some art, science, profession, or calling.  Expert witnesses offer their opinions on matters in which they profess to be an expert, and may also state the reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the expert's opinion entirely.[42]

---

[42] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil § 104.40 (6th ed. Jan. 2022) (adapted).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 20
### TRIAL PROCEDURE

We are about to commence the opening statements in the case.  Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial.  This trial, like all jury trials, comes in six phases.  We have completed the first phase, which was to select you as jurors.

We are now about to begin the second phase, the opening statements.  The opening statements of the lawyers are statements about what each side expects the evidence to show.  The opening statements are not evidence for you to consider in your deliberations.  You must make your decision based on the evidence and not the lawyers' statements and arguments.

In the third phase, the evidence will be presented to you.  Witnesses will take the witness stand and documents will be offered and admitted into evidence.  Columbia goes first in calling witnesses to the witness stand.  These witnesses will be questioned by Columbia's counsel in what is called direct examination.  After the direct examination of a witness is completed, Norton has an opportunity to cross-examine the witness.  After Columbia has presented its witnesses, Norton will call its witnesses, who will also be examined and cross-examined.  The parties may present the testimony of a witness by having the individual testify live for you, by reading from their deposition transcript, or by playing a videotape of the witness's deposition testimony.  All three are acceptable forms of testimony.  A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, meaning that all the evidence relating to an issue may not be presented all at one time but, rather, may be presented at different times during the trial.  You need to keep an open mind as the evidence comes in.  You are to wait until all the

evidence comes in before you make any decisions.  In other words, keep an open mind throughout the entire trial.

In the fourth phase, the lawyers will again have an opportunity to talk to you in what is called "closing arguments."  As with the opening statements, what the lawyers say in the closing arguments is not evidence for you to consider in your deliberations.

In the fifth phase, I will read you the final jury instructions.  I will instruct you on the law that you must apply in this case.  I have already explained to you a little bit about the law.  In the fifth phase, I will explain the law to you in more detail.

Finally, the sixth phase is the time for you to deliberate and reach a verdict.  You will evaluate the evidence, discuss the evidence among yourselves, and decide issues in this case.  We both have a job to do.  I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language.  You must follow my explanation of the law and the patent claim language, even if you do not agree with me.  Nothing I say or do during the trial is intended to indicate what your verdict should be.[43]

---

[43]  American Intellectual Property Law Association, Model Patent Jury Instructions § II.3 (2020) (adapted).

**PROPOSED JURY INSTRUCTIONS FOR USE DURING TRIAL**

**DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 21**
**MISSING WITNESS—MARC DACIER**

You are about to watch 2014 videotaped deposition testimony from Dr. Marc Dacier, a former Norton employee.  In 2020, before this trial was delayed due to COVID, Dr. Dacier indicated a desire to testify live at trial, but Norton has since informed the Court that Dr. Dacier will no longer appear to testify before you.

If a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not.[44]

---

[44] 3 Kevin F. O'Malley, *et al.*, Federal Jury Practice and Instructions—Civil § 104.25 (6th ed. Jan. 2022) (for second paragraph); *Grajales-Romero* v*. Am. Airlines, Inc*., 194 F.3d 288, 298 & nn. 10-11 (1st Cir. 1999) (upholding missing witness instruction that provided factual context regarding the witness's absence); Dkt. No. 889 at 17 (granting request for missing witness instruction).

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 21**
**MISSING WITNESS—MARC DACIER**

[Should the Court enter a missing witness instruction over this objection, it should not include an adverse inference for the reasons given above. At most, Norton submits as a conditional instruction without waiving or prejudicing any of its objections, the following:] You are about to watch 2014 videotaped deposition testimony from Dr. Marc Dacier, a former Norton employee who now resides in Saudi Arabia. Dr. Dacier has not agreed to appear at trial in 2022 despite Norton's request.[45]

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 21, which have been filed separately.

---

[45] *Harper v. B&W Bandag Ctr., Inc.*, 226 Va. 469, 473 (1984) (The instruction is a relic of "the era of trial by ambush" and, with the "advent of liberal discovery in civil cases," "[l]ittle need remains for the instruction today." (Russell, J., concurring)); *see* 2 McCormick on Evidence § 264 (8th ed. 2020) (making similar points); *see* McCormick on Evidence § 264 (noting that wrongly instructing on a missing witness inference "frequently requires retrial"); Va. Model Civ. Jury Instruction No. 2.080 (March 2020), https://www.vacourts.gov/courts/circuit/resources/model_jury_instructions_civil.pdf ("THIS INSTRUCTION SHOULD RARELY BE GIVEN.")

**PROPOSED FINAL JURY INSTRUCTIONS**

<u>**JOINTLY PROPOSED JURY INSTRUCTION NO. 22**</u>
**GENERAL INSTRUCTIONS**

Members of the jury: now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate. You must follow these rules while deliberating and returning your verdict.

When you go to the jury room to begin your deliberations, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

You will then discuss the case with your fellow jurors and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

If you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone—including me—how your votes stand numerically.

Your verdict must be based solely on the evidence and on the law that I have given to you in these instructions. It is your duty to follow the law as I will state it. You must apply the law to the facts as you find them from the evidence in the case. Do not single out one instruction as

stating the law, but consider the instructions as a whole.  Do not be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

Except for when I instruct you on stipulated facts or facts that I have found, nothing I say in these instructions indicates I have any opinion about the facts.  You, not I, have the duty to determine the facts.

Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

A verdict form has been prepared for you.  The verdict form is simply a written notice of the decision that you reach in this case.  After you have reached agreement on a verdict, the foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom. The verdict must be unanimous.[46]

---

[46] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil §§ 103.01 & 103.50 (6th ed. Jan. 2022) (adapted); *see also* Jury Instructions at 15-16, *Furminator, Inc., et al.* v. *Munchkin Inc., et al*., 4:08-cv-00367, ECF No. 456 (E.D. Mo. Feb. 25, 2011) (instructing jury on rules of deliberation).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 23
### SUMMARY OF ISSUES

I will now summarize the issues that you must decide and for which I will provide additional instructions to guide your deliberations.  You must decide the following main issues:

1.     Whether Columbia proved by a preponderance of the evidence that Norton infringed, literally or under the doctrine of equivalents, one or more Asserted Claims of the '115 and '322 Patents, either directly or indirectly.

2.     Whether Columbia proved by a preponderance of the evidence that Norton willfully infringed one or more Asserted Claims of the '115 and '322 Patents.

3.     If you find infringement, the amount of the reasonable royalty that Columbia is entitled to receive from Norton as compensation for infringement.

4.     Whether Columbia proved by clear and convincing evidence that Norton fraudulently concealed material information in connection with obtaining the '643 Patent, and thereby caused harm to Columbia.

5.     If you find that Norton committed fraudulent concealment, the amount of money damages that Norton owes to Columbia to compensate Columbia for harm caused by the fraudulent concealment.

Whether Columbia Professors Salvatore Stolfo and Angelos Keromytis are the sole inventors of the '643 Patent, or joint inventors along with Darren Shou.[47]

---

[47] American Intellectual Property Law Association, Model Patent Jury Instructions § V.1 (2020) (adapted).

-47-

## DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 24
### ASSERTED CLAIMS

As I told you at the start of trial, Columbia asserts that Norton infringes claims 2, 11, and 27 of the '322 Patent and claim 2 of the '115 Patent.  You have the Asserted Patents in your juror notebooks and may refer to them during your deliberations.  The claims are intended to define, in words, the boundaries of the inventor's intellectual property rights.  Each of the claims must be considered individually.[48]

The Asserted Claims include three types of patent claims.  One type of claim asserted by Columbia is what is called a "process" or "method" claim.  These claims describe a series of steps, rather than components in a device or product.  Another type of claim asserted by Columbia is what is called a "computer-readable medium" claim.  This is a claim to a computer-readable medium like a disk, hard drive, or other data storage device that contains program instructions for a computer to perform a particular process.  A third type of claim asserted by Columbia is what is called a "system" claim.  A system claim covers what a product or device is, not what a product or device does.[49]

The validity of the Asserted Claims is not in question and you should assume that all of the Asserted Claims are valid and enforceable for the purposes of your decisions in this case.  With

---

[48] American Intellectual Property Law Association, Model Patent Jury Instructions § V.2.0 (2020) (adapted).

