# EXHIBIT B

| | |
|---|---|
| **From:** | Guzior, Dustin |
| **To:** | Doug.Lumish@lw.com |
| **Cc:** | Michael.Morin@lw.com; david.callahan@lw.com; Beeney, Garrard R.; dabney.carr@troutman.com; Dana McDaniel; John Erbach; nathanhamstra@quinnemanuel.com; davenelson@quinnemanuel.com; richarderwine@quinnemanuel.com; ninatallon@quinnemanuel.com; Gross, Alexander N.; Ecker, Jessica R.; Graham, Christopher A. |
| **Subject:** | [External Sender] RE: Mr. Dacier |
| **Date:** | Friday, April 8, 2022 8:34:50 AM |

Dear Doug,

Thanks for your response, but I think we might be talking past each other. We obviously would be delighted if Dr. Dacier appeared at trial, and we take no issue with Latham trying to make that happen. The misconduct here largely is historical, as shown in the e-mail chain between Dr. Dacier and Latham, which you sent to me last night. The additional problem is that the email chain between Latham and Dr. Dacier contradicts many representations to the Court made by Norton, including as recently as yesterday. I mention only a few:

1. Yesterday, arguments were made that Quinn/Norton did not actually tell Dr. Dacier that they did not want him to appear at trial, and thus his alleged choice to no longer appear was not controlled by Norton. The gist of the argument was that any inference from the circumstantial evidence was wrong. Yet, this email chain is direct evidence that Norton's counsel interfered with Dr. Dacier's (continuing) desire to appear at trial, and in his words "help the judicial process." (*E.g.*, Dr. Dacier's statement that he was "repeatedly told" that "they did not want me to do anything.").

2. Norton has made the argument (or at least strongly implied) that Dr. Dacier was informed of new trial dates and relevant events, but he had decided for himself not to attend trial. Yet, the email confirms that no one was giving Dr. Dacier (the alleged "client") updated information about the trial. Indeed, the email confirms that no one was keeping him informed and he would have appeared at trial if he had notice of more than a few days, which plainly is unreasonable notice. Norton's repeated representations to the Court that Dr. Dacier had decided not to appear (which was typically followed with a statement that Dr. Dacier was in Saudi Arabia) were not true. Even today when he resides in Saudi Arabia, he was happy to testify at trial and give testimony adverse to Norton, but he could not practically do so having been kept in the dark for so long and on such short notice.

3. Norton has argued that Dr. Dacier was not actually adverse to Norton and he had nothing to say beyond his deposition testimony. Dr. Dacier's email confirms unequivocally that he has things to say that he considers to be harmful to Norton. Notwithstanding Dr. Dacier's statements expressing frustration, his email also makes it clear (as Columbia has said) that he has more to say about the nature of what occurred than he felt comfortable saying at his deposition under the "representation" (the quotation marks are Dr. Dacier's) of Norton's counsel, Quinn.

4. Arguments were made yesterday implying that Norton believed Dr. Dacier may still be available to come to trial, or at least that Norton had no reason to believe he could not attend if asked. At a minimum, that was the strong impression that counsel attempted to create, and the gist of the argument was that blame should be placed on Columbia for not asking Dr. Dacier this week to come

to trial. Norton's counsel claimed that Columbia was free to ask Dr. Dacier directly as of the March 28 Quinn "withdrawal." Yet, these emails show that Norton knew when it made those arguments yesterday that, although still willing to come to trial, it was impossible for Dr. Dacier to do so given the extremely late notice and his extreme frustration at being treated like a "fool" (again, Dr. Dacier's word).

We also do not understand how a high level and opaque reference in Norton's objections to a jury instruction—stating a position that Quinn has long taken in this litigation that Dr. Dacier was asked to come to trial but chose not to come—was supposed to inform Columbia and the Court that Norton had been in touch with Dr. Dacier as recently as the morning of the argument. We fail to see how that is not a fact the Court would have wanted to know, especially as the Court was marking relevant exhibits at the hearing.

We look forward to continuing cooperation on trial preparation and we are glad that you are committed to doing the same notwithstanding this particular issue.

