**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, | |
| *Plaintiff* | |
| v. | Civil Action No. 3:13-cv-00808-MHL |
| NORTONLIFELOCK INC., | **REDACTED** |
| *Defendant* | |

**MEMORANDUM IN SUPPORT OF DEFENDANT NORTONLIFELOCK'S MOTION**
**FOR JUDGMENT AS A MATTER OF LAW**

## TABLE OF CONTENTS

Page

I.    Introduction ........................................................................................................2

II.   Legal Standard ...................................................................................................3

III.  Argument ............................................................................................................4

    A.   Norton Is Entitled To Judgment As A Matter Of Law On Columbia's
        Direct Infringement Claims ...................................................................4
        1.   '115 Patent ...................................................................................5
        2.   '322 Patent ...................................................................................9
        3.   Columbia Failed to Prove Infringement for Products Sold Outside
            the United States ........................................................................10
    B.   Norton Is Entitled To Judgment As A Matter Of Law On Columbia's
        Induced Infringement Claims ...............................................................12
    C.   Norton Is Entitled To Judgment As A Matter Of Law On Columbia's
        Contributory Infringement Claims.......................................................15
    D.   Norton Is Entitled To Judgment As A Matter Of Law On Willful
        Infringement.........................................................................................16
    E.   Norton Is Entitled To Judgment As A Matter Of Law On Columbia's
        Claim For Damages For Infringement Of The '115 and '322 Patents .................16
        1.   Columbia Failed To Present Legally Sufficient Evidence To
            Support Its Patent Damages Claim ...........................................16
        2.   Columbia Failed To Present Legally Sufficient Evidence To
            Support Its Claim For Damages For Sales Outside The United
            States ..........................................................................................19
    F.   Norton Is Entitled To Judgment As A Matter Of Law On Columbia's
        Inventorship Claims .............................................................................21
    G.   Norton Is Entitled To Judgment As A Matter Of Law On Columbia's
        Fraudulent Concealment Claim ............................................................22
    H.   Norton Is Entitled To Judgment As A Matter Of Law On Columbia's
        Claim For Damages For Its Fraudulent Concealment Claim................27

IV.   CONCLUSION.................................................................................................29

## I.        INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(a), Defendant NortonLifeLock, Inc. ("Norton") respectfully moves for judgment as a matter of law ("JMOL") because Plaintiff The Trustees of the University of Columbia in the City of New York ("Columbia") has failed to present sufficient evidence to permit a reasonable jury to find in its favor on any of the claims presented to the jury.

**The '115 Patent and '322 Patents**.  Columbia has not presented sufficient evidence of:

- Direct infringement of claim 2 of U.S. Patent No. 8,074,115 and claims 2, 11, and 27 of U.S. Patent No. 8,601,322 ("Asserted Claims"), either literally or under the doctrine of equivalents,

- Induced infringement of the Asserted Claims, , either literally or under the doctrine of equivalents,

- Contribution to infringement of the Asserted Claims, , either literally or under the doctrine of equivalents,

- Willful infringement, or

- Damages.

**The '643 Patent.**  Columbia has not adduced clear and convincing evidence from which a reasonable jury could find that Drs. Stolfo and Keromytis ("Columbia Professors") were sole or joint inventors of the '643 Patent, because it has failed to demonstrate that Drs. Stolfo and Keromytis made a significant contribution to the conception of at least one or more claims of the '643 patent.  Columbia has likewise failed to present sufficient evidence to submit its fraudulent concealment claim to the jury, because it has failed to present sufficient evidence that:

- Either Professors Stolfo or Keromytis should have been named as inventors of the '643 patent,

- Norton had a duty to disclose material information to Columbia,

- Norton failed to disclose material information to Columbia,

- Norton intentionally concealed material information for the purpose of inducing Columbia to rely on Norton's representations that concealed material information,

- Columbia actually and reasonably relied upon Norton's representations, and

- Columbia suffered loss as a result of such reliance.

## II.     LEGAL STANDARD

Judgment as matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  Rule 50(a) "allows the trial court to remove . . . issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'"  *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (citation omitted).   "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted).

On a motion for judgment as a matter of law, while "the Court must draw all reasonable inferences in favor of the nonmoving party, and [] may not make credibility determinations or weigh the evidence," the Court "should review all of the evidence in the record" and "give credence to the evidence . . . supporting the moving party that is uncontradicted and unimpeached."  *Id.* at 150-51 (citations omitted).  "[G]eneral and conclusory testimony" by experts "is not enough to be even substantial evidence in support of a verdict."  *Whitserve, LLC v. Computer Packages,*

*Inc.*, 694 F.3d 10, 24 (Fed. Cir. 2012); *see also Granco-Clark, Inc. v. Belco Indus., Inc.*, 972 F.2d 1352, 1992 WL 113943, at *2 (Fed. Cir. 1992) (table).  "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party."  9B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2524 (3d ed. 2011); *see also Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1187 (4th Cir. 1990) (explaining that evidence must be "more than a scintilla before the case may be properly left to the discretion of the trier of fact" (citation omitted)).

## III.   ARGUMENT

### A.   Norton Is Entitled To Judgment As A Matter Of Law On Columbia's Direct Infringement Claims

To conclude that Norton directly infringes the '115 and '322 Patents, the jury must have a legally sufficient evidentiary basis to find that the Accused Products practice each and every element of the asserted claims.  *See* Fed. R. Civ. P. 50(a)(1); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc), *abrogated on other grounds in Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015).  There is no such basis here, either literally or under the doctrine of equivalents.

The Accused Products are: Norton Antivirus version 2010/17.0 and later; Norton Internet Security version 2010/17.0 and later; Norton 360 version 4.0 and later); Norton Security; Norton Security with Backup; Norton Security Standard; Norton Security Deluxe; Norton Security Premium; Norton Antivirus Basic; Norton Security Deluxe with LifeLock; Norton Antivirus Plus; Norton 360 Standard; Norton 360 Deluxe; Norton 360 with LifeLock; Symantec Endpoint Protection 12.1; Symantec Endpoint Protection 14; and  Symantec Endpoint Protection 15 (also referred to as "enterprise products").  The Accused Products contain many components and

antivirus-related systems.  The only component that Columbia has identified as infringing the asserted claims is SONAR/BASH.  Trial Tr. at 1267:11-16.[1]

### 1.   '115 Patent

Columbia has failed to establish a sufficient evidentiary basis to prove that the Accused Products performed each and every step of claim 2 of the '115 patent, either literally or under the doctrine of equivalents.

