**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>   *Plaintiff*,<br><br> v.<br><br>NORTONLIFELOCK INC.,<br><br>   *Defendant*. | Civil Action No. 3:13-cv-00808-MHL |

**COLUMBIA'S BRIEF IN SUPPORT OF
MOTION FOR AN ORDER TO SHOW CAUSE**

The Trustees of Columbia University in the City of New York ("Columbia") requests an order to show cause why certain NortonLifeLock Inc. ("Norton") counsel of record should not be held in civil contempt for failure to comply with the Court's March 15, 2022 Order (Dkt. 890) (the "Order"). For the reasons set out below, Columbia requests that the order to show cause (i) set a date for an evidentiary hearing at the Court's earliest convenience, and (ii) require attendance of counsel representatives who communicated in any way with Dr. Marc Dacier or otherwise participated in such communications during the period when the Court found ███████████ ███████████████████████████████████████████████. At the conclusion of such hearing, Columbia expects it will request that those of Norton's counsel to whom the Court's Order was directed and who are responsible for the March 16th pleading refusing to comply (Dkt. 892) with the Order ("Counsel") be held in civil contempt until such time as they fully comply with the Order. Columbia further expects to request sanctions (and makes this motion) only to encourage such compliance. Columbia makes this request in the interest of justice and because it believes that the information Counsel was ordered to produce by the Court's Order will provide further support for Columbia's forthcoming (i) motion for enhanced damages pursuant to 35 U.S.C. § 284, and (ii) motion for attorneys' fees pursuant to 35 U.S.C. § 285. We respectfully urge, however, that nothing associated with this motion delay resolution of any motions under §§ 284 and 285 or Fed. R. Civ. P. 50 so that judgment may be expeditiously entered.

## RELEVANT BACKGROUND

Although the Court repeatedly has addressed the circumstances relevant to Dr. Dacier's absence from trial, we briefly set out below certain facts material to the present motion. On March 15, 2022, the Court found ███████████████████████████████████████████ █████████████████████████████████████████████████████████████████████

███████████████. (Dkt. 889 at 12-14). It is not a subtle point: Counsel could not represent a witness offering to provide testimony against Norton's interests while simultaneously representing Norton (*see* Decl. of Leslie A.T. Haley (Dkt. 547-3)). Indeed, the engagement letter between Counsel and Dr. Dacier stated as much, and acknowledged that Counsel would no longer represent Dr. Dacier if a conflict developed. (Dkt. 562-4 at 3). Accordingly, the Court ordered that "no later than March 16, 2022, counsel for Norton must disclose on the record in writing any information garnered from Dr. Dacier during the period their [Counsel's] representation of Dr. Dacier was a conflict." (Order at 1).

The Order was entirely appropriate for multiple reasons, including Norton and Counsel's repeated representations that Dr. Dacier—a critical witness—had changed his mind and no longer wanted to testify at trial, while failing to provide any supporting evidence from Dr. Dacier himself that he had changed his mind (*e.g.*, a declaration or even e-mail communication). At a minimum, disclosure of the information subject to the Order would allow the Court to assess the representations that Dr. Dacier voluntarily decided not to testify. Recently produced e-mails between Norton's new counsel and Dr. Dacier in April of 2022, discussed *infra*, augment the basis to clarify why, in fact, Dr. Dacier never appeared at trial to the substantial prejudice of Columbia.[1]

In a March 16 response to the Order ("Response"), Counsel refused to comply.[2] The Response argued that the Order was "outside of the parties' adversarial process, on an incomplete

---

[1] As the Court noted, referencing just one example, ████████████████████ (Dkt. 889 at 12-13 (citing Dkt. 801-44, Ex. QQ)).

[2] While the Response is entitled *Norton's* "Notice in Response" to the Order and the pleading is submitted on behalf of "NortonLifeLock Inc.," the Order was directed against Counsel only and the Response in text states that the Response is submitted by Counsel. (Dkt. 892 at 1, 2.) Thus, this motion is directed against Counsel only, and we respectfully suggest that Norton's involvement in Dr. Dacier's failure to appear at trial—which Norton has never denied in any sworn

2

and one-sided record, and without basis in fact or law[.]" (Dkt. 892 at 1.) The Response went on to claim that the Order "exceeds this Court's authority" and noted that Counsel would not comply. (*Id.*) These arguments are entirely misplaced, and even if credible they would not excuse the refusal to comply with the Court's Order.[3] (*See* Dkt. 803-44, Ex. QQ at 1.)

