IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, <br><br> *Plaintiff* <br><br> v. <br><br> NORTONLIFELOCK INC. f/k/a SYMANTEC CORPORATION, <br><br> *Defendant* | Civil Action No. 3:13-cv-00808-MHL |

**QUINN EMANUEL'S OPPOSITION TO COLUMBIA'S MOTION FOR
AN ORDER TO SHOW CAUSE**

## **TABLE OF CONTENTS**

**Page**

I. RELEVANT FACTUAL AND PROCEDURAL HISTORY ...............................................1

    A. Dr. Dacier's 2014 Deposition Testimony ................................................................1

    B. Columbia's 2019 Communications with Dr. Dacier................................................2

    C. March 15, 2022 Order Relating to Dr. Dacier .........................................................4

    D. Missing Witness Instruction ....................................................................................6

II. ARGUMENT......................................................................................................................7

    A. Quinn Emanuel Has Complied With the Court's March 15 Order..........................7

    B. The Standard for Civil Contempt Has Not Been Met............................................10

III. CONCLUSION.................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Certain Underwriters at Lloyd's, London v. AdvanFort Co.*,
    2020 WL 878298 (E.D. Va. Feb. 3, 2020),
    *report and recommendation adopted,* No. 1:18-CV-1421, 2020 WL 877981 (E.D.
    Va. Feb. 21, 2020) ............................................................................................................ 10

*Chesapeake Bank v. Berger*,
    No. 4:14CV66, 2014 WL 5500872 (E.D. Va. Oct. 30, 2014) ......................................... 11

*Courtade v. United States*,
    243 F. Supp. 3d 699 (E.D. Va. 2017) ............................................................................... 8

*JTH Tax, Inc. v. Noor*,
    No. 2:11CV22, 2012 WL 4473252 (E.D. Va. Sept. 26, 2012) ........................................ 11

*Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*,
    887 F.3d 610 (4th Cir. 2018) ........................................................................................... 10

*Tattoo Art, Inc. v. Tat Int'l, LLC*,
    No. 2:10CV323, 2012 WL 3912572 (E.D. Va. Sept. 7, 2012) ........................................ 11

*United States v. Lawson*,
    No. 4:99-CR-55-06, 2015 WL 13743435, (E.D. Va. June 23, 2015) ................................ 8

## **RULES**

Va. R. of Prof. Conduct 1.6(a) ............................................................................................................. 8

Va. R. of Prof. Conduct 1.6, Cmt. 11 .................................................................................................. 8

Va. R. of Prof. Conduct 3.4(d) ............................................................................................................ 8

Quinn Emanuel respectfully submits this brief in Opposition to Columbia's Motion for an Order to Show Cause. Quinn Emanuel has fully complied with the Court's March 15, 2022 Order (Dkt. 890) to "disclose on the record in writing any information garnered from Dr. Dacier during the period their representation of Dr. Dacier was a conflict." Quinn Emanuel produced a detailed summary of its communications with Dr. Dacier on April 8, 2022 via Quinn Emanuel's Response to the Court's Order Regarding Dr. Dacier (Dkt. 1083) and the Declaration of David A. Nelson. Dkt. 1089-2. As discussed in more detail in this Opposition, Quinn Emanuel took reasonable measures to protect its client's confidences as required by the Virginia Rules of Professional Conduct and complied in good faith with the Court's March 15, 2022 Order. In light of its full compliance with the Order, Columbia's request for an Order to Show Cause, a hearing, and sanctions should be denied.

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A. Dr. Dacier's 2014 Deposition Testimony

Columbia's Motion concerns Quinn Emanuel's communications with Dr. Marc Dacier during the period when the Court determined that a conflict of interest existed in the simultaneous representation of both Dr. Dacier and Norton. Quinn Emanuel has represented Norton since Columbia filed suit in December 2013. During fact discovery, Columbia sought to depose Dr. Dacier, who worked at Norton until April 2014.

In June 2014, Quinn Emanuel entered into an Engagement Agreement with Dr. Dacier to represent him in connection with this litigation, including responding to requests for discovery and providing testimony in this litigation. Dkt. 562-4. Although at the time Dr. Dacier was a French resident whose deposition could not be compelled, Dr. Dacier voluntarily provided deposition testimony on August 19, 2014, in Brussels. Dkt. 478-3. Quinn Emanuel arranged the logistics for

that deposition. Without those arrangements, including securing Dr. Dacier's cooperation to appear in Brussels, that deposition would not have occurred.

