**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, <br><br> *Plaintiff*, <br><br> v. <br><br> NORTONLIFELOCK INC., <br><br> *Defendant*. | Civil Action No. 3:13-cv-00808-MHL |

**COLUMBIA'S REPLY REGARDING ITS
MOTION FOR AN ORDER TO SHOW CAUSE**

On May 24, 2022, Columbia filed a motion with a procedural request:  that the Court issue an Order to Show Cause why certain of Norton's counsel ("Original Counsel") should not be held in contempt for failure to comply with the Court's March 15, 2022 Order (Dkt. 890) (the "Order").  In opposition, Original Counsel did not address the procedural issue.  Instead, Original Counsel engaged with the merits, argued that the Court should not hold them in contempt, and provided all of their allegedly supporting evidence.  This reply addresses two issues in response.

*First*, Norton's Original Counsel did not "substantially comply" with the Order and still has not done so.  *Second*, Original Counsel knowingly violated the Order and that violation prejudiced Columbia.  Columbia respectfully requests that the Court issue the Order to Show Cause.  In the alternative, because Norton and its Original Counsel have fully engaged on the merits, Columbia respectfully requests that the Court find Original Counsel in contempt and order payment of an appropriate coercive fine or other steps to encourage compliance until Original Counsel fully complies with the Order.

## I.   ORIGINAL COUNSEL DID NOT SUBSTANTIALLY COMPLY WITH THE ORDER AND STILL HAS NOT DONE SO.

The Court's Order states:  "no later than March 16, 2022, counsel for Norton must disclose on the record in writing *any information* garnered from Dr. Dacier during the period their [Original Counsel's] representation of Dr. Dacier was a conflict."   (Order at 1 (emphasis added).)  Notwithstanding the clear and unqualified language of the Order, Original Counsel advances the contrived argument that it complied with the Order when it submitted the April 8, 2022 Declaration of David A. Nelson (Dkt. 1089-2, the "Nelson Declaration"), that purports to summarize a few select communications with Dr. Dacier.  Setting aside the fact that Original Counsel provided the Nelson Declaration 23 days after the compliance deadline, the Nelson Declaration does not substantively comply with the plain text of the Order.  In fact, the Nelson Declaration raises more

questions than it answers.  Regrettably, questions such as whether Original Counsel convinced a willing witness not to testify remain unanswered, and new questions arise such as whether Original Counsel dealt candidly with the Court when they submitted the Nelson Declaration, as explained below.

*First*, the Nelson Declaration does not disclose any information garnered from Dr. Dacier between March 27, 2020—the date of Columbia's 2020 trial witness list (Dkt. 478-1)—and June 17, 2020, which includes the critical period when Original Counsel drafted and filed a baseless motion for sanctions (purportedly to vindicate Dr. Dacier's rights as a represented individual).  It is inconceivable that Original Counsel did not communicate with and receive information from Dr. Dacier during that period, and notably, Original Counsel has made no representation to the Court that it did not exchange e-mails or otherwise communicate with Dr. Dacier during this period.  Indeed, it would be quite startling if that were the case:  it would mean that Original Counsel filed its motion for sanctions, which concerned communications between Columbia's counsel and Dr. Dacier, without consulting Dr. Dacier about those communications or asking whether he wanted to file the motion, let alone obtaining information from Dr. Dacier that would allow them to form a good faith basis for the motion.[1]

---

[1] For example, only Original Counsel—not Dr. Dacier—argued that two declarations submitted by Columbia in connection with the motion for sanctions were unreliable.  The Nelson Declaration states that Original Counsel consulted Dr. Dacier about one of Columbia's declarations, but does not provide any information about Dr. Dacier's reactions.  (Nelson Decl. ¶¶ 13-18.)  If Dr. Dacier confirmed the accuracy of the Columbia declaration and rejected Original Counsel's claims—who nevertheless pushed forward with serious allegations of unethical conduct—that information would be relevant to Columbia's pending motions for enhancement and fees.  As the Court is aware, the short declaration that Dr. Dacier was willing to submit (Dkt. 562-1) contains none of the inflammatory and unsubstantiated assertions in the Nelson Declaration that Original Counsel submitted on April 8, 2022, and Dr. Dacier's written e-mail communications starkly contradict those statements in the Nelson Declaration.

