**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, | |
| *Plaintiff* | |
| v. | Civil Action No. 3:13-cv-00808-MHL |
| NORTONLIFELOCK INC., | |
| *Defendant* | |

## DEFENDANT NORTONLIFELOCK INC.'S OPPOSITION TO COLUMBIA'S MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285

# <u>TABLE OF CONTENTS</u>

**Page**

I.   Introduction ..............................................................................................................1

II.  Applicable Law .........................................................................................................2

III. Background ................................................................................................................4

    A.   Columbia's Original Claims ............................................................................4
    B.   Initial *Markman* Hearing, Dismissal, And Federal Circuit Appeal ........................4
    C.   Proceedings Following Remand In 2018 .........................................................5
    D.   Proceedings Related To The Missing Witness Instruction And
         Apportionment ...............................................................................................6
    E.   Trial And The Jury's Verdict ..........................................................................8

IV.  Argument ..................................................................................................................9

    A.   This Case Is Not "Exceptional" .....................................................................9
         1.   Norton Prevailed On The Vast Majority Of Columbia's Claims,
             And The Remaining Claims Required A Trial That Resulted In A
             Split Verdict ........................................................................................9
         2.   Norton's Conduct Throughout The Litigation Was Zealous But
             Fair, Not "Exceptional" .....................................................................12
         3.   The Case For Attorneys' Fees Is Weak Because Norton Did Not
             Willfully Infringe ...............................................................................17
    B.   To The Extent Any Fees Are Awarded, They Must Be Limited To
         Compensating Columbia For The Cost Of Litigating Specific Issues ................20

V.   Conclusion ..............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
   228 F.3d 1338 (Fed. Cir. 2000)......................................................................17

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
   2017 WL 365239 (E.D. Tex. Jan. 25, 2017)...............................................20

*Barry v. Medtronic, Inc.*,
   250 F. Supp. 3d 107 (E.D. Tex. 2017)........................................................19

*Beckman Instruments, Inc. v. LKB Produkter AB*,
   892 F.2d 1547 (Fed. Cir. 1989)...........................................3, 10, 15, 20

*Blackbird Tech LLC v. Health In Motion LLC*,
   944 F.3d 910 (Fed. Cir. 2019)......................................................................21

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
   25 F.4th 976 (Fed. Cir. 2022) .....................................................................12

*Campbell v. Spectrum Automation Co.*,
   601 F.2d 246 (6th Cir. 1979) ................................................................3, 20

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
   388 F. Supp. 2d 37 (N.D.N.Y. 2005)..........................................................11

*Consol. Aluminum Corp. v. Foseco Int'l Ltd.*,
   910 F.2d 804 (Fed. Cir. 1990).....................................................................10

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
   522 F. Supp. 3d 40 (D.N.J. 2021) ...............................................................11

*Idenix Pharm. LLC v. Gilead Scis., Inc.*,
   271 F. Supp. 3d 694 (D. Del. 2017)............................................................19

*Innovation Scis., LLC v. Amazon.com, Inc.*,
   2020 WL 4934272 (E.D. Va. Feb. 18, 2020).............................................11

*Intell. Ventures I LLC v. Trend Micro Inc.*,
   944 F.3d 1380 (Fed. Cir. 2019).................................................................2, 3

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017)...................................................................11

*Legacy Acad., Inc. v. LLC Concepts, L.P.*,
    2008 WL 11422528 (N.D. Tex. Apr. 8, 2008) ........................................................16

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
    633 F. Supp. 2d 361 (E.D. Tex. 2009) ...........................................................3, 16

*Monfore v. Phillips*,
    778 F.3d 849 (10th Cir. 2015) ........................................................................16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014).................................................................2, 11, 18, 19

*Plastic Container Corp. v. Cont'l Plastics of Okla., Inc.*,
    607 F.2d 885 (10th Cir. 1979) ..........................................................................3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    2019 WL 3290369 (D. Del. July 22, 2019) ......................................................19

*Regeneron Pharms., Inc. v. Merus N.V.*,
    2018 WL 1472507 (S.D.N.Y. Mar. 26, 2018) .................................................11

*In re Rembrandt Techs. LP Pat. Litig.*,
    899 F.3d 1254 (Fed. Cir. 2018)...........................................3, 14, 20, 22

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    2018 WL 1041038 (D. Minn. Feb. 23, 2018) ..................................................19

*Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.*,
    817 F.3d 1293 (Fed. Cir. 2016).......................................................................12

*Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*,
    2019 WL 3240521 (D. Del. July 18, 2019) ......................................................19

*SiOnyx LLC v. Hamamatsu Photonics K.K.*,
    981 F.3d 1339 (Fed. Cir. 2020).................................................................10, 19

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
    2019 WL 11307114 (D. Mass. July 25, 2019).................................................19

*Symantec Corp. v. Trs. of Columbia Univ. in City of New York*,
    No. IPR2015-00375, 2016 WL 3574961 (P.T.A.B. June 30, 2016).........................5

*Symantec Corp. v. Trs. of Columbia Univ. in City of New York*,
    No. IPR2015-00377, 2016 WL 3574962 (P.T.A.B. June 30, 2016).........................5

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013).......................................................................11

*Tenax Corp. v. Tensar Corp.*,
  27 U.S.P.Q.2d 1216 (D. Md. 1992) ...............................................................20, 21

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  745 F.3d 513 (Fed. Cir. 2014)................................................................................19

*Tinnus Enter., LLC v. Telebrands Corp.*,
  369 F. Supp. 3d 704 (E.D. Tex. 2019)...................................................................11

*Westvaco Corp. v. Int'l Paper Co.*,
  31 U.S.P.Q.2d 1798 (E.D. Va. 1994).............................................................18, 20

*WhitServe, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012)..................................................................................19

## STATUTES

35 U.S.C.
  § 285.................................................................................................... *passim*
  § 315(e)(2) ............................................................................................12

## OTHER AUTHORITIES

6A Donald S. Chisum, *Chisum on Patents* § 20.03[4][c][v] (Matthew Bender 2022)..................10

## I.     INTRODUCTION

The purpose of an award of attorneys' fees under the Patent Act is to compensate a prevailing party that was forced to litigate a case that was "exceptional," either because the party's case was remarkably weak or baseless, or because the other party engaged in vexatious litigation misconduct.  Neither applies here.

