**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>    *Plaintiff*<br><br>    v.<br><br>NORTONLIFELOCK INC.,<br><br>    *Defendant.* | Civil Action No. 3:13-cv-00808-MHL |

**<u>NORTONLIFELOCK'S REPLY IN SUPPORT OF ITS
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...................................................................................................1

II.  ARGUMENT.........................................................................................................1

A.  Columbia Failed To Provide Substantial Evidence To Support The Jury's Findings Regarding Direct Infringement ...................................................1

1.  Programs And Function Calls Are Not Executed "In" An Emulator As Required By The Asserted Claims ...........................................1

2.  BASH Submissions Are Not "Models" And The BASH Decision Tree Is Not A "Combined Model" As Required By The Asserted Claims ................................................................................3

3.  SONAR/BASH Does Not Notify "An Application Community" Of An Anomalous Function Call "Upon Identifying The Anomalous Function Call" As Required By The '115 Patent........................................5

B.  Columbia Failed To Provide Substantial Evidence To Support The Jury's Findings Regarding Willfulness, Indirect Infringement, And Contributory Infringement..............................................................................7

1.  Norton Had No Knowledge Of The Asserted Patents ...............................7

2.  No Reasonable Jury Could Have Found Norton Willfully Blind...............8

3.  No Reasonable Jury Could Have Found Induced Or Contributory Infringement........................................................................................12

C.  Columbia Failed To Provide Substantial Evidence To Support The Jury's Findings Regarding Damages For Infringement Of The Asserted Patents............14

1.  The Court Should Grant Norton's JMOL Motion Related To Customers Outside the U.S...................................................................14

a.  Columbia Is Not Entitled To Damages Based On "Domestic" Infringement..................................................14

b.  Columbia Produced Insufficient Evidence For Damages Based On Products Purchased Or Used By Non-U.S. Customers ..................................................16

2.  There Was Insufficient Evidence To Support The Jury's $185 Million Reasonable Royalty Award........................................................17

III.  CONCLUSION..................................................................................................20

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Acantha LLC v. DePuy Synthes Sales Inc.*,
406 F. Supp. 3d 742 (E.D. Wis. 2019)................................................................................12

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
228 F.3d 1338 (Fed. Cir. 2000)..........................................................................................11

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)..........................................................................................17

*Automatic Equip. Mfg. Co. v. Danko Mfg., LLC*,
C.A. No. 19-cv-00162, 2022 WL 283063 (D. Neb. Jan. 31, 2022).........................................18

*Brumfield, Tr. for Ascent Tr. v. IB LLC*,
C.A. No. 10-cv-00715, 2022 WL 523128 (N.D. Ill. Feb. 22, 2022) .....................................15

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015)..........................................................................................15

*Commonwealth Sci. & Indus. Rsch. Org.* v. *Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)..........................................................................................20

*Concordia Pharms., Inc. v. Method Pharms., LLC*,
C.A. No. 14-cv-00016, 2016 WL 1464639 (W.D. Va. Apr. 13, 2016) ..................................18

*Ecolab, Inc. v. FMC Corp.*,
569 F.3d 1335 (Fed. Cir. 2009)..........................................................................................12

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018)..........................................................................................19

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010)..........................................................................................19

*Georgetown Rail Equip. Co. v. Holland L.P.*,
867 F.3d 1229 (Fed. Cir. 2017)..........................................................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)............................................................................................................9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016)............................................................................................................11

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)........................................................................................13, 20

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007)................................................................................................................15

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   C.A. No. 14-cv-03657, 2019 WL 2437073 (N.D. Cal. June 11, 2019) ...................................15

*MobileMedia Ideas LLC v. Apple Inc.*,
   780 F.3d 1159 (Fed. Cir. 2015)...............................................................................................18

*Monsanto Co. v. McFarling*,
   488 F.3d 973 (Fed. Cir. 2007).................................................................................................13

*Motiva Pats., LLC v. Sony Corp.*,
   408 F. Supp. 3d 819 (E.D. Tex. 2019)......................................................................................9

*Ormco Corp. v. Align Tech., Inc.*,
   609 F. Supp. 2d 1057 (C.D. Cal. 2009) ..................................................................................17

*Orthopaedic Hosp. v. Encore Med. L.P.*,
   C.A. No. 19-cv-00970, 2022 WL 254956 (S.D. Cal. Jan. 27, 2022).......................................17

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005).................................................................................................4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013)...............................................................................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   C.A. No. 04-cv-01371, 2018 WL 4804685 (D. Del. Oct. 4, 2018) .........................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   No. 2019-1246, Dkt 63 (Fed. Cir. Oct. 22, 2019)...................................................................15

*Smithers v. C & G Custom Module Hauling*,
   172 F. Supp. 2d 765 (E.D. Va. 2000) .....................................................................................20

*Summit 6, LLC v. Samsung Elecs. Co.*,
   802 F. 3d 1283 (Fed. Cir. 2015)..............................................................................................18

*TecSec, Inc. v. Adobe Inc.*,
   C.A. No. 1:10-cv-00115, 2019 WL 1233882 (E.D. Va. Mar. 14, 2019) ..................................8

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   C.A. No. 10-cv-00715, 2021 WL 5038754 (N.D. Ill. July 23, 2021).....................................14

iii

*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009)......................................................................................13

*VLSI Tech. LLC v. Intel Corp.*,
   C.A. No. 18-cv-00966, 2019 WL 1349468 (D. Del. Mar. 26, 2019) .........................................9

*Welker Bearing Co. v. PHD, Inc.*,
   550 F.3d 1090 (Fed. Cir. 2008)......................................................................................16

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 S. Ct. 2129 (2018)..............................................................................................14, 15

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012)..........................................................................................13

## STATUTES

35 U.S.C. § 271(a) ..............................................................................................14, 17

## I.      INTRODUCTION

Columbia's attorney argument is no substitute for evidence.  When that is stripped away, the record shows an absence of evidence upon which a reasonable jury could find direct or literal infringement of claim 2 of U.S. Patent No. 8,074,115 ("115 patent") and claims 2, 11, and 27 of U.S. Patent No. 8,601,322 ("'322 patent") (collectively, "Asserted Claims" or "Asserted Patents"); induced or contributory infringement of claims 2, 11, and 27 of the '322 patent; willful infringement; or damages.  Norton respectfully requests that the Court grant Norton's JMOL motion in its entirety.

