**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>              *Plaintiff*,<br><br>       v.<br><br>NORTONLIFELOCK INC.,<br><br>              *Defendant*. | Civil Action No. 3:13-cv-00808-MHL |

**REPLY REGARDING COLUMBIA'S MOTION FOR**
**ATTORNEYS' FEES UNDER 35 U.S.C. § 285**

# TABLE OF CONTENTS

*Page*

I.    NORTON'S ATTEMPTS TO DECLARE VICTORY AND DEFEND ITS
EXCEPTIONALLY WEAK LITIGATION POSITIONS FAIL ...................................... 1

    A.    2013-2018 Period................................................................................................ 2

    B.    Post-August 2018 Period .................................................................................. 5

          1.    Columbia Was the Unambiguous Prevailing
Party Post-August 2018 ........................................................................ 5

          2.    Norton Had Run Out of Legitimate Defenses by August 2018 and
Pursued Exceptionally Weak Arguments from 2018 through Trial .......... 7

II.    NORTON'S LITIGATION CONDUCT SINCE AUGUST 2018 WAS
CONSISTENTLY EGREGIOUS AND PERMEATED THE PROCEEDINGS .............. 9

    A.    Norton's Opposition Ignores Misconduct It Cannot Explain
Away and the Responses It Does Provide Are Superficial.................................. 10

    B.    Norton Was Not Sanctioned for Its Conduct Regarding Dr. Dacier.................... 15

III.    THE JURY'S WILLFUL INFRINGEMENT FINDING IS AN
INDEPENDENTLY SUFFICIENT BASIS FOR AN AWARD OF
ATTORNEYS' FEES UNDER § 285 .............................................................................. 16

IV.    THE COURT SHOULD AWARD COLUMBIA ALL OF ITS REASONABLE
ATTORNEYS' FEES FOR THE POST-AUGUST 2018 PERIOD................................ 18

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Arthrex, Inc.* v. *Smith & Nephew, Inc.*,
   2017 WL 365239 (E.D. Tex. Jan. 25, 2017) ........................................................17

*Asghari-Kamrani* v. *United Servs. Auto. Ass'n*,
   2017 WL 4418424 (E.D. Va. July 27, 2017) ..........................................................4

*Barry* v. *Medtronic, Inc.*,
   250 F. Supp. 3d 107 (E.D. Tex. 2017) ...................................................................17

*Beckman Insts., Inc.* v. *LKB Produkter AB*,
   892 F.2d 1547 (Fed. Cir. 1989) ................................................................4, 18, 19

*Briese Lichttenchnik Vertriebs Gmbh* v. *Langton*,
   2013 WL 12061874 (S.D.N.Y. Dec. 18, 2013) ........................................................9

*Chicago Bd. Options Exch., Inc.* v. *Sec. Exch., LLC*,
   2014 WL 6978644 (N.D. Ill. Dec. 10, 2014) ...........................................................8

*Deckers Outdoor Corp.* v. *Australian Leather Pty. Ltd.*,
   2020 WL 4723980 (N.D. Ill. July 13, 2020) .....................................................16, 18

*Drop Stop LLC* v. *Zhu*,
   2018 WL 1407031 (C.D. Cal. Jan. 22, 2018) ........................................................18

*Drop Stop LLC* v. *Zhu*,
   757 F. App'x 994 (Fed. Cir. 2019) ....................................................................10, 19

*EagleView Techs., Inc.* v. *Xactware Sols., Inc.*,
   522 F. Supp. 3d 40 (D.N.J. 2021) ..........................................................................16

*Ethox Chemical, LLC* v. *Coca-Cola Co.*,
   2016 WL 7053351 (D.S.C. Feb. 29, 2016) ..............................................................5

*Ford Glob. Techs., LLC* v. *New World Int'l, Inc.*,
   2019 WL 1531759 (N.D. Tex. Apr. 9, 2019) ..........................................................16

*Gen. Protecht Grp., Inc.* v. *Leviton Mfg. Co.*,
   122 F. Supp. 3d 1114 (D.N.M. 2015) .....................................................................20

*Genes Indus., Inc.* v. *Custom Blinds & Components, Inc.*,
   2018 WL 11354574 (C.D. Cal. Jan. 29, 2018) .......................................................16

*Georgetown Rail Equip. Co.* v. *Holland L.P.*,
   2016 WL 3346084 (E.D. Tex. June 16, 2016) ................................................12, 16

*Homeland Housewares, LLC* v. *Sorensen Rsch.*,
   581 F. App'x 877 (Fed. Cir. 2014) .......................................................18

*Hunter Douglas Inc.* v. *Great Lake Woods, Inc.*,
   2019 WL 1375675 (D. Colo. Mar. 27, 2019) .......................................19

*Idenix Pharms. LLC* v. *Gilead Scis., Inc.*,
   271 F. Supp. 3d 694 (D. Del. 2017) ....................................................17

*Imperium IP Holdings (Cayman), Ltd.* v. *Samsung Elecs. Co.*,
   2018 WL 1602460 (E.D. Tex. Apr. 3, 2018) ..................................19, 20

*Integrated Tech. Corp.* v. *Rudolph Techs. Inc.*,
   2016 WL 7674701 (D. Ariz. Oct. 4, 2016) ..........................................19

*Izzo Golf Inc.* v. *King Par Golf Inc.*,
   2019 WL 4023562 (W.D.N.Y. Aug. 27, 2019) .....................................16

*Large Audience Display Systems, LLC* v. *Tennman Prods., LLC*,
   745 F. App'x 153 (Fed. Cir. 2018) .......................................................18

*Litecubes, L.L.C.* v. *N. Light Prods., Inc.*,
   2006 WL 5700252 (E.D. Mo. Aug. 25, 2006) ......................................18

*Mali* v. *Fed. Ins. Co.*,
   720 F.3d 387 (2d Cir. 2013) ................................................................15

*Mass Engineered Design, Inc.* v. *Ergotron, Inc.*,
   633 F. Supp. 2d 361 (E.D. Tex. 2009) .................................................16

*Monolithic Power Sys., Inc.* v. *O2 Micro Int'l Ltd.*,
   726 F.3d 1359 (Fed. Cir. 2013) ......................................................18, 19

*In re Omeprazole Pat. Litig.*,
   483 F.3d 1364 (Fed. Cir. 2007) ............................................................4

*Power Integrations, Inc.* v. *Fairchild Semiconductor Int'l, Inc.*,
   2019 WL 3290369 (D. Del. July 22, 2019) ..........................................17

*Progressive Int'l Corp.* v. *AMGTM LLC*,
   2018 WL 4091694 (W.D. Wash. Aug. 21, 2018) ..................................16

*Schwendimann* v. *Arkwright Advanced Coating, Inc.*,
   2018 WL 1041038 (D. Minn. Feb. 23, 2018) .......................................17

*Siemens Mobility, Inc.* v. *Westinghouse Air Brake Techs. Corp.*,
    2019 WL 3240521 (D. Del. July 18, 2019) .............................................................17

