IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

    Plaintiff,

v.

GEN DIGITAL INC.,
f/k/a SYMANTEC CORPORATION,
f/k/a NORTONLIFELOCK, INC.,

    Defendant.

Civil Action No. 3:13cv808
<u>UNDER SEAL</u>

## MEMORANDUM OPINION

This matter comes before the Court on The Trustees of Columbia University in the City of New York's ("Columbia") Motion for Prejudgment Interest, Post-Judgment Interest, Supplemental Damages, and a Post-Judgment Running Royalty (the "Motion"). (ECF No. 1264.) Defendant NortonLifeLock, Inc. ("Norton")[1] responded to the Motion, (ECF No. 1278), and Columbia replied, (ECF Nos. 1299, 1298 (sealed)). The parties also filed a joint Stipulation Regarding Certain Post-Trial Issues relating to the Motion. (ECF No. 1247.) This matter is ripe for adjudication. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will GRANT IN PART and DENY IN PART the Motion. (ECF No. 1264.)

---

[1] The Court previously issued a Notice explaining that it will refer to the Defendant as "Norton" on a default basis, and why. (ECF No. 1328.)

## I. Background

On December 24, 2013, Columbia filed its First Amended Complaint in which it alleged that Norton infringed on several of its patents. (ECF No. 12.) Following a multi-week jury trial commencing on April 12, 2022, a jury rendered a verdict finding that Norton had infringed on two of Columbia's patents: U.S. Patent No. 8,601,322 (the "'322 Patent") and U.S. Patent No. 8,074,115 (the "'115 Patent"). (ECF No. 1206.)

The jury awarded Columbia damages in the amount of $185,112,727.00 but did not include any interest in this award. (ECF No. 1206, at 4.)

Following this verdict, Columbia filed the instant Motion and its Memorandum in Support thereof. (ECF Nos. 1264, 1265.) In its Motion, Columbia requests a prejudgment interest award, a post-judgment interest award, supplemental damages with enhancement, and post-judgment running royalty with enhancement. (ECF Nos. 1264, 1265.) Norton opposed the Motion. (ECF No. 1278.) In its opposition, Norton acknowledges that the parties have stipulated to many of these issues but argues that Columbia went beyond the realm of these stipulations. (ECF No. 1278, at 4.) Specifically, Norton opposes Columbia's request for an enhancement of supplemental damages and ongoing royalties. (ECF No. 1278, at 4.) Columbia replied, reiterating its stance that such enhancements are appropriate. (ECF No. 1299; ECF No. 1298 (sealed).)

## II. Analysis

### A. Prejudgment Interest Under 35 U.S.C. § 284

#### 1. Legal Standard

"In patent litigation, prejudgment interest on a damages award is awarded pursuant to 35 U.S.C. § 284," which states that damages should be "'adequate to compensate for the

2

infringement.'" *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10CV248, 2011 WL 4899922, at *2 (E.D. Va. Oct. 14, 2011), *aff'd*, 694 F.3d 1312 (Fed. Cir. 2012) (quoting 35 U.S.C. § 284). The Supreme Court of the United States has interpreted 35 U.S.C. § 284 to mean that prejudgment interest should be awarded unless adequate justification for its withholding exists. *Id.* (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655–56 (1983)). Prejudgment interest is not designed to be punitive, but typically "is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Gen. Motors Corp.*, 461 U.S. at 655. Thus, prejudgment interest "must be applied only to the compensatory damages, not enhanced or other punitive damages." *Humanscale Corp. v. CompX Int'l, Inc.*, No. 3:09CV86, 2010 WL 3397455, at *1 (E.D. Va. Aug. 23, 2010) (citing *Gen. Motors Corp.*, 461 U.S. at 655). When calculating prejudgment interest awards, trial courts are awarded broad discretion, as there is no mandatory rate for these calculations. *ActiveVideo Networks, Inc.*, 2011 WL 4899922, at *3. Courts are, however, encouraged to award prejudgment interest from the date of infringement to the date of judgment. *Id.* (citing *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (further citations omitted)).