[49] *ParkerVision, Inc.* v. *Qualcomm Inc.*, 903 F.3d 1354, 1361 (Fed. Cir. 2018) (stating that apparatus claims "cover what a device *is*, not what a device *does*") (emphases in original); *Rembrandt Soc. Media, LP* v. *Facebook, Inc.*, 950 F. Supp. 2d 876, 879 n.2 (E.D. Va. 2013) (noting that a "system claim is a species of apparatus claim" []); *Coconut Grove Pads, Inc.* v. *Mich & Mich TGR, Inc.*, 222 F. Supp. 3d 222, 230 (E.D.N.Y. 2016) (stating that "a method claim is a series of steps"); *CyberSource Corp.* v. *Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (describing computer readable medium claims as claims to a medium "containing program instructions for a computer to perform a particular process").

regard to the patent infringement part of this case, the only issues for you to decide are whether Norton infringed at least one of the Asserted Claims, and if so, the amount of compensation that Norton owes to Columbia for that infringement.[50]

---

[50] Jury Instructions at 20, *Ironburg Inventions Ltd.* v. *Valve Corp.*, 2:17-cv-01182, ECF No. 413 (W.D. Wash. Jan. 29, 2021) (instructing jury that validity is not at issue); 35 U.S.C. § 282(a) (a patent is presumed valid).

## DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 24
### ASSERTED CLAIMS

As I told you at the start of trial, Columbia asserts that Norton infringes claims 2, 11, and 27 of the '322 Patent and claim 2 of the '115 Patent.  You have the Asserted Patents in your juror notebooks and may refer to them during your deliberations.  The claims are intended to define, in words, the boundaries of the inventor's property rights.  Only the claims of the patent can be infringed.  Each of the Asserted Claims must be considered individually.

The Asserted Claims include three types of patent claims.  One type of claim asserted by Columbia is what is called a "process" or "method" claim.  These claims describe a series of steps.  Another type of claim asserted by Columbia is what is called a "computer-readable medium" claim.  This is a claim to a physical, tangible device, such as a disk, hard drive, or other data storage device, that contains program instructions for a computer to perform a particular process.  Another type of claim is a "system" claim that describes a computing system, such a computer or laptop. [51]

The preamble of the Asserted Claims use the term "comprising."  The word "comprising" means "including the following but not excluding others." [52]

---

[51] *CLS Bank Intern. v. Alice Corp. Pty. Ltd.*, 717 F. 3d 1269, 1288 (Fed. Cir. 2013) (en banc) ("Claim 39 thus nominally recites as its subject matter a physical device — a 'computer readable storage medium'"); *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("CyberSource contends that, by definition, a tangible, man-made article of manufacture such as a 'computer readable medium containing program instructions' . . . ).

[52] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.6, *citing* Shire Dev., LLC v. Watson Pharm., Inc., 848 F.3d 981, 984–86 (Fed. Cir. 2017); Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp., 831 F.3d 1350, 1358–59 (Fed. Cir. 2016); CIAS Inc. v. Alliance Gaming Corp., 504 F.3d 1356, 1358–61 (Fed. Cir. 2007); Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1331 (Fed. Cir. 2004); Invitrogen Corp. v. Biocrest Mfg. LP, 327 F.3d 1364, 1368 (Fed. Cir. 2003); AFG Indus. v. Cardinal IG Co., 239 F.3d 1239, 1244–45 (Fed. Cir. 2001); PPG Indus. v. Guardian Indus. Corp., 156 F.3d 1351, 1354 (Fed. Cir. 1998); Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1271 (Fed. Cir. 1986); AB Dick Co. v. Burroughs Corp., 713 F.2d 700, 703 (Fed. Cir. 1983)..

The validity of the Asserted Claims is not at issue in this trial and should not be considered by you.

**<u>The Parties' Dispute:</u>**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 24, which have been filed separately.

**JOINTLY PROPOSED JURY INSTRUCTION NO. 25**
**CLAIM CONSTRUCTION FOR THE CASE**

As I told you at the start of the trial, in determining patent infringement, you will determine whether Norton's accused products, or the method performed when they are used, meets each element of an Asserted Claim by comparing the Accused Product or method performed when the Accused Product is used to each Asserted Claim one at a time. It is my job as the judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any Asserted Claim has been infringed. I will now tell you the meanings of the following words and groups of words from the claims of the patents.[53]

For the '115 and '322 Patents:

1. The term "emulator" means "software, alone or in combination with hardware, that permits the monitoring and selective execution of certain parts, or all, of a program."

2. The phrase "model of function calls for a [part/portion] of the program" means "model of function calls created by modeling program executions."

3. The term "anomalous" means "deviating from normal," and the "model of function calls" used to make that determination can be built with attack data, attack-free data, or both.

For the '115 Patent:

4. The phrase "application community" means "members of a community running the same program or a selected portion of the program."[54]

[The Court's claim constructions are in your juror notebooks and you may refer to them during your deliberations.]

---

[53] American Intellectual Property Law Association, Model Patent Jury Instructions § V.2.1 (2020).

[54] Dkt. Nos. 123 (construing "emulator" and "application community"), 307 (construing "model of function calls for a [part/portion] of the program"), 713 at 9 (construing "anomalous").

For any words in the Asserted Claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those words.[55]

---

[55] Federal Circuit Bar Association, Model Patent Jury Instructions § B.2.1 (2020) (adapted for explanation of terms with no construction).

**<u>JOINTLY PROPOSED JURY INSTRUCTION NO. 26</u>**
**INFRINGEMENT—GENERALLY**

Questions [1] through [X] of the Verdict Form read as follows: **[READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].**

I will now instruct you as to the rules you must follow when deciding whether Columbia proved that Norton infringed any of the Asserted Claims of the '115 and '322 Patents.

Patent law gives the owner of a patent the right to exclude others from importing, making, using, offering to sell, or selling the claimed invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Columbia alleges that Norton's accused products, or the methods performed when using them, infringed claims 2, 11, and 27 of the '322 Patent and claim 2 of the '115 Patent.

In deciding the issue of infringement, you must compare Norton's accused products and the methods performed when using those products to the Asserted Claims of the '115 Patent and '322 Patent. There are a number of ways in which you can find infringement, as I will explain in the following instructions.[56]

---

[56] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.0 (2020) (adapted).

-54-

## JOINTLY PROPOSED JURY INSTRUCTION NO. 27
## DIRECT INFRINGEMENT—LITERAL INFRINGEMENT

First, you should consider whether Columbia proved that Norton directly infringed any of the Asserted Claims.  There are two types of direct infringement:  (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."

To determine literal infringement, you must compare the accused product, or the method performed when using the product, to the elements of each Asserted Claim.  A patent claim is literally infringed if Norton's product or the method performed when using the product literally includes each element or performs each method step recited in the Asserted Claim.  You must assess and determine literal infringement with respect to each Asserted Claim individually.

The same component or method step of the accused product may satisfy more than one element of a claim.  Additionally, two components or method steps of the accused product may satisfy a single claim element.  As I told you at the start of trial, the word "comprising" or "comprises" is used in the preamble or the body of every Asserted Claim.  The word "comprising" means "including the following [elements] but not excluding" additional product components or method steps.  If you find that one or more of Norton's accused products, or the use of those products, meets all of the elements of an Asserted Claim that constitutes infringement of the claim, even if the product includes additional components or the use of the product includes additional method steps.

In assessing direct literal patent infringement, Norton's knowledge of or lack of knowledge of the Asserted Patents is not relevant.  A party can directly infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent.[57]

---

[57] American Intellectual Property Law Association, Model Patent Jury Instructions §§ V.3.1, V.3.2, V.3.6 (2020) (adapted).

## <u>DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 28</u>
### DIRECT INFRINGEMENT—JOINT INFRINGEMENT

Direct infringement occurs where all steps of a claimed method are performed by or are attributed to a single party.  Where more than one party is involved in practicing the steps of a patent claim, you must determine whether the acts of one party are attributable to the other party, such that the second party effectively performed all of the steps of the patent claim.  You should find that the acts of a first party are attributable to the second party if the second party directs or controls the first party's **performance of the claim steps**.

**To prove that Norton directed or controlled the acts of its customers, Columbia must prove either (i) that Norton instructed its customers to perform the claim steps or (ii) Norton conditioned its customers' participation in an activity or receipt of a benefit from Norton on performance of the claim steps and Norton established how or when the claim steps were performed.[58]**

---

[58] Northern District of California, Model Patent Jury Instructions § B.3.3a (2019) (adapted); *Akamai Techs., Inc.* v. *Limelight Networks, Inc.*, 797 F.3d 1020, 1022-24 (Fed. Cir. 2015).