Dustin

_____

Dustin F. Guzior
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
(212) 558-4482

---

**From:** Doug.Lumish@lw.com <Doug.Lumish@lw.com>
**Sent:** Friday, April 08, 2022 1:14 AM
**To:** Guzior, Dustin <guziord@sullcrom.com>
**Cc:** Michael.Morin@lw.com; david.callahan@lw.com; Beeney, Garrard R. <Beeneyg@sullcrom.com>; dabney.carr@troutman.com; dmcdaniel@spottsfain.com; jerbach@spottsfain.com; nathanhamstra@quinnemanuel.com; davenelson@quinnemanuel.com; richarderwine@quinnemanuel.com; ninatallon@quinnemanuel.com; Gross, Alexander N. <grossa@sullcrom.com>; Ecker, Jessica R. <eckerj@sullcrom.com>; Graham, Christopher A. <grahamch@sullcrom.com>
**Subject:** [EXTERNAL] RE: Mr. Dacier

Dustin,

Your accusations of misconduct here are baseless, and not well taken. We have been doing exactly the right thing here, asking Mr. Dacier to testify and to come and tell the unvarnished truth. And we have provided you a full record of our communications with him. You can't have it both ways, complaining first that Quinn allegedly acted improperly by allegedly discouraging Mr. Dacier from coming to trial, then complaining when we tried to get him to agree to come to trial.

Beyond that, we address each of your comments in turn in red text:

    1. In your e-mail, you say "[a]s we have mentioned in the past . . ." You have never before

mentioned this to me.  What do you mean by that statement?

In our objections to Columbia's proposed missing witness instruction on this very topic, we made clear that we have asked Mr. Dacier to appear at trial.  D.I. 1048-1 at 14 (noting that, since Quinn's withdrawal, "Norton and its counsel" have "asked Dacier to appear at trial" and proposing an instruction saying that "Dr. Dacier has not agreed to appear at trial in 2022 despite Norton's request").

2. Why did Latham attorneys not say one word about these communications during the hearing today?  How could Ms. Sherry have stood up in Court today and made the arguments that she did without saying one word about all that was happening in the background (unbeknownst to Columbia)?

The status is exactly as presented in D.I. 1048-1, such that absolutely nothing has changed – we asked Mr. Dacier to appear, and he has refused.  Ms. Sherry never represented or suggested to the contrary.  Beyond that, Mr. Dacier's email reconfirms that he has nothing to add to his 2014 deposition testimony; thus, if anything, it further supports our position that no instruction is warranted.

3. We ask that you promptly provide this material to the Court tonight, or failing that, we will prepare to do so tomorrow morning.

We plan to attach it to today's submission, and provided it to you tonight as a courtesy so that you can address it in your paper as well if you'd like.

4. We do not understand your statement that "Quinn has claimed privilege over" certain communications with Dr. Dacier.  As you know, **Dr. Dacier** (as the purported "client") is the owner of any privilege and Dr. Dacier has never asserted it.  Please confirm that all communications between Dr. Dacier and Quinn will be provided tomorrow.  It is inconceivable that Dr. Dacier would assert "privilege" given his statements in the e-mail chain that you sent to me.  **Norton** (not Quinn) purported to assert Dr. Dacier's privilege in Norton's March 16 notice to the Court (when it directed Quinn to go into contempt), but there is no conceivable privilege to assert unless Dr. Dacier chooses to do so.

This appears to relate to Quinn.  Given the assertion of privilege, Latham does not have these documents and so far as we know, Norton has never seen them and is not in possession of them.  Moreover, your argument here and in Court today that *Norton* asserted privilege is belied by the text of the March 16 notice, which expressly states that "The Court's Order demands the disclosure of privileged communications between *Quinn Emanuel* and its client Dr. Dacier," and that "*Quinn Emanuel will not waive that privilege* (which it also has no authority to do)...."

5.  Please also produce tomorrow (i) all communications between Quinn and Norton regarding Dr. Dacier since 2014, (ii) all communications between Quinn and Latham regarding Dr. Dacier since Latham first became involved in this case, and (iii) all

> communications between Latham and Norton regarding Dr. Dacier since Latham became involved in this case. We plan to ask the Court for an order requiring disclosure if you will not agree to provide these communications
>
> <span style="color:red">You have all communications between Latham and Mr. Dacier. Obviously, any communications between us and our client or co-counsel regarding Mr. Dacier are squarely protected by the attorney-client privilege and work product doctrines.</span>

As I said to you and Garrard in court today, we sincerely are looking to work with you cooperatively and to move beyond the contentiousness that has apparently existed throughout this case. My email to you was sent in that spirit, and despite the tenor of your response, we still look to work with you to make the trial process as smooth as it can be.

We would be happy to discuss further by phone if you would like.