*Literally*:  No reasonable jury could find that Columbia carried its burden of proving that Norton directly infringed claim 2 of the '115 patent.  To establish direct infringement of this claim, Columbia must provide sufficient evidence that the Accused Products perform each and every step of the claimed method.  *See Move, Inc. v. Real Est. All. Ltd.*, 709 F.3d 1117, 1122 (Fed. Cir. 2013) ("To establish liability for direct infringement of a claimed method or process under 35 U.S.C. § 271(a), a patentee must prove that each and every step of the method or process was performed.").  Columbia failed to do so.  As the evidence at trial demonstrated, Norton's products do not directly infringe for three reasons.  Trial Tr. at 2063:22-13.  First, the Accused Products do not execute programs or function calls "in an emulator."  *Id.*  Second, the Accused Products do not "creat[e] a combined model from at least two models created using different computers."  *Id.* Third, the accused products do not perform the step of, "upon identifying the anomalous function call, notifying an application community that includes a plurality of computers of the anomalous function call."  *Id.*

With respect to the first point, the method of claim 2 includes the step of "executing at least a part of a program in an emulator."  PX-188 at 20:39.  Columbia's expert, Dr. Bailey, identified

---

[1] References to evidence and testimony in this memorandum are only representative.  There is substantially more evidence and testimony on the issues herein that Norton may draw from in subsequent briefing.

SONAR/BASH as the component of the accused products that meets the Court's claim construction of "emulator" (Trial Tr. at 1021:22-25, 1043:8-9, 1047:18-23, 1055:3-14, 1058:2-5, 1061:3-6, 1066:17-23, 1069:23-25, 1131:5-13, 1272:24-1273:4), but admitted that he had not presented any documents to the jury that referred to the accused SONAR/BASH component as an "emulator" (*id*. at 1268:3-10). Dr. Bailey further admitted that the program does not run in SONAR/BASH, but rather in the operating environment with SONAR/BASH. *Id.* at 1274:11-18; *see id.* at 2035:5-21 (Kane); 2070:17-2071:7 (Jaeger). Dr. Bailey even admitted that "SONAR/BASH is not capable of simulating software. So there's no program that can run in SONAR/BASH." *Id.* at 1282:23-1283:6. Norton's technical expert Dr. Jaeger confirmed that the program executes outside of BASH. *Id.* at 2070:3-5. Since the Accused Products do not execute "at least a part of a program" in the alleged "emulator"—accused SONAR/BASH functionality— they do not infringe claim 2 of the '115 patent. *Id.* at 2071:12-15.

Second, the method of claim 2 further includes the step of "creating a combined model from at least two models created using different computers." PX-188 at 20:47-49. Dr. Bailey pointed to the decision tree used in the Accused Products as meeting this limitation (Trial Tr. at 1286:10), as well as the "submissions" identified by Columbia's technical expert, but Dr. Bailey admitted he did not identify any documents, testimony, or source code from Norton that referred to SONAR/BASH as a "submission model" or as containing a "submission model." Trial Tr. at 1287:21-1289:10, 1290:7-13. SONAR/BASH has only one model of function calls, the decision tree. *Id.* at 2075:1075:18-22. But the decision tree in SONAR/BASH is not created by combining at least two models created using different computers, and thus does not meet the limitation. *Id.* at 2075:18-25. The BASH submissions that Dr. Bailey relied on are likewise unavailing. As Mr. Kane and Dr. Jaeger testified, these submissions are not models, but are training data used to train

a model, and once the submissions are created, BASH does not compare a submission to another function call.  *Id.* at 2078:19-22, 2081:3-6; *see also id.* at 2081:7-2085:20 (confirming that the source code and documents PX-398, PX-505, and the deposition testimony of Mr. Pereira supports his opinion that this limitation is not met); *see also id.* at 1960:2-21, 1965:3-8, 1966:10-12, 1966:13-18, 1963:20-23, 1969:12-18, 1973:12-18.

Finally, the method of claim 2 includes the following step: "upon identifying the anomalous function call, notifying an application community that includes a plurality of computers of the anomalous function calls."  PX-188 at 20:44-46.  Dr. Bailey agreed that this claim limitation requires that the "application community has to be notified of the anomalous function call."  Trial Tr. at 1306:3-7.  Dr. Bailey further testified that the "notification has to happen" "upon identifying the anomalous function call."  *Id.* at 1306:8-12.  Dr. Bailey testified that this limitation is met through a three-step process, wherein "[s]tep 1 is the sending of the BASH submissions.  Step 2 is the creation of the new decision trees, and step 3 is sending them back to BASH/SONAR."  *Id.* at 1243:10-14.  But Dr. Bailey admitted on cross-examination that the decision tree has not been updated since 2017 and that the Accused Products "haven't performed that kind of notification since then."  *Id.* at 1307:23-1309:7.  Dr. Bailey thus admitted that the Accused Products could not have infringed claim 2 under his theory since 2017.  *Id.*  Moreover, Dr. Bailey's testimony demonstrated that the Accused Products did not infringe even before 2017.  As Dr. Bailey testified, the decision trees were only "periodically" sent back to Norton's customers, approximately every six months (*id.* at 1306:15- 1307:7), rather than "contemporaneously with the identification of a particular anomalous function call" (*id.* at 1310:24-1311:12).  But the claim expressly requires that the notification occur "upon" identification of the anomalous function call, not at some unrelated interval in the future.  Sending a decision tree every six months does not meet the requirement of

notifying the application community "upon identifying the anomalous function call." *Id.* at 2091:13-2092:4; *see also id.* at 2092:10-2093:1 (confirming the same in the source code). Mr. Kane and Dr. Jaeger further testified that SONAR/BASH has no notifications to an "application community" "of" an "anomalous" function call. *See, e.g. id.* at 1974:16-25 (Kane); 2092:14-2093:1 (Jaeger).