Indeed, rather than refusal to comply with the Court's Order, Counsel (and Norton) had several legitimate options: they could have moved for reconsideration adding whatever "facts" they deemed appropriate to assert; they could have sought a stay from the Court pending appellate review; they could have sought a stay from an appellate court pending review; they could have sought *in camera* review of the material subject to the Order; in connection with reconsideration, they could have produced communications with Dr. Dacier that did not involve legal advice and provide a privilege log for the rest; they could have produced evidence from Dr. Dacier that he wished to invoke ***his*** privilege pending resolution of reconsideration or appeal.[4] None of that was

---

declaration or other such evidence—should be addressed in the context of Columbia's forthcoming motions under §§ 284 and 285.

[3] In fact, Norton and Counsel had plenty of notice of the conflict issue. For example, in responding to Norton's motion for sanctions (Dkt. 477), Columbia's ethics expert, Leslie A.T. Haley, explained in detail in her declaration that there could be no attorney-client relationship between Norton's Counsel and Dr. Dacier because of the conflict (Dkt. 547-3). Norton's ethics expert never responded to the point ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 889 at 11 (emphasis in original))). The Court's denial of Norton's motion for sanctions (Dkt. 663 at 3-5)—▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 889 at 13)—specifically stated both that Counsel's purported representation of Dr. Dacier was "undetermined" (Dkt. 663 at n.3), and that Columbia had a reasonable belief that Dr. Dacier was *not* represented by Counsel (*id.* at 5). Rather than heed the obvious and explicit writing on the wall and the Court's order, Counsel told Dr. Dacier "that the Court concluded he [Dr. Dacier] is represented by Norton's counsel." (Dkt. 803-44, Ex. QQ). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 889 at 13.)

[4] To state the obvious, if anyone controls the purported privilege at issue, it is Dr. Dacier, not Counsel. The March 16, 2022 Response to the Order purports to assert Dr. Dacier's privilege, but was filed without a shred of evidence that Dr. Dacier wishes to assert privilege. Indeed, the April 2022 communications that Dr. Dacier had with Norton's new counsel make such an assertion implausible.

done.  Instead, the Response opted for a course of conduct that the law does not allow: refusing to comply with the Court's Order.

Subsequent events and evidence revealed further support both for the Court's findings and the conclusion that Dr. Dacier did not of his own volition decide not to testify at trial.  On the night of April 7, 2022—just hours after arguments on the issue of a missing witness charge—Norton disclosed to Columbia e-mails between Norton's new counsel and Dr. Dacier over the prior several days.  At least suggesting that Dr. Dacier himself believes that there was no proper attorney-client relationship between himself and Norton's Counsel, Dr. Dacier told Norton's new counsel: "I am no fool and I can see now why [Norton's Counsel] has done what they have done over the years, while pretending to 'represent' me." (Dkt. 1084-1 at 1.)  In response to those emails, Columbia requested that Norton and Counsel comply with the Order, but Norton's new counsel responded that only Counsel had the materials the Court ordered produced.  (*See* Dkt. 1084-2 at 4.)

Even in the face of Dr. Dacier's statements that Counsel had only "pretended" to represent him, Counsel continued to refuse to comply with the Order.

## ARGUMENT

Although Columbia believes that appropriate monetary sanctions for Norton's involvement in Dr. Dacier's failure to appear at trial should be addressed through Columbia's motions for enhancement of the jury's damage award under 35 U.S.C. § 284 and for attorneys' fees under 35 U.S.C. § 285—under the law applicable to both motions, litigation misconduct can be the basis, in whole or in part, for enhancement and an award of attorneys' fees—Counsel's continued contempt requires additional measures for at least two reasons, as explained below:

First, contempt of the Court's Order must be rectified in the interests of justice beyond an award to Columbia under §§ 284 and 285.  A person subject to an order has multiple legitimate

responses if they disagree with an order; simply refusing to comply is not one of them. *See McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) ("Orders of the courts must be promptly complied with, absent a stay, for appeal is the remedy for decisions believed to be erroneous.").

Holding a hearing on an order to show cause for civil contempt and, if a finding of contempt is entered, imposing measured sanctions until compliance is an appropriate course to enforce compliance. *Redner's Mkts., Inc.* v. *Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015) ("Civil contempt is an appropriate sanction if [the court] can point to an order of [the court] which set[s] forth in specific detail an unequivocal command which a party has violated.") (internal quotation omitted).