At his deposition, Dr. Dacier provided testimony about the research that led to U.S. Patent No. 8,549,643 (the "'643 patent"). Dkt. 1103-1, Dacier Dep. Tr. Dr. Dacier did not provide testimony about either U.S. Patent No. 8,074,115 (the "'115 patent") or U.S. Patent No. 8,601,322 (the "'322 patent"). Dr. Dacier also testified that he had never seen the invention disclosure or application that led to the '643 patent until he was deposed, and did not know who invented it. Dkt. 1103 at 71:25-73:6; 80:1-82:19. After Dr. Dacier's 2014 deposition, the parties spent several years litigating and appealing various issues concerning the '115 and '322 patents. The appeals did not address or concern the '643 patent or the correction of inventorship claims. According to the terms of the Engagement Agreement, Quinn Emanuel's representation of Dr. Dacier continued with the litigation. Dkt. 562-4, Dacier Engagement Letter.

### B. Columbia's 2019 Communications with Dr. Dacier

In October 2019, Columbia's counsel contacted Dr. Dacier to discuss the litigation without Quinn Emanuel's knowledge or consent. *See* Dkt. 478 at 1-2. That *ex parte* contact continued until early April 2020, when Quinn Emanuel learned of the communications. Norton then filed a Motion for Sanctions seeking relief for ethical violations, including Virginia Rule of Professional Conduct 4.2. Dkt. 478 (Motion for Sanctions dated May 6, 2020).

Columbia opposed the Motion for Sanctions. Among various other grounds, Columbia cited a purported lack of "evidence that [Quinn Emanuel] ever performed a conflict analysis or obtained Dr. Dacier's consent to a joint representation." Dkt. 542 at 19-21. Columbia also submitted an expert declaration from Leslie Haley, which concluded that "Dr. Dacier's [deposition] testimony is adverse to Norton's interests and would have triggered an obligation under Rule 1.7 for Quinn Emanuel to perform a conflicts analysis if it believed that it continued to represent Dr. Dacier after

2

his deposition." Dkt. 547-3, Haley Decl. ¶ 21. Columbia's expert further stated that "Dr. Dacier's testimony, which was adverse to Norton's interests, created a conflict of interest for Quinn Emanuel to engage in joint representation of Norton and Dr. Dacier." *Id.* at ¶ 20; *see also id.* at ¶ 22 n.5 ("Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails.") Neither Columbia nor its expert's declaration identified the specific testimony of Dr. Dacier that it claimed to be adverse to Norton's interests.

In reply, Norton submitted Dr. Dacier's engagement letter and declaration, which showed that a conflicts analysis had been performed, and that Dr. Dacier gave his informed consent to Quinn Emanuel's concurrent representation of Dr. Dacier and Norton. Dkt. 562-1 and 562-4. Norton also briefly countered the tangentially-relevant allegations that a conflict of interest existed. *See* Dkt. 566. As Norton explained, Dr. Dacier testified at his deposition that he could not offer any opinion as to whether the '643 patent "was the work of Columbia or [Norton]" because he had never read the patent. Dkt. 1103-1, Dacier Tr. at 202:23-203:8. Similarly, he had not analyzed the claims to see whether the named inventor, Dr. Shou, actually invented the technology. *Id*. at 204:2-7.

In a sur-reply, Columbia argued that, regardless of whether Dr. Dacier was actually represented by Quinn Emanuel when its counsel contacted him, Columbia counsel had a "reasonable belief of Columbia's counsel there was no such representation." Dkt. 664 at 12. On September 29, 2021, the Court issued a Memorandum Order denying the Motion for Sanctions on the ground that "Columbia reasonably believed Dr. Dacier was not represented by defense counsel[.]" Dkt. 663 at 5. In a footnote, the Court stated that "[i]t remains undetermined whether Dr. Dacier was or was not represented by Norton's attorneys in October 2019"—the month in which the *ex parte* communications began. Dkt. 663 at 5 n.3. The Court's Order did not address whether Quinn Emanuel's representation of both Norton and Dr. Dacier created a conflict. After the Court's ruling

3

and based on Quinn Emanuel's good faith belief that it continued to represent Dr. Dacier, Quinn Emanuel spoke to Dr. Dacier and he confirmed that Quinn Emanuel should continue to represent him. *See* Dkt. 1089-2.