*Second*, the purported summary of the alleged June 17, 2020 oral conversation in the Nelson Declaration does not comply with the Order even as to that specific alleged conversation. Original Counsel made no representation that the very few points summarized in the Nelson Declaration (Nelson Decl. ¶¶ 13-18) represent all of the information obtained from Dr. Dacier during the purported conversation.  And there are very good reasons to question if not doubt the accuracy of Original Counsel's purported summary, as shown below.

<u>**Topic:  Original Counsel's Representation of Dr. Dacier**</u>

<u>Nelson Declaration</u>

- "[N]or did Dr. Dacier ever communicate to anyone at my firm that he desired [Original Counsel's] representation to be terminated."  (Nelson Decl. ¶ 7.)

- On June 17, 2020, Dr. Dacier "confirmed that he wanted to continue to be represented by [Original Counsel]."  (*Id.* ¶ 16.)

- "Dr. Dacier had told me and Mr. Hamstra after the events in October, 2019 through April, 2020 that he wished to continue to be represented by [Original Counsel]."  (*Id.* ¶ 20.)

- "In our conversation with Dr. Dacier . . . he informed us that . . . Columbia's counsel had informed him that he was no longer represented by [Original Counsel]."  (*Id.* ¶ 14.)

<u>Dr. Dacier's Own Words</u>

- "They [Columbia's counsel] have asked me if I had a counsel representing me.  I think I do not . . . ."  (Dkt. 547-10 at 2.)

- "I am not asking for Symantec to represent me."  (*Id.*)

- "I am no fool and I can see now why the Quinn team has done what they have done over the years, while pretending to 'represent' me."  (Dkt. 1084-1 at 1.)

**Topic:  Dr. Dacier's Willingness to Testify at Trial**

Nelson Declaration

- "Dr. Dacier said that he did not want to travel to the United States for trial . . . ."  (Nelson Decl. ¶ 17.)

- "Dr. Dacier reiterated his previous statements that he would prefer not to be involved in the litigation. . . ."  (*Id.* ¶ 22.)

Dr. Dacier's Own Words

- "I'm happy to help the judicial process though, as I have continuously said so far." (Dkt. 1084-1 at 3.)

- Regarding testifying at trial:  "I am more than willing to help but such extremely short notice (6 days?) makes it impossible to come."  (*Id.*)

- "Had you warned me months ago when you, most probably, had been given the trial dates, I could have frozen some days to make myself available."  (*Id.* at 2.)

**Topic:  Whether Original Counsel Encouraged Dr. Dacier Not to Testify at Trial**

Nelson Declaration

- "We also informed Dr. Dacier that the decision whether to attend trial was completely his own . . . ."  (Nelson Decl. ¶ 15.)

- "We again informed Dr. Dacier that the decision of whether to attend the trial was his alone."  (*Id.* ¶ 21.)

Dr. Dacier's Own Words

- "I must admit to be a bit surprised by this sudden rush after years of inaction and the several calls with [Original Counsel] in which they repeatedly told me that there was no need for

me to do anything, that they did not want me to do anything, that my [deposition] testimony was all that was needed."  (Dkt. 1084-1 at 3.)

**Topic:  Whether Dr. Dacier's Testimony Would Be Adverse to Norton**

Nelson Declaration

- "At no point did Dr. Dacier ever inform me that he felt his deposition testimony was in conflict with Norton's interests . . . ."  (Nelson Decl. ¶ 24.)

Dr. Dacier's Own Words

- "[T]he facts, stated in my testimony are, indeed, in my opinion, harmful for Norton's case." (Dkt. 1084-1 at 1.)