When Columbia sued in 2013, it accused Norton of infringing 167 patent claims from six patents by its sale of eleven separate products or functionalities.  Over the course of the next five years, Norton successfully defeated 90% of those claims, leaving Columbia with only 18 claims in two patents.  As the case headed toward trial, Norton won summary judgment on multiple state-law claims, as well as a number of motions *in limine* and *Daubert* motions.  When the case was finally tried to a jury, Columbia presented only *four* claims related to the two remaining patents at issue, against only *one* of the eleven initially accused technologies, SONAR/BASH.  In other words, of the claims Columbia initially brought, less than 3% even made it to the jury.

And the jury trial was close.  The jury deliberated for more than three days, and reached a verdict only after the Court issued a rare *Allen* charge pressing the jury to resolve the deadlock.  When the jury did return a verdict, it was split.  The jury concluded that Norton was liable for willful infringement, but trimmed Columbia's damages request by nearly 20%.  And on the issue of fraudulent concealment (as to which Columbia sought an additional $20 million in damages), the jury rejected Columbia's claim and found for Norton.  This close verdict on the few remaining claims that made it to the jury is a far cry from the kind of case that would justify a finding that Norton presented weak or baseless defenses.

As for Columbia's argument that Norton committed litigation misconduct justifying an attorneys' fees award, the vast majority of Columbia's examples do not stand out from the advocacy commonplace in civil litigation involving similarly significant issues.  Columbia's

invocation of the Court's finding related to Dr. Marc Dacier also misses the mark: the Court already punished Norton for that conduct—both before and at trial—and any additional sanction would be unnecessarily cumulative. At most, the Court's findings related to Dr. Dacier would entitle Columbia to an award in the amount of the extra fees it expended on the missing witness briefing. Those findings would not justify its requested award of *all* of Columbia's fees since this case returned to the district court in 2018.

In short, the facts of this case do not support an award of attorneys' fees. Columbia's motion should be denied.

## II.     APPLICABLE LAW

The Patent Act provides that "[t]he court in *exceptional* cases *may* award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (emphases added). As the Supreme Court has emphasized, this discretionary "power is reserved for 'exceptional' cases," and should be invoked only rarely. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). Whether a case is "exceptional" should be decided "in the case-by-case exercise of [a district court's] discretion, considering the totality of the circumstances." *Id.* at 554. And fee-shifting should be reserved for cases that "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

To determine that a case qualifies as "exceptional," the court must consider the parties' conduct over the course of the *entire* litigation, rather than engaging in piecemeal analysis of individual acts. As the Federal Circuit recently explained, "in all such cases we have required a finding of an exceptional case—not a finding of an exceptional portion of a case—to support an award of partial fees." *Intell. Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1383-84 (Fed.

Cir. 2019).  Under that "totality of the circumstances" analysis, it will rarely if ever be the case that "a single, isolated act" could satisfy the "exceptional case" requirement.  *Id.* at 1384.

Even when a court determines that a case is "exceptional," it should award fees only in an amount proportional to compensate the prevailing party for the cost of litigating against the *particular* misconduct of the other party.  That is because the purpose of an award of attorneys' fees under § 285 is "compensatory, not punitive."  *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1278 (Fed. Cir. 2018); *see also Plastic Container Corp. v. Cont'l Plastics of Okla., Inc.*, 607 F.2d 885, 906 (10th Cir. 1979) (noting that fees under § 285 are "compensatory rather than punitive").  So any fee award should be limited to those necessary "to compensate the prevailing party for costs that it would not have incurred but for the conduct of the losing party."  *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 251 (6th Cir. 1979).  In other words, an award of costs for *all* attorneys' fees is generally disproportionate to the need for compensation.  *See Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989) (reversing district court that awarded all attorneys' fees and holding that the party was entitled at most to "the portion of its attorney fees which related to the vexatious litigation strategy and other misconduct").  And before awarding fees, a court must "establish at least some 'causal connection' between the misconduct and the fee award."  *In re Rembrandt Techs.*, 899 F.3d at 1280.

Finally, because attorneys' fees are meant to be compensatory only, they should not be awarded in instances in which the court has already meaningfully addressed a party's misconduct in another way.  *See, e.g.*, *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 391-92 (E.D. Tex. 2009) ("Basing an enhancement or award of attorneys' fees on misconduct that has previously been sanctioned would be unnecessarily cumulative and inequitable.").

III.    **BACKGROUND**

A.    **Columbia's Original Claims**

Columbia filed an amended complaint in December 2013 that accused Norton of infringing 167 patent claims across six patents:  U.S. Patent Nos. 7,487,544 (the '544 patent), 7,979,907 (the '907 patent), 7,448,084 (the '084 patent), 7,913,306 (the '306 patent), 8,074,115 (the '115 patent), and 8,601,322 (the '322 patent).  Dkt. 12 at 17-44.  Columbia also alleged claims for fraudulent concealment, unjust enrichment, and conversion relating to Columbia's "decoy" technology along with claims for correction of inventorship with respect to U.S. Patent No. 8,549,643 (the '643 patent).  *Id.*  Columbia initially accused myriad Norton features beyond SONAR/BASH, including Global Intelligence Network, Probe Network, DeepSight, Insight ("Mr. Clean"), Skeptic, WINE, Polonium, Bloodhound, and MalHeur.[1]  Ex. 3 at 4.  Norton responded that the accused products did not infringe these 167 patent claims and that the patents were invalid and unenforceable. Dkt. 20.