## II.     ARGUMENT

### A.      Columbia Failed To Provide Substantial Evidence To Support The Jury's Findings Regarding Direct Infringement

#### 1.      *Programs And Function Calls Are Not Executed "In" An Emulator As Required By The Asserted Claims*

Columbia fails to provide substantial evidence to support the jury's verdict that SONAR/BASH executes programs and function calls "in an emulator" as required by the Asserted Claims.  Instead, Columbia relies upon setting up and knocking down strawmen.  For example, Columbia repeatedly attacks Norton for allegedly "re-construing the patent to require that programs execute 'in' the SONAR/BASH code *alone*."  Opp. 5, 6, n.6.  But the plain language of the Asserted Claims specifically says that the "at least a portion of the program" must be executed "*in* an emulator."  Ex. 1 (PX-831) at 26.  Columbia has not and cannot show any evidence that the alleged emulator, SONAR/BASH, executes any portion of the program in any way.

Instead of showing the record evidence to support the verdict, Columbia shifts its theory of infringement yet again in an attempt to satisfy the "in an emulator" requirement.  In Dr. Bailey's original expert reports, he and Columbia argued that SONAR/BASH was the alleged "emulator."  Trial Tr. (Ex. 10) at 1274:19-1282:3.  When that theory did not fit (because programs and function

1

calls are not executed in SONAR/BASH), Columbia shifted theories, alleging that the emulator was instead the "operating environment" into which SONAR/BASH was installed. *Id*. at 1272:2-1283:18. Having now recognized that this theory does not fit either (because the operating environment does not perform the monitoring and selective execution of a program as required by the Court's construction of "emulator"), Columbia shifts again.

Columbia now argues for the first time that "SONAR/BASH *creates* a modified operating environment in which programs execute," and that this is actually the alleged emulator. Opp. 4 (emphasis added). Columbia presents this argument for the first time on JMOL, and it fails on the merits in any event. The Court's construction of "emulator" requires that the emulator *itself* must "permit[] the monitoring and selective execution of certain parts, or all, of a program." Dkt. 123 at 2. Columbia concedes that it is SONAR/BASH, and not some amorphous "operating environment" or "modified operating environment" that permits the monitoring and selective execution of programs. Opp. 4 ("SONAR/BASH monitors programs executing . . . with the ability to allow or block execution"). So SONAR/BASH must be what the program and function call execute in—which indisputably does not happen. Columbia's own expert admitted as much. Trial Tr. at 1282:23-1283:6 (Dr. Bailey admitting "there's no program that can run in SONAR/BASH. And that's never been true."), 1274:18 ("the program doesn't run in SONAR/BASH"). Because SONAR/BASH is the only component Columbia points to that can satisfy the Court's construction of emulator, and because Columbia fails to present substantial evidence that SONAR/BASH satisfies the requirements of executing programs and function calls in the emulator, the jury's verdict is not supported by substantial evidence of infringement.

Columbia's other arguments with respect to the "in an emulator" limitations are an attempt to redirect the focus from Columbia's lack of evidence by wrongly claiming that Norton is

2

misconstruing the claims.[1]  When Dr. Jaeger first provided his positions on non-infringement based on Columbia's lack of evidence for the "in an emulator" limitation, Columbia filed a *Daubert* motion making this same argument, Dkt. 376-17 at 32-34, which the Court rejected.  Dkt. 717.  Columbia's Opposition now claims that "the Court denied Columbia's motion, finding (i) it was an untimely claim construction."  Opp. 5.  This is both wrong, *see* Dkt. 717 at 14-15, and nonsensical.  Had the Court found Dr. Jaeger to be engaging in improper claim construction, the Court would have granted Columbia's motion.  The Court denied it, explicitly finding that "Dr. Jaeger's opinions on the emulator also do not run afoul of the Court's *existing* claim constructions."  Dkt. 717 at 15.  Dr. Jaeger's opinions were proper then and are proper now, and Columbia cannot avoid JMOL by repeating this failed argument.

Columbia also argues that "[n]othing in the claim language requires a program to execute in the SONAR/BASH code *alone*."  Opp. at 5 (emphasis in original).  This is a red herring; no portion of the program executes in SONAR/BASH *at all*.  Trial Tr. at 1282:23-1283:6 (Dr. Bailey admitting "there's no program that can run in SONAR/BASH.  And that's never been true.").

### 2.    *BASH Submissions Are Not "Models" And The BASH Decision Tree Is Not A "Combined Model" As Required By The Asserted Claims*

Columbia also fails to provide substantial evidence that BASH submissions are "models" as the Asserted Claims require.  As Mr. Kane (who Columbia does not dispute to be the most knowledgeable person about SONAR/BASH) explained, BASH submissions are just "facts about the program" which are used to train the tree, not models of any kind.  Trial Tr. at 1960:2-8 ("Q. In a technical sense here do you consider these SONAR/BASH submission to be models of any

---

[1] Columbia argues that each and every one of Norton's three grounds for JMOL on non-infringement is actually a new "post-trial claim construction."  *See, e.g.*, Opp. 5, 9, 10, 11, 13.  These arguments are no more than thinly guised attempts to distract the Court from Columbia's lack of substantial evidence and are entirely without merit.

kind?  A. No  Q. Why not?  A. The submission is facts about the program, the attributes that we measured.  The decision tree is the model."), 1966:13-1967:1.  Columbia's expert, Dr. Bailey, admitted that BASH submissions are "the input into the learning algorithm" and that "we can refer to input as training data."  *Id*. at 1304:8-12.