*SiOnyx, LLC* v. *Hamamatsu Photonics K.K.*,
    2019 WL 11307114 (D. Mass. July 25, 2019) ..........................................................17

*Spectrum Lab'ys, LLC* v. *Dr. Greens, Inc.*,
    2019 WL 13179080 (S.D. Cal. Nov. 18, 2019) ........................................................16

*SRI Int'l, Inc.* v. *Cisco Sys., Inc.*,
    14 F.4th 1323 (Fed. Cir. 2021) ................................................................................19

*SSL Servs., LLC* v. *Citrix Sys., Inc.*,
    769 F.3d 1073 (Fed. Cir. 2014) ............................................................................4, 7

*Stryker Corp.* v. *Zimmer, Inc.*,
    2017 WL 4286412 (W.D. Mich. July 12, 2017) .......................................................16

*Tannas* v. *Multichip Display, Inc.*,
    2018 WL 1033219 (C.D. Cal. Feb. 21, 2018) .....................................................17, 19

*Tinnus Enters. LLC* v. *Telebrands Corp.*,
    369 F. Supp. 3d 704 (E.D. Tex. 2019) ....................................................................16

*Veracode, Inc.* v. *Appthority, Inc.*,
    137 F. Supp. 3d 17 (D. Mass. 2015) .........................................................................4

*VirnetX Inc.* v. *Apple Inc.*,
    324 F. Supp. 3d 836 (E.D. Tex. 2017) ....................................................................16

*WCM Indus., Inc.* v. *IPS Corp.*,
    2:13-cv-02019-JPM-tmp (W.D. Tex. Aug. 26, 2016) .............................................17

**Statutes**

35 U.S.C. § 285...................................................................................................... *passim*

Columbia's § 285 motion requested attorneys' fees for the post-2018 period of this litigation, during which the only litigated issues were Norton's infringement of the '115 and '322 Patents and Columbia's claims relating to the '643 Patent. Yet Norton "opposes" a motion Columbia never made, spending nearly all of its brief claiming that Columbia is not entitled to attorneys' fees for the 2013-2018 period of this case. Norton wasted its brief on a diversion—declaring itself the "winner" notwithstanding the jury's contrary verdict—and Norton failed to rebut the facts and arguments at the foundation of Columbia's motion: (i) Columbia indisputably was the prevailing party with respect to the post-August 2018 period for which it requests fees; and (ii) Norton's weak arguments and scorched-earth tactics—to delay and obstruct resolution of this case—permeated these proceedings since August 2018.

Norton's pervasive misconduct, especially in combination with the jury's willful infringement finding, makes this a case that stands out from others—*i.e.*, an exceptional case. Thus, Columbia respectfully requests that the Court award Columbia its reasonable attorneys' fees for the period after August 7, 2018, when the case was restored to the active docket. Doing so will further the compensatory and deterrence functions that Congress intended in enacting § 285, as shown in Columbia's opening brief and this Reply.

## I.    NORTON'S ATTEMPTS TO DECLARE VICTORY AND DEFEND ITS EXCEPTIONALLY WEAK LITIGATION POSITIONS FAIL.

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Although Norton does not sharpen its argument to a point, Norton seems to argue in opposition that (i) Columbia is not the prevailing party in this case, and (ii) this case is not exceptional because Norton's patent infringement defenses were strong. Below, Columbia explains why it is the prevailing party—whether looking at the entire history of the litigation (2013-2022) or the post-August 2018 period only—and then explains why Norton's

defenses in the post-August 2018 period were extremely weak and make this case exceptional (as do other factors).

### A.    2013-2018 Period

A brief review of the case history shows that Norton's focus on the 2013-2018 period in its opposition is misplaced.  In December 2013, Columbia asserted three patent families in this litigation:  (i) the '115 and '322 Patents that comprise the "application communities" family; (ii) the '544 and '907 patents; and (iii) the '084 and '306 patents.[1]  (Dkt. 12 ¶¶ 17-22.)  Each patent family pertained to very different technologies and each was asserted against very different features of Norton's products.  In October 2014, the Court adopted certain claim constructions that rendered Columbia's infringement theories challenging.  (Dkt. 123.)  Rather than litigating weak arguments—in stark contrast to Norton's litigation choices—Columbia stipulated to judgment in order to appeal, and this case was closed.  (Dkts. 147, 152, 178.)

In 2016, the Federal Circuit affirmed with respect to the 2014 Patents, but reversed and remanded with respect to the "application communities" patents (the '115 and '322 Patents).  (Dkt. 164 at 2.)  The proceedings before this Court remained stayed, however, because Norton petitioned to have the '115 and '322 Patents invalidated through *inter partes* review ("IPR") before the Patent Trial and Appeal Board ("PTAB").  (Dkt. 158.)  As with its claim construction position before the Federal Circuit with respect to these patents, Norton's IPR was ***unsuccessful***.  Although the PTAB cancelled some of the claims, it concluded that Norton could not show that many of the '115 and '322 Patent's claims were invalid, and the Federal Circuit affirmed in 2018.  (*See* Dkt. 251 at 8-9.)

When Norton returned to this Court in 2018, it did so empty handed.  Norton had (i) lost all claim construction arguments with respect to the '115 and '322 Patents (before this Court and

---

[1] The term "2014 Patents" refers to the '544, '907, '084 and '306 patents.

the Federal Circuit), and (ii) failed to invalidate the asserted claims of the '115 and '322 Patents (before the PTAB and Federal Circuit), and thus, per 35 U.S.C § 315(e)(2), was estopped from challenging their validity based on prior art (*see* Dkt. 251). Norton nevertheless refused to consider a reasonable resolution, and instead embarked on a four-year scorched-earth litigation campaign in an attempt to avoid paying a reasonable royalty for its willful infringement.

Because of the jury's willfulness finding, the applicable law would support an award of ***all*** of Columbia's attorneys' fees for the entirety of this litigation (2013-2022). (*See infra* at 19-20.) But Columbia moved only with respect to its clearest and strongest arguments—again, in stark contrast to Norton's approach throughout this litigation—and requested fees incurred only after August 2018, the period during which Norton's defenses were exceptionally weak and its litigation conduct was truly egregious. (Dkt. 1259 ("Br.") at 2, 21-22.) Despite Columbia's restraint, Norton's opposition puzzlingly focuses on the 2013-2018 period, and Norton declares that during that period it "defeated claims to 149 out of Columbia's original 167 patent claims." (Dkt. 1271 ("Opp.") at 5.) Thus, Norton argues, "[f]or the first five years of this case, it cannot be said that Columbia 'prevailed.'" (*Id.* at 10.) This argument—Norton's main argument—is entirely irrelevant for at least two independent reasons.

*First*, Norton's main argument has nothing to do with the relief Columbia requested (*i.e.*, fees for the post-August 2018 period). Columbia did not request fees for the period during which the parties litigated the 2014 Patents and invalidity in IPR—a period during which each party won and lost issues—and thus the 2013-2018 period is simply not relevant. Any debate about whether Columbia was the "prevailing party"—a legal concept with particular meaning, as explained below—during the period before 2018 is academic and immaterial to Columbia's motion.