### 2. The Parties Have Correctly Stipulated that Columbia is Entitled to Prejudgment Interest

The Parties have stipulated that Columbia is entitled to prejudgment interest on the jury's award. (ECF No. 1247, at 2–3.) The Court agrees. *See ActiveVideo Networks, Inc.*, 2001 WL 4899922, at *2 (stating that prejudgment interest should be awarded absent some justification for withholding it) (quoting *Gen. Motors Corp.*, 461 U.S. at 657). No justification to withhold prejudgment interest exists here.

3

The parties also have reached an agreement as to the interest rates and the dates on which they should apply. The parties determined that the pre-verdict dates of infringement run from December 6, 2011, though the May 2, 2022 verdict. (ECF No. 1255-32 ¶ 6; ECF No. 1251-3 ¶ 6 (sealed); ECF No. 1278); *see Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) ("Generally, prejudgment interest should be awarded from the date of infringement to the date of judgment.") (citing *Gen. Motors Corp.*, 461 U.S. at 656). At the prime rate of 3.73%,[2] compounded quarterly, the parties have correctly calculated that the pre-verdict interest on the jury's $185,112,727.00 calculation of damages amounts to $46,428,150.00. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) ("A trial court is afforded wide latitude in the selection of interest rates[.]") (citing *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 556–57 (Fed. Cir. 1984)); (ECF No. 1255-32 ¶¶ 6–8; ECF No. 1251-3 ¶¶ 6–8 (sealed); ECF No. 1264; ECF No. 1265, at 5–6; ECF No. 1278.)

Thus, the Court awards Columbia $46,428,150.00 in prejudgment interest.

Columbia next asserts a claim for "additional interest to be calculated after entry of judgment to account for (a) prejudgment interest between May 3, 2022 and the entry of judgment, and (b) prejudgment interest on supplemental damages, in each case to be calculated at the prime rate and compounded quarterly." (ECF No. 1264, at 1.)

The parties have jointly stipulated that "[p]rejudgment interest shall be included on damages for Norton's sales of Adjudicated Products through the date of judgment."[3] (ECF No.

---

[2] This prime rate was determined by taking the average prime rate from 2011-Q4 through 2022-Q2, the time during which prejudgment interest was accruing. (ECF No. 1255-32 ¶ 7; ECF 1251-3 ¶ 7 (sealed).)

[3] The Parties have agreed on the process they would undertake to determine whether any "New Product Claims," including but not limited to any New Products that interact with SONAR, would be handled in the relevant time frame. (ECF No. 340-1, at 3–4.)

1247, at 3; s*ee also* ECF No. 1265, at 5–6; ECF No. 1278, at 4.) The parties have further stipulated that this interest shall be calculated at the prime rate in each quarter over which interest accrues based on the records of the St. Louis Federal Reserve (https://fred.stlouisfed.org/categories/117). (ECF No. 1247, at 3; s*ee also* ECF No. 1265, at 5–6; ECF No. 1278, at 4.) Finally, the parties stipulate that this interest will be compounded quarterly. (ECF No. 1247, at 3.)

Given the parties' stipulations and the statutory provisions of § 284, the Court finds that Columbia is entitled to an award of prejudgment interest consistent with these stipulations, and hereby GRANTS Columbia's Motion as to prejudgment interest. (ECF No. 1264.) The prime rate shall be calculated from December 6, 2011, the date of first infringement, to September 30, 2023, the date of judgment. The Court agrees with the parties that use of the prime rate as calculated by the St. Louis Federal Reserve, compounded quarterly, will serve as the measure.

Furthermore, the Court finds that this prejudgment interest shall apply to Columbia's damages award, and any supplemental damages imposed. The actual monetary amounts will be calculated after the entry of judgment according to the terms of the parties' stipulation.