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 28**
**DIRECT INFRINGEMENT—JOINT INFRINGEMENT**

Direct infringement occurs where all steps of a claimed method are performed by or are attributed to a single party.  Where more than one party is involved in practicing the steps of a patent claim, you must determine whether the acts of one party are attributable to the other party, such that the second party effectively performed all of the steps of the patent claim.  You should find that the acts of a first party are attributable to the second party if the second party directs or controls the first party's **when the first party performed those acts**.[59]

**The Parties' Remaining Dispute:**

The parties remaining dispute is limited to the last clause of the first paragraph in Columbia's proposed instruction, for which the parties offer competing proposals, and the second paragraph in Columbia's proposed instruction, which is omitted from Norton's proposed construction.  The parties' remaining disputes are bolded in the parties' competing instructions.

---

[59] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.3 (2020) (adapted), *citing* Limelight Networks, Inc. v. Akamai Techs., Inc., 572 U.S. 915, 921 (2014); Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc); Eli Lilly and Co. v. Teva Parenteral Meds., 845 F.3d 1357, 1364–65 (Fed. Cir. 2017); Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1351–53 (Fed. Cir. 2015); Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318 (Fed. Cir. 2008).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 29
### INFRINGEMENT OF DEPENDENT CLAIMS

As relevant here, there are two different types of claims in the '115 Patent.  One type is called an independent claim.  The other is called a dependent claim.

As relevant here, claim 1 of the '115 patent is an independent claim.  An independent claim must be read separately from the other claims to determine the scope of the claim.  A dependent claim refers to at least one other claim in the patent.  As relevant here, claim 2 of the '115 patent is a dependent claim that refers to claim 1 of the '115 patent.  A dependent claim includes all elements recited in the dependent claim, as well as all of the additional elements of the independent claim to which it refers.  As relevant here, to establish infringement of claim 2 of the '115, Columbia must show by a preponderance of the evidence that the method performed when using Norton's accused products includes each step of claim 1 and claim 2 of the '115 Patent.[60]

---

[60] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.5 (2020) (adapted)(citing 35 U.S.C. § 112; *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552–53 n.9 & n.10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985)).

**JOINTLY PROPOSED JURY INSTRUCTION NO. 30**
**DIRECT INFRINGEMENT**
**INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If you decide that Norton's accused product or method does not literally infringe an asserted patent claim, you must then decide whether the accused product or method infringes the asserted claim under what is called the "doctrine of equivalents."  Under the doctrine of equivalents, if you find that the accused product or method does not literally include a particular claim element or step, you can still find infringement if you conclude that the accused product of method includes an equivalent element or performs an equivalent step.

One way of showing that a component or method step is an equivalent of a claimed element is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the claim element.  Another way of showing that a component or method step is an equivalent of a claimed element is to show that it is insubstantially different from the claimed element.[61]

---

[61] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.7 (2020) (adapted).

## JOINTLY PROPOSED JURY INSTRUCTION NO. 31
### ACTIVELY INDUCING PATENT INFRINGEMENT

In this case, Norton is accused of actively inducing its customers to directly infringe Columbia's patents, either literally or under the doctrine of equivalents.  To find that Norton actively induced infringement, Columbia must prove by a preponderance of the evidence that (1) Norton's customers directly infringed an Asserted Claim, either literally or under the doctrine of equivalents, and (2) Norton actively induced these acts of infringement.

To prove active inducement, Columbia must establish that it is more likely than not that:

1.  Norton aided, instructed, or otherwise acted with the intent to cause acts by its customers that would constitute direct infringement of the patent;

2.  Norton knew of the patent, or showed willful blindness to the existence of the patent, at that time;

3.  Norton knew, or showed willful blindness, that the actions of its customers would infringe at least one claim of the patent; and

4.  Norton's customers infringed at least one patent claim.

Norton's knowledge can be established either if you conclude that it is more likely than not that Norton knew of the asserted patent or if you conclude that Norton was willfully blind to the asserted patent.  To find willful blindness, you must find that it is more likely than not that (1) Norton believed that there was a high probability that a patent existed covering the accused product or method, and (2) Norton took deliberate actions to avoid learning of the patent.[62]

---

[62] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.8 (2020) (adapted) (citing 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 563 U.S. 754 (2011); *Takeda Pharm., USA v. West-Ward Pharm. Grp.*, 785 F.3d 625, 630–31 (Fed. Cir. 2015); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372-1373 (Fed. Cir. 2015); *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed.

## JOINTLY PROPOSED JURY INSTRUCTION NO. 32
### CONTRIBUTORY INFRINGEMENT

Columbia asserts that Norton's customers directly infringe the Asserted Claims and that Norton has contributed to its customers' infringement.  To find contributory infringement, you must find that Norton's customers directly infringed an Asserted Claim, either literally or under the doctrine of equivalents.  In addition, you must find by a preponderance of the evidence that:

1.   Norton sold or offered for sale a component used by customers in an infringing manner;

2.   The component or apparatus is not a staple article or commodity of commerce with substantial non-infringing use;

3.   The component or apparatus constitutes a material part of the claimed invention;

4.   Norton knew that the component was especially made or adapted for use in an infringing manner by its customers.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Norton's knowledge can be established either if you conclude that it is more likely than not that Norton knew that the component was especially made or adapted for use in an infringing manner by its customers or if you conclude that Norton was willfully blind to the asserted patent. To find willful blindness, you must find that it is more likely than not that (1) Norton believed that

------

Cir. 2003); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468–69 (Fed. Cir. 1990)).

there was a high probability that a patent existed covering the accused product or method, and

(2) Norton took actions to avoid learning of the patent.[63]

---

[63] American Intellectual Property Law Association, Model Patent Jury Instructions § V.3.10 (2020) (adapted) (citing 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 563 U.S. 754 (2011); *Takeda Pharm., USA v. West-Ward Pharm. Grp.*, 785 F.3d 625, 630–31 (Fed. Cir. 2015); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372-1373 (Fed. Cir. 2015); *DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468–69 (Fed. Cir. 1990)).

## DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 33
### WILLFUL INFRINGEMENT—GENERALLY

Columbia contends that Norton willfully infringed the Asserted Claims of the '115 and '322 Patents.  You are to consider the issue of willful infringement only if you have found that Norton directly or indirectly infringed an Asserted Claim.  Infringement is willful if Columbia proves by a preponderance of the evidence that Norton knowingly infringed an Asserted Claim or made itself willfully blind to its infringement of Columbia's Asserted Patents.[64]

You also may find willful infringement if you conclude that Norton knowingly continued to infringe the Asserted Claims after Columbia asserted those claims against Norton in this litigation in 2013.[65]

---

[64] Seventh Circuit, Pattern Patent Jury Instructions § 11.2.14 (2020) (adapted); *Eko Brands, LLC* v. *Adrian Rivera Maynez Enters., Inc*., 946 F.3d 1367, 1376-79 (Fed. Cir. 2020) ("Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement."); *Motiva Pats., LLC* v. *Sony Corp*., 408 F. Supp. 3d 819, 838 (E.D. Tex. 2019) ("willful blindness is sufficient to state a claim for willful infringement").

[65] *NXP USA Inc.* v. *MediaTek Inc*., 2022 WL 799071, at *4 (E.D. Tex. Mar. 15, 2022) (allegations of infringement continuing after "notice of a complaint" states a claim for willful infringement).

## DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 33
## WILLFUL INFRINGEMENT—GENERALLY

Columbia contends that Norton willfully infringed the Asserted Claims of the '115 and '322 Patents.  You are to consider the issue of willful infringement only if you have found that Norton directly or indirectly infringed an Asserted Claim.