Doug

---

**From:** Guzior, Dustin <guziord@sullcrom.com>
**Sent:** Thursday, April 7, 2022 10:14 PM
**To:** Lumish, Douglas (Bay Area) <Doug.Lumish@lw.com>
**Cc:** Morin, Mike (DC) <Michael.Morin@lw.com>; Callahan, David (CH) <david.callahan@lw.com>; Beeney, Garrard R. <Beeneyg@sullcrom.com>; 'Carr, Dabney J.' <dabney.carr@troutman.com>; Dana McDaniel <dmcdaniel@spottsfain.com>; John Erbach <jerbach@spottsfain.com>; Nathan Hamstra <nathanhamstra@quinnemanuel.com>; Dave Nelson <davenelson@quinnemanuel.com>; Richard Erwine <richarderwine@quinnemanuel.com>; Nina Tallon <ninatallon@quinnemanuel.com>; Gross, Alexander N. <grossa@sullcrom.com>; Ecker, Jessica R. <eckerj@sullcrom.com>; Graham, Christopher A. <grahamch@sullcrom.com>
**Subject:** RE: Mr. Dacier

Dear Doug,

As a preliminary matter, we are astounded by the record of misconduct that you sent to us. A few questions and responses are provided below.

1. In your e-mail, you say "[a]s we have mentioned in the past . . ." You have never before mentioned this to me. What do you mean by that statement?

2. Why did Latham attorneys not say one word about these communications during the hearing today? How could Ms. Sherry have stood up in Court today and made the arguments that she did without saying one word about all that was happening in the background (unbeknownst to Columbia)?

3. We ask that you promptly provide this material to the Court tonight, or failing that, we will prepare to do so tomorrow morning.

4. We do not understand your statement that "Quinn has claimed privilege over" certain communications with Dr. Dacier.  As you know, **Dr. Dacier** (as the purported "client") is the owner of any privilege and Dr. Dacier has never asserted it.  Please confirm that all communications between Dr. Dacier and Quinn will be provided tomorrow.  It is inconceivable that Dr. Dacier would assert "privilege" given his statements in the e-mail chain that you sent to me.  **Norton** (not Quinn) purported to assert Dr. Dacier's privilege in Norton's March 16 notice to the Court (when it directed Quinn to go into contempt), but there is no conceivable privilege to assert unless Dr. Dacier chooses to do so.

5.  Please also produce tomorrow (i) all communications between Quinn and Norton regarding Dr. Dacier since 2014, (ii) all communications between Quinn and Latham regarding Dr. Dacier since Latham first became involved in this case, and (iii) all communications between Latham and Norton regarding Dr. Dacier since Latham became involved in this case.  We plan to ask the Court for an order requiring disclosure if you will not agree to provide these communications

6. To our knowledge, all of S&C's communications with Dr. Dacier were provided in connection with the sanctions motion that Norton filed in 2020.  I also understand that no one at Columbia has had any communications with him since that time.  Until last week, Norton's counsel at Quinn Emanuel purported to represent Dr. Dacier and prohibited our contact with him.

Dustin

_____

Dustin F. Guzior
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
(212) 558-4482

---

**From:** Doug.Lumish@lw.com <Doug.Lumish@lw.com>
**Sent:** Thursday, April 07, 2022 9:39 PM
**To:** Guzior, Dustin <guziord@sullcrom.com>
**Cc:** Michael.Morin@lw.com; david.callahan@lw.com; nathanhamstra@quinnemanuel.com
**Subject:** [EXTERNAL] Mr. Dacier

Dustin,

It was nice to meet you and your team in court today.

As we have mentioned in the past, on Norton's behalf Latham has recently reached out to Mr. Dacier to ask him to appear at trial.  All of our correspondence on that front is attached.  As you will see from Mr. Dacier's most recent email of earlier today, we have failed in our efforts and Mr. Dacier has refused to come to trial, even by video.  In addition, we asked our client to search for any emails

to or from Norton and Mr. Dacier in the 2017-21 timeframe.  That search has not identified anything you do not already have, but in the interest of full disclosure, we are attaching the results.  Please note that this would not include potential correspondence between Dacier and the Quinn firm, which Quinn has claimed privilege over.

We ask that you return in kind.  Please provide all correspondence between Mr. Dacier and Columbia, your firm, or any other Columbia counsel, and please let us know if any of these entities has attempted to secure Mr. Dacier's appearance for trial.

Thank you, and please let me know if you have any questions.

Best regards,
Doug


**Douglas E. Lumish**

**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, CA 94025
Direct: 1.650.463.2633
http://www.lw.com [lw.com]

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com [lw.com].

**This is an external message from:** Doug.Lumish@lw.com **

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.