*Doctrine of Equivalents*: If an accused product "does not literally infringe a claim," a patentee can attempt to show infringement "under the doctrine of equivalents." *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1373 (Fed. Cir. 2014) (citations omitted). "[A] patentee may prove that a particular claim element is met under the doctrine of equivalents . . . by showing that 'the accused product performs substantially the same function in substantially the same way with substantially the same result' as claimed in the patent." *Id.* (citations omitted).

Columbia did not present any evidence or argument that the limitations "executing at least a part of a program in an emulator" or "creating a combined model from at least two models created using different computers" are met under the doctrine of equivalents. Trial Tr. at 2071:8-11, 2087:12-162.

The only limitation Dr. Bailey alleged was met under the doctrine of equivalents was "upon identifying the anomalous function call, notifying an application community that includes a plurality of computers of the anomalous function call." Trial Tr. at 1253:20-1254:16. But, even viewing Dr. Bailey's testimony charitably, Columbia's expert only identified what he believed were the "function, way, and result" in SONAR/BASH. He did not offer any evidence as to how the function performed by the SONAR/BASH component is the same as the function of claim 2, how such functions are performed in substantially the same way, or how they achieve substantially similar results. *Id.* Such testimony is wholly insufficient to satisfy the requirement of

"particularized testimony and linking argument" showing that "the differences between the accused products or process and the claimed invention are insubstantial." *See Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566-68 (Fed. Cir. 1996) (citation omitted) (holding that expert testimony was insufficient to establish infringement under the doctrine of equivalents where expert did not present "particularized testimony explaining *why* the function and result [were] the same"); *see also Gemalto*, 754 F.3d at 1374 (similar). In fact, as Dr. Jaeger testified, there are substantial differences between the notifying step of claim 2 and the steps performed by SONAR/BASH. *Id.* at 2093:8-10. Dr. Jaeger further confirmed that SONAR/BASH does not perform the same function as that described in this limitation, in the same way, to achieve the same result. *Id.* at 2093:2-2094:7. Columbia failed to meet its burden to prove infringement under the doctrine of equivalents.

### 2.    '322 Patent

Columbia has failed to establish a sufficient evidentiary basis to prove that the Accused Products practice each and every limitation of claims 2, 11, or 27 of the '322 Patent. Claims 2, 11, and 27 contain identical limitations, differing only as to whether they are method, system, or computer-readable medium claims. Trial Tr. at 1002:12-1004:1. Importantly, the claims contain the same limitations of "executing at least a portion of a program in an emulator" and comparing a function call made in the emulator to a model of function calls, "wherein the model is a combined model created from at least two models created using different computers." *Id.* at 1003:7-1004:3 (discussing the "common elements" in claims 2, 11, and 27 of the '322 patent (PX-381)). The limitations of the asserted claims of the '322 patent are substantively identical to those of the '115 patent, with the exception of the "upon notifying" step discussed above which does not appear in the '322 patent asserted claims. Trial Tr. at 1240:7-22, 1974:16-25, 2087:21-2088:8, 2091:13-2092:4, 2092:10-2093:1. For the reasons explained above, Columbia failed to provide a sufficient

evidentiary basis for a jury to conclude that the claims of the '322 patent were directly and literally infringed.  Columbia did not present any evidence or argument that the claims of the '322 patent were infringed under the doctrine of equivalents.

### 3.     Columbia Failed to Prove Infringement for Products Sold Outside the United States

Columbia contends that it is entitled to damages for products sold outside the United States because related acts of infringement occur within the United States.  Columbia contends that the Accused Products sold to customers outside of the United States infringe because (1) the products were made in the United States, (2) the products were distributed from the United States, and/or (3) the sales were substantially made in the United States.  Dkt. 1137 at 24.  Columbia, however, has failed to provide sufficient evidence such that a reasonable juror could find that the products sold outside the United States infringed either of the two asserted U.S. patents.

Columbia's technical expert, Dr. Bailey, admitted on cross-examination that, with respect to the method claims in the asserted patents (PX-188 at claim 2; PX-381 at claim 11), any and all steps of the method would be performed in the foreign country, outside the United States.  Trial Tr. at 1314:1-8.  Dr. Bailey further admitted that the asserted system claim (PX-381 at claim 27) would not be infringed until and unless a foreign customer installed the Accused Products on his or her foreign computer.  Trial Tr. at 1316:18-25.  Finally, claim 11 of the '322 patent is a computer-readable medium claim.  Dr. Bailey admitted that the accused products could not infringe unless and until they were stored on a non-transitory computer readable medium.  *Id.* at 1317:1-24.  Norton, however, does not sell hard drives or computers or any other form of non-transitory computer medium.  *Id.* at 1318:1-2.  Instead, customers download the products from a content delivery network.  *Id.* at 1318:8.

Columbia's damages expert Dr. Sullivan admitted that at least for the Norton line of consumer products accused in this case, the design and development that led to the initial release of those products was completed before the '115 and '322 patents issued.  Trial Tr. at 1838:16-1839:3.  The original "golden disks," or master copies of the accused SONAR/BASH software, were created before the patents issued and are thus non-infringing.  And the golden disks have never left the United States (*id.* at 1839:22-24), and thus do not support a basis for sales to customers outside of the United States.  *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 453-56 (2007) (rejecting infringement claim where allegedly infringing products "were not themselves supplied from the United States").  To the extent that Columbia contended that the submissions from customers outside the United States show design and development outside the United States, the development of the accused products occurred before the patents issued and again cannot provide a basis for Columbia's damages claim.  *Id.* at 1733:23-1734:7; *see Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008) ("The patentee may of course obtain damages only for acts of infringement after the issuance of the patent." (alterations and citation omitted)).

Similarly, Dr. Bailey admitted that the content delivery network is "made" or stored outside the United States, near the location of the download.  *Id.* at 1318:16-1319:7.  Indeed, the "point of the content delivery network is to keep [the] servers relatively close to users who want to download software from them."  *Id.* at 1320:10-13.  Thus, the content delivery network from which foreign customers download their Norton products cannot be used to prove infringement in the United States as no part of the transaction happens in the United States and the content delivery network servers themselves are located abroad.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1372 (Fed. Cir. 2013) (explaining that damages must be "rooted in [the defendant's] activity in the United States" (citation omitted)).