Indeed, Columbia makes this motion only to support compliance with the Order. Should the Court find contempt, Columbia will respectfully request only such reasonable sanctions as may be necessary to cause compliance with the Order.[5] For example, imposing monetary sanctions until compliance is achieved would advance the purpose of civil contempt to obtain compliance with the Court's Order. *See JTH Tax, Inc.* v. *Lee*, 540 F. Supp. 2d 642, 647 (E.D. Va. 2007) ("Upon a finding of contempt, the court may enter sanctions in the form of a fine. The fine can be either compensatory or coercive."); *see also Certain Underwriters at Lloyd's, London* v. *AdvanFort Co.*, 2020 WL 877981, at *1 (E.D. Va. Feb. 21, 2020) (imposing a $1,000 per diem fine for each day of non-compliance of a court order following a 5-day cure period); *Chesapeake Bank* v. *Berger*, 2014 WL 5500872, at *6 (E.D. Va. Oct. 30, 2014) (imposing $450 per day fine

---

[5] In addition to such an order and appropriate relief under §§ 284 and 285, upon a finding of contempt the Court may wish to consider other appropriate relief. *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995) ("The appropriate remedy for civil contempt is within the court's broad discretion."); *see also Laugier* v. *City of New York*, 2014 WL 6655283, at *2 (S.D.N.Y. Nov. 24, 2014); *United States* v. *Mishra*, 2016 WL 2895118, at *1 (W.D. Pa. May 18, 2016).

5

until defendants complied with underlying order); *Landman* v. *Royster*, 354 F. Supp. 1292, 1301 (E.D. Va. 1973) (finding a $25,000 fine appropriate to "impress upon the defendants the need to take all steps necessary to carry out all facets of the Court's order"). Although monetary sanctions to secure compliance would be entirely appropriate, Columbia is hopeful that the scheduling of such a hearing and requiring the presence of Counsel who communicated with Dr. Dacier, or otherwise participated in such communications, during the period of the conflict would by itself encourage Counsel to comply with the Order, obviating a need for further action.

A second reason to enter the order to show cause is that the evidence that the Court ordered disclosed likely will further support Columbia's motions under §§ 284 and 285. For example, Dr. Dacier's written statement on April 5—"I'm happy to help the judicial process [by testifying at trial] though, *as I have continuously said so far*" (emphasis added) but that "[Norton's Counsel] . . . repeatedly told me that there was no need for me to do anything, that they did not want me to do anything. . ." (Dkt. 1084-1 at 3)—strongly suggests that Dr. Dacier was kept from trial and Columbia was severely prejudiced through the efforts of Norton and Counsel, not because Dr. Dacier was unwilling to testify. It is reasonable to conclude that the evidence Counsel continues to withhold will further support Columbia's §§ 284 and 285 motions, and that compliance with the Order likely would provide Columbia further evidence to support its motions under §§ 284 and 285.

In conclusion, although Columbia is hesitant to place further burdens on the Court, Columbia believes a hearing should be held and, if contempt is found, measured sanctions ordered to encourage compliance.[6] In both the interests of justice to rectify contempt, and to provide

---

[6]  Under the Court's scheduling Order (Dkt. 1225), Columbia's reply briefs on its §§ 284 and 285 motions are due July 22. Upon the filing of this motion for an order to show cause, Columbia will seek agreement on an expedited briefing schedule for this motion. While final briefing on post-trial motions will not be concluded for more than eight weeks, Columbia respectfully urges

Columbia with the evidence the Court ordered disclosed, Columbia respectfully requests an order to show cause why certain Counsel should not be held in civil contempt for their failure to comply with the Order. We sincerely hope that such a hearing will be obviated by compliance.

Dated: May 24, 2022

Respectfully submitted,

*/s/ John M. Erbach*
Dana D. McDaniel (VSB No. 25419)
John M. Erbach (VSB No. 76695)
SPOTTS FAIN, P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Tel.: (804) 697-2065
Fax: (804) 697-2165
dmcdaniel@spottsfain.com
jerbach@spottsfain.com

Garrard R. Beeney (*pro hac vice*)
Dustin F. Guzior (*pro hac vice*)
Stephen J. Elliott (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel.: (212) 558-4000
Fax: (212) 558-3588
beeneyg@sullcrom.com
guziord@sullcrom.com
elliotts@sullcrom.com

*Counsel for Plaintiff The Trustees of Columbia University in the City of New York*

---

that nothing associated with the instant motion interferes with expeditious resolution of post-trial motions and the entry of final judgment on the jury verdict.