### C. March 15, 2022 Order Relating to Dr. Dacier

On February 28, 2022, Norton moved *in limine* to exclude Columbia arguments or comments about Dr. Dacier not appearing to give live testimony at trial and to exclude certain hearsay statements of Dr. Dacier. Dkt. 769 at 20-25 (Motions *in Limine* No. V and VI). In its Opposition, Columbia alleged that, although Dr. Dacier gave testimony at his 2014 deposition, his testimony at trial would somehow likely include additional or different testimony. Dkt. 801 at 25. For example, Columbia argued that although Dr. Dacier did provide deposition testimony in 2014, if he appeared at trial, he would "expand, supplement, and clarify his deposition testimony." *Id.*

On March 15, 2022, the Court issued a Memorandum Opinion denying Norton's Motions *in Limine* Nos. 5 and 6. Dkt. 889. The Court *sua sponte* found that a conflict of interest existed between Quinn Emanuel's representation of Norton and Dr. Dacier, even though this issue had not been raised by either party in briefing on the underlying Motions. Dkt. 889. The Court faulted Norton for failing to present evidence about whether a conflict of interest existed in representing both Norton and Dr. Dacier, stating "[t]hat Quinn Emanuel has not offered evidence of a non-conflict shows that it has no such evidence." Dkt. 889 at 13. The Court also faulted Norton for failing to respond to the tangential argument raised by Ms. Haley in her June 2020 declaration submitted in connection with Norton's Motion for Sanctions (Dkt. 889 at 10), failing to obtain a Bar Opinion (Dkt. 889 at 11), failing to present evidence of a conflict check (*id.* at 12), "fail[ing] to establish a lack of conflict in 'personally' representing Dr. Dacier" (*id.* at 12), and failing to "offer[] a conflict waiver form signed by Dr. Dacier or by Norton." *Id.* at 12. In conclusion, "the Court identifie[d] a conflict of interest for Quinn Emanuel" and found that "the record is bereft of *any*

4

document . . . showing that no conflict existed or that Norton confirmed whether one existed." Dkt. 889 at 11, 13. The Court determined that "a conflict existed when Dr. Dacier contacted Quinn Emanuel in 2020, and that the firm knew or reasonably should have known that to be the case." Dkt. 889 at 14. The Court further found that "Quinn Emanuel rendered Dr. Dacier unavailable" at trial. Dkt. 889 at 17.

On the same day, the Court issued an Order stating that "no later than March 16, 2022, counsel for Norton must disclose on the record in writing any information garnered from Dr. Dacier during the period their representation of Dr. Dacier was a conflict." Dkt. 890, March 15, 2022 Order (the "March 15 Order"). Counsel for Norton submitted a response to the March 15 Order the following day stating that it would not waive the attorney-client privilege with Dr. Dacier by producing information shared during the client relationship. Dkt. 892 at 2.

Norton filed a Motion for Reconsideration of the Court's rulings regarding Dr. Dacier on March 22, 2022. Dkt. 932. In this Motion, Norton argued that the Court's finding that a conflict existed in representing both Norton and Dr. Dacier was reached without giving the parties an opportunity to present evidence or argument on the issue. Dkt. 932 at 18. Most of the Court's findings in the March 15, 2022 Order were based on documents Columbia submitted in 2020 in opposition to a motion for sanctions. *See* Dkt. 932 at 11-12 ("Whether a conflict of interest exists is a question of fact . . . [the] incomplete factual record—which was compiled without the benefit of notice to either party about the issues in dispute—does not meet the high standard for disqualifying counsel"). Norton also asked the Court to reconsider based on the fact that the Court's opinion on the motions *in limine* was reached outside the adversarial process, so the parties did not have an opportunity to present evidence or argument on whether a conflict existed. *See, e.g.*, *id.* at 19 ("Norton had no opportunity to rebut" evidence the Court relied on in its MIL Opinion "because *it*

5

*could not have known the issue was in dispute*.")  In its Motion to Reconsider, Norton requested that if the Court did not reverse its March 15 rulings, it should in the alternative hold a hearing where the parties could present evidence and argument.  Dkt. 932 at 18-19; *see also id.* at 17 (the court's ruling "should be reversed or, in the alternative, revisited after the Court has an opportunity to evaluate evidence and argument from Norton about the merits").  Norton further requested an immediate stay of litigation and requested "an opportunity to present evidence regarding the alleged conflict of interest[.]"  *Id.* at 19-20.