It is impossible to reconcile Original Counsel's purported summary of their June 17, 2020 conversation—based on Original Counsel's alleged April 2022 memories of that 2020 conversation—and other statements in the Nelson Declaration with Dr. Dacier's own written statements in 2019 and 2022.  It should go without saying that information disclosed by counsel, admitted *pro hac vice*, in response to an order of the Court should be complete, fair, and accurate, and there are many reasons to question if that was the case here.

*Third*, although the Nelson Declaration mentions that Dr. Dacier submitted a short declaration in connection with Norton's motion for sanctions (Nelson Decl. ¶ 16), the Nelson Declaration fails to provide any information from Dr. Dacier in connection with preparation of Dr. Dacier's short declaration.[2]  Here too, it is inconceivable that Dr. Dacier did not provide

---

[2] The Nelson Declaration raises several additional questions.  For example, if Dr. Dacier actually said to Original Counsel what is set forth in the Nelson Declaration, why did Dr. Dacier not include that information in his June 17, 2020 declaration in connection with the motion for sanctions (Dkt. 562-1)?  The Nelson Declaration provides no explanation of why Dr. Dacier was unwilling to say those things, and the only reasonable inference is that Dr. Dacier did not in fact make those statements.  Additionally, Original Counsel also submitted a declaration in June 2020 (Dkt. 562-7), but said none of the things that it now says, two years later, in the Nelson Declaration.  This naturally leads to the question:  why did Original Counsel wait two years to set forth the assertions

answers to Original Counsel's questions to prepare the draft declaration, and Original Counsel has not disclosed any of the information about the back and forth with Dr. Dacier that virtually always occurs to ensure that a declaration is accurate and reflects the witness's own words.  For example, if Original Counsel asked Dr. Dacier to say X in his declaration, and Dr. Dacier rejected that suggestion as inconsistent with the facts, that would be highly relevant information that the Order requires Original Counsel to disclose.  Original Counsel made no representations to the Court that they did not exchange e-mail correspondence with Dr. Dacier related to his declaration[3] nor do they represent that they disclosed the full extent of "any information" obtained from Dr. Dacier in connection with their conversations regarding the declaration, as required by the Order.[4]

*Fourth*, the Nelson Declaration purports to summarize two additional communications with Dr. Dacier:  (i) a communication after the Court denied Norton's motion for sanctions (Nelson Decl. ¶¶ 21-22), and (ii) a communication after the Court issued the Order (*id.* ¶ 23).  But Original Counsel made no representation to the Court that from June 17, 2020 through April 2022, they did not have additional communications with Dr. Dacier and did not obtain additional information

---

in the Nelson Declaration instead of including them in Original Counsel's 2020 declaration?  Original Counsel certainly was motivated to provide all truthful evidence to support their sanctions motion.  Again, the only reasonable inference is that the alleged June 17, 2020 conversation did not happen as described in the 2022 Declaration.

[3] In the absence of e-mails regarding Dr. Dacier's declaration, how did Original Counsel send the draft to him and how did they receive the signed copy in response?

[4] The Nelson Declaration does not even accurately portray the short declaration that Dr. Dacier allegedly submitted in connection with the motion for sanctions.  The Nelson Declaration states that Dr. Dacier "confirmed that he wanted to continue to be represented by [Original Counsel] in the above-captioned action, and stated that he was willing to sign a declaration attesting to that fact.  He then voluntarily signed a declaration to that effect."  (Nelson Decl. ¶ 16.)  But Dr. Dacier's declaration (Dkt. 562-1) says nothing about him ***wanting*** to be represented by Original Counsel, which would have been inconsistent with Dr. Dacier's several written statements in e-mails, as discussed above—including statements that he was not asking for and did not want representation.

from him—which Original Counsel would be required to disclose under the terms of the Order. As to the second communication, the Nelson Declaration also plainly misrepresents the facts:

**Topic:  Dr. Dacier's Willingness to Speak After the Court Found a Conflict in 2022**

Nelson Declaration

- "Although Mr. Hamstra reached out to Dr. Dacier [after the Court's denial of Norton's motion to reconsider] to attempt to speak to him and explain [Original Counsel's] withdrawal, we were unable to find a time that worked, because Dr. Dacier indicated that he was very busy with work, was traveling for a period of time and simply did not have the time."  (Nelson Decl. ¶ 23.)