B.    **Initial *Markman* Hearing, Dismissal, And Federal Circuit Appeal**

In October 2014, following briefing and a hearing, the Court issued a claim construction order that agreed with the thrust of Norton's reading of all of the relevant disputed terms in Columbia's patents.  Dkt. 123.  As a result, Columbia stipulated to final judgment of non-infringement for *all* of its allegations.  Dkt. 151 at 6 ("Therefore, this Court enters final judgment as to the First through Sixth Claims for Relief . . . .").  The Court also agreed with Norton's indefiniteness arguments, leading Columbia to similarly stipulate that claims 1-5 and 16-27 of the '544 patent were invalid.  Dkt. 151.

---

[1] The next year, Columbia accused MutantX in Dr. Ryan Sullivan's October 17, 2014, expert report.

On appeal, the Federal Circuit affirmed the vast majority of Norton's non-infringement and invalidity defenses. Dkt. 164 at 2. In particular, the Federal Circuit affirmed the Court's judgment of non-infringement with respect to all the claims Columbia asserted in the '544 patent, the '907 patent, the '084 patent, and the '306 patent. *Id.* The Federal Circuit also affirmed the Court's judgment finding the '544 patent claims indefinite. *Id.* The Federal Circuit disagreed, however, with the Court's claim construction regarding the term "anomalous" in the '115 and '322 patents, and remanded for this Court to address claim construction of that term. *Id.* At this point in the litigation Norton had defeated 98 of Columbia's initial 167 patent claims for infringement.

Norton also succeeded at the Patent Trial and Appeal Board ("PTAB") after filing two petitions for *inter partes* review ("IPR") challenging all claims of the '115 and '322 patents. The PTAB instituted both petitions, recognizing that Norton's arguments "establish[d] that there is a reasonable likelihood that [Norton] would prevail" on all challenged claims. Ex. 1 at 19; *see also* Ex. 2 at 18 (same). Of the 69 claims at issue, the PTAB found 51 claims unpatentable. *Symantec Corp. v. Trs. of Columbia Univ. in City of New York*, No. IPR2015-00375, 2016 WL 3574961, at *18 (P.T.A.B. June 30, 2016) ('115 patent); *Symantec Corp. v. Trs. of Columbia Univ. in City of New York*, No. IPR2015-00377, 2016 WL 3574962, at *16 (P.T.A.B. June 30, 2016) ('322 patent). That raised the number of defeated claims to 149 out of Columbia's original 167 patent claims against Norton, meaning Norton had prevailed on nearly 90% of Columbia's initial claims.

### C. Proceedings Following Remand In 2018

Following the PTAB proceedings, Columbia amended its infringement contentions. From the original 167 patent claims, Columbia was left with only 12 claims of the '115 patent and 6 claims of the '322 patent. *See* Dkt. 261-1. And after nearly six years of litigating, Columbia withdrew its infringement allegations against all accused functionalities except for MutantX and SONAR/BASH. Dkt. 261-1 at 4, 6.

After the close of discovery, Norton moved for summary judgment on Columbia's state-law fraudulent concealment, unjust enrichment, and conversion claims.  Dkt. 312.  The Court granted summary judgment to Norton with respect to the unjust enrichment and conversion claims.  Dkt. 684.  Columbia did not even *seek* summary judgment on the claims it now alleges were not even close.

As the case proceeded, Norton continued to narrow Columbia's case, winning multiple motions *in limine* related to the amount Broadcom paid for Norton's enterprise business, the value of a loan secured by Norton's patents, and references to IPR proceedings or final written decisions.  Dkt. 907, 914.  Norton also won portions of both of Columbia's *Daubert* motions, Dkts. 717, 740, 907 & 908, as well as numerous evidentiary objections to exclude or allow certain high priority exhibits, *see* Dkts. 1006 & 1104.

And, after asserting them for more than eight years, Columbia dropped fourteen of its eighteen remaining patent claims, trying only four to the jury.  Dkt. 745.  It also withdrew its allegations that MutantX infringed.  Columbia asserted only *four* of its claims at trial (one claim of the '115 patent and three claims of the '322 patent), having lost or withdrawn more than 97% of the claims it originally asserted.

### D.    Proceedings Related To The Missing Witness Instruction And Apportionment

Two subjects of the proceedings are most relevant for purposes of this motion:  (1) the availability of Dr. Marc Dacier, and (2) Norton's damages case.

First, Columbia sought a missing witness instruction related to Dr. Dacier, and asked to introduce hearsay testimony by Professor Angelos Keromytis about the content of statements that Dr. Dacier allegedly made about the '643 patent related to joint inventorship and fraudulent concealment.  The Court granted both requests.  In a March 15, 2022 opinion, the Court concluded that it "will" give a missing witness instruction related to Dr. Dacier.  Dkt. 889 at 17.  The Court

made that decision after finding "that Quinn Emanuel rendered Dr. Dacier unavailable."  *Id.*
Moreover, the Court granted Columbia's request to allow the hearsay statements of Dr. Dacier via
Professor Keromytis's unrebutted direct testimony at trial.  *Id.* at 18-20.  All of this came in
addition to the testimony Dr. Dacier gave to the jury via deposition.

Second, Columbia moved to exclude, among other things, portions of the opinions of
Norton's experts Mark J. Hosfield and Dr. Trent Jaeger regarding damages from alleged
infringement of Columbia's patents and apportionment of the value of Norton's product to
Columbia's patented technology.  *See* Dkts. 376, 753.  As relevant here, the Court granted
Columbia's motions, excluding significant portions of those experts' testimony that otherwise
would have supported Norton's damages case.  *See* Dkts. 741, 891, 899, 900, 905, 906, 910, 911
& 913.  As a result, Norton was prohibited from introducing any affirmative case regarding an
"ultimate damages number."  *See* Dkt. 1086.  Those rulings did not address Norton's ability to
cross-examine Columbia's witnesses regarding Columbia's damages and apportionment case.