Rather than provide evidence that BASH submissions satisfy the requirement for being "models" as required by the Asserted Claims, Columbia instead focuses on a 2017 paper co-authored by Dr. Jaeger as allegedly supporting its position.  Opp. 6-7.  It does not.  Not only is Dr. Jaeger's paper wholly irrelevant to the plain meaning of the term "models" as used in the Asserted Claims, but this 2017 paper was written more than a decade after the effective filing date of the Asserted Patents.  The Federal Circuit is clear that "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application," not a decade later. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).  In any event, Dr. Jaeger presented unrebutted testimony that the paper's use of the term "models" is consistent with his opinion that BASH submissions are training data, not models.[2]  *See* Trial Tr. at 2083:8-15.

Columbia also fails to provide substantial evidence that the BASH decision tree is a "combined model" as required by the Asserted Claims.  As anticipated, *see* Mot. 8-9, Columbia premises its "combined model" theory on a mischaracterization of Dr. Pereira's deposition testimony.  Opp. 8.  But when Dr. Pereira was asked directly "[w]hy do you combine the models of normal behavior and models of malicious behavior," his testimony was clear that despite the

---

[2] Dr. Jaeger testified that, if he were to apply the terms of the 2017 paper to SONAR/BASH, the paper's description of a "trace" would be "analogous to the BASH submissions," while the paper's description of a "model" is "different than a program trace."  Trial Tr. at 2242:19-2243:11.  Dr. Jaeger concluded that the use of the term "model" as explained in the 2017 paper "is different than what's called for in the Columbia patents."  *Id*. at 2243:12-16.

4

fact that Columbia's question *incorrectly* "assumes [Norton is] creating models of valids and malicious . . . *in fact*, we're really just collecting features or attributes." Ex. 2 (Pereira Dep.) at 250:7-22. Columbia's infringement theory is premised on an idea that Dr. Pereira explains to be an *inaccurate* "assumption[] that [Norton is] collecting models." *Id.*

The only other evidence Columbia points to as allegedly supporting its infringement theory is a Norton document that discusses other Norton products, not SONAR/BASH. Opp. 8; Ex. 3 (PX-236); Trial Tr. at 2038:21-23 ("Q. Did Mr. Guzior show you anything in this document that says anything about SONAR or BASH? A. No."). Despite keyword searches of the document revealing zero results for each of the terms "SONAR," "BASH," "tree," and "submission," Trial Tr. at 2038:25-2040:6, Columbia nonetheless argues, without any supporting evidence, that the document's mention of the phrase "many models" not only necessarily implicates SONAR/BASH, but also proves infringement. Opp. 8. Not so. When Mr. Kane, the only witness Columbia chose to question about this document, was asked directly about the same paragraph Columbia now points to, Mr. Kane confirmed this section was a reference to a non-accused Norton product, not SONAR/BASH's decision tree. Trial Tr. at 2041:9-17. This is not substantial evidence.

### 3. SONAR/BASH Does Not Notify "An Application Community" Of An Anomalous Function Call "Upon Identifying The Anomalous Function Call" As Required By The '115 Patent

Columbia further fails to provide substantial evidence that, "*upon identifying* the anomalous function call," SONAR/BASH "notif[ies] an application community . . . of the anomalous function call" as required by the '115 patent. *See* Ex. 4 (PX-830) at 24. Columbia argues that in the context of SONAR/BASH, the "application community" is Norton's customers, but concedes that SONAR/BASH does *not* notify customers, and instead only "notifies *Norton* of an anomalous function call." Opp. 10-11. Notifying Norton, but not the "application community" is insufficient to support a finding of infringement.

Recognizing this problem, Columbia instead argues that Norton "aggregated" these notifications of anomalous function calls and "disseminated them" to Norton's customers. Opp. 11. This is baseless. When SONAR/BASH detects an anomalous function call, it creates a submission that is sent to the Norton (now Broadcom) server, but those submissions have never been "disseminated," or sent to Norton's customers. Trial Tr. at 1244:22-1245:9; 1311:5-19; 2090:9-16. No Norton customer has ever been made aware of an anomalous function call from another Norton customer's computer. *See id.* at 2092:14-22. Instead, Norton has only used BASH submissions to train new decision trees and would output those decision trees (lacking any information of particular anomalous function calls) to Norton customers.

Moreover, even if Norton's customers were sent notifications in the form of BASH decision trees, those trees are not sent "*upon* identifying the anomalous function call" as required. Columbia admits that Norton only ever sent out decision trees "every 3-6 months." Opp. 11. And it is undisputed that Norton has not sent out a decision tree or performed any such "kind of notification" in the past 5 years. Trial Tr. at 1307:23-1308:7. Columbia's only response is that "'upon' does not require immediacy," Opp. 11, and Norton never argued otherwise. But Columbia does not dispute that the plain and ordinary meaning of that phrase requires *at least* a contemporaneous notification of the detection. Mot. 10; Trial Tr. at 2089:24-2090:4. No reasonable juror could conclude that a 3-6 month delay, or a 5+ year delay, could satisfy the requirement that the notifications be sent "upon" identifying the anomaly.

Again, Columbia tries to wrongly blame Norton for asserting improper claim construction. Opp. 11. Columbia first argues that "upon" has no temporal requirement, but admitted at pre-trial the "Court agreed with Norton that Columbia's argument was untimely claim construction." Opp. 11. The Court recognized that "the timing of the notification" based on the term "upon" was an

6

issue left for the jury to decide.  Dkt. 717 at 13.  At trial, and now here too, Columbia failed to present substantial evidence that SONAR/BASH sent a notification with any timeliness at all, let alone with the undisputed contemporaneousness of the plain meaning of the term "upon."  Thus, no reasonable jury could have found that SONAR/BASH literally infringes any Asserted Claim.