*Second*, in any event, an entirely hypothetical request for fees over the entirety of the case (2013-2022) should be resolved in Columbia's favor because the jury's verdict made Columbia the prevailing party under the law. "Determination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation, and not on a count of the number of claims and defenses." *Asghari-Kamrani* v. *United Servs. Auto. Ass'n*, 2017 WL 4418424, at *2 (E.D. Va. July 27, 2017), *aff'd*, 737 F. App'x 540 (Fed. Cir. 2018). Indeed, the Federal Circuit has vacated a district court's finding (similar to Norton's claim here) that a patentee was not the prevailing party when it prevailed on ***one*** of the asserted patents because "[a] party does not need to prevail on all claims to qualify as the prevailing party." *SSL Servs., LLC* v. *Citrix Sys., Inc*., 769 F.3d 1073, 1086-87 (Fed. Cir. 2014).[2] A party prevails if it (i) "received at least some relief on the merits," and (ii) the relief "materially alter[s] the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." *Id.* at 1086.

Applying the requisite standard, the jury's verdict made Columbia the prevailing party for the entirety of this case.[3] The jury awarded Columbia $185 million for Norton's willful infringement and, based on the jury's verdict, Norton stipulated to an ongoing running royalty (Dkt. 1247 ¶ 5). That by itself made Columbia the prevailing party. *See SSL Servs.*, 769 F.3d at 1087 ("judgment for damages" sufficient). With regard to the '643 Patent, Columbia prevailed on its claim that Professors Stolfo and Keromytis were inventors (Dkt. 1206 at 5-6), and Norton stipulated to entry of an order directing the U.S. PTO to amend inventorship (Dkt. 1247 at 4). This

---

[2] *See also In re Omeprazole Pat. Litig*., 483 F.3d 1364, 1376 (Fed. Cir. 2007); *Veracode, Inc.* v. *Appthority, Inc*., 137 F. Supp. 3d 17, 100 (D. Mass. 2015).

[3] Norton's reliance on *Beckman Insts., Inc.* v. *LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989) (Opp. at 9-10) is misplaced. In that 1989 case, the court noted that it had "very little assistance [from] the case law, since very few cases ha[d] involved an award of attorney fees after a 'split' jury verdict." *Id*. The law developed in the subsequent 30 years, and the prevailing party standard—in the context of infringement verdicts—is now well-defined, as explained above.

also made Columbia the prevailing party in this litigation because it gave Columbia rights "which [it] did not have prior to judgment, to exploit all of the rights embodied in the ['643] Patent . . . and [Norton] lost the exclusive right to exclude others from practicing the ['643] Patent." *Ethox Chem., LLC* v. *Coca-Cola Co.*, 2016 WL 7053351, at *2-3 (D.S.C. Feb. 29, 2016) (plaintiff was prevailing party where it succeeded on inventorship, but not on state law claims, including fraud).

In short, Norton's main argument—focusing on the 2013-2018 period—is irrelevant to Columbia's request for fees for the post-August 2018 period. But even if the entire history of this litigation were relevant, Columbia is the prevailing party because of the jury's verdict.

### B.    Post-August 2018 Period

#### 1.    Columbia Was the Unambiguous Prevailing Party Post-August 2018.

As stated above, Columbia's § 285 motion requested attorneys' fees only for the period after August 7, 2018. With respect to the extent of Columbia's success during that period, Norton is once again an unreliable narrator of history. (*See* Col. Reply in Supp. § 284 Mot. at 3-7, 15-16.) The jury found in favor of Columbia on every issue relating to the '115 and '322 Patents (answering more than a dozen questions in Columbia's favor), and awarded nine-figure damages.[4] The result was not "mixed" and the case was not "close," contrary to Norton's suggestion (Opp. at 9-10).[5] Columbia also achieved substantial success on its claims relating to the '643 Patent—

---

[4] Norton's suggestion that Columbia dropped most of its claims on the eve of trial (Opp. at 15) is inaccurate. Columbia made certain decisions to streamline and simplify the trial, but the case Columbia had when it returned to this Court in 2018 is substantially what it presented to the jury: (i) Norton's willful infringement of the '115 and '322 Patents; and (ii) inventorship and state law claims relating to the '643 Patent. Columbia indisputably was the prevailing party during this chapter.

[5] As Columbia previously explained, (i) Norton's non-infringement theories were paper thin, and many were excluded from or vanished during trial; (ii) Norton's damages theory was similarly baseless and, after the Court excluded portions of it, Norton elected to drop what remained at trial, instead pursuing a surprise near-zero damages theory based on a lay witness's "guess;" and (iii) Norton presented no defense to willful infringement. (*See* Br. at 12-13, 16-20, 24-29.)

which were motivated by Norton's failure to name Professors Stolfo and Keromytis as inventors. Columbia unambiguously was the prevailing party during the post-August 2018 period, and the jury's infringement verdict was a landslide win.

In opposition, Norton argues that Columbia did not prevail because—according to Norton—the jury's verdict was "split" in two respects:  (i) it "decreas[ed] the damages award by approximately 20% from what Columbia sought;" and (ii) it found "for Columbia on some issues and for Norton on others."  (Opp. at 10.)  Norton's attempted spin fails.  *First*, on infringement, the jury did not find "for Columbia on some issues and for Norton on others" (*id.*), the jury found for Columbia on every issue.  Similarly, the jury's nine-figure damages award was not a "mixed" result.  Columbia asked the jury to award a reasonable royalty, and the jury's award was fully in line with Columbia's request even if not identical down to the decimal (*i.e.*, 1% versus 1.23%). By contrast, Norton asked the jury to award no damages and pleaded that any infringement was not willful.  The jury thoroughly rejected those positions, and awarded more than 12,300% of the $1.5 million that Norton advocated throughout this case was the maximum damages (*see* Ex. R, Hosfield Rep. at 77)—hardly a victory for Norton—and found that Norton had willfully infringed for a decade.

*Second*, Columbia claimed that Professors Stolfo and Keromytis should have been named as inventors of the '643 Patent, and the jury agreed with Columbia that the evidence clearly and convincingly supported that claim.  (Dkt. 1206 at 6.)  Although the jury found that Columbia could not prove its fraud or sole inventorship claims by clear and convincing evidence, that outcome was aided—if not determined—by Norton's misconduct that rendered Dr. Dacier unavailable. Dr. Dacier would have supported Columbia's effort to prove Norton's state of mind through evidence of, *e.g.*, what occurred behind closed doors as Dr. Dacier sought to "stop" Norton's fraud.

(*See* Ex. S ("Trial Tr.") 618:1-10, 829:19-832:17.)  Norton's touting as a "victory" the result it accomplished by misleading a witness who wanted to "help the judicial process" (Dkt. 1084-1 at 3) is exceptional and further supports Columbia's motions.