**B.     Post-Judgment Interest Under 28 U.S.C. § 1961**

**1.     Legal Standard**

Under 28 U.S.C. § 1961, post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. Section 1961 further provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.*

The United States Court of Appeals for the Federal Circuit defers to the relevant circuit for interpretation of the post-judgment statute "when there is existing and expressed uniformity among the circuits." *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1348 (Fed. Cir. 1999). The United States Court of Appeals for the Fourth Circuit has stated that "awarding post-judgment interest on the entire [damages] amount . . . including pre-judgment interest, most closely comports with the purpose of post-judgment interest articulated by the Supreme Court." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (*en banc*). "Post-judgment interest is automatic from the date of entry of judgment . . . [when] recovered in civil cases in federal district courts." *Brinn v. Tidewater Transp. Dist. Comm'n*, 113 F. Supp. 2d 935, 938 (E.D. Va. 2000) (internal citation omitted). Finally, post-judgment interest on a money judgment begins to accrue "from the date the judgment is entered until payment is made in full at the federal rate of interest as calculated using the formula set forth in 28 U.S.C. § 1961." *Brinn*, 113 F. Supp. 2d at 939.

### 2. The Parties Have Correctly Stipulated that Columbia is Entitled to Post-Judgment Interest

The parties have rightly stipulated that "[p]ost-judgment interest shall be included on the total award in the judgment, calculated at the statutory rate under 28 U.S.C. § 1961(a)." (ECF No. 1247, at 3; ECF No. 1265, at 6.) This rate will be equal to the "weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a).

Given the parties' joint stipulation and the language of § 1961, the Court GRANTS Columbia's Motion for post-judgment interest and finds that this statutory rate shall be calculated under 28 U.S.C. § 1961(a) and applied to the full amount of the judgment.

### C. Supplemental Damages Under 35 U.S.C. § 284

#### 1. Legal Standard

"Where a patent infringer is found to have infringed one or more patents, the 'patentee is entitled to damages for the entire period of infringement and should therefore be awarded supplemental damages for any periods of infringement not covered by the jury verdict.'" *I/P Engine, Inc. v. AOL Inc.*, No. 2:11CV512, 2013 WL 3991472, at *1 (E.D. Va. Aug. 1, 2013), *vacated on other grounds*, 2016 WL 9667228 (E.D. Va. Jan. 29, 2016) (citation and quotation omitted). "[S]upplemental damages are compensatory in nature." *ActiveVideo Networks, Inc.*, 2011 WL 4899922, at *2. For this reason, supplemental damages must be distinguished from enhanced damages, which are punitive and require a heightened degree of culpability. *Id.* (citations and quotations omitted).

"[T]here is a 'fundamental difference' between 'a reasonable royalty for *pre-verdict* infringement and damages,'" in the form of a reasonable royalty, versus that for "for *post-verdict* infringement." *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) (emphasis added). This is because there is uncertainty as to infringement and validity of the patent prior to a verdict and judgment, and pre-verdict reasonable royalties are "determined in the context of that uncertainty." *Amado*, 517 F.3d at 1362.

When calculating a reasonable ongoing post-verdict royalty, however, the "the key question is what amount of money would reasonably compensate [plaintiff] for giving up [its] right to exclude yet allow an ongoing willful infringer to make a reasonable profit." *I/P Engine, Inc. v. AOL Inc.*, No. 2:11CV512, 2014 WL 309245, at *2 (E.D. Va. Jan. 28, 2014), *vacated*, No. 2:11CV512, 2016 WL 9667228 (E.D. Va. Jan. 29, 2016). When determining the appropriate rate

7

of damages post-verdict, the district court should also consider the "change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability." *Amado*, 517 F.3d at 1362. "Though any changes in relevant circumstances should be considered, it is undisputed that the royalty rate determined by the jury is the correct starting point for the analysis." *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, No. 2:18CV585, 2023 WL 2329746, at *1 (E.D. Va. Jan. 27, 2023).