In addition, to prove willful infringement, Columbia must establish by a preponderance of the evidence that Norton's allegedly infringing conduct was egregious. Egregious conduct is conduct that is willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.  In deciding whether Norton's allegedly infringing conduct was egregious, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors:

(1)    Whether Norton knew, or it was so obvious that Norton should have known, that its actions constituted infringement of a valid asserted patent;

(2)    Whether Norton intentionally copied a product of Columbia covered by the asserted patents;

(3)    Whether Norton acted with reckless disregard of the claims of the Columbia's asserted patents;

(4)    Whether Norton acted in a manner consistent with the standards of commerce for its industry; or

(5)    Whether Norton tried to cover up its alleged infringement.[66]

---

[66] Model Patent Jury Instructions for the Northern District of California (Oct. 2019) – Instruction B.3.8; *Finjan, Inc. v. Sophos, Inc.*, 3:14-cv-01197-WHO Dkt. 396 (Jury Instructions); 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. __, 136 S. Ct. 1923 (2016); 35 U.S.C. § 298; FCBA Model Patent Jury Instructions at B.3.3.10; *Apple Inc. v. Samsung Electronics Co., Ltd.*, 12–CV–00630–LHK, ECF No. 1848 ("Final Jury Instructions") at 39; *Deere & Co. v. AGCO Corp.*, 2019 WL 668492, at *5 (D. Del. Feb. 19, 2019).

**<u>The Parties' Dispute:</u>**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction

No. 33, which have been filed separately.

**DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 34**
**PATENT INFRINGEMENT DAMAGES**

I will now instruct you about the measure of money damages if you find that Norton infringed an Asserted Claim.  If you find infringement, Columbia is entitled to at least a reasonable royalty to compensate it for Norton's use of the patented technology in the accused products.[67]  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the patented invention.  A reasonable royalty is the amount of payment that the parties would have agreed to in a hypothetical negotiation taking place immediately before the first act of infringement, which is December 6, 2011 in the case of the '115 Patent and December 3, 2013 in the case of the '322 Patent.[68]

Of course, we know that the parties here did not agree to a license and royalty payment in reality in 2011 or 2013.  But, to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began.  This is why it is called a "hypothetical" license negotiation.  You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began.  You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

The reasonable royalty award must be based on the incremental value that the Asserted Claims add to the end product.  When the infringing product or method have both patented and

---

[67] Federal Circuit Bar Association, Model Patent Jury Instructions § B.5.5 (2020) (adapted).

[68] Federal Circuit Bar Association, Model Patent Jury Instructions § B.5.6 (2020) (adapted).

unpatented features, measuring this value requires a determination of the value added by the asserted claims.

In determining the amount of a reasonable royalty, you should consider the evidence that has been presented to you in this case regarding the amount of the reasonable royalty.  You may also consider any other factors which in your mind would have increased or decreased the royalty Norton would have been willing to pay and Columbia would have been willing to accept. [69]

---

[69] American Intellectual Property Law Association, Model Patent Jury Instructions §§ V.10.2.5.1-3 (2020) (adapted).

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 34**
**PATENT INFRINGEMENT DAMAGES**

I will now instruct you about the measure of money damages if you find that Norton infringed an Asserted Claim.  If you find infringement, Columbia is entitled to a reasonable royalty to compensate it for Norton's use of the patented technology in the accused products.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the patented invention.  A reasonable royalty is the amount of payment that the parties would have agreed to in a hypothetical negotiation taking place immediately before the first act of alleged infringement, which is December 6, 2011 in the case of the '115 Patent and December 3, 2013 in the case of the '322 Patent.

Of course, we know that they did not agree to a license and royalty payment. But, to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.[70]

The reasonable royalty award must be based on the incremental value that the Asserted Claims add to the end product. When the infringing product or method have both patented and

---

[70] 2019 AIPLA Model Patent Jury Instructions citing *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109–10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).

unpatented features, measuring this value requires a determination of the value added by the asserted claims. The ultimate combination of royalty base and royalty rate must reflect the value attributable only to the infringing features of the product or method, and no more.[71]

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by Norton to license other patents comparable to the 115 or 322 patent.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

---

[71] 2019 AIPLA Model Patent Jury Instructions citing 35 U.S.C. § 284; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977–79 (Fed. Cir. 2018); *Exmark Mfg. Co., v. Briggs & Stratton Power Group,* 879 F.3d 1332, 1347–49 (Fed. Cir. 2018); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

5.  The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.  The effect of selling the patented product or method in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.  The duration of the 115 or 322 patents and the term of the license.

8.  The established profitability of the product made under the 115 or 322 patents.

9.  The utility and advantages of the asserted claims over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the asserted claims; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11. The extent to which Norton has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the asserted claims themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee would have agreed upon at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.[72]

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, profits earned by the infringer, and non-infringing alternatives.[73]

---

[72] 2019 AIPLA Model Patent Jury Instructions citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012); *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108–10 (Fed. Cir. 1996); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898–900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

[73] 2019 AIPLA Model Patent Jury Instructions 10.2.5.7, citing *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770–73 (Fed. Cir. 2014); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25, 1333 (Fed. Cir. 2009); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.*, 862 F.2d

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 34, which have been filed separately.

---

1564, 1571–72 (Fed. Cir. 1988); *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933).

**DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 35**
**REASONABLE ROYALTY—APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the asserted claims, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Norton's size, reputation, or market position. A royalty compensating Columbia for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features.[74]

---

[74] Federal Circuit Bar Association, Model Patent Jury Instructions § B.5.12 (2020) (adapted).

### DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 35
### REASONABLE ROYALTY—APPORTIONMENT

The amount you find as damages must be based on the value attributable to the asserted claims, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Norton's size, reputation, or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the asserted claims. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the asserted claims alone.[75]

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 35, which have been filed separately.

---

[75] 2019 AIPLA Model Patent Jury Instructions citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977–79 (Fed. Cir. 2018); *Exmark Mfg. Co., v. Briggs & Stratton Power Grp.*, 879 F.3d 1332, 1347–49 (Fed. Cir. 2018); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1319 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

**DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 36**
**REASONABLE ROYALTY—LUMP SUM VS. RUNNING ROYALTY**

The parties disagree about the form a reasonable royalty may take at the hypothetical negotiation. A reasonable royalty can be paid either in the form of a running royalty or a one-time lump sum payment. A running royalty is calculated based on infringing product sales. The amount of the royalty increases or decreases depending on sales of the product with the infringing technology, **and thus the patent owner and licensee share the risk of failure or success with respect to infringing product sales**. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case. On the jury verdict form, you will be asked to indicate whether the reasonable royalty is a running royalty or a one-time lump sum payment, and you also will be asked to indicate the total amount of the royalty for past acts of infringement through [April 11, 2022].[76]

---

[76] Federal Circuit Bar Association, Model Patent Jury Instructions § B.5.7 (2020) (adapted).

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 36**
**REASONABLE ROYALTY—LUMP SUM VS. RUNNING ROYALTY**

The parties disagree about the form a reasonable royalty may take at the hypothetical negotiation. A reasonable royalty can be paid either in the form of a running royalty or a one-time lump sum payment. A running royalty is calculated based on infringing product sales. The amount of the royalty increases or decreases depending on sales of the product with the infringing technology. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case. On the jury verdict form, you will be asked to indicate whether the reasonable royalty is a running royalty or a one-time lump sum payment, and you also will be asked to indicate the total amount of the royalty for past acts of infringement through [April 11, 2022].[77]

**The Parties' Remaining Dispute:**

The parties only dispute a single clause in Columbia's proposed instruction, which Norton omits from its proposed instruction. This clause is bolded in Columbia's proposed instruction.

---

[77] Federal Circuit Bar Association, Model Patent Jury Instructions § B.5.7 (2020); 35 U.S.C. §284; Northern District of California Model Jury Instructions, section 5.7, 2018. ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010) ("The trial court must carefully tie proof of damages to the claimed invention's footprint in the market place."); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301 (Fed. Cir. 2009); VirnetX, Inc. v. Cisco Systems, Inc., 767 F.3d 1308, 1326, 1327 (Fed. Cir. 2014) ("No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features…").

### DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 37
### REASONABLE ROYALTY DAMAGES FOR SALES TO CUSTOMERS
### LOCATED OUTSIDE OF THE UNITED STATES

If you award damages, you must determine whether damages should include sales to customers located outside of the United States.[78]

Columbia is entitled to damages based on sales to customers located outside of the United States if you find that the infringing product sold to those customers was made in or distributed from the United States, even if the infringing product is delivered to a customer and used by the customer outside of the United States.[79]

Columbia also is entitled to damages based on sales to customers located outside the United States if those sales were substantially made in the United States.  A sale can be substantially made in the United States even if delivery is made outside of the United States.  Whether a sale substantially occurs in the United States depends on the facts, including where substantial activities of the sales transaction occurred.[80]

---

[78] *WesternGeco LLC* v. *ION Geophysical Corp.*, 138 S. Ct. 2129, 2138-39 (2018) (damages can be awarded on foreign revenue that is the result of domestic acts of infringement).