Dr. Bailey further admitted that he did not know whether the accused SONAR/BASH functionality was tested in China or in the United States. *Id.* at 1321:14-24. Thus, Columbia has failed to provide sufficient evidence of record to prove that Norton's products sold outside the United States were ever tested inside the United States.

The asserted method claims have not been practiced in the United States with respect to those products sold to customers outside the United States, thus Columbia cannot meet its burden with respect to either direct or indirect infringement. Similarly, Columbia did not adduce sufficient evidence of direct infringement in the United States of the system or computer-readable medium claims to prove direct infringement with respect to products sold to customers outside the United States.

**B.    Norton Is Entitled To Judgment As A Matter Of Law On Columbia's Induced Infringement Claims**

Columbia contends that Norton induced infringement of the Asserted Claims. Based on the record evidence, Columbia's contention fails as a matter of law for three separate and independent reasons.

***First***, the Supreme Court has expressly held "that inducement liability may arise 'if, but only if, [there is] . . . direct infringement.'" *Limelight Networks, Inc. v. Akamai Tech., Inc.*, 572 U.S. 915, 921 (2014). Because there is insufficient evidence of direct infringement, *supra* at Section III.A, there is likewise insufficient evidence to establish inducement.

***Second***, "liability for induced infringement 'requires knowledge that the induced acts constitute patent infringement.'" *ZUP, LLC v. Nash Mfg., Inc.*, 229 F. Supp. 3d 430, 454 (E.D. Va. 2017), *aff'd*, 896 F.3d 1365 (Fed. Cir. 2018) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)), as well as proof of "specific intent and action to induce infringement," *id.* (citation omitted); *see also Roche Diagnostics Corp. v. Meso Scale Diagnostics,*

*LLC*, 30 F.4th 1109, 2022 WL 1052320, at \*5-6 (Fed. Cir. 2022).  But the record contains no evidence whatsoever that Norton "knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (citation omitted).  Indeed, there is no sufficient evidence to show that Norton either (1) knew that its customers infringe the '115 and '322 patents, or (2) specifically intended to encourage that infringement.

Columbia's alleged evidence of knowledge and intent consisted of documents created by Columbia and sent to Norton, including some of which were sent before the patents-in-suit ever issued. Trial Tr. at 392:1-395:23.  Specifically, with respect to the '115 patent, Columbia identified a post-issuance letter offering Norton an "exciting opportunity" to open "a discussion regarding these and other groundbreaking technologies at Columbia University."  Trial Tr. at 395:24-396:21 (discussing PX-331).  The '115 patent was one of 15 patents listed in the document.  PX-331 at 0331.002.  While two patents were attached to the document, the '115 patent was not.  *Id.* at 0331.003-087.  Columbia's allegation of intent rests merely on the contention that Norton could have obtained a copy of the patent from the patent office upon receipt of the letter.  Trial Tr. at 396:10-21.  With respect to the '322 patent, Columbia's only evidence of record is a letter sent on December 6, 2013 to Norton, *after* this lawsuit was filed.  Trial Tr. at 397:18-398:11 (discussing PX-22).  The letter notes that the '322 patent had issued three days prior and that Columbia believed the '322 patent was "directly relevant to the products identified in the complaint."  Even after the lawsuit was filed, Columbia did not explicitly contend that the Accused Products infringed the '322 patent or identify how or why Columbia believed they infringed.  PX-22.  These communications do not constitute sufficient evidence from which a reasonable juror could find knowledge of infringement, let alone specific intent to induce infringement.

Furthermore, Columbia's expert, Dr. Bailey, testified only that the Accused Products include SONAR/BASH by default, that Norton encourages customers to leave the component turned on, and that Norton touted the importance of SONAR/BASH.  Trial Tr. at 1231:23-1234:1, 1239:3-12. But evidence that Norton encouraged its customers to use SONAR/BASH is not the same as evidence that Norton knew its customers' use of SONAR/BASH infringed the '115 and '322 patents, much less that Norton specifically intended to encourage such infringement.

Moreover, the Federal Circuit has held that where, as here, "a product has substantial non-infringing uses . . . intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent." *ZUP*, 229 F. Supp. 3d at 454 (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003)). Columbia's only evidence on the question of substantial non-infringing uses was a superficial conclusion proffered by Dr. Bailey that no such non-infringing uses existed.  Trial Tr. at 1230:7-1231:5.  But, the record evidence establishes that more than 25% of people who purchased the Symantec Endpoint Products accused of infringement turned off SONAR/BASH so that the accused functionality did not run on their system.  Trial Tr. at 1641:21-1642:5, 1235:15-1236:15. Such evidence shows that the Accused Products *do* have substantial non-infringing uses.  Thus, even if Columbia presented evidence of underlying direct infringement (it did not), judgment as a matter of law of no induced infringement is still appropriate because Norton lacked the requisite specific intent.

***Third***, "inducement must involve the taking of affirmative steps to bring about the desired result." *ZUP*, 229 F. Supp. 3d at 454 (quoting *Global-Tech*, 563 U.S. at 760).  Put differently, "evidence of mere inaction [can] not constitute inducement" as a matter of law.  *See Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001).  Here, no reasonable juror could find

that Norton took "affirmative steps" to induce any third-party to infringe the asserted patents during the relevant time frame.  As explained above, Columbia did not provide evidence of even mere knowledge of possible infringement, let alone affirmative acts to induce infringement.

### C.    Norton Is Entitled To Judgment As A Matter Of Law On Columbia's Contributory Infringement Claims

Columbia has likewise failed to present legally sufficient evidence to submit its contributory infringement theory to the jury.  As with induced infringement, it is "axiomatic" that there can be no "contributory infringement without an underlying act of direct infringement."  *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (citation omitted).  Accordingly, because Columbia has not presented sufficient evidence of direct infringement, *see supra* at Section III.A, judgment as a matter of law is also appropriate with respect to its contributory infringement theory.  Moreover, Columbia's expert Dr. Bailey provided only superficial conclusions that Norton infringed under the theory of contributory infringement.  Trial Tr. at 1228:18-1231:4.  At bottom, Dr. Bailey's testimony was largely a recitation of the standard for contributory infringement, a statement that SONAR/BASH was important, and that the Accused Products are sold with SONAR/BASH.  *Id.*  Such superficial analysis, without any underlying evidence or explanation, does not carry Columbia's burden.  Furthermore, like induced infringement, "contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).   As described above with respect to induced infringement, Columbia failed to present any evidence of the requisite knowledge of patent infringement.  Finally, contributory infringement likewise requires proof that the products have no substantial non-infringing uses, and as explained above, Columbia has failed to present sufficient evidence to bear its burden with respect to that requirement.  *See In re Bill of Lading*, 681 F.3d at 1338 (finding no contributory infringement

where product had alternative uses even if "practicing the patented method may be the most logical or useful purpose" for the products).