The Court denied Norton's Motion to Reconsider the same day it was filed.  Dkt. 945.  In light of the Court's finding that a conflict of interest existed in representing both Dr. Dacier and Norton, counsel informed the Court that Quinn Emanuel was "in the process of withdrawing from our representation" of Dr. Dacier during a March 25, 2022 hearing.  Ex. A, 3/25/2022 Hr'g Tr. at 73:19-22.  On March 28, 2022, Quinn Emanuel filed a Notice stating that "it has withdrawn from its representation of Dr. Dacier."  Dkt. 987.

### D. Missing Witness Instruction

On April 7, 2022 the Court ordered counsel to file a statement addressing the appropriate remedy for Dr. Dacier being unavailable at trial.  Dkt. 1083.  On April 8, 2022, Quinn Emanuel responded and included a detailed declaration from lead counsel David A. Nelson that, *inter alia*, summarized Quinn Emanuel's communications with Dr. Dacier, including during the period from 2020 to the present where the Court determined that a conflict of interest existed.  Dkt. 1089.  In addition to the details summarized in the declaration, Mr. Nelson noted that he "would be happy to answer any of the Court's questions regarding this matter[.]"  Dkt. 1089-2.  Indeed, with this response and in particular, Mr. Nelson's declaration, Quinn Emanuel was of the view that it had responded to the March 15 Order.

6

The parties subsequently submitted several rounds of briefing and argument about remedies for the purported conflict of interest, including Dr. Dacier's decision not to provide live testimony at trial. *See* Dkt. 1083, 1096-97, 1102-03, 1123-24, 1126-27, 1143-44, and 1147-48. Quinn Emanuel was not involved in that briefing. The Court then issued a missing witness instruction which states in part that jurors "may, but are not required to, infer that [Dr. Dacier's] testimony" about identifying inventors on the application for the '643 Patent "would have been unfavorable to Norton." Dkt. 1167 at 14-15.

The jury watched a video of Dr. Dacier's deposition at trial, (Ex. B, Trial Tr. at 765:8-766:5) and heard testimony from several live witnesses about the inventorship of the '643 patent, including Norton employee Darren Shou (Ex. B, Trial Tr. at 2282:15-23) and Columbia Professors Keromytis and Stolfo (*Id.* at 817:23-825:12 and 614:9-618:23). The jury's verdict was partially in Columbia's favor on the correction of inventorship, finding that Columbia Professors Keromytis and Stolfo were joint inventors of the '643 patent. Dkt. 1206 at 5-6. But the jury found against Columbia on Columbia's fraudulent concealment claim, and also found against Columbia on Columbia's request for Professors Keromytis and Stolfo to be named the sole inventors of the '643 patent. *Id*. at 6.

## II.   ARGUMENT

### A.   Quinn Emanuel Has Complied With the Court's March 15 Order

The Court should deny Columbia's Motion for an Order to Show Cause because Quinn Emanuel has fully complied with the March 15 Order. In particular, Quinn Emanuel fully responded to the Court's Order Regarding Dr. Dacier (Dkt. 1083) and provided Mr. Nelson's declaration, which summarized Quinn Emanuel's communications with Dr. Dacier, including during the period from 2020 to the present during which the Court determined that a conflict of interest existed. Dkt. 1089-2. That alone provided the information sought by the Court in the March 15 Order,

7

specifically that Norton "disclose on the record in writing any information garnered from Dr. Dacier during the period their representation of Dr. Dacier was a conflict."