Dr. Dacier's Own Words

- "Next week is much better . . . I could offer you April 7 or 8 . . . ."  (Dkt. 1088-3 at 1.)

In short, Norton's Original Counsel has not complied with the Order, which required them to disclose "***any information*** garnered from Dr. Dacier."  (Order at 1 (emphasis added).)  The Nelson Declaration does not even mention communications with Dr. Dacier during critical periods (*e.g.*, before the motion for sanctions was filed), Original Counsel did not make representations regarding the completeness of their limited disclosures, and there are clear conflicts between Original Counsel's characterization of what Dr. Dacier said and what Dr. Dacier himself actually said in e-mails—conflicts that we respectfully submit should not be overlooked because they are merely symptoms of a much deeper problem with Original Counsel that permeated this entire case—both prejudicing Columbia and disrespecting the justice system.[5]

---

[5] In light of the circumstances—and the plain text of the Court's Order, which requires disclosure of "any information garnered from Dr. Dacier"—there is no reason why the Court should accept Original Counsel's alleged characterizations and summaries of the information obtained from Dr. Dacier when much of the information likely is contained in straightforward e-mail

Columbia respectfully submits that the Court should address Original Counsel's violation of the Order, and Columbia respectfully requests that further proceedings or a contempt order is necessary.[6]   The U.S. District Court for the District of Columbia has explained well why it is important for the Court to protect its authority in this regard:

> Federal court orders are to be obeyed unless and until litigants succeed in having them duly overturned by the appropriate court of appeals.  Litigants may not defy court orders because their commands are not to the litigants' liking.  If the rule of law is to be upheld, it is essential that the judiciary takes firm action to vindicate its authority to compel compliance with lawfully issued directives, and to not reward delay and disobedience.

*United States* v. *Philip Morris USA Inc.*, 287 F. Supp. 2d 5, 14 (D.D.C. 2003).

Finally, in their opposition, Original Counsel invokes the phrase "substantial compliance" as if it were a talisman.  (Dkt. 1240-1 at 10-11.)  But they seem not to understand that literal compliance may be excused only if the party took "'all reasonable steps' to ensure compliance: inadvertent omissions are excused only if such steps were taken." *United States* v. *Darwin Constr. Co.*, 680 F. Supp. 739, 740 (D. Md. 1988); *see also United States* v. *Darwin Constr. Co.*, 873 F.2d 750, 755 (4th Cir. 1989) (affirming district court's award of sanctions where defendant "did not take 'all reasonable steps' . . . nor did it make 'all reasonable efforts'" to comply with court order (citations omitted)).  In other words, substantial compliance recognizes that literal compliance may not be possible despite a party's best efforts.  The concept of substantial compliance does ***not*** allow a litigant to substitute its own judgment for the Court's judgment or decide how far it is willing to

---

communications.  A simple production of any e-mails exchanged with Dr. Dacier is necessary to comply with the Order.

[6] Setting aside that Original Counsel's assertion of Dr. Dacier's purported privilege—in their March 16, 2022 response to the Order (Dkt. 892)—was improper, Original Counsel now seems to acknowledge that the information the Order requires them to disclose no longer is subject to any privilege—let alone one that Dr. Dacier himself wishes to invoke.  Thus, there is no reason that Original Counsel cannot, for example, disclose its unaltered e-mail communications with Dr. Dacier during the relevant period covered by the Order.

go in the face of an Order—*i.e.*, what Original Counsel attempts to do here.  The Court ordered Original Counsel to disclose "any information garnered from Dr. Dacier," and it simply was not an option for Original Counsel to decide that it would disclose only its own summaries of some of that information.  That is not substantial compliance.  That is willful disobedience.