At trial, during the cross-examination of Columbia's damages expert, Dr. Eric Cole,
Norton's counsel relied on three demonstratives to aid the jury's understanding of Norton's
questioning of Dr. Cole, and to illustrate the evidence already admitted.  *See* Dkts. 1149-1, 1149-
2 & 1149-3.  After the conclusion of cross-examination, Columbia objected to the use of those
demonstratives, and the Court ordered the parties to submit briefing as to whether the
demonstratives were appropriate.  Trial Tr. 1658:21-25.  Norton argued that the demonstratives
and cross-examination were proper (as the underlying evidence was not only admissible, but had
already been admitted), Dkt. 1149, while Columbia argued they and the associated cross-
examination should be excluded, Dkt. 1150.  The Court struck the demonstratives and cross-
examination, and further issued a curative instruction to the jury, which instructed the jurors "to

7

disregard [the written demonstratives] in their entirety" and that the cross-examination by Norton's counsel "included reliance on inadmissible and inapplicable evidence that cannot be used to assess apportionment and damages."  Dkt. 1155 at 9; *see* Trial Tr. 1683:16-1684:13.

### E.   Trial And The Jury's Verdict

Trial was hard-fought; it was the epitome of a "close case."  Trial Tr. 2998:25-2999:2 (Court noting that "I do think this has been a really hard trial, well tried with vigor and with heart, and that's what we want in the justice system.").  Each party won and lost evidentiary objections. *See, e.g.*, Trial Tr. 373:4-8 (sustaining Norton objection), 782:18-23 (overruling Norton objection), 1836:9-14 (sustaining Columbia objection), 1556:6-14 (overruling Columbia objection).  The jury was unable to return a verdict after deliberating for more than three days.  *See* Dkt. 1204-1 (Jury writing to the Court stating that "[w]e have reached an impasse regarding one of the questions on the verdict form and are unable to reach a consensus/unanimous decision.").  Only after the Court gave a rare *Allen* charge, requiring the jury to "carefully reexamine and reconsider all the evidence in the case bearing upon the questions before you in the light of the Court's instructions on the law," was the jury able to return a verdict.  Dkt. 1204-2.

The *Allen* charge successfully broke the jury's deadlock, prompting it to deliver a split verdict.  The jury was persuaded by Norton's defense against Columbia's claim of fraudulent concealment, Dkt. 1206 at 6, and concluded that, while Professors Stolfo and Keromytis were co-inventors, they were not the *sole* inventors of the '643 patent, *id.* at 5.  The jury found infringement as to the sole remaining feature accused by Columbia, and found that infringement to be willful, but awarded Columbia damages in an amount 20% lower than it sought.  *Id.* at 4; *see* Trial Tr. 1714:14-18 (Columbia's expert Dr. Sullivan testifying that a reasonable royalty would be more than $227 million).

## IV.   ARGUMENT

### A.   This Case Is Not "Exceptional"

This is not an "exceptional" case warranting an award of attorneys' fees under § 285.  Three considerations independently support that conclusion.  First, this was a case in which *Norton* won on the vast majority of claims asserted against it; and even the claims for which Norton was found liable had to be litigated all the way through trial and resulted in a mixed verdict, only after the Court gave the jury an *Allen* charge.  Second, Norton's trial conduct was zealous but fair, and in line with Columbia's own litigation conduct.  And the Court already sanctioned Norton for litigation conduct related to Dr. Dacier.  Third, for the reasons explained in Norton's renewed motion for judgment as a matter of law, there was insufficient evidence to support the jury's verdict of willful infringement.  *See* Dkt. 1254 at 16-19.  And courts widely recognize that the case for fee-shifting is weak in the absence of willful infringement.

#### 1.   *Norton Prevailed On The Vast Majority Of Columbia's Claims, And The Remaining Claims Required A Trial That Resulted In A Split Verdict*

Columbia argues that Norton should pay attorneys' fees for this case because of its "weak litigating positions."  Mot. (Dkt. 1259) 24 (capitalization omitted).  That assertion ignores both (1) the overwhelming strength of Norton's case from the time the complaint was filed until the case returned to this Court in 2018, and (2) the fact that the remaining claims had to be litigated through a very close trial on the merits.

First, as noted above, Norton successfully defended against the majority of claims brought by Columbia in this case.  *See supra* at 4-8.  To be sure, Columbia ultimately prevailed on some of the issues presented to the jury and won a substantial damages verdict.  But when considered from the perspective of this litigation as a whole, the trial victory was on a narrow portion of Columbia's total case—as little as 3% of Columbia's initial claims.  As the Federal Circuit has

noted before, "there is some question whether [a litigant] can be considered altogether a 'prevailing party' for the purpose of § 285" in cases where the plaintiff and defendant each won on some claims while losing on others. *Beckman Instruments*, 892 F.2d at 1553; *see also Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 814 (Fed. Cir. 1990) (affirming denial of attorneys' fees request where "[n]either party can nor does claim that it prevailed on all issues at all stages"); 6A Donald S. Chisum, *Chisum on Patents* § 20.03[4][c][v] (Matthew Bender 2022) ("The patent owner and accused infringer may each prevail as to some claims or charges at issue in the suit. Court decisions suggest that the trial court has considerable discretion to either apportion fees or to deny fees entirely [in those circumstances]."). For the first five years of this case, it cannot be said that Columbia "prevailed"—a fact Columbia effectively admits by ignoring those years entirely, and focusing only on the events *after* 2018 in its motion for fees.

Second, the issues litigated after the case returned to this Court were far closer than Columbia suggests. For one thing, the fact that the case even had to proceed to verdict before a jury shows how close the case was. Columbia did not think that the remaining infringement issues were straightforward enough to even *move* for summary judgment. *See SiOnyx LLC v. Hamamatsu Photonics K.K.*, 981 F.3d 1339, 1355 (Fed. Cir. 2020) (affirming denial of attorneys' fees where "the district court concluded that [defendant's] noninfringement and invalidity defenses were not so weak as to be exceptional, in particular noting that [plaintiff] *failed even to move for summary judgment* on those issues" (emphasis added)). The jury deliberated for more than three days, and the jurors were deadlocked until the Court issued an *Allen* charge pushing them to resolve their differences. When the jury did return, its verdict was split, finding for Columbia on some issues and for Norton on others, and decreasing the damages award by approximately 20% from what Columbia sought. All of this belies Columbia's assertion that Norton's case was "weak."