**B.  Columbia Failed To Provide Substantial Evidence To Support The Jury's Findings Regarding Willfulness, Indirect Infringement, And Contributory Infringement**

Rather than identify specific evidence, Columbia argues that "the totality of the circumstances" is sufficient to establish willfulness, indirect infringement, and contributory infringement.  But hand-waving cannot replace substantial evidence, especially where the record established that Norton (1) had no pre-issuance knowledge of the Asserted Patents, (2) had no pre-suit knowledge of infringement, (3) was not willfully blind, (4) lacked the requisite intent for inducement, and (5) released the SONAR/BASH product with substantial non-infringing uses.

**1.  *Norton Had No Knowledge Of The Asserted Patents***

**No Pre-Issuance Knowledge.**  No evidence shows that Norton knew about the provisional application or the patents-in-suit prior to issuance.[3]  *See* Opp. 14-15.  Columbia points to several communications between the parties, but cannot point to a single instance where Columbia provided Norton with any patent-specific information, in large part because the majority of these meetings occurred *before* either patent issued.  For example, Dr. Stolfo testified that he presented "application communities" technology at a DARPA workshop, but he said nothing of Columbia's provisional patent application.  Trial Tr. 573:1-574:7.  Columbia also points to licensing discussions in 2010-2011 as evidence that Norton knew of Columbia's technology, but those

---

[3] Norton's arguments are set out in detail in Norton's Opposition to Columbia's Motion for Enhanced Damages.  *See* Dkt. 1277 at 7-18.

discussions fail to disclose patent-specific information, provide only a high-level description of Columbia's research, and in any event occurred *after* Norton launched SONAR/BASH in 2009. *See* Dkt. 1277 at 8-10. Columbia claims that Norton and "the whole world" knew of a 2007 published patent application that became the Asserted Patents, Opp. at 15, but there is no evidence that Norton knew of this publication before it developed SONAR/BASH or before Columbia filed suit. *See* Opp. 15; Dkt. 1277 at 16-17. Moreover, Columbia fails to address the significant difference in scope between the pre-issuance disclosures (e.g., the 2007 publication) and the claims as-issued in the Asserted Patents. *See* Dkt. 1277 at 15-16 (identifying differences between claims in the provisional application and in the Asserted Patents as issued).

**No Pre-Suit Knowledge.** In August 2012, Columbia sent a letter listing the '115 patent. *See* Dkt. 1277 at 9, 11; Ex. 5 (PX-331) at 2. But Columbia's letter did not accuse Norton of infringement, did not mention SONAR/BASH, and did not "advis[e] that Norton required a license." Opp. 15; Ex. 5 at 1 ("Our mission is to facilitate the transfer of relevant new technologies to companies like yours."). Norton was first accused of infringement when Columbia sued in 2013, *after* the Asserted Patents issued. And Norton first learned of the '322 patent, which issued two days before Columbia sued, when Columbia sent a notice letter the day *after* it filed suit. *See* Ex. 6 (PX-22); Dkt. 1.

### 2.    *No Reasonable Jury Could Have Found Norton Willfully Blind*

Norton could not have been willfully blind to patents *that had not yet issued* when it developed and released SONAR/BASH in 2009. Dkt. 1277 at 12. As an initial matter, Norton does not have an official policy not to review patents. Mot. 17-18. But even if it did, this Court and others have routinely found that such a policy is insufficient to find willful blindness. *TecSec, Inc. v. Adobe Inc.*, C.A. No. 1:10-cv-00115, 2019 WL 1233882, at *1-3 (E.D. Va. Mar. 14, 2019) (JMOL of no willful infringement where defendant's "continued sale of the infringing product

8

without removing its infringing capability is merely typical infringement behavior that is not a proper basis for enhanced damages"); *see also VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-cv-00966, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (no willful blindness where the sole basis was a corporate policy forbidding employees "from reading patents held by outside companies or individuals"). Columbia did not even try to distinguish these cases.[4]  A policy not to review patents does not rise to the level of "deliberate action[] to avoid learning" of infringement, as required for willful blindness.[5]  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).

Nor did Mr. Laffoon testify to such a policy. *See* Opp. 15-16.  Mr. Laffoon simply stated—six years after Columbia filed its lawsuit—that Norton had not designed around the patents-in-suit. Opp. Ex. C (Laffoon Dep.) at 67:2-12, 67:18-20, 67:24, 69:6-18.  As explained in Norton's Motion at 17-18, Mr. Laffoon is not an attorney and does not analyze patents (like Drs. Stolfo and Keromytis); his failure to read the patents does not bear on whether Norton was willfully blind.

Columbia's argument that Norton offered no defense to willfulness at trial is also wrong. *See* Opp. 16.  As discussed above, *Columbia* must prove willfulness.  Norton need not *disprove* it. *See* Dkt. 1254 at 16-19.  When Columbia filed its complaint—the first time Columbia alleged infringement—Norton developed defenses that led to Columbia's stipulation to final judgment of non-infringement on all relevant allegations.  *See* Dkt. 147 at 4-5.  This was not presented to the jury because the Court excluded it on Columbia's motion.  *See* Dkt. 753-2 at 19-23.  At trial, as

---

[4] Columbia errs in relying on *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. 2019). Opp. 16.  The court in that case did not dismiss plaintiff's willful blindness claim based on allegations that defendant had a policy of not reviewing patents. *Id.* at 833-34.  The court reasoned that discovery would reveal "the nature, scope, and wording of that policy." *Id.*  Here, long after discovery closed, there is no evidence to support that Norton has such a policy (because it does not have one).

[5] Columbia surprisingly claims that Norton did not look at the Asserted Patents five years into this case. Opp. at 16.  By that time, Norton's defenses caused Columbia to lose 90%+ of its original claims.  *See* Dkt. 1277 at 3-5.