In short, Norton is wrong to characterize the outcome of this case as "mixed," but it also bears repeating that "[a] party does not need to prevail on all claims to qualify as the prevailing party." *SSL Servs.*, 769 F.3d at 1086.  Under the applicable standard, the jury's verdict made Columbia the prevailing party no matter how Norton spins the outcome.

2.    Norton Had Run Out of Legitimate Defenses by August 2018 and Pursued Exceptionally Weak Arguments from 2018 through Trial.

When this case resumed in August 2018, Norton had lost before this Court and the Federal Circuit every claim construction issue for the '115 and '322 Patents and had lost before the PTAB every prior art invalidity argument for the asserted claims.  Norton's decision to continue litigating this case in 2018 with every conceivable argument (regardless of merit or support) is indefensible and the arguments and defenses that Norton pursued from August 2018 through trial were not only exceptionally weak, but in some cases sanctionable.  Norton tries to defend its decision to plow forward, arguing that "the issues litigated after the case returned to this Court were far closer than Columbia suggests" (Opp. at 10), and tries to support that contention with two meritless arguments.

*First*, Norton argues that its infringement defenses must have been reasonable because Columbia did not file a motion for summary judgment.  (*Id.*)  But that conclusion does not logically follow from the premise.  Before trial, Norton had a laundry list of non-infringement defenses but, exercising judgment and restraint, Columbia did not believe it would be productive or an efficient use of resources to ask the Court to grant summary judgment on Norton's kitchen sink defenses. Without providing advance notice to Columbia, Norton dropped all but three of its non-infringement defenses at trial (Br. at 16-19), and Norton's case ended up being even weaker than

Columbia initially believed.  Had Columbia known at the summary judgment stage (in 2020) that Norton would drop most of its non-infringement defenses and assert only three meritless defenses at trial, Columbia's analysis of the productiveness of summary judgment would have been different.  This is particularly so because the "defenses" Norton elected to pursue at trial were undermined by Norton's own expert, documents, and 30(b)(6) testimony.  (*See*, *e.g.*, Trial Tr. 2063:16-2066:18, 2131:23-2132:10, 2198:13-2199:2, 2215:10-2217:23; Ex. M, JX0004 (Pereira) 251:19-21, 251:24-25, 252:14-19, 252:23-24; Ex. N, PX0236 at 003; Ex. T, PX-1002.)  Nothing can be inferred about the strength of Norton's trial defenses merely because Columbia did not seek summary judgment when the playing field looked very different.[6]

Norton's argument also glosses over important litigation history regarding the asserted patents—a history that fully supports an award of fees.  Although Columbia did not seek summary judgment of infringement, the parties engaged in extensive pre-trial motion practice, and Columbia prevailed on every motion and argument regarding the '115 and '322 Patents.[7]  Indeed, as to the patent claims asserted since August 2018, Norton has not prevailed on a single argument throughout the entire history of this litigation—not before the Federal Circuit, this Court, or the PTAB.  That is not the track record of a party with strong arguments and defenses.

*Second*, Norton argues that its defenses must have been reasonable because the jury deliberated for three days and the Court gave an *Allen* charge.  (Opp. at 10.)  But this is another

---

[6] In any event, requesting summary judgment is not a prerequisite to an award of fees.  *See Chicago Bd. Options Exch., Inc.* v. *Sec. Exch., LLC*, 2014 WL 6978644, at *6 (N.D. Ill. Dec. 10, 2014).

[7] Columbia prevailed on, *inter alia*, (i) every claim construction dispute (Dkts. 123, 164 306, 713), (ii) Columbia's summary judgment motion on IPR estoppel (Dkt. 251), (iii) Norton's motion for judgment on the pleadings concerning Section 101 invalidity (Dkt. 288), (iv) Norton's motion for summary judgment on prosecution history estoppel (Dkt. 686), (v) Columbia's motion to exclude Dr. Jaeger's testimony that was inconsistent with the Court's constructions (Dkt. 717 at 9-12, 16-19), (vi) the Bailey *Daubert* motion (Dkt. 703), (vii) all of Columbia's MILs (Dkts. 891, 899, 900, 902-907, 911-913), and (viii) Norton's MILs relating to willful infringement (Dkt. 915).

instance of the conclusion not logically following from the premise.  The jury indicated that it reached a temporary impasse "regarding *one* of the questions on the verdict form."  (Dkt. 1204-1 (emphasis added).)  Nothing about that note suggests that the jury had difficulty reaching a unanimous verdict in favor of Columbia on more than a dozen questions related to patent infringement.  And to the extent reading tea leaves is appropriate, the most reasonable inference is that the jury was stuck on the question of fraud, which was the only issue for which there was a single question on the verdict form.  Given the inventorship and fraud claims, it is neither reasonable nor appropriate to draw inferences about the strength of Norton's non-infringement defenses from the jury's deliberations.  *See Briese Lichttenchnik Vertriebs Gmbh* v. *Langton*, 2013 WL 12061874, at *6 (S.D.N.Y. Dec. 18, 2013) (declining to "speculate" where juror deadlock could be attributed to claims other than infringement), *aff'd*, 589 F. App'x 536 (Fed. Cir. 2015).

Finally, with respect to Norton's exceptionally weak arguments and defenses during the post-August 2018 period, Norton attempts to distinguish the cases that Columbia cited by arguing that Norton did not "ignore[] the weaknesses of [it's] own positions," "advance[] unreasonable arguments," or file "numerous unmeritorious motions."  (Opp. at 11.)  But that simply ignores reality:  in its opening brief, Columbia detailed all of the ways in which Norton ignored the weakness of its positions and made unreasonable arguments and motions (Br. at 22-30).  In opposition, Norton does not explain why the conduct Columbia identified is distinguishable from similar conduct in precedent cases awarding fees.  As in those cases, an award of fees is warranted here because of Norton's exceptionally weak litigating positions after this case resumed in 2018.

## II.  NORTON'S LITIGATION CONDUCT SINCE AUGUST 2018 WAS CONSISTENTLY EGREGIOUS AND PERMEATED THE PROCEEDINGS.

As explained in Columbia's opening brief (Br. at 7-16), Norton's litigation misconduct permeated every aspect of this case since August 2018.  In its opposition (Opp. at 16, 21-22),

Norton focuses on its misconduct with respect to an important trial witness—Dr. Dacier—but that is only an extreme example of misconduct and not the full extent of it. **Appendix A** to this reply brief provides a timeline of certain aspects of Norton's misconduct, and it is a five-page document because Norton's repeated misconduct pervaded the timeline from August 2018 through trial.[8] Of course, each instance of misconduct is not equally egregious, but the legally relevant question is whether the totality of Norton's misconduct makes this case exceptional, even if one assumes the "individual acts of misconduct might not make [Norton's] conduct look exceptional." *Drop Stop LLC* v. *Zhu*, 757 F. App'x 994, 999 (Fed. Cir. 2019) (quotation marks omitted). The answer is "yes," and there also are individual acts of misconduct (*e.g.*, regarding Dr. Dacier) that alone make this case exceptional.