The Federal Circuit has endorsed a multi-factor approach for determining reasonable royalties based on a hypothetical negotiation. This approach involves analyzing fifteen criteria known as the *Georgia-Pacific* factors. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970); *see also Biedermann Techs. GmbH & Co. KG*, 2023 WL 2329746, at *2 (observing that "[d]istrict courts typically consider 'the so-called *Georgia-Pacific* factors' when determining an ongoing royalty") (quoting *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, 28 F.4th 1247, 1260 (Fed. Cir. 2022)). This inquiry should focus on the parties' *future* infringement, and not its past infringement, unless there is evidence that the "parties' past actions would carry forward during future infringement," or would be relevant in some other way. *XY, LLC*, 890 F.3d at 1298.

Post-verdict supplemental damages in the form of reasonable royalties may also be enhanced in the same way as pre-verdict reasonable royalties: upon a finding of willfulness by the infringing party.[4] *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 98–99 (2016); *Cummins-Allison Corp. v. SBM Co.*, 669 F. Supp. 2d 774, 780 (E.D. Tex. 2009), *aff'd*, 484 F. App'x 499 (Fed. Cir. 2012). *See also SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1385

---

[4] The post-verdict willfulness inquiry is separate from any finding of willfulness by the jury because it looks to willful conduct that occurred *after* the verdict, which the jury of course did not consider. *See* Part II.C.3, *infra*.

8

(Fed. Cir. 2013). "Though post-trial infringement is intrinsically willful" due to defendant's knowledge of the relevant patents and the jury's finding of infringement, there still must be a finding of "egregious or nefarious conduct" on behalf of the defendant for enhanced supplemental damages to be appropriate. *Biedermann Techs. GmbH & Co. KG*, 2023 WL 2329746, at *3; *see also Philip Morris Prod. S.A. v. R.J. Reynolds Vapor Co.*, No. 120CV393, 2023 WL 2843796, at *12 (E.D. Va. Mar. 30, 2023) (Brinkema, J.) ("[A]n enhancement for willfulness is not called for just because infringement continues after the entry of a verdict and judgment.").

A court's decision to enhance an ongoing royalty as punishment for a party's conduct is highly fact-specific. *See, e.g., Philip Morris Prod. S.A.*, 2023 WL 2843796, at *13 (declining to enhance ongoing royalty rate based on willful post-verdict infringement where "[plaintiff] ha[d] not shown that [defendant's] post-verdict conduct rises to the level of egregiousness warranting the punitive sanction of enhanced damages"); *Biedermann Techs. GmbH & Co. KG*, 2023 WL 2329746, at *3–4 (rejecting plaintiff's request to enhance ongoing royalty rate due to willfulness of potential future infringement where "the record [did] not suggest any egregious or nefarious conduct by Defendants before, during, or after trial, and the determination of whether [defendant's product was infringing] was a close factual question", but observing that "differing fact patterns may reveal the need for an elevated post-verdict royalty to provide deterrence"); *I/P Engine, Inc.*, 2014 WL 309245, at *4 (enhancing ongoing royalty rate "by an additional 40% to account for the fact that [d]efendants are now willful infringers", noting that this request was reasonable "[i]n light of the treble damages normally awarded for willful infringement" and further noting that several *Read* factors weigh in Plaintiff's favor).

9

When determining whether a party's conduct is sufficiently egregious to justify enhancing an ongoing royalty rate, courts may consider whether the *Read*[5] factors weigh in plaintiff's favor. *See I/P Engine, Inc.*, 2014 WL 309245, at *4 (enhancing the ongoing royalty rate by 40% to account for the willful nature of the infringement due to defendants' (1) continued misconduct, (2) failure to take remedial action, and (3) lack of good faith belief of invalidity or noninfringement (*Read* factors 6, 7, and 2, respectively)).