[79] *Centripetal Networks, Inc.* v. *Cisco Sys., Inc.*, 526 F. Supp. 3d 137, 152-53 (E.D. Va. 2021) (*WesternGeco* suggests that foreign damages are available for products "made in the United States but sold internationally"); Final Jury Instructions at 37, *Archerdx, LLC* v. *Qiagen Scis., LLC*, 18-cv-1019, ECF No. 462 (D. Del. Aug. 27, 2021) (instructing that damages may be awarded on foreign sales where (i) the infringing product was made or sold within the United States and (ii) domestic infringement was a "substantial cause" of the sale).

[80] Final Jury Instructions at 12-13, *California Institute Of Tech.* v. *Broadcom*, 2:16-cv-3714, ECF No. 2112 (C.D. Cal. Jan. 29. 2020) (instructing that a sale occurs within the United States if "a substantial level of sales activity occurs" domestically), *aff'd in relevant part*, 25 F.4th 976, 992-93 (Fed. Cir. 2022); *Carnegie Mellon Univ.* v. *Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1309-10 (Fed. Cir. 2015) (finding sufficient evidence that products were sold from the United States where there was "a substantial level of sales activity . . . within the United States"); Final Jury Instructions at 37, *Archerdx, LLC* v. *Qiagen Scis., LLC*, 18-cv-1019, ECF No. 462 (D. Del. Aug. 27, 2021) (instructing that damages may be awarded on foreign sales where (i) the infringing product was

Finally, Columbia is entitled to damages based on sales to customers located outside the United States if you find that acts of infringement within the United States substantially and with reasonable foreseeability caused the foreign sales.[81]

On the jury verdict form, you will be asked to indicate whether sales to foreign customers were included in your damages award, the basis on which you decided that sales to foreign customers should be included in the damages award, and the amount of damages you decided to award for sales to foreign customers.

---

made or sold within the United States and (ii) domestic infringement was a "substantial cause" of the sale).

[81] *SIMO Holdings Inc.* v. *Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 351 (S.D.N.Y. 2019) (patentees may recover for foreign injuries that were "proximately caused by [] domestic acts"); *Plastronics Socket Partners, Ltd.* v. *Dong Weon Hwang*, 2019 WL 4392525, at *4-5 (E.D. Tex. June 11, 2019) (foreign damages were recoverable if "damages were caused by domestic infringement"); *Rite-Hite Corp.* v. *Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995) ("reasonably foreseeable" injuries should be compensated).

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 37**
**REASONABLE ROYALTY DAMAGES FOR SALES TO CUSTOMERS**
**LOCATED OUTSIDE OF THE UNITED STATES**

Because U.S. patent law does not operate extraterritorially to prohibit conduct abroad, Columbia cannot obtain compensation for Norton's foreign exploitation of a patented invention because extraterritorial activities do not infringe. This is true even if the foreign exploitation of a patented invention is the direct, foreseeable result of domestic infringement.[82]

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 37, which have been filed separately.

---

[82] *Texas Advanced Optoelectronic Solutions, Inc. v Intersil Corporation*,. 4:08-cv-451-RAS2015 WL 1227999 (E.D.Tex.) citing  35 U.S.C. § 284; Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); Integra Lifesciences I, Ltd. v. Merck KGaA, 331 F.3d 860, 870 (Fed. Cir. 2003); Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 38
### DOUBTS RESOLVED AGAINST THE INFRINGER

Any doubts that you may have on the issue of damages due to Norton's failure to keep proper records should be decided in favor of Columbia.  Any confusion or difficulty caused by Norton's records also should be held against Norton, not Columbia.[83]

---

[83] American Intellectual Property Law Association, Model Patent Jury Instructions § V.10.3 (2020) (adapted).

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 38**
**DOUBTS RESOLVED AGAINST THE INFRINGER**

[N/A – NO SUCH INSTRUCTION SHOULD BE GIVEN]

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction

No. 38, which have been filed separately.

## DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 39
### FRAUDULENT CONCEALMENT - INTRODUCTION

[NO INSTRUCTION SHOULD BE GIVEN]

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 39**
**FRAUDULENT CONCEALMENT - INTRODUCTION**

In addition to claiming patent infringement, Columbia has asserted a claim of fraudulent concealment against Norton.

If you find that Columbia has proven by clear and convincing evidence that Professor Keroymytis and/or Professor Stoflo should be named inventors you may consider Columbia's claim of fraudulent concealment.  If you find that that Columbia has not proven by clear and convincing evidence that Professor Keroymytis and/or Professor Stoflo should be named inventors you may not consider Columbia's claim of fraudulent concealment.

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 39, which have been filed separately.

## DISPUTED - COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 39A
### FRAUDULENT CONCEALMENT ELEMENTS

To prove the essential elements of Columbia's fraudulent concealment claim against Norton, the burden is on Columbia to establish by clear and convincing evidence the following five elements:

First, that Norton had a duty to disclose material information to Columbia;

Second, that Norton failed to disclose the material information to Columbia;

Third, that Norton intentionally concealed material information for the purpose of inducing Columbia to rely on Norton's representations that concealed material information;

Fourth, that Columbia actually and reasonably relied upon Norton's representations, which failed to disclose all of the material information; and

Fifth, that Columbia suffered loss as a result of such reliance.[84]

---

[84] Transcript at 3069:19-3073:1, *Clinton* v. *Brown & Williamson Holdings Inc*., 7:05-cv-09907 (S.D.N.Y Dec. 10, 2012) (instructing the jury on fraudulent concealment).

## DISPUTED - NORTON'S PROPOSED JURY INSTRUCTION NO. 39A
### FRAUDULENT CONCEALMENT ELEMENTS

In order to prove the essential elements of Columbia's fraudulent concealment claim against Norton, the burden is on Columbia to establish by clear and convincing evidence the following five elements:

1. First, that prior to filing the 643 patent, Defendant Norton failed to disclose material information to Columbia;

2. Second, that Norton had a duty to Columbia to disclose the material information;

3. Third, that Norton intended to defraud Columbia when it failed to disclose the material information;

4. Fourth, that Columbia actually and reasonably relied upon the failure to disclose material information; and

5. Fifth, that Columbia suffered damage as a result of such reliance.[85]

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 39A, which have been filed separately.

---

[85] *Clinton, v. Brown & Williamson Holdings Inc.*, , 2012 WL 12297946 (S.D.N.Y.) citing *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007); N.Y. Pattern Jury Instr.--Civil 3:20.

## DISPUTED - COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 39B
### FRAUDULENT CONCEALMENT

I will now discuss in greater detail each of the five elements of Columbia's fraudulent concealment claim against Norton. The first element is the duty to disclose.

Norton had a duty to disclose material facts regarding the provisional and non-provisional patent applications that became the '643 Patent if Columbia proves by clear and convincing evidence that Norton had superior knowledge of those facts, such that Norton's failure to disclose that information to Columbia was inherently unfair.

Superior knowledge means that there was information uniquely known by Norton that Columbia could not have discovered on its own through the exercise of ordinary diligence. By uniquely I do not mean that the information had to be exclusively within the realm of Norton's knowledge and Norton's knowledge only, but rather just that Norton's knowledge was superior to what Columbia could have discovered through ordinary diligence.

Even if a party has no obligation to speak with respect to a matter, if he or she decides to do so, either voluntarily or in response to an inquiry, he or she must not only tell the truth, but must not withhold facts which will materially qualify what is said or the omission of which would make what is said materially misleading.

Similarly, a duty to disclose will arise from a partial or ambiguous statement if there is a need to complete or clarify the partial or ambiguous statement. In other words, once a party has undertaken to mention a relevant fact to the other party, it cannot give only half of the truth.[86]

---

[86] Transcript at 3069:21-3070:22, *Clinton* v. *Brown & Williamson Holdings Inc.*, 7:05-cv-09907 (S.D.N.Y Dec. 10, 2012) (instructing the jury on duty to disclose); *Banque Arabe et Internationale d'Investissement* v. *Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995) (describing duty to disclose arising from partial disclosure and superior knowledge).