### D. Norton Is Entitled To Judgment As A Matter Of Law On Willful Infringement

Columbia has failed to provide legally sufficient evidence that Norton willfully infringed the '115 and '322 patents. No reasonable jury could conclude that Norton knew its actions constituted infringement of an asserted claim or that Norton made itself willfully blind to its infringement of the asserted claims. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 104-05 (2016). Mere knowledge of the patent is not legally sufficient to show willfulness. *See Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000) (finding alleged infringer's knowledge of asserted patent, without more, was insufficient to support a conclusion of willfulness). For at least the reasons explained above with respect to the knowledge and intent requirements of indirect infringement, Columbia failed to meet its burden for willful infringement. Again, Columbia has only identified evidence that Norton may have known the '115 patent existed, but failed to provide any evidence that Norton knew or should have known it infringed. Importantly, the '322 patent did not issue until after Columbia filed suit in the instant litigation; Norton cannot be found liable for willfully infringing a patent before it ever issued. Columbia thus failed to show pre-suit willful infringement. And Columbia provided no evidence of post-complaint willful infringement, including any evidence demonstrating that Norton knew that its actions constituted infringement of the asserted claims after this lawsuit was filed.

### E. Norton Is Entitled To Judgment As A Matter Of Law On Columbia's Claim For Damages For Infringement Of The '115 and '322 Patents

#### 1. Columbia Failed To Present Legally Sufficient Evidence To Support Its Patent Damages Claim

Columbia has failed to present legally sufficient evidence to support its damages claims, and Norton is therefore entitled to judgment as a matter of law. "The patentee bears the burden of proving damages." *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012); *see also Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002). "[D]amages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'" *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (quoting *Ericsson*, 773 F.3d at 1226). To determine this value, parties can calculate a reasonable royalty based on a hypothetical negotiation between the patentee and alleged infringer, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (citing *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)). Damages cannot be based on "speculation or guesswork." *Id.* at 1335. Nor can they be based on expert testimony that is economically unsound or unreliable. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("A damages theory must be based on 'sound economic and factual predicates.'" (quoting *Riles v. Shell Exploration & Prod. Co*., 298 F.3d 1302, 1311-13 (Fed. Cir. 2002))); *see also Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1315-18 (Fed. Cir. 2011). "[C]ourts must be proactive to ensure that the testimony presented—using whatever methodology—is sufficiently reliable to support a damages award." *CSIRO*, 809 F.3d at 1301.

Columbia relied on two experts to support its damages demand. Dr. Cole testified first with respect to apportionment; Dr. Sullivan then relied on Dr. Cole's apportionment analysis in providing his damages opinion. Dr. Cole admitted on cross-examination that several of the assumptions he relied on in forming his opinions were incorrect, including that the patented

technology was "widely adopted" (Trial Tr. at 1553:7-1557:25) or that it would have served as a product differentiating feature from 2009-2015 (*id.* at 1571:15-1576:8). Moreover, Dr. Cole provided an apportionment analysis twice in this case relating to the asserted patents, first in 2014 and then in 2019. *Id.* at 1583:25-1584:18. Dr. Cole testified that he changed his apportionment analysis (and the resulting conclusions) based on differing instructions he received from counsel in 2014 and 2019. *Id.* at 1584:10-20. In 2014, Dr. Cole found that the "upper limit" of the value of malware protection to Norton's products was 70%. *Id.* at 1584:25-1586:5. In 2014, Dr. Cole apportioned the value of malware as between 53% and 70% for the accused consumer products, and as 60% for the Symantec Endpoint products. *Id.* at 1602:24-1603:19. In 2019, Dr. Cole changed those numbers to 60-95% for the consumer products and 75% for the Symantec Endpoint products. *Id.* at 1604:17-1604:23. Dr. Cole explained that he was "given two different assignments" in performing his analysis, which is why he wound up with two different numbers. *Id.* at 1605:11-18. Dr. Cole never adequately explained why his numbers changed from 2014 to 2019 beyond identifying the 2019 deposition testimony of a Norton witness testifying about customers' contemporaneous perception of the products. *Id.* at 1493:20-1494:15, 1605:5-18. Dr. Cole's remaining apportionment analysis relied on the first step apportioning the value of malware, which was speculative and unreliable.

Moreover, Dr. Cole admitted that his apportionment analysis was qualitative, not quantitative. Trial Tr. at 1483:11-1484:4, 1470:6-18. Much of Dr. Cole's "qualitative" analysis was based on his experience working at McAfee from 2009-2010, resulting in a complete lack of corroborating evidence beyond Dr. Cole's say-so. *Id.* at 1631:8-1634:12. That kind of "qualitative testimony" is "insufficiently reliable" unless it is "anchored to a quantitative market valuation." *CSIRO*, 809 F.3d at 1302. But the only quantitative evidence Dr. Cole identified demonstrated

that the accused SONAR/BASH functionality only accounted for 1% of the blocks performed by the accused products (*id.* at 1470:19-1471:17) and was either disabled or not installed by at least 25% of enterprise customers (*id.* at 1641:21-1642:20).  Thus, the only quantitative evidence of record undermines Dr. Cole's qualitative opinions.  Dr. Cole's apportionment analysis is speculative, economically unsound and unreliable.  And because Dr. Sullivan's damages analysis in turn relies on Dr. Cole's apportionment analysis, that unreliable analysis taints the entirety of Dr. Sullivan's analysis.  *See, e.g.*, *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) (concluding that second expert's testimony was unreliable because it incorporated and relied on first expert's unreliable testimony); *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 404-05 (5th Cir. 2016) (same).  Columbia thus failed to present legally sufficient evidence to support its damages claims, and Norton is entitled to judgment as a matter of law.