Any minor delay in producing this information was justified by Quinn Emanuel's obligation to protect the attorney-client privilege. Counsel has "a basic duty . . . to protect the [client's] attorney-client privilege." *Courtade v. United States*, 243 F. Supp. 3d 699, 703 (E.D. Va. 2017). Under the professional and ethical obligations that apply in this Court, it is prohibited to "disclos[e] information protected by the attorney-client privilege except in limited circumstances." *Id.* citing Va. R. of Prof. Conduct 1.6(a). Disclosure of information protected by the attorney-client privilege is permitted to comply with "the *final* orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client." *United States v. Lawson*, No. 4:99-CR-55-06, 2015 WL 13743435, at *2 (E.D. Va. June 23, 2015) *citing* Va. R. of Prof. Conduct 1.6, Cmt. 11 (emphasis added). The ethical rules specifically permit counsel to take steps to "test the validity" of a ruling before disclosing information protected by the attorney-client privilege. *United States v. Lawson*, No. 4:99-CR-55-06, 2015 WL 13743435, at *2 (E.D. Va. June 23, 2015) *citing* Va. R. of Prof. Conduct 3.4(d).[1]

Quinn Emanuel acted properly here by initially asserting the attorney-client privilege in its March 16, 2022 response to the Court's March 15, 2022 order, and then filing a Motion to Reconsider on March 22, 2022. Further, any confidentiality of these communications with Dr. Dacier was waived when Dr. Dacier disclosed his version of this information to Latham & Watkins in a series of emails, which were shared with opposing counsel and eventually posted on the public docket. *See* Dkt. 1084, 1084-1, 1084-2, 1088-2, and 1088-3. After taking appropriate steps to test

---

[1] Virginia Rule of Professional Conduct 3.4, Comment 3a states that Rule 3.4(d) "allows a lawyer to take measures necessary to test the validity of a rule or ruling, including open disobedience."

the validity of the Court's ruling and protect client confidences, Quinn Emanuel subsequently provided a detailed summary of its communications with Dr. Dacier on April 8, 2022.

Columbia asserts that Norton should have taken different measures to protect the attorney-client privilege. For example, Columbia asserted that Norton could have "moved for reconsideration adding whatever 'facts' they deemed appropriate to assert[.]" Mot. at 4. Norton did, in fact, move for reconsideration of the Court's March 15, 2022 Order on March 22, 2022. Dkt. 932. Columbia also suggests that Norton could have "sought a stay from the Court pending appellate review[.]" Mot. at 4. Norton did, in fact, request a stay of litigation as well as a full evidentiary hearing on the alleged ethical issues raised by counsel's representation of both Dr. Dacier and Norton. *See* Dkt. 932 at 19-20 ("the court should immediately stay the case until the issues are resolved . . . Counsel cannot proceed with the litigation without first resolving the conflict found by the Court in its MIL Opinion."). Columbia also suggests that Norton could have produced communications between Quinn Emanuel and Dr. Dacier that "did not involve legal advice and provide a privilege log for the rest[.]" Mot. at 4. This overlooks the fact that the parties agreed not to produce privilege logs for communications dated after this lawsuit was filed. Dkt. 66 at 18 ("The parties are not required to include on their privilege logs any protected documents that came into existence after the filing date of the complaint.").

Norton took appropriate steps to protect the attorney-client privilege, including filing a motion for reconsideration, a motion to stay, and a request for an evidentiary hearing. None of the specific measures suggested by Columbia are required by law, and counsel cannot be held in contempt for "testing the validity" of the Court's privilege ruling in good faith as specifically contemplated by Virginia Rule of Professional Conduct 1.6 and 3.4(d). In any case, Quinn Emanuel

9

fully complied with the Court's March 15 Order through its April 8 response and Mr. Nelson's declaration.

### B.     The Standard for Civil Contempt Has Not Been Met

The Court should also deny Columbia's Motion for an Order to Show Cause because Columbia has not—and cannot—justify its request to hold Quinn Emanuel in civil contempt. "Holding a party in civil contempt is intended to coerce that party into complying with a court order or to compensate the moving party for sustained losses." *Certain Underwriters at Lloyd's, London v. AdvanFort Co.*, 2020 WL 878298, at *2 (E.D. Va. Feb. 3, 2020), *report and recommendation adopted,* No. 1:18-CV-1421, 2020 WL 877981 (E.D. Va. Feb. 21, 2020).  In this Circuit, "the moving party must establish the following elements by clear and convincing evidence: (1) the existence of valid court order of which the alleged contemnor had actual or constructive knowledge; (2) the order was in the movant's favor; (3) the nonmovant knowingly failed to comply with the order; and (4) the movant suffered harm as a result." *Id citing Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018) (internal punctuation omitted).