## II.   ORIGINAL COUNSEL KNOWINGLY DISOBEYED THE ORDER AND COLUMBIA HAS BEEN PREJUDICED.

In their opposition, Original Counsel briefly argues that Columbia has not shown (i) that they knowingly violated the Order, or (ii) that Columbia was prejudiced by their violation of the Order.  Original Counsel also argues that Columbia has not requested an appropriate remedy for civil contempt.  They are wrong on all issues.

**Knowing Violation.**  In light of the evidence discussed above, it defies logic that Original Counsel did not knowingly violate the Order.  Original Counsel actually knew of the Order because they submitted Norton's response to the Order on March 16, 2022.  (Dkt. 892 at 1.)  In the March 16, 2022 response, Original Counsel acknowledged the Order and openly stated that they would not comply.  (*Id.* at 1-2.)  That is the very definition of a knowing violation of a court order.

Moreover, although Original Counsel has latched onto the *ex post* argument that the Nelson Declaration constitutes substantial compliance with the Order—a suggestion made for the first time on June 3, 2022—the Nelson Declaration does not negate a knowing violation.  There is an obvious mismatch between the text of the Order—"any information garnered from Dr. Dacier"— and the contents of the Nelson Declaration, which purports to provide brief summaries of select communications with Dr. Dacier.  Original Counsel knew that the information in the Nelson Declaration did not come close to complying with the full scope of the Court's Order.

**Prejudice.**  Columbia has been prejudiced by Original Counsel's non-compliance with the Order in at least two respects.  First, had Original Counsel timely complied with the Order,

Columbia may have obtained additional evidence that it could have used in the trial to support its sole inventorship and fraudulent concealment claims. Because Original Counsel has not complied with the Order, the full scope of the information garnered from Dr. Dacier is not yet known, but based on the e-mail communications that Columbia and the Court have seen to date, it is entirely possible that Dr. Dacier provided information to Original Counsel that was supportive of Columbia's claims, which could have been admitted under the residual hearsay exception.

Second, until Original Counsel complies with the Order, the full extent of Norton's and Original Counsel's misconduct may not be known. The information that Original Counsel is improperly withholding—in violation of the Order—very well could provide further evidentiary support for Columbia's pending motions for enhanced damages (Dkt. 1252) and attorneys' fees (Dkt. 1260). Because Original Counsel is knowingly violating the Order and because Columbia has been prejudiced by that violation, Columbia respectfully requests that the Court compel Original Counsel's full compliance with the Order.

**Civil Contempt Remedy.** Finally, Original Counsel contends that Columbia does not seek a ***civil*** contempt remedy because a fine imposed to punish a violation is criminal in nature. (Dkt. 1240-1 at 11-12.) Columbia does not seek a punitive fine. Rather, Columbia requests an appropriate coercive remedy (*e.g.*, a *per diem* fine) until Original Counsel complies with the Order. After compliance, a compensatory fine may be warranted given the impact that Original Counsel's misconduct had on Columbia's sole inventorship claim and $22 million fraudulent concealment claim. But for present purposes, Columbia seeks only a coercive remedy that will encourage full

compliance with the Order.  That is an appropriate remedy for civil contempt, as Original Counsel

acknowledges in their opposition.  (*Id.*)

Dated: June 17, 2022                                    Respectfully submitted,

*/s/ John M. Erbach*
Dana D. McDaniel (VSB No. 25419)
John M. Erbach (VSB No. 76695)
SPOTTS FAIN, P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia  23219
Tel.: (804) 697-2065
Fax: (804) 697-2165
dmcdaniel@spottsfain.com
jerbach@spottsfain.com

Garrard R. Beeney (*pro hac vice*)
Dustin F. Guzior (*pro hac vice*)
Stephen J. Elliott (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel.: (212) 558-4000
Fax: (212) 558-3588
beeneyg@sullcrom.com
guziord@sullcrom.com
elliotts@sullcrom.com

*Counsel for Plaintiff The Trustees of
Columbia University in the City of New
York*