10

For those reasons, Columbia's cases on this point are easily distinguished.  Indeed, much of that case law involves fee awards against *plaintiffs* who brought baseless or facially weak patent suits and lost, issues that would point in favor of attorneys' fees *for Norton* from 2013 to 2018. *See, e.g.*, *Innovation Scis., LLC v. Amazon.com, Inc.*, 2020 WL 4934272, at *2 (E.D. Va. Feb. 18, 2020) (attorneys' fees against plaintiff who sued over patents that were "invalid on their face"); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1319-20 (Fed. Cir. 2013) (finding that plaintiff brought a baseless case and awarding fees); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 78-79 (N.D.N.Y. 2005) (similar); *cf. Regeneron Pharms., Inc. v. Merus N.V.*, 2018 WL 1472507 (S.D.N.Y. Mar. 26, 2018) (attorneys' fees against plaintiff because of litigation misconduct).  Those cases bear no resemblance to this one.

Columbia's cases involving awards against defendants are similarly far afield.  They involve instances in which defendants "ignored the weaknesses of their own positions" or "advanced unreasonable arguments," *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 69 (D.N.J. 2021), or filed "numerous unmeritorious motions," *Tinnus Enter., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 745 (E.D. Tex. 2019).  Norton, by contrast, successfully defended against more than 97% of Columbia's case, and its arguments were repeatedly vindicated not only by this Court but also by the PTAB and the Federal Circuit.

The deterrence and compensation rationales that support attorneys' fees awards against parties who advance frivolous claims and arguments are likewise inapposite.  *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017) (noting "the need to deter similarly weak arguments in the future"); *see also Octane Fitness*, 572 U.S. at 555 ("[A] case presenting . . . exceptionally meritless claims may sufficiently set itself apart from

11

mine-run cases to warrant a fee award.").  The jury awarded Columbia a very significant damages award, which serves both purposes.[2]

### 2.   *Norton's Conduct Throughout The Litigation Was Zealous But Fair, Not "Exceptional"*

Throughout this case, Norton has litigated in a manner that was zealous but fair.  The vast majority of Columbia's proffered examples of litigation misconduct do not—either individually or collectively—justify a finding that this case was litigated in an "exceptional" way.

### a.   Norton Made Good Faith Arguments With The Law Available

Columbia first argues that Norton "repeatedly sought to re-argue issues."  Mot. 7.  None of Columbia's examples hold up.  With respect to invalidity and IPR, Columbia says that "Norton argued that it could assert prior art that it had identified in its May 2014 invalidity contentions but had not raised during IPR, notwithstanding that the plain language of 35 U.S.C. § 315(e)(2) prohibits Norton from doing so."  *Id.*  But Columbia fails to acknowledge that, at the time, the question was not settled definitively and Norton's arguments were supported by both *Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016), and many district court cases applying *Shaw*.  *See* Dkt. 203 at 5.  Although the Federal Circuit later overruled *Shaw*, it did not do so until earlier this year—four years after the Norton brief that Columbia cites—and when it did so, the Federal Circuit explicitly acknowledged the weight of district court case law applying *Shaw* on which Norton relied.  *See Cal. Inst. of Tech. v. Broadcom*

---

[2] For the reasons explained in Norton's Rule 50(b) motion, the jury's award was not supportable and Norton is entitled to judgment as a matter of law.  *See* Dkt. 1254; *see also* Dkt. 1245 at 26-27 (moving in the alternative for a new trial).  Regardless of how the Court rules on that motion, though, the strength of Norton's motion shows, at a minimum, that Norton's defense was not weak and that this case was at least close.

*Ltd.*, 25 F.4th 976, 989-90 (Fed. Cir. 2022).  Under those circumstances, Norton was justified in continuing to make arguments based on *Shaw* when it did.

Columbia likewise argues that Norton sought "loopholes" to "present prior art to the jury" at trial "*even after* the Court's pre-trial evidentiary rulings made it clear that prior art and IPR invalidity were not relevant."  Mot. 8 (emphasis added).  But the Norton filing that Columbia cites to support that argument, *id.* (citing Dkt. 706), was filed *before* the Court's opinions that Columbia argues Norton tried to "evade," *id.* (citing Dkts. 717, 741, and 907).  And in any event, those opinions were *tentative*, not final.  *See* Dkt. 717 at 7 ("The Court Will *Take Under Advisement* Columbia's Request to Exclude Dr. Jaeger's Opinions on Apportionment, IPR, and Prior Art" (emphasis added)); Dkt. 741 at 23 ("The Court Will *Reserve Ruling* on Hosfield's Mentions of the IPR Proceedings and *Prior Art*" (emphasis added)).  And the Court initially suggested that it would allow at least some argument on IPR or prior art.  *See* Dkt. 739 ("[T]he jury likely will hear that the PTAB invalidated certain claims of the 115 and 322 Patents.").  Indeed, Columbia itself continued to make arguments contesting the tentative rulings, which it had every right to do.  *See, e.g.*, Dkt. 753-2 at 4-5 ("Columbia is mindful of the Court's statement in the Jaeger Opinion that [the jury will hear about the IPRs].  Columbia respectfully suggests that such a disclosure is not necessary.").

Norton's Section 101 defense is no different.  Contrary to Columbia's suggestion, the Court expressly found that (1) Norton did *not* waive its Section 101 defense, and (2) the Court had *not* already decided Norton's Section 101 defense in its order on Norton's 12(c) motion.  Dkt. 683 at 5 ("[T]he Court's Section 101 Opinion did not finally decide the § 101 issue in Columbia's favor, nor did Norton otherwise waive its § 101 defense.").