9

Columbia admits, Mr. Kane testified that Norton did not "get the idea for SONAR/BASH from Columbia University." Trial Tr. 1951:21-23; Opp. 16. Mr. Kane and Mr. Pereira, the architects of SONAR/BASH, also testified to its functionality including the several ways in which it differs from the limitations of the claims of the Asserted Patents. For example, Mr. Kane testified that programs do not execute or run in SONAR/BASH, function calls are not made in SONAR/BASH, and SONAR/BASH's "decision tree is not a combination of models." Trial Tr. 1941:22-1942:16, 2035:5-21, 2070:3-13, 1969:12-18; *see* Dkt. 1254 at 4-9. And Mr. Pereira testified that, while Columbia incorrectly asked him to "assume[] [Norton was] creating models of valids and malicious," SONAR/BASH does not actually work in this way. Ex. 2 at 250:7-22; Trial Tr. 2084:3-20. Mr. Pereira further testified that Norton takes good and bad information as training data and "spits out this single tree," which is the one and only model used in SONAR/BASH. Ex. 2 at 301:2-18; Trial Tr. 2222:14-2223:24 (Dr. Jaeger discussing Mr. Pereira's testimony). This testimony from those most responsible for SONAR/BASH is fundamentally incompatible with the requisite showing that Norton somehow knew it infringed—Norton has always firmly believed that it does not infringe because SONAR/BASH is critically different from the patent claims.

Columbia again resorts to the "totality of the evidence" to support its willful blindness position, this time relying on *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229 (Fed. Cir. 2017); *see* Opp. 14, 17. But *Georgetown Rail* is inapposite. In *Georgetown Rail*, the defendant was *aware* of the patent-in-suit *and* "believed that it was infringing the patent" prior to the challenged conduct. *Georgetown Rail*, 867 F.3d at 1245. Here, Norton never reviewed an issued patent for "application communities" technology before the release of SONAR/BASH because Columbia *did not have one*. Nor did Columbia provide its provisional application or technical details of any related technology. And when Columbia's '115 patent *did* issue in 2011,

10

long after Norton introduced SONAR/BASH, Columbia failed to allege that Norton infringed or copied for two years.  Dkt. 1277 at 9; *see* Ex. 5 at 1.

Indeed, Columbia has provided no evidence that Norton copied its patents or technology. *See* Opp. 17.  By the time Norton learned of the Asserted Patents, it had already released SONAR/BASH.  Trial Tr. 1433:17-22.  And Norton could not have copied the Asserted Patents after they issued, because the allegedly infringing technology did not change after initial release in 2009.  Trial Tr. 1071:3-9.  The law is clear that knowledge of a patent alone is not enough to sustain willful infringement.  *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000) (alleged infringer's knowledge of asserted patent, without more, is insufficient to support a conclusion of willfulness).

Incapable of providing sufficient evidence, Columbia misquotes the *Halo* standard to try to shore up the record.  Opp. 17.  But *Halo* cuts the other way.  The Supreme Court recognized that "culpability is generally measured *against the knowledge of the actor* at the time of the challenged conduct," here Norton's knowledge when it released SONAR/BASH in 2009.  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105-06 (2016) (emphasis added).  At that time, Norton had no knowledge of the technical details of the applications communities research, the '115 and '322 patent applications, or the Asserted Patents themselves (which had not yet issued).[6] *See* Dkt. 1277 at 10-18.  Columbia thus retreats to asking the Court to assume (without evidence) that its vague disclosure of the "application communities invention" is coextensive with the technology embodied in the asserted claims.[7]

---

[6] Columbia claims that Norton waived the ability to argue no willful infringement for "specific time intervals."  Opp. 18 n.22.  But Norton maintained throughout the entire litigation that it did not willfully infringe at *any* time.  Mot. 18-19.

[7] Columbia's argument that Norton's litigation defenses cannot negate knowledge of the patents is a red herring.  Opp. 17-18.  Rather, Norton's position is that Norton had no specific intent to

11

Instead of considering Norton's actions "at the time of the challenged conduct," Columbia argues that Norton failed to seek advice of counsel on four separate occasions. Opp. 17-18. None withstands scrutiny. Columbia says Norton should have sought counsel when it "learned of the patent-pending technology in 2005" and "launch[ed] the infringing product feature in 2009." *See id.* But Norton had no reason to seek counsel then because it did not copy Columbia's ideas and Columbia has provided no evidence otherwise. *See* Dkt. 1277 at 14-18. Moreover, there was no "infringing product feature in 2009" because the Asserted Patents did not issue until 2011 and 2013. Columbia also argues that Norton should have sought counsel when the parties "engaged in 2010-2011 licensing discussions," but these discussions occurred long before Columbia first alleged Norton of infringement. *See* Opp. 18; Dkt. 1277 at 8-9. Finally, Columbia argues that Norton should have sought counsel upon actual notice of the Asserted Patents. Opp. 18. Norton sought counsel as soon as it was accused of infringement in 2013—four years after the release of SONAR/BASH, two years after the '115 patent issued, and then again after post-suit notice of the '322 patent. *See* Trial Tr. 1433:17-22.

### 3.    *No Reasonable Jury Could Have Found Induced Or Contributory Infringement*

Norton had no specific intent to induce infringement because it had a good-faith belief post-filing that the '322 patent claims did not cover the use of SONAR/BASH. *See* Mot. 13-14. And Norton's defenses were deemed objectively reasonable by this Court, the Federal Circuit, and the PTAB. Dkt. 1277 at 3-6; *see Acantha LLC v. DePuy Synthes Sales Inc.*, 406 F. Supp. 3d 742, 760 (E.D. Wis. 2019) ("[I]t would be difficult to conjure up a defense which would be more 'reasonable' than one expressly adopted by a federal judge."); *see also Ecolab, Inc. v. FMC Corp.*,

_____

infringe, as reflected by Norton's pre-suit lack of intent and post-suit reasonable belief of non-infringement. Mot. 14; *see* Dkt. 1277 at 18-20; Opp. 18 n.21.