A.      **Norton's Opposition Ignores Misconduct It Cannot Explain Away and the Responses It Does Provide Are Superficial.**

In its opposition, Norton fails to address several of the most egregious examples of its misconduct. For example, although Norton addresses its conduct that rendered Dr. Dacier unavailable, it provides no response to Norton's (i) misrepresentation to Dr. Dacier that the Court found he was represented by Norton's counsel and misrepresentations to the Court that Dr. Dacier no longer wanted to testify, (ii) counsel's violation of the March 15, 2022 court order to produce information when compliance likely would have revealed further misconduct,[9] (iii) withholding of

---

[8] Appendix A provides further citations and information concerning the instances of misconduct discussed in Columbia's opening brief and is offered to demonstrate that Norton's tone-deaf argument that its conduct was "advocacy commonplace in civil litigation" (Opp. at 1) is incorrect.

[9] Although the March 15, 2022 order is directed to Quinn, Norton filed a response (Dkt. 892) and has the ability to require its counsel to produce the documents that Quinn has refused to produce in contempt of that order. On April 8, 2022, Norton and its new counsel submitted—on behalf of Norton—a March 2022 e-mail chain solely between Dr. Dacier and Quinn. (Dkt. 1088-3.) Clearly, when Norton and its new counsel *want* access to Quinn's e-mails with Dr. Dacier, they can readily obtain them and submit them to the Court. It is entirely proper to infer that Norton has not required

material information, *i.e.*, the April 5-7, 2022 e-mails with Dr. Dacier, while making questionable arguments to the Court in light of those undisclosed e-mails,[10] (iv) filing of a meritless and callous sanctions motion accusing Columbia's counsel of unethical conduct, and (v) repeatedly rearguing the missing witness instruction. (*See* Br. at 3-7.) Norton fails to address this misconduct or the cases showing that it renders this case exceptional.[11] (Br. at 22-24.)

Similarly, although Norton addressed its improper cross-examination of Dr. Cole, it did not attempt to defend (i) its trial-by-surprise new damages theory (based entirely on the "guess" of a lay witness), which tried to circumvent the Court's ruling that Norton's near-zero damages theory was unreliable and insufficiently supported by evidence, or (ii) its wasteful dropping of defenses, objections, and arguments during trial without notice.[12] (*See* Br. at 12-13, 15.) As to the pre-trial phase, Norton ignores several examples Columbia provided of Norton re-arguing

---

its counsel to disclose e-mails with Dr. Dacier subject to the Court's March 15, 2022 order because those e-mails would confirm further misconduct. (*See* Dkt. 1229 at 6.)

[10] As the Court stated on the record, this conduct alone likely warrants sanctions, which was an issue to be addressed post-trial. (Ex. B, Apr. 8, 2022 Tr. 3:14-4:10.)

[11] The extent of Norton's misconduct with respect to Dr. Dacier will likely never be known. After the jury's verdict, Dr. Dacier—unprompted—contacted Professors Stolfo and Keromytis. (Guzior Decl. ¶ 2.) Columbia's counsel then sought to communicate with Dr. Dacier in light of the obvious and irreconcilable differences between his April 2022 e-mails with Norton's new counsel and the declaration covering the same topics submitted by Norton's former counsel. (*See* Dkt. 1268 at 2 n.1, 3-5.) Dr. Dacier initially agreed to speak with Columbia's counsel, but then decided otherwise, citing fear of retaliation from Norton and Quinn. (Ex. Q at 2-3.) Nevertheless, Dr. Dacier stated that (i) he hopes, without his input, Columbia still can "mak[e] sure that justice prevails" and (ii) his April 10, 2020 e-mail answers whether the April 8, 2022 Quinn declaration accurately describes his communications with Quinn (*i.e.*, it does not). (*Id.* at 1-2.)

[12] Norton's suggestion that its dropping of defenses, objections, and arguments is commendable (Opp. at 15-16) misses the point. Norton did not, *e.g.*, tell Columbia weeks, or even days, before trial that it was dropping most of its non-infringement defenses or the entirety of its damages defense; rather, Columbia found out in real-time at trial—obviously well after Norton made its decision and after Columbia prepared to address issues Norton knew it would drop. Substantially the same can be said of Norton raising numerous "disputes" during meet-and-confers each night of trial, only to drop them when it realized that its positions were meritless. (*See* Br. at 15.)

decided issues, which courts have found support an exceptional case finding.  For example, Norton fails to address its *Daubert* motion against Dr. Bailey, which the Court found merely sought to "rehash" arguments that it had "already considered and rejected."  (Dkt. 703 at 14; Br. at 17.)[13]

Norton failed to address all of this and other conduct because it cannot be defended. Especially in the aggregate, all of this conduct supports an exceptional case finding.  *See Georgetown Rail Equip. Co.* v. *Holland L.P.*, 2016 WL 3346084, at *24 (E.D. Tex. June 16, 2016) (while "none of [defendant's] actions, in isolation, was so egregious as to make this case exceptional . . . the totality . . . warrants the award of fees.").

Additionally, with respect to the misconduct Norton does address, Norton's response is superficial.  For example, Norton argues that its position on IPR estoppel was reasonable because "the [statutory interpretation] question was not settled definitively" at the time.  (Opp. at 12.)  But this ignores the real issue.  The problem was not Norton's position on statutory interpretation; the problem was "Norton's refusal to accept the [Court's] ruling."  (Br. at 8.)  After the Court's IPR estoppel opinion, Norton tried to insert prior art and the IPR-related materials into this case through (i) it's experts' "damages" opinions, (ii) a notice of prior art, and (iii) trial exhibits.  (*Id.*)  Norton's attempt to excuse all of this because it occurred before the Court's opinion on Columbia's fifth MIL (Opp. at 13) misses the mark.  The Court already had ruled that Norton was estopped from asserting prior art, and there would have been no need for that MIL if Norton had simply abided by the Court's earlier decision.  Even after the Court's opinion on Columbia's fifth MIL, Norton refused to remove IPR-related documents from its exhibit list.  (Ex. E, Mar. 29, 2022 Tr. 54:11-15 ("I have heard prior art argued 360 degrees.  I've ruled on it I don't know how many times.").)

---

[13] Norton also raised new arguments in its reply brief—which misrepresented the record—forcing Columbia to file a motion to strike, which the Court granted, finding that Norton was attempting "to engage in . . . 'hide-the-ball' litigation."  (Dkt. 703 at 16.)

**Claim Construction.**  With respect to Norton's belated request for "additional" claim construction, Norton tries to excuse its conduct by arguing that "both parties acknowledge that the issue Norton is accused of rearguing . . . did not come up in IPR." (Opp. at 14.)  That again is non-responsive to the issue.  The problem was that Norton's "additional" claim construction bid was meritless because Norton knew it was advocating a claim construction that it was judicially estopped from making (because it took a contrary position before the PTAB and prevailed).  (*See* Dkt. 306 at 7-10.)  Thus, the time-consuming "additional" claim construction that Norton demanded—one of several delay tactics—was a waste of judicial and party resources.