### 2. The Parties Have Correctly Stipulated that Columbia is Entitled to Post-Verdict Supplemental Damages Under 35 U.S.C. § 284, and Have Agreed to an Appropriate Rate

The parties have correctly stipulated that Columbia is entitled to supplemental damages for "Norton's sales of infringing products between March 1, 2022 and the entry of judgment," in addition to the $185,112,727.00 jury award. (ECF No. 1265, at 7; ECF No. 1206, at 4.) Because the jury verdict only covered sales through February 28, 2022, Columbia is requesting damages for sales beyond this date. (ECF No. 1206, at 4.) Norton agrees. (ECF No. 1247, at 3; ECF No. 1278, at 4.) Because the jury found that Norton infringed on two of Columbia's patents, the Court agrees that Columbia is entitled to damages for the entire period of infringement. *Morpho Detection, Inc. v. Smiths Detection Inc.*, No. 2:11CV498, 2013 WL 5701522, at *7 (E.D. Va. Oct. 17, 2013).

---

[5] Courts frequently look to nine non-exhaustive factors delineated by the Federal Circuit in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) to determine whether a party has acted egregiously such that enhanced damages are warranted. These nine factors are: (1) "whether the infringer deliberately copied the ideas or design of another"; (2) "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed"; (3) "the infringer's behavior as a party to the litigation"; (4) "[d]efendant's size and financial condition"; (5) "[c]loseness of the case"; (6) "[d]uration of defendant's misconduct"; (7) "[r]emedial action by the defendant"; (8) "[d]efendant's motivation for harm"; and (9) "[w]hether defendant attempted to conceal its misconduct." *Read*, 970 F.2d at 827.

Thus, the Court FINDS that Columbia is entitled to supplemental damages for the sale of infringing products between March 1, 2022 and the date of entry of judgment, as these damages were not included in the jury verdict.

Next, the parties rightly stipulate that the jury applied a 1% royalty rate to Norton's revenue for the sale of products, and that this same 1% royalty rate should apply to the calculation of supplemental damages. (ECF No. 1247, at 3.) And, the parties' stipulation that "within 60 days of entry of judgment, Norton shall produce to Columbia updated sales data for the Adjudicated Products for the period from March 1, 2022, through the date of judgment," to help with the calculating of supplemental damages, accords with the damages awarded in the jury verdict. *See ActiveVideo Networks, Inc.*, 2011 WL 4899922, at *2; (ECF No. 1247, at 3.)

Based on the parties' stipulation and applicable law, the Court FINDS that a 1% royalty rate will be applied to the calculation of supplemental damages, and that Norton must produce data in accordance with the parties' stipulation.

### 3. <u>Enhanced Supplemental Damages are not Appropriate</u>

Columbia further requests that the supplemental damages be enhanced if the Court grants Columbia's Motion for Enhanced Damages pursuant to 35 U.S.C. § 284. (ECF No. 1252; ECF No. 1264, at 2; ECF No. 1265, at 8.) Columbia argues that "this case warrants significantly enhanced damages," and if the Court agrees with its arguments for enhancement under 35 U.S.C. § 284, then the supplemental damages should likewise be enhanced. (ECF No. 1265, at 8.) Columbia further claims that enhanced damages are even more appropriate here because the supplemental damages concern Norton's continuous sale of infringing products after the jury entered a verdict of infringement. (ECF No. 1265, at 8.)

Norton opposes this request for the same reasons it opposes the Motion for Enhanced Damages. (ECF No. 1277.) Specifically, Norton asserts that "the conduct at issue does not rise to the level of egregiousness that warrants enhancement." (ECF No 1278, at 5.) Norton claims that this case was close, and none of the *Read* factors warrant enhancement. (ECF No 1278, at 6.)