As the second element of its fraudulent concealment claim, Columbia must prove by clear and convincing evidence that Norton failed to disclose particular facts to Columbia regarding the inventorship and filing of the patent applications that became the '643 Patent. Columbia alleges that Norton failed to disclose three facts and that these facts were material: (1) that Professors Stolfo and Keromytis were not, in fact, named as inventors on the provisional application that led to the '643 Patent, (2) that Professors Stolfo and Keromytis were not, in fact, named as inventors on the non-provisional application that led to the '643 Patent, and (3) that Norton had, in fact, filed the non-provisional application that did not name the Columbia professors as inventors.

A fact is material if a reasonable person would attach importance to it in determining his or her choice of action or inaction with respect to the matter in question.

As the third element of its fraudulent concealment claim, Columbia must prove by clear and convincing evidence that Norton intentionally concealed material information for the purpose of inducing Columbia to rely upon its representations that concealed material information. Conduct is intentional if it is purposeful rather than the product of mistake, accident or negligence.

Where there is a duty to disclose and where the information is material, intent to deceive may be inferred from nondisclosure, but you are not required to draw this inference.

As the fourth element of its fraudulent concealment claim, Columbia must prove by clear and convincing evidence that Columbia actually and reasonably relied on Norton's representations that concealed material information when deciding whether it needed to take steps to protect its intellectual property.

To establish actual reliance, Columbia must prove by clear and convincing evidence that Norton's concealment of a material fact was a substantial factor in Columbia's decision not to take steps to protect its intellectual property. It is not necessary for Norton's concealment to have been

the exclusive cause of Columbia's decision not to take steps to protect its intellectual property.  It is sufficient for actual reliance if Norton's concealment was a substantial factor, that is, one that is not slight or trivial, even if there were other factors.

In determining whether Columbia reasonably relied on Norton's representations that concealed material information, you may consider whether the concealed information is something that a reasonable person would have believed and considered important in deciding whether to take steps to protect its intellectual property.

As the fifth element of its fraudulent concealment claim, Columbia must prove by clear and convincing evidence that this reliance caused Columbia injury.  In order to establish causation, plaintiff must establish that Norton's representations that concealed material information were a substantial factor in causing injury to Columbia.

If you decide that Columbia has proved all the elements of fraudulent concealment, you must next decide the monetary loss that Columbia suffered.[87]

---

[87] Transcript at 3069:19-3073:7, *Clinton* v. *Brown & Williamson Holdings Inc*., 7:05-cv-09907 (S.D.N.Y Dec. 10, 2012) (instructing the jury on fraudulent concealment).

## <u>DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 39B</u>
### FRAUDULENT CONCEALMENT

The first question you will be asked to decide is whether Norton failed to disclose material facts related to the filing of the 643 patent to Columbia. If you decide that Norton did disclose material facts related to the filing of the 643 patent to Columbia, you need proceed no further on the claim of fraud.[88]

If you decide that Norton did know of material facts related to the filing of the 643 patent, you must next decide whether Norton had a duty to disclose these materials facts to Columbia.  A duty to disclose can arise under a fiduciary relationship, confidential relationship, or if a party has superior knowledge of the facts.

The Court has concluded that Norton did not have a fiduciary duty to Columbia and did not have a confidential relationship with Columbia as to the 2006 NICECAP Proposal.

Columbia claims that Norton had a duty to disclose material facts arising from Norton's alleged superior knowledge of the facts.  If you decide that Norton did know of material facts related to the filing of the 643 patent, you must next decide (1) whether material facts related to the filing of the 643 patent were not known to Columbia (2) could not have been discovered by Columbia through the use of ordinary intelligence, and (3) Norton knew that Columbia is acting on the basis of mistaken knowledge.[89],[90]

---

[88] N.Y. Pattern Jury Instr.--Civil 3:20

[89] *Banque Arabe et Internationale D 'Investissement v. Maryland Nat 'l Bank,* 57 F.3d 146, 153 (2d Cir. 1995); N.Y. Pattern Jury Instr.--Civil 3:20.

[90] N.Y. Pattern Jury Instr.--Civil 3:20

If you decide that Norton had a duty to disclose material facts related to the filing of the 643 patent, the next question you must decide is whether Norton intended to defraud Columbia when it failed to disclose the material information.[91]

If you decide that Norton intended to defraud Columbia when it failed to disclose the material information, the next question you must decide is whether Columbia actually and reasonably relied upon the failure to disclose material information.[92]

If you decide that Columbia actually and reasonably relied upon the failure to disclose material information, the next question you must decide is whether Columbia sustained damages as a result of such reliance. If you decide that Columbia did not sustain damages as a result of such reliance, you need proceed no further on the claim of fraud. If you decide that Columbia did sustain damages as a result of the filing of the 643 patent, you must next decide the actual monetary loss sustained as a result of the reliance.[93]

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 39B, which have been filed separately.

---

[91] *Clinton, v. Brown & Williamson Holdings Inc*., , 2012 WL 12297946 (S.D.N.Y.) citing *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 181 (2d Cir. 2007)

[92] *Clinton, v. Brown & Williamson Holdings Inc*., , 2012 WL 12297946 (S.D.N.Y.) citing *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 181 (2d Cir. 2007)

[93] N.Y. Pattern Jury Instr.--Civil 3:20; *Clinton, v. Brown & Williamson Holdings Inc*., , 2012 WL 12297946 (S.D.N.Y.) citing *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 181 (2d Cir. 2007)

If you decide that Norton had a duty to disclose material facts related to the filing of the 643 patent, the next question you must decide is whether Norton intended to defraud Columbia when it failed to disclose the material information.[94]

If you decide that Norton intended to defraud Columbia when it failed to disclose the material information, the next question you must decide is whether Columbia actually and reasonably relied upon the failure to disclose material information.[95]

If you decide that Columbia actually and reasonably relied upon the failure to disclose material information, the next question you must decide is whether Columbia sustained damages as a result of such reliance. If you decide that Columbia did not sustain damages as a result of such reliance, you need proceed no further on the claim of fraud. If you decide that Columbia did sustain damages as a result of the filing of the 643 patent, you must next decide the actual monetary loss sustained as a result of the reliance.[96]

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 39, which have been filed separately.

---

[94] *Clinton, v. Brown & Williamson Holdings Inc*., , 2012 WL 12297946 (S.D.N.Y.) citing *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 181 (2d Cir. 2007)

[95] *Clinton, v. Brown & Williamson Holdings Inc*., , 2012 WL 12297946 (S.D.N.Y.) citing *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 181 (2d Cir. 2007)

[96] N.Y. Pattern Jury Instr.--Civil 3:20; *Clinton, v. Brown & Williamson Holdings Inc*., , 2012 WL 12297946 (S.D.N.Y.) citing *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 181 (2d Cir. 2007)

**DISPUTED - COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 40**
**FRAUDULENT CONCEALMENT DAMAGES**

If you find that Columbia proved its fraudulent concealment claim, you must assess the amount of damages owed to Columbia.   In determining the amount of damages Columbia sustained, you should calculate the damages to compensate Columbia for what it lost because of Norton's fraudulent concealment.[97]

To prove the amount of its damages, Columbia need only provide a reasonable basis from which the amount of damages can be estimated by a just and reasonable inference.[98]   Any uncertainty as to the amount of damages falls upon Norton as the wrongdoer as a matter of law, and Columbia is not required to prove the amount of damages with certainty or perfection.[99]

---

[97] N.Y. Pattern Jury Instructions – Civil, § 3:20.2 (Dec. 2020 Update) (adapted for introductory paragraph); *Connaughton* v. *Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (2017) (basing damages on what plaintiff "lost because of the fraud").

[98] *Blue Cross & Blue Shield of N.J., Inc.* v. *Philip Morris, Inc.*, 178 F. Supp. 2d 198, 274 (E.D.N.Y. 2001) (the amount of damages for fraudulent concealment must be supported "with a reasonable basis"), *rev'd on other grounds*, 344 F.3d 211 (2d Cir. 2003); *Hangzhou Silk Import & Export Corp.* v. *P.C.B. Int'd. Industries, Inc.*, 2002 WL 2031591, at *7 (S.D.N.Y. Sept. 5, 2002) (for fraud damages "proof upon a reasonable basis is sufficient"); *Fed. Ins. Co.*, 2016 WL 164618 at *4 (damages amount for fraud can be supported by "just and reasonable inference"); *Cristallina S.A.* v. *Christie, Manson & Woods Int'l, Inc.*, 117 A.D.2d 284, 295 (N.Y. App. Div. 1986) (fraudulent concealment damages need only be established by "just and reasonable inference"); *Orzzoli* v. *Syvertsen*, 159 F.3d 1347 (2d Cir. 1998) (unpublished) (fraudulent concealment damages need only be established by "just and reasonable inference" under New York law); *see also Kayser-Roth Corp.* v. *Berger*, 427 F. Supp. 452, 454 (S.D.N.Y. 1976) (fraudulent concealment damages are not too speculative when "there is a reasonable basis for the damages sought").