> ### 2. Columbia Failed To Present Legally Sufficient Evidence To Support Its Claim For Damages For Sales Outside The United States

Norton is likewise entitled to judgment as a matter of law on Columbia's claim for damages related to sales made to customers located outside the United States, for at least three reasons. First, Norton maintains its objection to both the presentation of evidence pertaining to foreign sales and the jury instruction regarding damages for sales outside of the United States, and incorporates its arguments of those issues as if set forth fully herein.  Dkt. 375 at 8-9, 18-23; Dkt. 1048, 1048-1 at 24-25.  Those sales cannot be the basis for a finding of infringement or resulting damages because the Patent Act is "focuse[d] on *domestic conduct*."  *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137-38 (2018) (emphasis added); *see also Microsoft Corp.*, 550 U.S. at 453-56.  Second, Columbia failed to adduce sufficient evidence to support a finding that the Accused Products sold outside of the United States infringe or substantially infringe within the United States, for the reasons explained above in Sections III.A-C.

19

Third, Columbia failed to support its claim for damages for sales of the products outside the United States, even under its improper legal theory.  Columbia contends that Norton's infringement of the Asserted Claims "is, at a minimum, a substantial, direct, and foreseeable cause of sales of Accused Products to and use of Accused Products by end user customers outside the United States."  Dkt. 1137 at 24.  Columbia, however, failed to prove that the alleged acts of infringement in the United States were a substantial and reasonably foreseeable cause of Norton's sales to customers outside of the United States.  *See, e.g.*, *Power Integrations*, 711 F.3d at 1372 ("We find neither compelling facts nor a reasonable justification for finding that [plaintiff] is entitled to 'full compensation' in the form of damages based on loss of sales in foreign markets which it claims were a foreseeable result of infringing conduct in the United States.").  Again, the accused SONAR/BASH functionality was designed and developed prior to the issuance of the patents, and thus such acts do not constitute infringement.  *Welker Bearing*, 550 F.3d at 1095.  And the "golden disks" have never left the United States, so they do not support Columbia's claims regarding products sold outside the United States either.  *See Microsoft*, 550 U.S. at 453 (rejecting infringement claim where allegedly infringing products "were not themselves supplied from the United States").  In short, Columbia provided no evidence that such alleged acts were a substantial and foreseeable cause of Norton's sales to customers outside the United States.

Moreover, Columbia failed to provide any quantification of the damages attributable to products sold outside the United States versus those sold within the United States.  *Cf. Power Integrations*, 711 F.3d at 1372 (holding that "the district court correctly concluded that there was 'no legal basis that supports the jury award in the amount of $33 million' because [the expert's] estimate of $30 million in [worldwide] damages was not 'rooted in [the defendant's] activity in the United States'" (citation omitted)).  At trial, Dr. Sullivan calculated his damages demand using

Norton's worldwide revenue, and based his reasonable royalty figure on sales to customers worldwide.  Trial Tr. at 1759:14-1762:20.  As a result, Dr. Sullivan never apportioned his damages demand with respect to the sales of accused products to customers within or without the United States.  In other words, he failed to prove the amount of damages attributable (1) only to products sold to customers in the United States and (2) only to customers outside the United States.  For that reason, the record is silent on the amount of damages attributable to foreign-only sales, and Columbia therefore failed to carry its burden to prove those damages.

**F.   Norton Is Entitled To Judgment As A Matter Of Law On Columbia's Inventorship Claims**

"The inventors as named in an issued patent are presumed to be correct." *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997).  A party alleging misjoinder or non-joinder of inventors "must meet the heavy burden of proving its case by clear and convincing evidence." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004).  "Conception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Lab. Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).  "One who simply provides the inventor with well-known principles or explains the state of the art without ever having 'a firm and definite idea' of the claimed combination as a whole does not qualify as a joint inventor." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

Columbia has not adduced clear and convincing evidence that the Columbia Professors were sole or joint inventors of the '643 Patent, because it has failed to demonstrate that Drs. Stolfo and Keromytis made a significant contribution to the conception of at least one or more claims of the '643 patent.  Trial Tr. at 544-712 (Stolfo), 777-883 (Keromytis), 2248-2454 (Shou), 2319:6-2342:2; 4/26/22 Trial Rough.  The evidence of record demonstrates that Dr. Stolfo and Dr.

Keromytis at best explained well-known concepts and then-existing state of the art to the inventor, failing to meet the requirement for inventorship. 4/26/22 Trial Rough.

Columbia relies on the testimony of Dr. Bailey to corroborate the oral testimony of the putative inventors Dr. Stolfo and Dr. Keromytis.  In particular, Dr. Bailey testified that four Columbia documents contain disclosures that prove that Dr. Stolfo and Keromytis contributed to the conception of a claim in the '643 patent.  Trial Tr. at 916:4-951:1.  But, as Norton's expert Dr. Nielson testified, the disclosures that Dr. Bailey relied upon are not an inventive contribution to any claim of the '643 patent.  4/26/22 Trial Rough.  Furthermore, these disclosures were all published and publicly available prior to the filing of the provisional application that led to the '643 patent.  4/26/22 Trial Rough.  And the record is devoid of any evidence that one of Dr. Bailey's four documents, PX176, was ever provided to or known by the named inventor, Darren Shou.  *Id.* at 1337:5-14.  Thus, at best, they can only be considered evidence of explaining the prior art or the current state of the art and are not evidence of inventorship.  Accordingly, Columbia failed to meet its burden on inventorship.

### G.     Norton Is Entitled To Judgment As A Matter Of Law On Columbia's Fraudulent Concealment Claim

Columbia has failed to present legally sufficient evidence to submit its fraudulent concealment claim to the jury.  First, inventorship is a predicate to Columbia's claim for fraudulent concealment.  For the reasons explained above, Columbia failed to meet its burden on inventorship and thus failed to meet its burden on fraudulent concealment.  Thus, to make out a claim for fraudulent concealment, a plaintiff must show a "material misrepresentation of an existing fact, made with knowledge of the falsity, an intent to induce reliance thereon, justifiable reliance upon the misrepresentation, and damages." *Consol. Bus Transit, Inc. v. Treiber Grp., LLC,* 948 N.Y.S.2d 679, 681 (N.Y. App. Div. 2012) (citations omitted).  Columbia must show (1) that

Norton had a duty to disclose the material information, (2) that Norton failed to disclose material information to Columbia, (3) that Norton intentionally concealed material information for the purpose of inducing Columbia to rely on Norton's representations that concealed material information, (4) that Columbia actually and reasonably relied upon Norton's representations, and (5) that Columbia suffered loss as a result of such reliance.  The duty to disclose may arise from "a fiduciary or confidential relationship between the parties," or from where: "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge."  *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995) (citations omitted).  Each element must be shown by "clear and convincing evidence."  *Id.* at 153.