Columbia has not established that Norton "knowingly failed to comply" with a valid court order.  As discussed above, Quinn Emanuel has complied with the Court's March 15, 2022 Order.  Quinn Emanuel produced a detailed summary of its communications with Dr. Dacier soon after its Motion to Reconsider was denied.

Columbia asserts in its Motion that Norton's initial response to the Court's March 15, 2022 Order was insufficient.  But, as already described herein, Norton took appropriate steps to initially protect its client's attorney-client privilege, test the validity of the Court's conflict of interest finding, and ultimately comply with the requested Order.  "A good faith attempt to comply, even if such attempt proves ineffective, is a defense to a civil contempt order." *Chesapeake Bank v. Berger*, No.

4:14CV66, 2014 WL 5500872, at *3 (E.D. Va. Oct. 30, 2014). "Other defenses include substantial compliance[.]" *Id.* Norton's efforts to protect its client's confidences were undertaken in good faith, and cannot support a finding of civil contempt.

Columbia also has not established that it "suffered harm as a result" of any alleged non-compliance with the March 15, 2022 Order. Columbia was aware of Quinn Emanuel's communications with Dr. Dacier as a result of Mr. Nelson's declaration submitted on April 8, 2022 (*see* Dkt. 1089-2). Columbia also had extensive communications with Dr. Dacier in 2019 and 2020. Columbia asserts in its Motion that "additional measures" beyond the monetary sanctions it plans to seek under 35 U.S.C. § 284 and 285 are required "for Norton's involvement in Dr. Dacier's failure to appear at trial[.]" Mot. at 4. But the Court has already considered extensive briefing and argument on this topic, and determined that a missing witness instruction was an appropriate remedy.

Even if the Court credits Columbia's suggestion that Quinn Emanuel did not comply with the March 15, 2022 Order, no further sanctions would be warranted because Quinn Emanuel subsequently provided the requested information on April 8. Sanctions for civil contempt "may be imposed either to enforce a court order or to compensate the other party for any losses sustained as a result of the contempt." *Tattoo Art, Inc. v. Tat Int'l, LLC*, No. 2:10CV323, 2012 WL 3912572, at *2 (E.D. Va. Sept. 7, 2012). Sanctions intended to either "vindicate the authority of the court" or 'punish[ ] . . . and deter[ ] future litigants' misconduct" are not available as a remedy for civil contempt sanctions. *JTH Tax, Inc. v. Noor*, No. 2:11CV22, 2012 WL 4473252, at *2 (E.D. Va. Sept. 26, 2012). "A contempt fine is considered civil when the fine is remedial (i.e., either paid to the complainant or, when payable the court, avoidable by the contemnor by simply performing the affirmative act required by the court's order)." *Chesapeake Bank v. Berger*, No. 4:14CV66, 2014 WL 5500872, at *4 (E.D. Va. Oct. 30, 2014). "In other words, a fine that is payable to the court but

11

not conditioned on compliance with a court order is punitive and therefore, not civil." *Id.* Because Norton has fully complied with the Court's March 15, 2022 Order, no fines or sanctions are warranted "to coerce compliance." Columbia has not suffered any harm, and is therefore not entitled to any monetary compensation "for losses [ ] sustained."

### III.   CONCLUSION

For the foregoing reasons, Quinn Emanuel respectfully requests that the Court deny Columbia's Motion for an Order to Show Cause.

DATED:  June 3, 2022                              NORTONLIFELOCK INC.


By _____
Dabney J. Carr, IV, VSB #28679
TROUTMAN PEPPER
HAMILTON SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutman.com

David A. Nelson (*pro hac vice*)
davenelson@quinnemanuel.com
Nathan Hamstra (*pro hac vice*)
nathanhamstra@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Nina Tallon (*pro hac vice*)
ninatallon@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (703) 967-9395
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Richard Erwine (*pro hac vice)*
richarderwine@quinnemanuel.com
51 Madison Ave, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7135
Facsimile: (212) 849-7100
ATTORNEYS FOR DEFENDANT
NORTONLIFELOCK INC.