The same is true of Columbia's arguments about claim construction.  Mot. 9-10.  Far from rearguing decided issues, both parties acknowledged that the issue Norton is accused of rearguing, which involved a specific question about the construction of "model of function calls," did not come up in IPR.  *See* Hearing Tr. (Dec. 18, 2019) 78:7-9 (Columbia's counsel stating:  "It did not come up [in IPR] in any respect whether the model of function calls needed to be created by modeling the program in the emulator.").  And although Columbia accuses Norton of taking an "indefensible position" related to the Federal Circuit's opinion on claim construction, Columbia tellingly *does not cite any Norton brief* advancing the position "that the parties' stipulation abrogated, *sub silentio*, the Federal Circuit's holding" about modeling.  Mot. 9-10.

### b.      Norton's Trial Conduct Was Reasonable

Columbia next argues that Norton's "improper cross-examinations at trial" justify an award of fees.  Mot. 10.  Not so.  Even if the cross-examination by Norton's counsel had been improper,[3] it came nowhere close to the level of flagrant litigation misconduct that justifies an exceptional case finding.  *Cf. In re Rembrandt Techs.*, 899 F.3d at 1265-67 (party engaged in litigation misconduct and violated ethics rules by engaging in *spoliation of evidence* and making *improper payments to witnesses*).  Norton's counsel advanced the best arguments possible for its client with the limited resources at its disposal, well within the typically broad discretion that attorneys have to cross-examine witnesses.

### c.      Both Norton And Columbia's Conduct Reflects The Normal Course Of High-Stakes Litigation

Columbia also argues that Norton "refused to engage with Columbia in good faith concerning pre-trial matters" and made "untimely withdrawals" of issues and arguments.  Mot. 13-

---

[3] While Norton acknowledges the Court's ruling on this issue, Dkt. 1155, Norton respectfully maintains that its cross-examination at trial was appropriate, *see* Dkt. 1149.

14

14.  As an example, Columbia cites the parties' negotiations to prepare revised stipulations of uncontroverted facts, and accuses Norton of unilaterally cutting off those negotiations.  But Columbia ignores that the Court ordered the revised stipulations to be submitted just five days later—by February 28.  By the evening of February 28, it was clear—given the extensive negotiations that had already taken place over the course of the preceding days—that the parties were at an impasse (even without a meet and confer), and Norton reasonably believed that the only way to comply with the Court's order was to resubmit the previous stipulation.  *See* Dkt. 763-4. Even Columbia's filing acknowledged that the parties had made progress on a new stipulation, Dkt. 763 at 2, and Norton's position was ultimately vindicated when—consistent with Norton's complaints that many of Columbia's proposed stipulations were irrelevant or confusing—many of the alleged undisputed facts were not addressed at trial at all.  *See, e.g.*, Dkt. 761-1 at 3-13 (proposed stipulation including "units" data as to which Columbia did not offer testimony at trial).

As another example, Columbia argues that Norton had a "persistent approach of arguing issues right up to a ruling—and then withdrawing them."  Mot. 15.  This is a strange argument coming from Columbia.  After all, a decade into the case, Columbia dropped a majority of its patent claims and accused functionalities in the run-up to trial.  Regardless, parties should be praised, not criticized, for narrowing issues and arguments as trial approaches.  "[T]he mere fact that an issue was pleaded and then dropped prior to trial does not in itself establish vexatious litigation."  *Beckman Instruments*, 892 F.2d at 1551.  If it did, Columbia would be guilty of the same offense with which it charges Norton.  For example, the parties *both* made a substantial narrowing of objections and exhibits leading to the March 17 hearing.  *See* Hearing Tr. (Mar. 17, 2022) 11:3-5 ("Your Honor, we made a filing two days ago where we removed, I think, 24 exhibits

15

from the list.").  And the Court's complaint that the hearing was a "colossal waste of time" (Mot. 14), was directed at *Columbia's* counsel, not Norton's.  Hearing Tr. (Mar. 17, 2022) 11:10-21.

Ultimately, both sides' conduct reflects the natural course of high-stakes civil litigation— the gradual narrowing of issues for trial.  *See, e.g.*, *Legacy Acad., Inc. v. LLC Concepts, L.P.*, 2008 WL 11422528, at *3 (N.D. Tex. Apr. 8, 2008) ("Narrowing trial issues to the ones that are really in dispute is in fact a favored practice by the court."); *cf. Monfore v. Phillips*, 778 F.3d 849, 851 (10th Cir. 2015) (Gorsuch, J.) ("At trial you just can't argue every . . . claim or defense you were able to conjure in your pleadings:  juries would lose faith in your credibility.  Neither can you present the millions of documents and the scores of witnesses you were able to dig up in discovery: no sensible judge would tolerate it.").  Both Columbia and Norton took a similar approach to narrowing issues as appropriate leading up to trial, but only when the need to do so became apparent.  Norton's conduct was appropriate, and no different from Columbia's.

### d.     The Court Has Already Sanctioned Norton For Its Conduct Related To Dr. Marc Dacier

At bottom, Columbia's argument that this case is "exceptional" hinges on Norton's conduct regarding Dr. Marc Dacier.  But this Court has already sanctioned Norton for that conduct, including issuing an exceptionally rare "missing witness" instruction and allowing Columbia to offer otherwise inadmissible hearsay testimony.  Under these circumstances, "[b]asing an enhancement or award of attorneys' fees on misconduct that has previously been sanctioned would be unnecessarily cumulative and inequitable."  *Mass Engineered Design*, 633 F. Supp. 2d at 391-92.  Columbia has already been made whole for any prejudice caused by Dr. Dacier's absence.  Another sanction against Norton for that same conduct is neither necessary nor appropriate.