12

569 F.3d 1335, 1350-51 (Fed. Cir. 2009) (holding that a jury reasonably concluded that defendant lacked the requisite intent due to reasonable non-infringement arguments). In this context, SONAR/BASH's default on-position and manuals do not evince specific intent to encourage Norton's customers' infringement, but rather efforts to market a product that Norton believed in good-faith did not infringe.

Columbia's arguments regarding contributory infringement are similarly unavailing. Opp. 19. Dr. Bailey's unsupported remarks that "Norton hasn't been able to provide any [substantial non-infringing uses], and I can't," are insufficient to sustain the jury's finding. Trial Tr. at 1230:7-1231:5. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 24 (Fed. Cir. 2012) ("[G]eneral and conclusory testimony" by experts "is not enough to be even substantial evidence in support of a verdict."). Columbia cannot distinguish *Whitserve*, and makes no effort to do so.[8]

Moreover, Columbia is wrong about Norton's argument that SONAR/BASH is capable of substantial non-infringing uses because it can be shut off. *See* Mot. 15-16; Opp. 19 n.24. The non-SONAR/BASH detection layers of the accused products are not merely additional, trivial features. *See* Trial Tr. 1464:11-21. Rather, they are defining features of the accused products, directly related to the use of SONAR/BASH and the broader malware detection effort, giving credence to the substantial non-infringing use with SONAR/BASH turned off.[9] Trial Tr. 1473:3-14; *see Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327-28 (Fed. Cir. 2009) (finding a substantial non-infringing use when additional, separable features of the accused product interact

---

[8] Columbia's reliance on the *Monsanto* case is inapposite. *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007). In that case, the court relied on evidence beyond expert opinion, including evidence of Monsanto's licensing program and cost savings due to infringing activity. *Id.* at 980-81. Here, Columbia offers only Dr. Bailey's superficial conclusions. *See* Dkt. 1254 at 15-16.

[9] Columbia reliance on *Lucent* overlooks this aspect of the technology. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320-21 (Fed. Cir. 2009); *see* Opp. 19 n. 24.

13

with the accused feature). Moreover, more than 25% of Norton's enterprise customers use the accused products with SONAR/BASH deactivated, validating it as a viable and heavily used non-infringing alternative. Trial Tr. 1641:21-1642:5, 1235:15-1236:14; Mot. 15-16.

### C.    Columbia Failed To Provide Substantial Evidence To Support The Jury's Findings Regarding Damages For Infringement Of The Asserted Patents

#### 1.    *The Court Should Grant Norton's JMOL Motion Related To Customers Outside the U.S.*

The Court should enter judgment as a matter of law of no infringement and no damages for sales to customers outside the U.S. First, Columbia is not entitled to damages as a matter of law for sales to customers outside the U.S. Second, there is no evidence that accused products purchased or used by customers outside the U.S. were made in, or distributed from, the U.S. And, Norton has not had "*four[]* bite[s] at the apple" on this issue, but rather has maintained its positions and preserved its right to appeal. Opp. 2 (emphasis in original).[10]

#### a.    Columbia Is Not Entitled To Damages Based On "Domestic" Infringement

Columbia is wrong that *WesternGeco* overturned Federal Circuit precedent and replaced 35 U.S.C. § 271(a)'s prohibition of damages for non-U.S. sales, with a so-called "connection test."[11] Opp. 24-26; *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018). *WesternGeco* limited its "analysis to § 271(f)(2)," *id.* at 2137 n.2, and so "is of limited value to . . . infringement under § 271(a)." *Trading Techs. Int'l, Inc. v. IBG LLC*, C.A. No. 10-cv-00715, 2021

---

[10] Columbia incorrectly states Norton's JMOL motion is "an improper motion for reconsideration." Opp. 23. Norton must bring a JMOL motion to preserve its right for appeal. And unlike in prior stages, the Court now has the full record of evidence that Columbia alleges supports its damages claims.

[11] Columbia did not respond to Norton's argument that non-U.S. customer usage of the accused products does not infringe or substantially infringe within the U.S.—thus no damages should be awarded on those acts alone. *See* Mot. 20-22.

WL 5038754, at *2 (N.D. Ill. July 23, 2021).  Thus *Power Integrations*, *Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013), which made clear that patentees are not entitled to "damages based on loss of sales in foreign markets," *id.* at 1371-72, was not overturned. Indeed, *WesternGeco* referenced *Power Integrations*, but never reversed it.  138 S. Ct. at 2135.

Columbia points to Judge Stark's district court decision on remand in *Power Integrations* to support its argument.  Opp. 24.  But Judge Stark's view is not unanimous;[12] he acknowledged that "[t]here are substantial grounds the Federal Circuit could well disagree with" him on and he was "not follow[ing] a binding Court of Appeals precedent" before certifying his decision for interlocutory appeal.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-cv-01371, 2018 WL 4804685, at *2 (D. Del. Oct. 4, 2018).[13]

Even if Columbia were right on the law (it is not), its claimed damages lack the requisite connection to infringing acts in the U.S.  Mot. 22-25.  Domestic infringement causally tied to non-U.S. sales "is not enough to use the sales as a direct measure of the royalty" given "the ease of finding cross-border causal connections."  *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1305-8 (Fed. Cir. 2015) (infringing products that are "manufactured, sold, and used abroad" bear little relationship to infringement in the U.S.).

The relevant question is whether the allegedly infringing article, in this case the computer-readable medium, is made, used, sold, or offered for sale in the U.S.  *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 453 (2007).  Here, it is undisputed that Norton's customers outside of the U.S. buy and use foreign-made products, not products made in or distributed from the United

---

[12] *Brumfield, Tr. for Ascent Tr. v. IB LLC*, C.A. No. 10-cv-00715, 2022 WL 523128, at *8 (N.D. Ill. Feb. 22, 2022); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, C.A. No. 14-cv-03657, 2019 WL 2437073, at *3 (N.D. Cal. June 11, 2019).

[13] The parties settled before the Federal Circuit ruled on the appeal.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 2019-1246, Dkt 63 (Fed. Cir. Oct. 22, 2019).