Regarding the claim term "anomalous," Norton cannot dispute the Court's decision that it was "Norton, not Columbia, improperly attempting to reopen claim construction disputes" (Dkt. 713 at 7)—taking a position directly contrary to the Federal Circuit's opinion.  Instead, Norton argues that Columbia did not cite "any Norton brief advancing the position 'that the parties' stipulation abrogated, *sub silentio*, the Federal Circuit's holding' about modeling."  (Opp. at 14.) But Norton's claim construction position is memorialized in a docketed submission (Dkt. 687 at 5-7), in response to which the Court noted that "Norton [was] rearguing a construction in opposition to the [] Federal Circuit['s]" holding.  (Dkt. 713 at 6 (emphasis omitted).)  And, of course, this was just one of several attempts by Norton to evade the Federal Circuit's holding: Dr. Jaeger's opinion concerning anomaly versus misuse detectors, which the Court excluded (Dkt. 717 at 16), was a "shell game" that was contrary to the Federal Circuit's holding.

**Section 101 Affirmative Defense.**  Norton filed a wasteful Rule 12(c) motion for judgment on the pleadings—inexplicably filed in May 2019 for pleadings completed in January 2014.  As the Court found, Norton's motion did not appropriately bring to the Court's attention directly relevant Federal Circuit precedent (Dkt. 288 at 19-20 n.22).  Norton lost the motion and, more to

-13-

the point, did nothing to develop or support its Section 101 defense over the entire history of this case.  Norton bears the burden of proving that defense by clear and convincing evidence, and Norton missed numerous case deadlines to develop the defense (*i.e.*, invalidity contentions or expert opinions regarding Section 101).  When the time came to identify trial issues, Columbia was entirely surprised by Norton's contention that its Section 101 defense remained.  Having done nothing to develop or support the defense, Norton's untimely assertion wasted Columbia's resources (Columbia had to prepare for trial on the defense despite having no information about it) and the Court's resources (the Court had to issue the decision striking the Section 101 defense).

In its opposition, Norton argues that its conduct was not wasteful because the Court found that Norton did not "waive" its Section 101 defense and that the Court had not finally decided the issue.  (Opp. at 13.)  But that again is non-responsive.  The problem is that it was wasteful for Norton to insist that its Section 101 defense would be presented at trial when "Norton's § 101 defense lack[ed] a sufficient basis," as the Court found.  (Dkt. 683 at 5; Br. at 9.)

**Improper Trial Conduct.**  Norton devotes a mere four sentences to its improper trial conduct, including claiming that its cross-examination of Dr. Cole (which the Court found to be "utterly improper" (Dkt. 1155 at 6-7; *see also* Dkt. 1276 at 16-19)) was "appropriate."  (Opp. at 14 n.3.)  Norton argues, citing a single case, that its conduct "came nowhere close to the level of flagrant litigation misconduct that justifies an exceptional case finding."  (Opp. at 14.)  But Norton does not address the highly relevant cases discussed in Columbia's opening brief, such as *Tinnus* and *VirnetX* (*see* Br. at 27-29), in which courts found a case exceptional based on the type of misconduct in which Norton engaged throughout trial.[14]

---

[14] *Finjan, Inc.* v. *Juniper Network, Inc.* is also instructive.  In *Finjan*, the court awarded fees where, *inter alia*, after the court excluded a party's damages expert, the party "pressed ahead and tried to

**Improper Pre-Trial Conduct.**  The excuses that Norton offers for its lack of cooperation on pre-trial matters are belied by the record.  For example, Norton argues that the parties were at an impasse regarding stipulated facts based on "extensive negotiations . . . over the course of the preceding days."  (Opp. at 15.)  Respectfully, this is a fantasy.  No "negotiations" occurred because Norton's counsel refused.  After waiting until the night before the stipulations were due to respond, Norton summarily declared the exercise futile.  (*See* Dkt. 763 at 2.)  This is one representative example of how Norton's original counsel acted throughout the case.

Although a march through all of Norton's misconduct since August 2018 is daunting because it was plentiful, it shows that the unreasonable manner in which Norton chose to litigate this case was pervasive.  That misconduct—especially in the aggregate—made this case exceptional.

**B.    Norton Was Not Sanctioned for Its Conduct Regarding Dr. Dacier.**

Norton's opposition focuses on Dr. Dacier, and Norton argues that the "Court has already sanctioned Norton for that conduct" through giving the missing witness instruction and allowing residual hearsay.  (Opp. at 16.)[15]  That is wrong.  The missing witness instruction was remedial— not a sanction—and it properly informed the jury of the scope of its fact-finding powers.[16] Similarly, the Court's admission of reliable hearsay was not remotely a sanction; it was based on

---

present to the jury a facts-only damages case" and, in doing so, presented to the jury "prejudicial" and "patently irrelevant" lay testimony.  2021 WL 75735, at *2 (N.D. Cal. Jan. 9, 2021).

[15] Norton also argues that "Columbia has already been made whole for any prejudice caused by Dr. Dacier's absence."  (Opp. at 16.)  But Norton ignores what the Court recognized during trial, "I don't think there is a way to make, frankly, Columbia whole."  (Trial Tr. 2484:13-15.)

[16] *See Mali* v. *Fed. Ins. Co.*, 720 F.3d 387, 393 (2d Cir. 2013) (a missing evidence instruction "is not a sanction" because while it "is indeed an 'adverse inference instruction,' in that it explains to the jury that it is at liberty to draw an adverse inference, it is not [a] punitive adverse inference instruction" and instead "is no more than an explanation of the jury's fact-finding powers").

the trustworthiness of the statements under FRE 807. (Dkt. 889 at 18 (finding that the statements "satisfy the 'hallmark' of admissible hearsay under Rule 807: trustworthiness").) Indeed, Columbia suggested that the Court impose a sanction instead of the missing witness instruction (Dkt. 1102 at 3-7), but Norton objected (Dkt. 1103) and the Court declined to take steps that would have been a sanction, *e.g.*, letting the jury see the damning April 5-7, 2022 e-mail correspondence between Dr. Dacier and Norton's trial counsel or prohibiting Mr. Shou from testifying at trial, (Dkt. 1167 at 15-17). There has been no sanction for Norton's extraordinary misconduct, and Columbia's § 285 and § 284 motions are the appropriate vehicles for deterrence.[17]

## III.  THE JURY'S WILLFUL INFRINGEMENT FINDING IS AN INDEPENDENTLY SUFFICIENT BASIS FOR AN AWARD OF ATTORNEYS' FEES UNDER § 285.