The Court may enhance supplemental damages upon a finding of willfulness by Norton. *See Halo Elecs., Inc.*, 579 U.S. at 98–99; *Cummins-Allison Corp.*, 669 F. Supp. 2d at 780. However, some courts have cautioned against considering post-verdict infringement as sufficiently egregious to justify enhanced damages without some further "egregious or nefarious conduct." *Biedermann Techs. GmbH & Co. KG*, 2023 WL 2329746, at *3; s*ee also Philip Morris Prod. S.A.*, 2023 WL 2843796, at *13 ("Even if post-verdict infringement pursuant to a court-ordered ongoing royalty could be considered intentional or deliberate infringement, the standard for awarding enhanced damages has not been met because Philip Morris has not shown that Reynolds' post-verdict conduct rises to the level of egregiousness warranting the punitive sanction of enhanced damages."); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15CV1202, 2017 WL 3034655, at *9–11 (E.D. Tex. July 18, 2017); *Genband U.S. LLC v. Metaswitch Networks Corp.*, No. 2:14CV00033, 2018 WL 11357619, at *22–23 (E.D. Tex. Mar. 22, 2018); *ABS Glob., Inc. v. Inguran, LLC*, No. 14CV503, 2020 WL 2405380, at *11 (W.D. Wis. May 12, 2020); *EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956, 2017 WL 3434212, at *4–5 (D. Del. Aug. 10, 2017).

As articulated in the Court's Memorandum Opinion on Columbia's Motion for Enhanced Damages (ECF No. 1333), an analysis of the *Read* factors indicates that Norton acted

egregiously prior to and during trial. In that Opinion, the Court found that damages should be enhanced by 2.6 times the jury's verdict due to Norton's conduct.

However, insufficient evidence comes before this Court to find that such conduct continued post-verdict. Columbia asks this Court to assign the greater value of the pre-verdict actions of Norton when deciding whether there is egregious post-verdict willfulness by Norton. The Court cannot do so on this record. The post-judgment royalties compensate Columbia for any continued post-verdict infringement, but continued infringement alone is not always enough to award enhanced damages. *See Philip Morris Prod. S.A.*, 2023 WL 2843796, at *12. The Court would require additional evidence of post-verdict "egregious or nefarious conduct" to enhance the supplemental damages already awarded. *See Biederman Techs. GmbH & Co. KG*, 2023 WL 2329746, at *3. Therefore, the Court DENIES Columbia's Motion to enhance the post-judgment ongoing royalty rate, meaning it will remain at the 1% rate to which the parties stipulated.[6]

---

[6] Neither parties' briefing on the Motion addresses *Georgia-Pacific*, as Columbia does not contend that the stipulated 1% royalty rate is inappropriate under the *Georgia-Pacific* factors. *See Georgia-Pacific Corp.*, 318 F. Supp. 1116. In any event, after analyzing the arguments that have been presented and the evidence before it, the Court finds that the *Georgia-Pacific* factors do not provide a basis to deviate from the royalty rate determined by the jury.

The Court uses its "broad range of judgment in evaluating [these] factors." *Georgia-Pacific Corp.*, 318 F. Supp. at 1120. The Court first considers Columbia's improved bargaining position. *Id.* at 1121. *See also XY, LLC*, 890 F.3d at 1297 (defining the parties' bargaining position as a factor to consider in this inquiry). "Both infringement and validity were merely assumed [previously] but are now settled following . . . trial. The fact that [Columbia] comes to the post-trial negotiating table with a favorable verdict in hand against an active infringer selling a more established product provides [Columbia] an improved bargaining position." *Biedermann Techs. GmbH & Co. KG*, 2023 WL 2329746, at *2. *See also XY, LLC*, 890 F.3d at 1297 ("When patent claims are held to be not invalid and infringed, this amounts to a substantial shift in the bargaining position of the parties.") (internal citations omitted).