[99] Transcript at 960:20-961:11, *Clarex Ltd.* v. *Natixis Secs. Am, LLC*, 1:12-cv-7908, ECF No. 165 (S.D.N.Y. June 3, 2015) (instructing jury on the wrongdoer rule); *see also Fed. Ins. Co.* v. *Mertz*, 2016 WL 164618, at *4 (S.D.N.Y. Jan. 12, 2016) (wrongdoer rule applies to fraud claims).

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 40**
**FRAUDULENT CONCEALMENT DAMAGES**

Columbia must prove by clear and convincing evidence that it suffered actual damages from the alleged fraud.  This means that it sustained actual monetary losses as the direct and immediate result of the alleged fraud.  A lost opportunity is not a recoverable loss.  There can be no recovery of profits that would have been realized in the absence of fraud.  If you find that Columbia did not sustain any actual monetary loss, then you must return a verdict for Norton on the claim of fraud.  If you find that Columbia sustained actual damages from the alleged fraud, then Columbia must establish the amount of its damages.[100]

My charge to you on the law of damages must not be taken as a suggestion that you should find for Columbia. It is for you to decide on the evidence presented and rules of law I have given you whether Columbia is entitled to recover from Norton. If you decide that Columbia is not entitled to recover from Norton, you need not consider damages. Only if you decide that Columbia is entitled to recover will you consider the measure of damages.

If you find that Columbia is entitled to damages, then amount of any damages you decide to award must be based on the evidence presented at trial. Columbia must prove the amount of its damages with a reasonable degree of certainty. Speculative damages are not permitted.  You must also consider that an award of zero damages is possible.[101]

---

[100] N.Y. Pattern Jury Instr.--Civil 3:20; *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996); *accord Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993); *Kaye v. Grossman*, 202 F.3d 611, 614-15 (2d. Cir. 2000); *Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 596-97 (S.D.N.Y. 2013); *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142-43 (N.Y. App. 2017).

[101] PJI2:277- Damages – General; 30 N.Y.Prac., New York Elements of an Action § 3:12.

**<u>The Parties' Dispute:</u>**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction

No. 40, which have been filed separately.

## JOINTLY PROPOSED JURY INSTRUCTION NO. 41
## INCORRECT INVENTORSHIP (BACKGROUND PRINCIPLES)

Columbia also contends that Columbia Professors Salvatore Stolfo and Angelos Keromytis are inventors of the '643 Patent.  To fulfill your duties as jurors on this issue, you must determine first whether the Columbia Professors are inventors of the '643 patent, and if so, whether they are (i) the sole inventors of the '643 Patent, or (ii) joint inventors of the '643 Patent, along with Norton's employee, Darren Shou.

The named inventors on a patent are presumed to be the true and only inventors.  To prevail on a claim for inventorship, Columbia must establish, by clear and convincing evidence that the Columbia Professors alone conceived of the invention claimed in the '643 Patent, and thus they are the sole inventors, or alternatively, that the Columbia Professors contributed in a substantial way to the conception of any claim or part of a claim of the '643 Patent such that they are joint inventors.[102]

To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of the patent.  Whether the contribution is significant is measured against the scope of the full invention.  If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor.  Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor.  One who merely suggests an idea or a result to be accomplished, rather than the means of accomplishing it, is not a joint inventor.  Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.  Persons may be joint or co-inventors even though they do not physically

---

[102] Final Jury Instructions at 32, *ICU Medical Inc.* v. *RyMed Technologies Inc.*, 1:07-cv-00468, ECF No. 492 (D. Del. Dec. 17, 2010) (adapted for introductory paragraphs).

work together, but they must have some open line of communication during or at approximately the time of their inventive effort.[103]

The test for conception is whether the inventor or inventors had an idea that was definite and permanent enough that one skilled in the field of the invention could understand the invention. It moreover must be so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.  An inventor need not know that his invention will work for conception to be complete; he need only show that he had the idea.[104]

When a party seeks to prove conception via the oral testimony of a putative inventor (i.e. an alleged unnamed inventor), the party must proffer evidence corroborating that testimony. Evidence of the inventive facts must not rest alone on the testimony of the alleged unnamed inventor himself.[22]

Norton denies that the Columbia Professors are inventors of the '643 Patent.

---

[103] Federal Circuit Bar Association, Model Patent Jury Instructions § B.4.3d (2020); *Nartron Corp.* v. *Schukra U.S.A., Inc.*, 558 F.3d 1352, 1359 (Fed. Cir. 2009).

[104] Jury Charge at 11, *Oasis Research, LLC* v. *Carbonite, Inc.*, 4:10-cv-00435, ECF No. 708 (E.D. Tex. Mar. 22, 2013).

[22] *Singh* v. *Brake,* 317 F.3d 1334, 1340–41 (Fed. Cir. 2003).

## DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 41A
### 2006 NICECAP PROPOSALS

Prior to trial, I made certain rulings concerning the '643 Patent, which are relevant to Columbia's fraudulent concealment and correction of inventorship claims.

*First*, you have heard discussions about draft proposals for a government grant program referred to as the NICECAP proposals. I have determined that the May 14, 2006 draft NICECAP proposal and the five-page proposal submitted to NICECAP on May 22, 2006, which were included in U.S. Provisional Patent Application No. 60/809,898, became publicly available on September 24, 2009 with the publication of a Columbia patent application, U.S. Patent Publication No. 2009/0241191. You are to take this fact as true for purposes of this case.

Other than the text of the May 14, 2006 draft and the five-page proposal submitted to NICECAP on May 22, 2006, I have not determined whether any other drafts of the NICECAP proposal or any other information discussed between the parties in connection with preparing the NICECAP proposal have become publicly available.[105]

*Second*, as I told you a moment ago, a party has a duty to disclose information if it has superior knowledge, which requires that (1) there was information uniquely known by one party and (2) that the other party could not have discovered that knowledge on its own through the exercise of ordinary diligence. I have already determined that Norton had superior information concerning its efforts to seek patent protection of the 2010 DARPA proposal, which was based on the 2006 NICECAP proposal.[106] You are to take this fact as true for purposes of this case.

---

[105] Dkt. No. 684 at 8, 33.

[106] *Id.* at 46.

**DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 41A**
**2006 NICECAP PROPOSALS**

You have heard discussions about draft proposals for a government grant program referred to as the NICECAP proposals.  I have determined that Columbia introduced U.S. Provisional Patent Application No. 60/809,898 into the public knowledge with the publication of a Columbia patent application, U.S. Patent Publication No. 2009/0241191, on September 24, 2009.  U.S. Provisional Patent Application No. 60/809,898 included the May 14, 2006 draft NICECAP proposal and the five-page proposal submitted to NICECAP on May 22, 2006.  You are to take this fact as true for purposes of this case.[107]

**The Parties' Dispute:**

The parties respectfully refer the Court to their objections to Proposed Jury Instruction No. 41A, which have been filed separately.

---

[107] Dkt. 684

## JOINTLY PROPOSED JURY INSTRUCTION NO. 42
### INCORRECT INVENTORSHIP (SOLE)

Columbia's claim is based on its allegations that (i) the Columbia Professors were the sole inventors of the '643 Patent or (ii) the Columbia Professors and Darren Shou were joint inventors of the '643 Patent.  This instruction discusses Columbia's claim for sole inventorship.

In order to prove sole inventorship, Columbia must prove, by clear and convincing evidence, that:

1.      The Columbia Professors collectively conceived of every claim of the '643 Patent; and

2.      Any contribution by Darren Shou to the conception of any invention claimed in the '643 Patent was insignificant in quality, when that contribution is measured against the dimension of the full invention.[108]

---

[108] *Nexus Techs., Inc.* v. *Unlimited Power, Ltd.*, 2020 WL 6940505, at *13 (W.D.N.C. Nov. 25, 2020) (stating elements for sole inventorship).