Columbia has not presented legally sufficient evidence as to any of these elements.  *First*, Columbia has not presented evidence that Norton had a duty to disclose material information to Columbia.  Indeed, the words "duty to disclose" do not appear anywhere in the entire trial record. ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Dkt. 1104 at 1-2.

Moreover, Mr. Shou's March 24, 2010 email to Drs. Stolfo and Keromytis did not amount to a "promise" to list them as co-inventors.  PX-80; Trial Tr. at 2407-17, 2446-49.  As Mr. Shou testified, he let them know that "Norton's legal team suggested that we look into the possibility of patenting the idea that we can combine Columbia'[s] Decoy with Symantec DLP," that "[t]his does not mean that we will file a patent, but the team is exploring," and that he "added your names (along with Marc and myself) to the list of co-inventors."  PX-80; Trial Tr. at 2407-17, 2446-49.

Mr. Shou testified that this "list of co-inventors" was provided to Norton's legal team, who emailed Drs. Stolfo and Keromytis the same day (March 24, 2010) letting them know that Norton was "currently preparing a patent application," that Norton desired to "get inventorship/ownership right," asked for identification of portions of an attached invention disclosure form that indicated they were potential inventors, and indicated that Norton's legal team would use such information to make the ultimate determination as to who are legal inventors.  PX-85; Trial Tr. at 2407-17, 2446-49.  Columbia has not adduced any evidence that Norton was in a confidential or fiduciary relationship with it at the time.

And Columbia has likewise failed to show that Norton had superior knowledge of information that was not readily available, and that Norton knew Columbia was acting on the basis of that mistaken knowledge.  Indeed, courts have only "sustained a cause of action for fraudulent concealment based upon the special facts doctrine . . . [where] there was some underlying transaction" and the defendant withheld or omitted facts "in the transaction in furtherance of the underlying fraud."  *Campaign v. Esterhay*, 85 N.Y.S.3d 687, 692 n.1 (N.Y. Sup. Ct. 2018).  Here, Columbia has attempted to put forth evidence showing that Norton omitted facts during conversations between the parties, but Columbia has made no effort to show that those conversations where in connection with an "underlying transaction," such that Norton would know that Columbia was "acting on the basis of [] mistaken knowledge."  *Banque Arabe*, 57 F.3d at 155. Indeed, Columbia has not shown it was "acting" at all.  *See Meeker v. McLaughlin*, No. 17-CV-5673, 2018 WL 3410014, at *8 (S.D.N.Y. July 13, 2018) ("Because the Meekers do not allege (and cannot establish) a business transaction with McLaughlin . . . they cannot sustain a fraudulent concealment claim against McLaughlin.").

*Second*, Columbia has not presented evidence that Norton made a material misrepresentation to Columbia or otherwise failed to disclose material information to Columbia. Columbia contends that the material misrepresentation has three parts:  First, that Norton "assured the Columbia Professors that they had been added to the list of co-inventors and that Norton would ensure it had inventorship right."  Trial Tr. at 196:6-19 (preliminary jury instruction containing Columbia's contentions).  Second, that after Norton provided Columbia with a draft of the non-provisional application that listed Dr. Stolfo and Dr. Keroymtis as inventors, Norton failed to inform Columbia that Dr. Stolfo and Dr. Keromytis were not listed as co-inventors on the application.  *Id.* at 197:1-10 (same).  Finally, Columbia contends that Norton failed to inform Columbia that it had filed the '643 non-provisional patent application over Columbia's objections. *Id.* at 197:11-15 (same).

But the evidence in fact demonstrates the contrary.  For example, Norton informed Dr. Stolfo and Dr. Keromytis that it intended to file a patent application and that, at the time, the application was based on an idea from Marc Dacier.  Trial Tr. at 644:13-645:9, 2266-72, 2282:15-23, 2304-2310.  Norton also informed Columbia about Norton's intended timing for filing the application.  *Id.* at 645:20-24.  Norton further informed Columbia that the application was not directed to Dr. Stolfo's decoy creation technique, but rather "a new combination patent."  *Id.* at 646:17-647:23.  And Norton informed Columbia that Norton's legal team would be making the final determination as to inventorship of the forthcoming application.  *Id.* at 651:25-652:10.  Dr. Stolfo admitted that none of this information was concealed from him and that he had the opportunity to pass this information to Columbia's legal team.  *Id.* at 653:7-10.  Moreover, the evidence does not support, and in fact contradicts, Dr. Stolfo's and Dr. Keromytis's inventorship claims.  *Id.* at 544-712 (Stolfo), 777-883 (Keromytis), 2248-2454 (Shou).

25

*Third*, Columbia has not presented evidence that Norton had any *intent to induce reliance* on its alleged fraudulent concealment.  As explained above, Norton disclosed its intention to prepare a patent application, disclosed that Norton's legal team would be making the determination of inventorship, and invited Dr. Stolfo to share this information with Columbia's legal team.  *See also id.* at 662:16-665:8 (discussing PX-382).  Darren Shou further testified to these points, indicating that he reached out to Drs. Stolfo and Keromytis regarding the provisional Norton's legal team provided Columbia with Norton's invention disclosure form and asked for evidence of inventorship, and Norton's legal team again asked Columbia for evidence of inventorship prior to filing a nonprovisional application.  *Id.* at 2248-2454; PX-80.