### 3.     *The Case For Attorneys' Fees Is Weak Because Norton Did Not Willfully Infringe*

The jury found that Norton's infringement of the '115 and '322 patents was willful. Dkt. 1206 at 4.  But, as Norton has explained at length elsewhere,[4] no reasonable jury could have concluded that Columbia provided legally sufficient evidence to support willful infringement.  No reasonable jury could have concluded that Norton knew its actions constituted infringement of an asserted claim or that Norton made itself willfully blind to its infringement of the asserted claims.

Mere knowledge of the patent is not legally sufficient to show willfulness.  *See Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000) (alleged infringer's knowledge of asserted patent, without more, insufficient to support a conclusion of willfulness).  As explained more fully in Norton's Opposition to Columbia's Motion for Enhanced Damages under § 284, Columbia did not advance a theory that Norton willfully copied Columbia's products, because Columbia had no products on the market to copy.  On the contrary, Norton independently designed and sold SONAR/BASH in accused products as early as 2009—years before Columbia contacted Norton regarding the '115 and '322 patents (which issued on December 6, 2011, and December 3, 2013, respectively, long after Norton introduced SONAR/BASH to the market).  *See* Dkt. 1254 at 11-14, 17.  In other words, Norton did not know about Columbia's patents when developing and releasing SONAR/BASH.  Nor did Norton even know about the '115 and '322 patent *applications* before it developed and released SONAR/BASH.  Without the requisite knowledge at the time of the challenged conduct, Norton could not have willfully

---

[4] As Norton argued in its Rule 50(b) motion, it is entitled to judgment as a matter of law on the question of willful infringement.  *See* Dkt. 1254 at 16-19; *see also* Dkt. 1245 at 26-27 (moving in the alternative for a new trial on that issue).  Norton does not repeat those arguments here.

infringed either patent.  And the fact that Norton later became aware of the patents cannot render its actions willful.

Nor is the evidence sufficient to allow a reasonable jury to conclude that Norton took deliberate action to avoid learning of infringement.  *See* Dkt. at 17-18.  The only evidence Columbia had to support willful blindness was Mr. Laffoon's deposition testimony that he did not read the '115 or '322 patents or instruct anyone at Norton to design around them.  *Id.*  But Mr. Laffoon is an engineer, not an attorney, and would not have analyzed patents in the ordinary course of his duties.  And in any event, Mr. Laffoon did not testify that Norton had a corporate policy of turning a blind eye to third-party patents.  He merely testified that in 2019—six years after this lawsuit was filed and after Columbia had lost well over 90% of the claims it originally brought—Norton had not made an effort to design around the patents-in-suit.  *Id.*  That is insufficient to find willful blindness, especially in light of the clear record of Norton's subjective, good-faith belief that it did not infringe Columbia's patents.  A belief that the Court and the PTAB had largely vindicated by 2019, and was supported by this Court's initial conclusion of non-infringement of all claims.  *See supra* at 4-5.

Because no reasonable jury could conclude that Norton is liable for pre-suit willful infringement, the case for attorneys' fees is weaker still.  As other judges in this District have noted, it is "rare for a court to award attorney fees for litigation misconduct without a concurrent finding of willful infringement."  *Westvaco Corp. v. Int'l Paper Co.*, 31 U.S.P.Q.2d 1798, 1800 n.2 (E.D. Va. 1994).  That is because willful infringement has long been thought of as a form of "independently sanctionable conduct."  *Octane Fitness*, 572 U.S. at 555.  But in the absence of independently sanctionable conduct, an award of attorneys' fees under § 285 will only be appropriate "in the rare case."  *Id.*

To be clear, even if this Court were to uphold the jury's verdict of willfulness, that would not change the conclusion that an award of fees is inappropriate here.  The Supreme Court has emphasized that the decision whether to award attorneys' fees must be made after assessing the "totality of the circumstances."  *Octane Fitness*, 572 U.S. at 554.  Here, that totality supports denying attorneys' fees—regardless of the verdict on willfulness—because Norton both prevailed on the majority of Columbia's claims and litigated this case fairly and professionally.

As the Federal Circuit has explained, "[w]hile willfulness is 'among the reasons that a court may find a case to be exceptional,' 'an attorney fee award *is not mandatory* when willful infringement has been found.'"  *SiOnyx*, 981 F.3d at 1355 (emphasis added) (first quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014); then quoting *WhitServe, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 37 (Fed. Cir. 2012)).  For that reason, courts overseeing similar cases have denied attorneys' fees even when a jury has found willfulness. *See, e.g.*, *Idenix Pharm. LLC v. Gilead Scis., Inc.*, 271 F. Supp. 3d 694, 704-05 (D. Del. 2017) (denying fees because "both sides' positions had substantial merit" and therefore, "quite understandably, went to trial," and although the case was "hotly contested" that was merely the "typical realities of high-stakes patent litigation"); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 2019 WL 11307114, at *1 (D. Mass. July 25, 2019) (denying attorneys' fees despite jury's finding of willfulness); *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, 2019 WL 3240521, at *9 (D. Del. July 18, 2019) (same); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2019 WL 3290369, at *10 (D. Del. July 22, 2019) (same); *Schwendimann v. Arkwright Advanced Coating, Inc.*, 2018 WL 1041038, at *1-3 (D. Minn. Feb. 23, 2018) (same); *Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 122-23 (E.D. Tex. 2017) (same);

19

*Arthrex, Inc. v. Smith & Nephew, Inc.*, 2017 WL 365239, at *1-2 (E.D. Tex. Jan. 25, 2017) (same). Columbia's motion should be denied either way.