States.  Mot. 22-23.  Columbia attempts to distinguish *Microsoft*, arguing that Norton's software directly infringes as it sits on U.S. servers and "as distributed from the United States to customers in foreign countries."  Opp. 22.  But there was no evidence of distribution from the U.S.  § II.C.1.b.

### b.     Columbia Produced Insufficient Evidence For Damages Based On Products Purchased Or Used By Non-U.S. Customers

Columbia points to only two claims to support damages for non-U.S. sales or use—claim 11 of the '322 patent and claim 2 of the '115 patent.  Opp. 25-30.  Neither do so.

As to claim 11 of the '322 patent (computer-readable medium claim), it is undisputed that customers outside the U.S. install foreign-made copies of software (Mot. 22-23); they do not install domestically made copies.[14]  *See* Opp. 26.  Rather, Columbia relies again on *WesternGeco* and simply points to sales of the accused products to non-U.S. customers.  Opp. 26-27.  First, *WesternGeco* is inapplicable here.  § II.C.1.a.  Second, non-U.S. sales and installation of foreign-made copies do not infringe and cannot be the basis for damages.  Mot. 22-23.

Columbia misconstrues Norton's golden disks argument.  Opp. 27-28.  Columbia may not collect damages for the golden disks made before the Asserted Patents issued as they, and copies thereof, are non-infringing.  Mot. 20-22; *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008).[15]  Norton never argued golden disks made after the patents issued are non-infringing solely based on when they were made.

As to claim 2 of the '115 patent (method claim), Columbia's expert Dr. Bailey admitted that customers outside the U.S. perform *all* method steps *in the foreign country*, which means there

---

[14] Ms. Brennan's testimony regarding "localized" versions of the accused products does not rebut that fact or validate Columbia's legally unsupported "connection" damages theory.  *See* Opp. 26.

[15] Norton did not waive this argument as Interrog. No. 8 dealt with technical infringement—not acts of infringement.  Columbia waived its argument when it failed to provide an infringement chart for golden disks in its response to Interrog. No. 11 before the '115 patent issued.

16

is insufficient evidence to support any infringement verdict, joint or otherwise.  Trial Tr. 1312:18-1313:8, 1314:1-8.  Columbia offers no response to Dr. Bailey's admission.  *See* Opp. 28-29.

Columbia contends "Norton develops, tests, and runs infringing software—for the benefit of customers globally—within the United States" and that those actions "strengthen the connection between domestic infringement and sales to OUS customers."  Opp. 27.  But that is not the test for infringement.[16]  In tacit recognition of its weak direct infringement argument, Columbia falls back to joint infringement.  Opp. 28.  Even assuming that all method steps are attributable to Norton for purposes of joint infringement, Columbia's joint infringement case fails as a matter of law because some method steps are performed outside of the U.S.  Opp. 28-29; *see, e.g.*, *Orthopaedic Hosp. v. Encore Med. L.P.*, C.A. No. 19-cv-00970, 2022 WL 254956, at *18 (S.D. Cal. Jan. 27, 2022); *Ormco Corp. v. Align Tech., Inc.*, 609 F. Supp. 2d 1057, 1068 (C.D. Cal. 2009).  Columbia confuses the single-entity requirement of 35 U.S.C. § 271(a) with its territorial limitations; *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) does not set out a rule that, when method steps performed by non-U.S. entities are attributable to a U.S. entity, the place of infringement becomes the U.S. as opposed to where the method steps took place.  Opp. 28-29.  Columbia cites no case law supporting its position and courts routinely find non-infringement due to territorial limitations of § 271(a), even post-*Akamai* and *WesternGeco*.  *Orthopaedic Hosp.*, 2022 WL 254956, at *18; *see also Ormco*, 609 F. Supp. 2d at 1068.[17]

### 2.   *There Was Insufficient Evidence To Support The Jury's $185 Million Reasonable Royalty Award*

---

[16] Columbia also did not tailor damages to the allegedly infringing internal use.  Mot. 24.

[17] Columbia argues that JMOL is not appropriate because Norton's arguments concern only a portion of the jury award and so go to remittitur instead.  Opp. 30.  This is also wrong.  Norton asked the Court to overturn the damages attributed to non-U.S. sales (Mot. 19) and all damages (Mot. 25).

The Court should enter judgment as a matter of law of no damages for the alleged infringement. Columbia failed to present legally sufficient evidence to supports its damages claim.

As previously briefed, Columbia's damages claim rested on Dr. Cole's apportionment analysis that was rife with internal inconsistencies and did not stand up under scrutiny. Mot. 17-19. Columbia attempts to explain Dr. Cole's inconsistent 2014 and 2019 opinions as the jury making a credibility determination. Opp. 20-21. Contrary to a credibility determination, Dr. Cole's opinions show a lack of sound methodology and contradictory outcomes based solely on Columbia's lawyers' instructions, not his independent judgment. This expert "evidence" cannot be a basis to uphold a jury verdict. *See Automatic Equip. Mfg. Co. v. Danko Mfg., LLC*, C.A. No. 19-cv-00162, 2022 WL 283063, at *14 (D. Neb. Jan. 31, 2022). Neither case Columbia cites denies a JMOL motion on these grounds.[18]

Columbia tries to dismiss Dr. Cole's incorrect foundational assumptions as "not play[ing] a material role in Dr. Cole's analysis or jury presentation." Opp. 21. Not so. These assumptions were critical linchpins of Dr. Cole's analysis that Norton successfully debunked—the patented technology was "widely adopted," Trial Tr. at 1553:7-1557:25, and served as a product differentiator from 2009-2015, *id.* at 1571:15-1576:8. One line in a presentation and a *post hoc*, lawyer-created rationale of a "difference in framing," Opp. 21, do not fix these demonstrably incorrect assumptions. *See Concordia Pharms., Inc. v. Method Pharms., LLC*, C.A. No. 14-cv-00016, 2016 WL 1464639, at *7 (W.D. Va. Apr. 13, 2016).