The jury's willful infringement finding "alone is a 'compelling' indication that" this case is exceptional, *Georgetown*, 2016 WL 3346084 at *22, and courts have often found cases exceptional because of willful infringement.[18] Indeed, "in cases where there has been an express finding of willfulness, the trial court must, in denying attorney fees, explain why the case is not

---

[17] Before trial, both the Court and Columbia noted that the appropriate **sanctions** would be determined after trial. (*See* Dkt. 547 at 4 n.3 ("Columbia will address [Norton's misconduct concerning Dr. Dacier] in a post-trial motion for enhanced damages and attorneys' fees"); Ex. B, Apr. 8, 2022 Tr. 4:5-8 ("It's quite possible this could be the basis for sanctions, but I don't want to see anything about it. I don't want to do anything about it until we're done with trial.").) That time is now, and Norton's contention that it has already been sanctioned is simply wrong.

[18] *See*, *e.g.*, *EagleView Techs., Inc.* v. *Xactware Sols., Inc*., 522 F. Supp. 3d 40, 69 (D.N.J. 2021); *Deckers Outdoor Corp.* v. *Australian Leather Pty. Ltd.*, 2020 WL 4723980, at *7 (N.D. Ill. July 13, 2020), *aff'd*, 2021 WL 1827945 (Fed. Cir. May 7, 2021); *Spectrum Lab'ys, LLC* v. *Dr. Greens, Inc*., 2019 WL 13179080, at *4 (S.D. Cal. Nov. 18, 2019); *Izzo Golf Inc.* v. *King Par Golf Inc*., 2019 WL 4023562, at *9 (W.D.N.Y. Aug. 27, 2019); *Ford Glob. Techs., LLC* v. *New World Int'l, Inc.*, 2019 WL 1531759, at *2 (N.D. Tex. Apr. 9, 2019); *Tinnus Enters. LLC* v. *Telebrands Corp.*, 369 F. Supp. 3d 704, 745-46 (E.D. Tex. 2019); *Progressive Int'l Corp.* v. *AMGTM LLC*, 2018 WL 4091694, at *1, 5-6 (W.D. Wash. Aug. 21, 2018); *Genes Indus., Inc.* v. *Custom Blinds & Components, Inc*., 2018 WL 11354574, at *7 (C.D. Cal. Jan. 29, 2018); *VirnetX Inc.* v. *Apple Inc*., 324 F. Supp. 3d 836, 870-72 (E.D. Tex. 2017), *aff'd sub nom. VirnetX Inc.* v. *Cisco Sys., Inc.*, 748 F. App'x 332 (Fed. Cir. 2019); *Stryker Corp.* v. *Zimmer, Inc.*, 2017 WL 4286412, at *6 (W.D. Mich. July 12, 2017), *aff'd*, 745 F. App'x 167 (Fed. Cir. 2018).

exceptional." *Mass Eng'red Design, Inc.* v. *Ergotron, Inc.*, 633 F. Supp. 2d 361, 390 (E.D. Tex. 2009). Norton again argues that the Court should set aside the jury's willful infringement verdict and that—without willful infringement—Columbia's § 285 motion is "[w]eak." (Opp. at 17-18.) As Columbia previously demonstrated, the jury's willful infringement verdict was supported by far more than substantial evidence, and the Court should not reject that decision. (Dkts. 1251 at 7-14, 18-23; 1282 at 13-19.) This is a sufficient basis on its own to award fees under § 285.

Norton cites a handful of cases in which courts declined to award fees although the jury found willful infringement (Opp. at 19-20), but none support Norton's position here. Five of the seven cases do not even discuss willful infringement when explaining why the case was not exceptional,[19] and the two cases that do provide no analysis, *Arthrex, Inc.* v. *Smith & Nephew, Inc.*, 2017 WL 365239, at *1-2 (E.D. Tex. Jan. 25, 2017), or turn on unique facts, *Schwendimann* v. *Arkwright Advanced Coating, Inc.*, 2018 WL 1041038, at *1-3 (D. Minn. Feb. 23, 2018) (finding the "case was a closer call on the issue of willful infringement than in many other cases" and thus "willful infringement alone does not support a finding of exceptionality"). Although some courts have declined to award fees in light of willful infringement, it is a small minority. (*Supra* n.18.)

Contrary to Norton's inconsistent arguments (Br. at 1, 11-12), an award of attorneys' fees under § 285 serves both to compensate the patentee and deter litigation misconduct[20] and willful

---

[19] *SiOnyx, LLC* v. *Hamamatsu Photonics K.K.*, 2019 WL 11307114, at *1 (D. Mass. July 25, 2019); *Barry* v. *Medtronic, Inc.*, 250 F. Supp. 3d 107, 122-23 (E.D. Tex. 2017); *Idenix Pharms. LLC* v. *Gilead Scis., Inc.*, 271 F. Supp. 3d 694, 704-05 (D. Del. 2017); *Siemens Mobility, Inc.* v. *Westinghouse Air Brake Techs. Corp.*, 2019 WL 3240521, at *9 (D. Del. July 18, 2019); *Power Integrations, Inc.* v. *Fairchild Semiconductor Int'l, Inc.*, 2019 WL 3290369, at *10 (D. Del. July 22, 2019).

[20] *See Tannas* v. *Multichip Display, Inc.*, 2018 WL 1033219, at *4 (C.D. Cal. Feb. 21, 2018) ("[o]ne purpose of Section 285 is to deter bad faith litigation by imposing the cost of a bad decision on the decision-maker"); *Drop Stop LLC* v. *Zhu*, 2018 WL 1407031, at *7 (C.D. Cal. Jan. 22, 2018) (awarding fees "to deter Defendants from engaging in a similar pattern of pre-litigation conduct, and . . . actions—including delay tactics, chilling defenses, and re-raised arguments—

infringement[21]. As demonstrated above, Norton's litigation conduct since mid-2018 has been egregious—not, as Norton attempts to pass it off, "advocacy commonplace in civil litigation." (Opp. at 1.) Indeed, the fact that Norton would describe its conduct in that way shows why the Court should award attorneys' fees both to compensate Columbia for unnecessary costs and to help Norton understand that the various forms of misconduct (which were wasteful or worse, as shown in Columbia's briefs) and willful infringement are not "commonplace."

## IV.    THE COURT SHOULD AWARD COLUMBIA ALL OF ITS REASONABLE ATTORNEYS' FEES FOR THE POST-AUGUST 2018 PERIOD.

Norton suggests that Columbia should be awarded only a small amount of its attorneys' fees, if at all, solely for certain discrete projects in connection with Dr. Dacier (*e.g.*, briefing the missing witness instruction). (Opp. at 21-22.) That is wrong for two separate reasons, and Columbia should be awarded all of its reasonable attorneys' fees for the post-August 2018 period.

*First*, a full award of attorneys' fees is appropriate when misconduct "permeated" the proceedings.[22] Contrary to Norton's argument (Opp. at 20), courts have frequently granted full

---

taken during the course of litigation"), *aff'd* 757 F. App'x 994 (Fed. Cir. 2019); *WCM Indus., Inc.* v. *IPS Corp.*, 2:13-cv-02019-JPM-tmp (Dkt. 716 at 11-12) (W.D. Tex. Aug. 26, 2016) (awarding fees, in addition to enhanced damages, because "the Court's award of enhanced damages in the instant case is <u>not</u> adequate to compensate, punish, or deter [defendant's] conduct").