While the Court recognizes Columbia's improved bargaining position, it does not find that this bargaining position is sufficient to justify an increase in the jury's royalty rate, largely

### 4. The 1% Royalty Rate Applies to Products that are not Colorably Different

Columbia also argues that this 1% royalty should not only apply to products that the jury found to be infringing, but to "any product that is not colorably different with respect to Columbia's Asserted Patents." (ECF No. 1264, at 2.) Columbia posits that this will prevent Norton from avoiding its obligations by making a trivial change in the product, such as changing its name. (ECF No. 1265, at 12.) Norton opposes this contention, arguing that the parties have already reached a stipulation to address this problem. The parties have stipulated:

> If Norton contends that it has removed infringing functionality from products sold after the date of judgment, or redesigned products such that Norton contends the products no longer infringe the Asserted Patents, Norton will provide written notice to Columbia. The Parties shall meet and confer in good faith to attempt to resolve any disputes about any such claimed removal or redesign, including any request to produce discoverable evidence that may be relevant to any such claim.

(ECF No. 1247, at 4.) Norton states that this stipulation is sufficient to address the problem of making a trivial change in the product and that applying a royalty to non-existent products is not proper at this time. (ECF No. 1278, at 4, 5, 7.) The Court disagrees with Norton.

The Federal Circuit has affirmed a district court "award of ongoing royalties on post-verdict sales of products that were actually found to infringe or are not colorably different." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1300 (Fed. Cir. 2019). A court sitting in this district has also awarded royalties of this kind. *See I/P Engine, Inc.*, 2014 WL 243157, at *5 (finding

---

because of its consideration of the market and economic circumstances. *XY, LLC*, 890 F.3d at 1297 ("The requirement to focus on [these] changed circumstances is particularly important when, as in this case, an ongoing royalty effectively serves as a replacement for whatever reasonable royalty a later jury would have calculated in a suit to compensate the patentee for future infringement.") Columbia has not presented any "evidence demonstrating a critical change in the market or other economic factors that would support a substantial increase to the royalty [rate] as determined by the factfinder." *See Biedermann Techs. GmbH & Co. KG*, 2023 WL 2329746, at *2. Thus, without further support to justify the change in circumstances since the verdict, the Court cannot find that the jury's royalty rate should be adjusted on this basis.

14

ongoing royalties appropriate so long as Defendants continue to use the modified system, because the "modified system is nothing more than a colorable variation of the system adjudged to infringe"). The Court finds these cases persuasive. Because sales of products that are not more than colorably different often constitute infringement, *see Tivo Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011), and royalties apply to sales of infringing products, it follows that royalties may extend to products not colorably different. *See Apple Inc. v. Samsung Elecs. Co.*, No. 12CV00630, 2014 WL 6687122, at *15 (N.D. Cal. Nov. 25, 2014) (finding royalties apply to products found to infringe and those no more than colorably different therefrom). The Court concludes that the parties' stipulation does not prevent the imposition of ongoing royalties to products that are not colorably different.

Thus, the Court GRANTS IN PART Columbia's Motion and FINDS that the 1% ongoing royalty rate will apply to any products found to be infringing by the jury *and* any product that is not colorably different with respect to the patents. (ECF No. 1264.)

### III. Conclusion

For the foregoing reasons, the Court will GRANT IN PART and DENY IN PART Columbia's Motion for prejudgment interest, post-judgment interest, supplemental damages, and post-judgment running royalties. (ECF No. 1264.) Specifically, the Court GRANTS the Motion as to awards of prejudgment interest and post-judgment interest. (ECF No. 1264.) With regards to interest, the terms of the parties' stipulation will control. Additionally, the Court GRANTS the Motion as to the application of the ongoing royalty rate to products found to be infringing by the jury, as well as to any product that is not colorably different with respect to the patents. (ECF No. 1264.) But the Court DENIES the Motion as to the enhancement of supplemental damages in the form of reasonable royalties. (ECF No. 1264.)

Date: September 30, 2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

16