**JOINTLY PROPOSED JURY INSTRUCTION NO. 43**
**INCORRECT INVENTORSHIP (JOINT)**

We just discussed sole inventorship, and this next instruction concerns joint inventorship.

To be a joint inventor, one must make a significant contribution to the conception of one or more of the claims of the patent.  One inventor alone need not conceive of the entire invention.  A contribution to one claim is enough to establish that one is a joint inventor.

In order to prove joint inventorship, Columbia must prove, by clear and convincing evidence, that:

1. The Columbia Professors contributed in some significant manner to the conception or reduction to practice of at least one claim in the '643 Patent,

2. The Columbia Professors made a contribution to the invention claimed in the '643 Patent that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and

3. The Columbia Professors did more than merely explain to Darren Shou well-known concepts and/or the current state of the art.[109]

---

[109] Jury Charge at 10-11, *Oasis Research, LLC* v. *Carbonite, Inc.*, 4:10-cv-00435, ECF No. 708 (E.D. Tex. March 22, 2013) (adapted for discussion of joint inventorship); *Dana-Farber Cancer Inst., Inc.* v. *Ono Pharm. Co.*, 964 F.3d 1365, 1371 (Fed. Cir. 2020) (stating elements for joint inventorship).

### DISPUTED – COLUMBIA'S PROPOSED JURY INSTRUCTION NO. 44
**BURDEN OF PROOF**

I will now address the burden of proof that applies to Columbia's patent infringement, fraudulent concealment, and correction of inventorship claims.

With regard to patent infringement, Columbia has the burden of proving that Norton infringes every element of each Asserted Claim by a preponderance of the evidence. "Preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more likely than not.  In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.[110]

If you determine that Columbia proved infringement with respect to one or more of the Asserted Claims, you must also determine the amount of the reasonable royalty that Columbia is entitled to recover as compensation for Norton's patent infringement.  If you find infringement, Columbia is entitled by law to receive no less than a reasonable royalty, and the amount of that reasonable royalty is for you to determine based on the evidence presented at trial.[111]

With regard to Columbia's fraudulent concealment claim, Columbia has the burden of proving fraudulent concealment by clear and convincing evidence, including proving that it was injured by the fraudulent concealment.  "Clear and convincing evidence" is evidence that produces

---

[110] 3 Kevin F. O'Malley, *et al.*, Federal Jury Practice and Instructions—Civil § 104.01 (6th ed. Jan. 2022) (adapted for instruction on standards of proof).

[111] Federal Circuit Bar Association, Model Patent Jury Instructions § B.5.1 (2020) (stating that patent holder "is entitled to recover no less than a reasonable royalty").

in your mind a firm belief or conviction as to the matter at issue.  Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard.

In determining whether any fact in issue has been proved by clear and convincing evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.[112]

**If you determine that Columbia proved that Norton committed fraudulent concealment, you must also determine the amount of damages that Columbia is entitled to recover as compensation from Norton.  Columbia need only provide a reasonable basis from which the amount of damages for Norton's fraudulent concealment can be estimated by a just and reasonable inference.[113]  Any uncertainty as to the amount of money damages falls**

---

[112] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil § 104.02 (6th ed. Jan. 2022) (for clear and convincing evidence standard).

[113] *Blue Cross & Blue Shield of N.J., Inc.* v. *Philip Morris, Inc.*, 178 F. Supp. 2d 198, 274 (E.D.N.Y. 2001) (stating that the amount of damages for fraudulent concealment must be supported "with a reasonable basis"), *rev'd on other grounds*, 344 F.3d 211 (2d Cir. 2003); *Hangzhou Silk Import & Export Corp.* v. *P.C.B. Int'l. Industries, Inc.,* 2002 WL 2031591, at *7 (S.D.N.Y. Sept. 5, 2002) (noting that for fraud damages "proof upon a reasonable basis is sufficient"); *Fed. Ins. Co.* v. *Mertz*, 2016 WL 164618, at *4 (S.D.N.Y. Jan. 12, 2016) (fraud damages amount can be supported by "just and reasonable inference"); *Cristallina S.A.* v. *Christie, Manson & Woods Int'l, Inc.*, 117 A.D.2d 284, 295 (N.Y. App. Div. 1986) (fraudulent concealment damages need only be established by "just and reasonable inference"); *Orzzoli* v. *Syvertsen*, 159 F.3d 1347 (2d Cir. 1998) (unpublished) (fraudulent concealment damages need only be established by "just and reasonable inference" under New York law); *see also Kayser-Roth Corp.* v. *Berger*, 427 F. Supp. 452, 454 (S.D.N.Y. 1976) (finding fraudulent concealment damages were not too speculative where "there is a reasonable basis for the damages sought").

**upon Norton as the "wrongdoer" if you find that Norton committed fraudulent concealment.**[114]

For Columbia's correction of inventorship claims, Columbia has the burden of proving inventorship by clear and convincing evidence.[115]

As I told you at the start of the trial, you may have heard of the term "proof beyond a reasonable doubt." That is the high standard that applies in criminal cases, and it does not apply here. You should, therefore, put the "proof beyond a reasonable doubt" standard out of your minds, and apply the standards that I have described for you.[116]

---

[114] Transcript at 960:20-961:11, *Clarex Ltd.* v. *Natixis Secs. Am, LLC*, 1:12-cv-7908, ECF No. 165 (S.D.N.Y. June 3, 2015) (instructing jury on the wrongdoer rule); *see also Fed. Ins. Co.* v. *Mertz*, 2016 WL 164618, at *4 (S.D.N.Y. Jan. 12, 2016) (wrongdoer rule applies to fraud claims).

[115] Jury Charge at 10, *Oasis Research, LLC* v. *Carbonite, Inc.*, 4:10-cv-00435, ECF. No. 708 (E.D. Tex. Mar. 22, 2013) (stating that inventorship must be proven by clear and convincing evidence).

[116] 3 Kevin F. O'Malley, *et al*., Federal Jury Practice and Instructions—Civil § 104.03 (6th ed. Jan. 2022) (for language differentiating the beyond a reasonable doubt standard).

## DISPUTED – NORTON'S PROPOSED JURY INSTRUCTION NO. 44
**BURDEN OF PROOF**

I will now address the burden of proof that applies to Columbia's patent infringement, fraudulent concealment, and correction of inventorship claims.

With regard to patent infringement, Columbia has the burden of proving that Norton infringes every element of each Asserted Claim by a preponderance of the evidence. "Preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more likely than not.  In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If you determine that Columbia proved infringement with respect to one or more of the Asserted Claims, you must also determine the amount of the reasonable royalty that Columbia is entitled to recover as compensation for Norton's patent infringement.  If you find infringement, Columbia is entitled by law to receive no less than a reasonable royalty, and the amount of that reasonable royalty is for you to determine based on the evidence presented at trial.

With regard to Columbia's fraudulent concealment claim, Columbia has the burden of proving fraudulent concealment by clear and convincing evidence, including proving that it was damaged by the fraudulent concealment.  "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard.

In determining whether any fact in issue has been proved by clear and convincing evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who

may have called them, and all exhibits received in evidence, regardless of who may have produced them.

**If you find that Columbia is entitled to damages, then amount of any damages you decide to award must be based on the evidence presented at trial. Columbia must prove the amount of its damages with a reasonable degree of certainty. Speculative damages are not permitted.  You must also consider that an award of zero damages is possible.[117]**

For Columbia's correction of inventorship claims, Columbia has the burden of proving inventorship by clear and convincing evidence.

As I told you at the start of the trial, you may have heard of the term "proof beyond a reasonable doubt."  That is the high standard that applies in criminal cases, and it does not apply here.  You should, therefore, put the "proof beyond a reasonable doubt" standard out of your minds, and apply the standards that I have described for you.

**The Parties' Remaining Dispute:**

The parties' remaining dispute concerns only the third-to-last paragraph, which is bolded in the parties' competing proposals.

---

[117] PJI2:277- Damages – General; 30 N.Y.Prac., New York Elements of an Action § 3:12.

## JOINTLY PROPOSED JURY INSTRUCTION NO. 45
### DUTY TO DELIBERATE

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

You may now proceed to the jury room to begin your deliberations.[118]

---

[118] Fifth Circuit, Pattern Jury Instructions—Civil Cases § 3.7 (2020) (adapted).