*Fourth*, Columbia has not presented sufficient evidence that Columbia in fact relied on any misrepresentations.  To establish reliance, Columbia must have shown, by clear and convincing evidence, that Norton's concealment of a material fact was a "substantial factor" in Columbia's decision not to take steps to protect what Columbia claims is its intellectual property.  *Travelex Currency Serv., Inc. v. Puente Enter., Inc.*, 449 F. Supp. 3d 385, 399 (S.D.N.Y. 2020) (citation omitted).  But Columbia failed to demonstrate that Dr. Stolfo or Dr. Keromytis were inventors of the '643 patent, thus the intellectual property in question was not Columbia's.  Trial Tr. at 544-712 (Stolfo), 777-883 (Keromytis), 2248-2454 (Shou).  Moreover, Columbia was engaged in a confidentiality agreement with a third party at the time and was in the final stage of exclusively licensing its own technology to that third party.  *Id.* at 659:1-19.  And Columbia in fact sought and received its own patents related to decoy technology, separate from the '643 patent, including patents that contain the same disclosures Columbia's expert relied on for proof of inventorship.  *Id.* at 963:3-964:13.  Given that Columbia pursued its own patents on the very same disclosures it

contends are present in the '643 patent, Columbia took steps to protect its intellectual property, belying its fraudulent concealment claim.

*Finally*, Columbia did not present evidence that it suffered a loss based on its alleged reliance. *See, e.g.*, *Water Street Leasehold LLC v. Deloitte & Touche LLP*, 796 N.Y.S.2d 183, 185 (App. Div. 2005) (noting loss causation is a fundamental element of claim). Columbia attempted to question Mr. Herskowitz, a Columbia fact witness, about whether he thought Columbia could have licensed the '643 technology. Trial Tr. at 372:23-373:2. The Court found such proposed testimony to be speculative and veering into expert testimony and sustained objections to these questions. *Id.* at 373:4-374:15. Columbia did not present any evidence on the record that it could have obtained the '643 patent on its own, that it would have obtained any clearly defined intellectual property beyond rampant speculation, or that it would have otherwise licensed the speculative intellectual property.

### H. Norton Is Entitled To Judgment As A Matter Of Law On Columbia's Claim For Damages For Its Fraudulent Concealment Claim

Columbia failed to prove that it lost any measure of damages in response to Norton's alleged fraudulent concealment. *Water Street Leasehold*, 796 N.Y.S.2d at 185 (requiring proof of loss causation). As a threshold matter, Columbia has not and cannot meet the "heavy burden of proving [improper inventorship] by clear and convincing evidence." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). Accordingly, Columbia suffered no loss or any *any* actual injury or loss. And absent improper inventorship, there can be no fraudulent concealment. *Univ. of Colo. Foundation, Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999).

Further, Columbia pursued and received its own patents on the technology that it believed Dr. Stolfo and Dr. Keromytis invented. If so, it could have sought and secured the same claims based on its own, earlier application. Columbia did not provide any evidence regarding a loss of

intellectual property rights in response to Norton's alleged fraudulent concealment or any other related loss.

Columbia's damages expert, Dr. Sullivan relied on a licensing agreement between Columbia and Allure (Dr. Stolfo's company) as the basis for his damages theory related to the '643 patent.  Trial Tr. at 1775:1-15.  Dr. Sullivan hypothesized that Norton "would have paid for the '643 while it was an application and separately …when it was an issued patent." *Id.* at 1775:16-1776:5.  Although Dr. Sullivan opined that his proposed damages demand would be the amount required to make Columbia whole, he offered no support and no evidence for his theory.  He did not explain why the agreement between Allure and Columbia was an appropriate foundation for damages, why he believed Norton would have agreed to the same rate as Allure, or whether the products or intellectual property covered by the agreement would have been comparable.  *Id.* at 1775:1-1776:21.  He further failed to account for the differences in the parties and failed to consider other differences in the circumstances and scope of the agreements.  *Id.*  An Columbia offered no evidence that a single company—Norton nor anyone else—ever considered practicing or did practice, the claims of the '643 patent.  As such, the $22 million demand is facially implausible.

Moreover, Dr. Sullivan opined at trial that his damages demand for the fraudulent concealment claim was over $22 million.  *Id.* at 1841:21-23.  But Dr. Sullivan admitted on cross-examination that in 2014 he opined that the appropriate damages award was only $12.9 million.  *Id.* at 1842:1-17.  All for the same 2011 hypothetical transaction.  Dr. Sullivan thus presented two competing numbers for the same damages claim.  *See, e.g.*, *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1282-83 (11th Cir. 2020) (rejecting expert's testimony that was "internally

inconsistent"); *United States v. Wooden*, 693 F.3d 440, 454-55 (4th Cir. 2012) (same). In short,

Dr. Sullivan's damages analysis was unsupported, unreliable, and speculative.

## IV.    CONCLUSION

For the foregoing reasons, Norton respectfully requests that the Court grant Norton's

Motion for Judgment as a Matter of Law.


April 26, 2022                                              NORTONLIFELOCK INC.


                                                    By: ____/s/_____
                                                            Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
Laura Anne Kuykendall, VSB #82318
TROUTMAN PEPPER
HAMILTON SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutman.com
robert.angle@troutman.com
la.kuykendall@troutman.com

Douglas E. Lumish (*pro hac vice*)
doug.lumish@lw.com
Srinivas Pathmanaban (*pro hac vice*)
giri.pathmanaban@lw.com
Ryan T. Banks (*pro hac vice*)
ryan.banks@lw.com
140 Scott Drive
Menlo Park, CA 94025
Telephone: 650.463.4600
LATHAM & WATKINS LLP

David K. Callahan (*pro hac vice*)
david.callahan@lw.com
330 North Wabash Ave., Ste. 2800
Chicago, IL 60611
Telephone: 312.876.7700
LATHAM & WATKINS LLP

Michael Morin (*pro hac vice*)
mike.morin@lw.com
Susan Yates Tull (*pro hac vice*)
susan.tull@lw.com
Benjamin J. Behrendt (*pro hac vice*)
benjamin.behrendt@lw.com
Tiffany C. Weston (*pro hac vice*)
tiffany.weston@lw.com
Richard A. Lowry (*pro hac vice*)
richard.lowry@lw.com
Laura Nguyen (*pro hac vice*)
laura.nguyen@lw.com
555 Eleventh St., NW, Ste. 1000
Washington, DC 20004
Telephone:  202.637.2200
LATHAM & WATKINS LLP

ATTORNEYS FOR DEFENDANT
NORTONLIFELOCK INC.