> **B.      To The Extent Any Fees Are Awarded, They Must Be Limited To Compensating Columbia For The Cost Of Litigating Specific Issues**

The Federal Circuit has held that "a finding of exceptionality based on litigation misconduct usually does not support a full award of attorneys' fees." *In re Rembrandt Techs.*, 899 F.3d at 1278 (citation, internal quotation marks, and alterations omitted). Instead, "the amount of the award must bear some relation to the extent of the misconduct." *Id.* (citation and internal quotation marks omitted). In particular, the district court must "establish a causal connection between the misconduct and those fees." *Id.* at 1280. In other words, when awarding fees as a result of litigation misconduct, "the court should limit recovery to the fees expended in responding to the litigation misconduct," *Westvaco*, 31 U.S.P.Q.2d at 1800 n.2, because those are the fees the prevailing party incurred *because of* the misconduct. *Tenax Corp. v. Tensar Corp.*, 27 U.S.P.Q.2d 1216, 1219 (D. Md. 1992) ("When the losing party engages in 'exceptional' conduct during the litigation, the prevailing party is entitled to attorneys' fees which were the result of the *extra* legal effort needed to counteract such conduct." (emphasis added)).[5]

For that reason, Columbia's request for "an award of its attorneys' fees for the period after this case returned to the District Court in 2018" is unsupportable. Mot. 2. Even assuming that there are specific instances of litigation misconduct that qualify as "exceptional," Columbia would only be entitled to the amount of fees that it expended because of, and in responding to, that

---

[5] *Accord Beckman Instruments*, 892 F.2d at 1553 (reversing district court that awarded all attorneys' fees and holding that the party was entitled at most to "the portion of its attorney fees which related to the vexatious litigation strategy and other misconduct," i.e., the cost of the "extra legal effort to counteract the[] misconduct" (emphasis omitted)); *Campbell*, 601 F.2d at 251 (noting that "award of attorneys' fees under [§] 285 is intended to compensate the prevailing party for costs that it would not have incurred but for the conduct of the losing party").

misconduct.  To be entitled to a full award of attorneys' fees for the period Columbia identifies, Columbia would have to demonstrate "misconduct [that] *severely affected every stage* of the litigation."  *Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 918-19 (Fed. Cir. 2019) (emphasis added) (citation and internal quotation marks omitted).  Columbia does not come close to making that showing.  *See supra* at 12-16.

Indeed, if the Court were to award Columbia its attorneys' fees for the entire period since 2018, the Court would be forcing Norton to compensate Columbia not just for costs related to issues on which Columbia prevailed, but also for the cost of litigating myriad issues *that Columbia lost in whole or in part*, both before and at trial.  That illogical result would force Norton to pay Columbia's fees for, among other things, (1) Norton's successful summary judgment motion defeating multiple of Columbia's state-law claims, (2) multiple *Daubert* motions, including both Columbia's motions against which Norton successfully defended and Norton's own motions that succeeded against Columbia, (3) various motions *in limine* that Norton affirmatively won or against which Norton successfully defended, (4) Columbia's fraudulent concealment claim, which the jury rejected, and (5) Columbia's sole inventorship claim, which the jury likewise rejected. *See supra* at 4-6, 8.

At most, then, Columbia would be entitled to an award of the *extra* fees it would not have incurred *but for* specific instances of exceptional litigation behavior.  But the only specific act alleged by Columbia is Norton's conduct related to Dr. Dacier.[6]  And the "extra legal effort" needed to litigate that issue was fairly limited.  *Tenax*, 27 U.S.P.Q.2d at 1219.  Dr. Dacier's

---

[6] Without repeating the objections that Norton has already raised, *see, e.g.*, Dkt. 1048-1, 1085, 1088-1, 1096, 1103, 1123, 1126, 1139, and recognizing that the Court has already issued several rulings on this issue, *see, e.g.*, Dkt. 1083, 1092, 1099, 1116, 1130, 1167, Norton maintains that issuing the missing witness instruction was erroneous.

testimony went only to the issues of fraudulent concealment and inventorship, not to the questions of patent infringement or damages.  And because the jury's verdict on fraud and inventorship was split, Columbia at most "prevailed" (for purposes of an award related to Dr. Dacier) only on inventorship.  And the majority of Columbia's legal efforts on inventorship related to Dr. Dacier's testimony were going to be expended regardless of his in-person availability at trial and regardless of Norton's conduct related to him.  The only "extra" legal efforts that Columbia would not have undertaken but for the complained-of conduct was the cost of litigating the motion for sanctions, litigating the missing witness instruction, and other closely related issues.  *See In re Rembrandt Techs.*, 899 F.3d at 1280 (reversing district court's fee award where it did not "assess which issues the claimed misconduct affected").  At most, then, Columbia would be entitled to an award of attorneys' fees for those limited "extra" costs—not the entire cost of the litigation since 2018.

## V.    CONCLUSION

For the foregoing reasons, Norton respectfully requests that the Court deny Columbia's motion for attorneys' fees.


July 1, 2022                                                       NORTONLIFELOCK INC.


By:   /s/
                                                                              Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
Laura Anne Kuykendall, VSB #82318
TROUTMAN PEPPER HAMILTON SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
la.kuykendall@troutmansanders.com

Douglas E. Lumish (*pro hac vice*)
Srinivas Pathmanaban (*pro hac vice*)
Ryan T. Banks (*pro hac vice*)
140 Scott Drive
Menlo Park, CA 94025
Telephone:  650.463.4600
doug.lumish@lw.com
giri.pathmanaban@lw.com
ryan.banks@lw.com
LATHAM & WATKINS LLP

David Callahan (*pro hac vice*)
330 North Wabash Ave., Ste. 2800
Chicago, IL 60611
Telephone: 312.876.7700
david.callahan@lw.com
LATHAM & WATKINS LLP

Michael Morin (*pro hac vice*)
Susan Yates Tull (*pro hac vice*)
Richard A. Lowry (*pro hac vice*)
Benjamin J. Behrendt (*pro hac vice*)
Laura Nguyen (*pro hac vice*)
555 Eleventh St., NW, Ste. 1000
Washington, DC 20004
Telephone:  202.637.2200
michael.morin@lw.com
susan.tull@lw.com
richard.lowry@lw.com
benjamin.behrendt@lw.com
laura.nguyen@lw.com
LATHAM & WATKINS LLP

ATTORNEYS FOR DEFENDANT NORTONLIFELOCK INC.