Columbia similarly downplays Dr. Cole's admission that his apportionment analysis was qualitative, not quantitative. Opp. 21-22. Columbia misses the mark for three reasons. First, the

---

[18] *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F. 3d 1283, 1294-99 (Fed. Cir. 2015) related to denial of a JMOL motion to exclude testimony. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 (Fed. Cir. 2015) related to the jury crediting one expert over another.

Court did not previously reject Norton's argument as Columbia alleges.[19]  Opp. 21.  Second, while mathematical exactness is not required, damages cannot be based on speculation or guesswork, or economically unsound or unreliable expert testimony.  Mot. 26; *see also Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1351 (Fed. Cir. 2018).  Third, Columbia mischaracterizes Norton's argument regarding SONAR/BASH only accounting for 1% of the blocks performed by the accused products.  Norton never insinuated that the 1% was the "commercial value" of SONAR/BASH.  Mot. 27.  Rather, the only quantitative numbers in evidence, including the 1% of blocks, were not close to Dr. Cole's qualitative apportionment values.  *Id.*  Columbia attempts to backfill Dr. Cole's analysis by pointing to documents regarding the last "1%" from a 2019 general marketing document, Ex. 7 (PX-288) (no connection to blocks by the accused functionality of SONAR/BASH), or the "90% of detections that matter," Ex. 8 (PX-511).  However, Columbia does not link these documents to Dr. Cole's opinions.

Columbia points to information that supposedly provides "rationale" for "Dr. Cole's say-so."  Opp. 22.  But it does not.  None of the "22 exhibits and . . . deposition testimony of Norton employees," *id.*, corroborates Dr. Cole's "qualitative" analysis based on his short stint at McAfee from 2009-10.  Trial Tr. at 1631:8-1634:12.  For example, Dr. Cole did not cite a single Norton document or deposition that supported his proposition that Norton "price discriminat[ed]"; he only cited his brief McAfee experience.  Trial Tr. at 1632:6-23.  Dr. Cole's apportionment analysis, and thus resulting opinion, is speculative, economically unsound, and unreliable.[20]

---

[19] At the *Daubert* stage, Norton challenged Dr. Cole's opinions for not accounting for non-infringing functionality when determining SONAR/BASH's value from the patented technology. Dkt. 737 at 17.

[20] Columbia's responses to Dr. Cole failing to take into account the 25% of enterprise customers that either disabled or did not install SONAR/BASH are unpersuasive.  Opp. 22 n.27.  First, Columbia's cases are inapposite.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010) dealt only with direct infringement, unlike here where there is direct, induced,

Columbia then wrongly claims that even without Dr. Cole's testimony, there is substantial evidence to support the jury's 1% royalty based on a single document—PX-83. *See* Ex. 9 (PX-83); Opp. at 22-23. But PX-83 has no connection to the facts of the case. It is from 2005—years before the Asserted Patents issued—and does not reference a pending application. Ex. 9 at 1; Ex. 1 at 3; Ex. 4 at 3; Trial Tr. at 623:17-626:2, 626:22-627:2, 628:11-14. Ex. 9 instead references intellectual property broadly as "Application Communities" and has no reference to a claim that requires executing a program in an emulator, performing function calls in an emulator, or a combined model. Trial Tr. at 628:15-25, 630:9-21; Ex. 9 at 8. Mr. Witten floated a royalty rate between 0.25-0.5% related to the technology generally—below the jury's 1% royalty for four claims in two patents.[21] Ex. 9 at 2-3. Any potential license capped royalties at $50 million for Columbia's entire portfolio, less than a third of the $185 million verdict for only two patents. Ex. 9 at 3. Columbia errs in citing to *Commonwealth Sci. & Indus. Rsch. Org.* v. *Cisco Sys., Inc.*, 809 F.3d 1295 (Fed. Cir. 2015). Opp. 23. There the district court used an informal suggestion of a possible royalty for the *patent-at-issue*—not for a broad technology area with no patents. 809 F.3d at 1303.

## III. CONCLUSION

For the foregoing reasons, Norton respectfully requests that the Court grant Norton's Motion for Judgment as a Matter of Law.

---

and contributory infringement. *Lucent Techs.*, 580 F.3d at 1334 considered a correlation between damages and customers' use of the method. Second, Dr. Cole's failure to take into account one of the two quantitative metrics in evidence establishes the unreliability of his opinions. *See* Mot. 27; *Smithers v. C & G Custom Module Hauling*, 172 F. Supp. 2d 765, 771 (E.D. Va. 2000).

[21] Norton was clear that a 1% royalty "per institution" was too high because the potential license was (1) non-exclusive, and (2) did not include the "full-suite of complimentary [sic] technologies," some of which were sold off to other companies like IBM. Ex. 9 at 1-2.

20

July 22, 2022                                    NORTONLIFELOCK INC.


                                                 By:    */s/*
                                                        Of Counsel


Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
Laura Anne Kuykendall, VSB #82318
TROUTMAN PEPPER
HAMILTON SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutman.com
robert.angle@troutman.com
la.kuykendall@troutman.com

Douglas E. Lumish (*pro hac vice*)
Srinivas Pathmanaban (*pro hac vice*)
Ryan T. Banks (*pro hac vice*)
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone:  650.463.4600
doug.lumish@lw.com
giri.pathmanaban@lw.com
ryan.banks@lw.com

David Callahan (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Ave., Ste. 2800
Chicago, IL 60611
Telephone: 312.876.7700
david.callahan@lw.com

Michael Morin (*pro hac vice*)
Susan Yates Tull (*pro hac vice*)
Richard A. Lowry (*pro hac vice*)
Benjamin J. Behrendt (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Ste. 1000
Washington, DC 20004
Telephone:  202.637.2200

21

michael.morin@lw.com
susan.tull@lw.com
richard.lowry@lw.com
benjamin.behrendt@lw.com

*Counsel for Defendant NortonLifeLock Inc.*