[21] *See Deckers*, 2020 WL 4723980, at *7 ("One goal of fee-shifting in exceptional cases is deterrence, and defendants ought to be deterred from the kind of willful infringement that occurred here."); *Litecubes, L.L.C.* v. *N. Light Prods., Inc.*, 2006 WL 5700252, at *14 (E.D. Mo. Aug. 25, 2006) ("Without an award of attorney fees in cases [with willful infringement], willful infringers will know that enforcement of intellectual property rights will be cost prohibitive due to the high cost of litigation. An award of attorney's fees is proper in cases such as this case, so that willful infringers might be punished and deterred."), *aff'd*, 523 F.3d 1353 (Fed. Cir. 2008); *Beckman*, 892 F.2d at 1553 ("[w]hen infringement is found to be willful, the policy behind § 285 of discouraging infringement might justify imposing all of the patent owner's attorney fees on the infringer").

[22] *See Large Audience Display Sys., LLC* v. *Tennman Prods., LLC*, 745 F. App'x 153, 157 (Fed. Cir. 2018) (where a party's misconduct "'permeated' the entire litigation . . . full fees may be awarded"); *Homeland Housewares, LLC* v. *Sorensen Rsch.*, 581 F. App'x 877, 881 (Fed. Cir. 2014) (rejecting suggestion to limit fees to those "incurred in responding to specific acts of

attorneys' fees based solely on litigation misconduct.[23]  From the very first 2018 meet-and-confer through the 2022 trial, Norton has repeatedly (i) attempted to delay and obstruct these proceedings, (ii) engaged in serious, sanctionable conduct, including, but not limited to, its conduct concerning Dr. Dacier, (iii) advanced meritless arguments and defenses, (iv) endlessly reargued settled issues, and (v) refused to engage with Columbia in good faith on case management.  (*See* Br. at 7-16; Appendix A.)  Norton's misconduct permeated these proceedings during the post-August 2018 period, and a full award of fees is justified on that basis alone.[24]

*Second*, when willful infringement is found by the jury, that alone supports a full award of attorneys' fees (because the rationale is focused on deterrence).[25]  The jury found that Norton's infringement was willful, and notably, Norton's willful infringement continued during the post-August 2018 period, even after the PTAB and the Federal Circuit rejected Norton's invalidity

---

litigation misconduct" where award was based on "the 'totality of the circumstances,' and not just discrete acts of litigation conduct"); *Monolithic Power Sys., Inc.* v. *O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013) (affirming award of full fees where the losing party's "extensive misconduct was enough to comprise an abusive 'pattern' or a vexatious 'strategy' that was 'pervasive' enough to infect the entire litigation"); *Beckman*, 892 F.2d at 1553 (there may be "cases in which litigation misconduct would justify an award of attorney fees for the entire litigation").

[23] *See*, *e.g.*, *SRI Int'l, Inc.* v. *Cisco Sys., Inc.*, 14 F.4th 1323, 1332 (Fed. Cir. 2021); *Monolithic*, 726 F.3d at 1369; *Drop Stop*, 757 F. App'x at 1000; *Hunter Douglas Inc.* v. *Great Lake Woods, Inc.*, 2019 WL 1375675, at *15-16 (D. Colo. Mar. 27, 2019); *Tannas*, 2018 WL 1033219, at *3-5; *Integrated Tech. Corp.* v. *Rudolph Techs. Inc.*, 2016 WL 7674701, at *3-4 (D. Ariz. Oct. 4, 2016).

[24] Norton's heavy reliance on *Rembrandt* (Opp. at 3, 20, 22) is misplaced.  In that case, the Federal Circuit said that an award of full attorneys' fees very well may be appropriate, but the trial court had not made the relevant factual finding.  The case was remanded for the trial court to determine whether the misconduct was "pervasive enough to infect the entire litigation."  *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1279-80 (Fed. Cir. 2018).

[25] *See Beckman*, 892 F.2d at 1553 ("When infringement is found to be willful, the policy behind § 285 of discouraging infringement might justify imposing all of the patent owner's attorney fees on the infringer."); *Imperium IP Holdings (Cayman), Ltd.* v. *Samsung Elecs. Co.*, 2018 WL 1602460, at *4 (E.D. Tex. Apr. 3, 2018) (finding that "that no reduction in [plaintiff's] attorneys' fee award based on apportionment is warranted" where defendant willfully infringed).

arguments and the Federal Circuit reversed Norton's only claim construction win—leaving Norton with no legitimate defenses. Norton's willful infringement alone justifies a full award of attorneys' fees for the post-August 2018 period.

In opposition, Norton complains that a full award of attorneys' fees for the post-August 2018 period would compensate Columbia for the costs of litigating the fraud and sole inventorship claims. (Opp. at 21.) This complaint is misguided: "[W]hen a plaintiff brings related claims, failure on some claims should not preclude full recovery [of attorneys' fees under § 285] if the plaintiff achieves success on a significant interrelated claim." *Gen. Protecht Grp., Inc.* v. *Leviton Mfg. Co.*, 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015); *see also Imperium*, 2018 WL 1602460, at *4 (work on "unsuccessful claims was intimately related to the work done on successful claims"). Here, the jury found by clear and convincing evidence that Professors Stolfo and Keromytis should have been named as inventors of the '643 Patent, and that claim was significantly interrelated with the sole inventorship and fraud claims—indeed, the claims were based on the same set of evidence introduced at trial. Columbia should be awarded its full fees.

## CONCLUSION

Based on Norton's extraordinary litigation misconduct, weak litigating positions, and willful infringement, Columbia respectfully asks the Court for a full award of its reasonable attorneys' fees for the period since this case resumed in August 2018. The Court has the power to issue that award under § 285, which serves both compensatory and deterrence functions. Without an award of attorneys' fees—which have been very substantial in this decade-long litigation—the royalty that Columbia receives for Norton's highly profitable willful infringement (a royalty that Columbia should have received without the need for litigation) will be substantially reduced by Columbia's costs, and Norton's misconduct will be encouraged, not deterred.

-20-

Dated:  July 22, 2022

Respectfully submitted,

*/s/ John M. Erbach*

Dana D. McDaniel (VSB No. 25419)
John M. Erbach (VSB No. 76695)
SPOTTS FAIN, P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia  23219
Tel.: (804) 697-2065
Fax: (804) 697-2165
dmcdaniel@spottsfain.com
jerbach@spottsfain.com

Garrard R. Beeney (*pro hac vice*)
Dustin F. Guzior (*pro hac vice*)
Stephen J. Elliott (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel.: (212) 558-4000
Fax: (212) 558-3588
beeneyg@sullcrom.com
guziord@sullcrom.com
elliotts@sullcrom.com

*Counsel for Plaintiff The Trustees of Columbia University in the City of New York*