IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

     Plaintiff,

v.

GEN DIGITAL INC.,
f/k/a SYMANTEC CORPORATION,
f/k/a NORTONLIFELOCK, INC.,

     Defendant.

Civil Action No. 3:13cv808
UNDER SEAL

### MEMORANDUM OPINION

This matter comes before the Court on Defendant NortonLifeLock Inc.'s ("Norton")[1]

Motion for a New Trial (the "Motion for a New Trial"), filed pursuant to Rule 59(a)[2] of the

Federal Rules of Civil Procedure. (ECF No. 1241.) Plaintiff, the Trustees of Columbia

University in the City of New York ("Columbia"), filed its Opposition (ECF No. 1276) to the

Motion for a New Trial, and Norton submitted its Reply in Support thereof (ECF No. 1286).

This matter is ripe for adjudication. The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would not

aid the decisional process. For the reasons that follow, the Court will DENY Norton's Motion

for a New Trial.

---

[1] The Court previously issued a Notice explaining that it will refer to the Defendant as "Norton" on a default basis, and why. (ECF No. 1328.)

[2] This rule provides in relevant part: "The court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a).

## I.  Factual and Procedural Background

This case has been pending for nearly ten years.  It was litigated in this district court in 2014, after which each party took a different path to appeal the Court's decision to the United States Court of Appeals for the Federal Circuit.  On remand, a 15-day jury trial eventually occurred.  The jury awarded $185,112,727.00 in damages to compensate Columbia University for Norton's infringement of two patents developed by Professors Salvatore Stolfo and Angelos Keromytis at Columbia University.  (ECF No. 1206, at 4.)

The $185,112,727.00 damages verdict included $94,037,265.00 in royalties for sales to non-U.S. customers, and $91,075,462.00 in royalties "for sales to U.S. customers."  (ECF No. 1206, at 5 (alterations omitted).)

A third patent developed by the two Columbia professors spawned correction of inventorship and fraudulent concealment claims.  The jury concluded that, along with a Norton employee, Professors Stolfo and Keromytis were joint inventors of the third patent.  (ECF No. 1206, at 6.)  However, the jury did not find that the two professors were the sole inventors of the patent, or that Norton committed fraudulent concealment regarding this last patent.  (ECF No. 1206, at 5–6.)

Norton's Motion for a New Trial seeks a new trial on multiple grounds.  First, Norton contends that "erroneous" evidentiary rulings issued before and during trial impeded its ability to present any damages case or rebut Columbia's damages and that it was prejudiced by an "erroneous" jury instruction on foreign sales.  Norton seeks a new trial on damages on those grounds.  Second, Norton seeks a new trial on both liability and damages based on its contention that the jury's verdict was unduly influenced by curative instructions issued by the Court during

trial. Finally, Norton seeks a new trial based on the issues raised in its Rule 50(b) motion, arguing that the jury's verdict was against the clear weight of evidence.

The bulk of Norton's Motion for a New Trial rehashes arguments previously made, often citing and incorporating its prior briefing on *Daubert* motions, motions *in limine*, or other pretrial issues. The Court has already considered and rejected those same arguments prior to and during trial, and Norton offers nothing further to suggest a different outcome post-trial. This alone supports a denial of the Motion for a New Trial. *See, e.g.*, *Helm Builders, LLC v. United Bank & Trust Co.*, No. 1:11CV187, 2014 WL 1921088, at \*4 (M.D.N.C. May 14, 2014) (denying motion for a new trial where the moving party "appear[ed] to merely reargue its position regarding" evidentiary rulings previously made during the final pretrial conference); *Gen. Tech. v. Conoco, Inc.*, No. CIV. A. 99-1238-A, 2000 WL 1585655, at \*1 (E.D. Va. July 11, 2000), *aff'd* 18 F. App'x 906 (Fed. Cir. 2001) (describing a motion for a new trial as "simply a rehash of the rulings made during the trial as to claim determinations, instructions to the jury and motions for judgment as a matter of law" and denying it "for the reasons previously stated").

In addition, Norton's Motion for a New Trial largely challenges the Court's discretionary gatekeeping decisions regarding evidentiary matters, reliability of experts, and jury instructions. The Court has "broad discretion to manage jury trials," and that includes wide latitude in ruling on jury instructions, evidentiary matters, discovery rulings, and expert testimony. *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 572 (4th Cir. 2017); *see also Sardis v. Overhead Door Corp.*, 10 F.4th 268, 275 (4th Cir. 2021). Norton simply does not show that the Court erred in issuing the rulings challenged in its Motion for a New Trial.

In any event, Norton also fails to satisfy the demanding standard for a new trial. The Court finds that the jury's verdict was neither against the clear weight of the evidence nor based

3

on false evidence. And the evidentiary errors asserted by Norton did not result in a miscarriage of justice. Indeed, Rule 61 of the Federal Rules of Civil Procedure expressly provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . ." Fed. R. Civ. P. 61. This Rule requires the Court to "disregard all errors and defects that do not affect any party's substantial rights." *Id.* Norton has failed to establish that any alleged error impacted its substantial rights or "was so grievous as to have rendered the trial unfair." *Roop v. Desousa*, No. 3:21CV675, 2023 WL 2434281, at *11 (E.D. Va. Mar. 9, 2023) (internal citations omitted).

For these reasons and those that follow, the Court will deny Norton's Motion for a New Trial.

## II. Standard of Review

In a patent case, the law of the regional circuit governs motions for a new trial under Rule 59(a). *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 638 (Fed. Cir. 2011); *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1348 (Fed. Cir. 1999) ("Finally, regarding nonpatent issues, we have generally conformed our law to that of the regional circuits, without regard to the relationship of the issue to our exclusive jurisdiction, when there is existing and expressed uniformity among the circuits. Indeed, in such circumstances, a choice of different law might be problematic.") (internal citations omitted). Rule 59(a) permits the Court to grant such a motion "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). As interpreted by the United States Court of Appeals for the Fourth Circuit, "[a] district court may grant a new trial only if the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice." *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th

4

Cir. 2017).  Unlike a Rule 50(b) motion, the Court "may weigh the evidence and consider the

credibility of the witnesses" in considering a Rule 59(a) motion for a new trial.  *Poynter by*

*Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989).  However, "[t]he decision to grant or deny

a new trial is within the sound discretion of the district court."  *Cline v. Wal-Mart Stores, Inc.*,

144 F.3d 294, 301 (4th Cir. 1998).

### III. Analysis

### A.    Norton Is Not Entitled to a New Trial on Damages

#### 1.    The Court did not err in ruling on the *Daubert* motions and motions *in limine*

Norton seeks a new trial on damages based on what it characterizes as "erroneous"

evidentiary rulings made before and during trial.  (ECF No. 1241, at 1; ECF No. 1246, at 8; ECF

No. 1245, at 8 (sealed).)  For many of the issues raised by Norton, the Court arrived at its

decision after considering fulsome briefing and arguments from the parties.  For example,

Norton contends the Court erred in:  (1) precluding Norton from relying on data that post-dated

the hypothetical negotiations which in turn prevented Norton's technical apportionment expert,

Dr. Jaeger, from testifying regarding his apportionment percentages;[3] (2) excluding testimony

---

[3] According to Norton, "[t]he Court acknowledged that [sic] the full impact of these rulings by entering an Order preventing Norton from presenting *any* ultimate conclusions regarding damages."  (ECF No. 1246, at 11; ECF No. 1245, at 11 (citing ECF No. 1086) (sealed).)  But Norton mischaracterizes the Court's Order.  The Order states:

> For the reasons stated from the bench—and based on the parties' agreement during the [Final Pretrial] Conference—the Court ORDERS that at trial, neither Mr. Hosfield nor any other witness may present an ultimate damages figure *while relying on Dr. Jaeger's (excluded) damages testimony*.  This includes phrases such as '*de minimis*' or 'nominal.'  Norton may cross-examine Columbia's experts on the issue of damages and may argue at closing that Columbia has not met its burden of proving damages, but Norton may not treat any damages figures based on Jaeger's excluded testimony as if they are part of the evidentiary record.

and evidence regarding Columbia's unsuccessful licensing efforts and past licenses; (3) excluding evidence of prior art and invalidity of claims of the patents-in-suit as error; and (4) excluding evidence of Norton's own patent portfolio. (ECF No. 1246, at 9–10; ECF No. 1245, at 9–10 (sealed).)

Norton acknowledges that the parties extensively briefed these issues in pre-trial filings, both *Daubert* motions and motions *in limine*. (ECF No. 1246, at 11, 15, 16; ECF No. 1245, at 11, 15, 16 (referring to prior arguments from its opposition briefs) (sealed).) As Columbia's Opposition points out, the parties briefed these same issues through *Daubert* motions and motions *in limine* in 2020, argued these issues during a three-day *Daubert* hearing in June 2021, and then re-briefed these issues in motions *in limine* in 2022. (ECF No. 1276, at 12.) (*See also* ECF Nos. 376-1 (sealed), 376-17 (sealed), 416; 420 (sealed), 421, 425 (sealed), 448-1 (sealed), 448-3 (sealed), 488-1 (sealed), 488-2 (sealed), 522, 526 (sealed), 527, 531 (sealed), 653, 654, 655, 753-1 (sealed), 753-2 (sealed), 754, 756, 787 (sealed), 793 (sealed), 794, 860-1 (sealed), 860-2 (sealed), 861, 862.) After fully considering the parties' arguments, the Court issued detailed written opinions. (ECF Nos. 717 (sealed), 739 (sealed), 741 (sealed), 891 (sealed), 899 (sealed), 900 (sealed), 903 (sealed), 904 (sealed), 905 (sealed), 907 (sealed), 911 (sealed), 912 (sealed), 1014, 1017, 1019, 1020, 1022.) Norton thereafter sought reconsideration of several issues, which the Court denied. (ECF Nos. 922, 926 (sealed), 927, 945.)

Against this backdrop, Norton's Motion for a New Trial, which again largely rehashes its prior arguments, fails to alter this Court's prior rulings or present any grounds for a new trial. Therefore, for the reasons previously stated by the Court when ruling on these issues raised

---

(ECF No. 1086, at 1 (emphasis added).) The Court's Order properly restricted damages evidence only to the extent it was based on excluded testimony.

through pre-trial motions, and for those stated in Columbia's Opposition (ECF No. 1276), the Court denies Norton's Motion for a New Trial on these grounds.

### 2. The Court properly exercised its discretion in restricting improper cross-examination and excluding improper closing arguments

Norton next complains that the Court erred in restricting Norton's cross-examinations and closing arguments based on its rulings on *Daubert* motions and motions *in limine*. (ECF No. 1246, at 16–17; ECF No. 1245, at 16–17 (sealed).) Norton claims these restrictions prejudiced it by preventing it from responding to Columbia's damages case, and thus, warrant a new trial. (ECF No. 1246, at 16–17; ECF No. 1245, at 16–17 (sealed).) Far from constituting error, the Court's rulings on these issues simply enforced its earlier decisions on *Daubert* and motion *in limine* issues, prevented Norton from sidestepping the same, and mitigated prejudice to Columbia caused by Norton's improper efforts to skirt the line. Norton cannot show any error in these rulings, nor can it show an impact on its substantial rights such that a new trial on damages would be justified.

### a. Cross-Examination of Dr. Cole

The Court did not err in striking inadmissible, unreliable, and confusing testimony and demonstrative exhibits from Norton's cross-examination of Dr. Eric Cole. Moreover, it properly issued a curative instruction to mitigate resulting prejudice to Columbia.

Dr. Cole testified for Columbia as an expert in the cybersecurity industry. (ECF No. 1214, at 18, 26; Apr. 19 Trial. Tr. 1421:4–6, 1429:18–23.) He was qualified to conduct the apportionment analysis in this case and to opine as to his methodology and conclusions. (ECF No. 737, at 5 (sealed).) On direct examination, Dr. Cole provided a well-reasoned qualitative apportionment analysis in anticipation of Dr. Ryan Sullivan, another expert called by Columbia,

calculating actual figures. (*See, e.g.*, ECF No. 1214, at 76–83; Apr. 19 Trial Tr. 1479:11–1486:12.)

At trial, during Dr. Cole's cross-examination, Norton used a demonstrative exhibit to show "some of the features that are in a Norton AntiVirus." (ECF No. 1214, at 210; Apr. 19 Trial Tr. 1613:4; ECF No. 1149-3.) The demonstrative highlighted the malware detection feature and then purported to show all other features in Norton AntiVirus. (ECF No. 1214, at 210–11; Apr. 19 Trial Tr. 1613:12–1614:1.) Norton's counsel used this demonstrative to challenge Dr. Cole's assignment of value for the product features. Dr. Cole acknowledged that he assigned 90 percent of the value of the Norton AntiVirus product to the malware protection and 10 percent to all other features but questioned the accuracy of the demonstrative, stating "I believe a few of these [other non-malware features] might not actually be a Norton AntiVirus." (ECF No. 1214, at 211; Apr. 19 Trial Tr. 1614:3–6.)

Norton also asked certain questions in an effort to get Dr. Cole to adopt a "percentage of the value of protection . . . contributed by BASH machine-learning" as found by a lay witness, Mr. Nachenberg, for use in presenting a damages calculation. (ECF No. 1214, at 241; Apr. 19 Trial Tr. 1644:21–22.) Dr. Cole acknowledged that Mr. Nachenberg provided guesses as to that value, answering: "He [Mr. Nachenberg] says, If I were to guess, 4 percent of the 60 to 70." (ECF No. 1214, at 241; Apr. 19 Trial Tr. 1644:24–25.) Dr. Cole further made clear that he did not rely on those numbers, stating: "Once again, in the report, I don't rely on it. I use it as a spot check in 2019, as a validation point. So I don't rely on it. I just use it as a validation." (ECF No. 1214, at 242; Apr. 19 Trial Tr. 1645:5–7.) Norton's counsel then wrote the four percent figure on a demonstrative for the jury's consideration as the level 2 apportionment figure. (ECF No. 1214, at 242; Apr. 19 Trial Tr. 1645:11–14; ECF No. 1149-1; ECF No. 1152-1.) Dr. Cole

8

then states, "Just for the record, I think this is very misleading on how it's being written, but he

did say 4 percent that I guess," (ECF No. 1214, at 242; Apr. 19 Trial Tr. 1645:15–17), and

Columbia's counsel reiterated for the record, "Dr. Cole just testified he didn't rely on this."

(ECF No. 1214, at 242–43; Apr. 19 Trial Tr. 1645:25–1646:1.)  The Court then intervened,

stating:

> Right.  I'm going to say, you know, he's corrected you many, many times.
> You keep saying you relied on it, and he keeps saying he did not.  So you're putting
> the word 'rely' into his mouth, and I've let you do it for about a half an hour.  And
> I'm going to ask you to stop doing that please.

(ECF No. 1214, at 243; Apr. 19 Trial Tr. 1646:2–8.)[4]

Norton then moved on to another line of questioning and confirmed that Dr. Cole

"apportioned 35 percent in [his] 2014 report on level 3."  (ECF No. 1214, at 247; Apr. 19 Trial

Tr. 1650:9.)  But Norton's counsel soon returned to the four percent figure "to just do some

math," through another demonstrative exhibit.  (ECF No. 1214, at 248; Apr. 19 Trial Tr.

1651:25; ECF No. 1149-2, ECF No. 1152-2.)  Norton's counsel stated:

> . . . . I understand you may disagree with the premise, but I want to do some
> math.
> If we were to multiply, on the business, your 2014 report number of 60
> percent times Mr. Nachenberg's testimony about 4 percent, and even if we use 35
> percent here, the number is 0.84 percent.  Do I have that math?  Look okay?  I can
> do it on a calculator.  But do you take me on that?

(ECF No. 1214, at 248–49; Apr. 19 Trial Tr. 1651:25–1652:7.)  Dr. Cole responded: "I don't

have a calculator.  Generally, the math seems okay.  But for the record, I don't agree with those

---

[4] The Court had already issued a warning to Norton's counsel on this very issue outside of the jury's presence, stating: "I'm a little concerned about how you have presented some of your questions to the witnesses.  Cross-examination is fair, but it is not fair if you misrepresent what a witness has said."  (ECF No. 1214, at 9; Apr. 19 Trial Tr. 1412:8–12.)  The Court further warned, "[I]t just has to stop especially with experts.  Do not present things as a predicate of a question that are inaccurate."  (ECF No. 1214, at 10; Apr. 19 Trial Tr. 1413:16–18.)

numbers. You're mixing apples and oranges and just sort of putting random numbers on the screen." (ECF No. 1214, at 249; Apr. 19 Trial Tr. 1652:13–17.)

Norton's counsel then "ran the numbers" on his phone, this time replacing 53 percent and then 70 percent for 60 percent, to arrive at a range of 0.74 to 0.98 percent. (ECF No. 1214, at 250; Apr. 19 Trial Tr. 1653:10–18.) When asked if he agreed with the math, Dr. Cole responded: "Generally on the math, but once again, you're just putting random numbers and just doing random calculations. So to me there's no foundation for what you just put up there." (ECF No. 1214, at 250; Apr. 19 Trial Tr. 1653:19–22.)

After excusing the jury for the day, the Court warned counsel again to stop giving improper foundational questions and displaying misleading demonstratives. (ECF No. 1214, at 252–54; Apr. 19 Trial Tr. 1655:15–1657:9.) Specifically, the Court said: "You must have asked him [Dr. Cole] 10 times that he relied on it, and that's okay in some cross-examination, but you can't keep saying it when he's correcting you 15 or 20 times." (ECF No. 1214, at 252–53; Apr. 19 Trial Tr. 1655:25–1656:3.) Columbia's counsel also objected to the demonstrative which contained Norton's counsel's math without any factual predicate or a witness endorsing the figures. (ECF No. 1214, at 254–55; Apr. 19 Trial Tr. 1657:13–1658:7.) The Court asked for briefing on this issue. (ECF No. 1214, at 255–56; Apr. 19 Trial Tr. 1658:21–1659:4.)

In briefing the issue, Columbia objected to the line of questioning and the demonstratives as "in effect, offering counsel's testimony about what an appropriate apportionment analysis would be in this case" without any foundation or basis in admissible evidence. (ECF No. 1150, at 1.) Norton argued that its alternative calculations shown through demonstrative exhibits were proper in part because the four percent number came into evidence without objection during Mr. Nachenberg's testimony. (ECF No. 1149, at 3.)

10

After considering the parties' submissions, the Court issued a written ruling sustaining Columbia's objection. (ECF No. 1155.) Specifically, the Court found that Mr. Nachenburg's four percent "guess" was inadmissible and unreliable and therefore could not be used to support any apportionment estimate for consideration by the jury. (ECF No. 1155, at 5.) Because Dr. Cole refused to adopt counsel's numbers, their "inappropriate suppositions" reflected on the demonstrative exhibits "in no way [would] assist the trier of fact." (ECF No. 1155, at 6.) The Court also noted that "Norton's 'outcome' of what counsel said *could be* a reasonable royalty fell regrettably close to the near-zero apportionment estimate from their expert, Dr. Jaeger, that this Court excluded" based on legal error. (ECF No. 1155, at 6 n.3 (citing ECF No. 905 (sealed)).) The Court also found that the demonstrative purportedly showing Norton AntiVirus features was misleading given Dr. Cole's testimony as to the factual inaccuracy. (ECF No. 1155, at 7.) The Court found that the improper line of questioning and demonstrative exhibits created "immense prejudice" to Columbia, which could not be cured by striking the testimony and the demonstrative exhibits alone. (ECF No. 1155, at 7.) Therefore, the Court also found a limiting instruction necessary. (ECF No. 1155, at 8.)

The Court issued the following instruction to the jury:

> To the extent that Norton's cross-examination of Dr. Cole on Tuesday suggested that any kind of apportionment number had been identified during cross-examination, including the number suggested to Dr. Cole near the end of the testimony, and those written on demonstratives by Norton's counsel, they are stricken.
> And I instruct you to disregard them in their entirety.
> The evidence and testimony discussed during cross-examination included reliance on inadmissible and inapplicable evidence that cannot be used to assess apportionment and damages.
> Any notes taken about that evidence shall be disregarded as well.
> This instruction does not pertain to the testimony that Dr. Cole gave during Columbia's direct examination, and the redirect examination that will occur today.

(ECF No. 1216, at 15–16; Apr. 21 Trial Tr. 1683:21–1684:13.)

For the reasons stated above and in the Court's Memorandum Order on this issue (ECF No. 1155), the Court properly struck demonstrative exhibits and the related line of questioning because they presented inadmissible and irrelevant evidence without foundation and were based on a speculative guess from a lay witness as to apportionment damages. The Court's decision was legally correct and necessary to "control[] the proper scope of cross-examination," for which "district court[s] enjoy[] wide discretion." *Ferguson v. Nat'l Freight Inc.*, 692 F. App'x 756, 758 (4th Cir. 2017). *See also Helm Builders, LLC*, 2014 WL 1921088, at *5 (quoting *U.S. v. Cole*, 491 F.2d 1276, 1278 (4th Cir. 1974)) ("Indeed, '[i]t is, of course, settled beyond doubt that in a federal court the judge had the right, and often an obligation, to interrupt the presentations of counsel in order to clarify misunderstandings or otherwise insure that the trial proceeds efficiently and fairly.'").

In part because Norton's counsel repeatedly disobeyed the Court's rulings, the Court found that striking the exhibits and questioning alone did not cure the prejudice to Columbia. The Court therefore in its discretion properly issued the curative instruction. *See United States v. Beasley*, 824 F. App'x 154, 156 (4th Cir. 2020). While Norton repeats its earlier objections as to these evidentiary rulings, it fails to show error, prejudice, or any grounds for a new trial.

### b.   Cross-Examination of Dr. Sullivan

Norton seeks a new trial on damages based on restrictions imposed on its cross-examination of Dr. Sullivan as well. (ECF No. 1246, at 26–27; ECF No. 1245, at 26–27 (sealed); ECF No. 1216, at 112–21; Apr. 21 Trial Tr. 1780–1789.) Dr. Sullivan, Columbia's expert in economics, testified to the calculation of damages and reasonable royalty for patent

12

infringement, and damages for fraudulent concealment. (ECF No. 1216, at 37; Apr. 21 Trial Tr. 1705:14–23.)

In its Motion for a New Trial, Norton first contends the Court prohibited Norton from cross-examining Dr. Sullivan about differences between figures presented in a 2014 report versus a 2019 report. (ECF No. 1246, at 26–27; ECF No. 1245, at 26–27 (sealed).) Norton argues that the Court made a credibility finding regarding Dr. Cole's testimony and, based on that determination, prohibited Norton from asking Dr. Sullivan about the differences in his reports.

Norton mischaracterizes the Court's ruling. While the Court disallowed counsel from making calculations based on unendorsed, unreliable, and inadmissible predicates for the same reasons the Court struck the Dr. Cole line of questioning discussed above, the Court allowed questioning of the witness about the differences in the 2014 versus 2019 reports. (ECF No. 1216, at 120–21; Apr. 21 Trial Tr. 1788:16–1789:16.) For the same reasons discussed above in relation to Dr. Cole's examination, the Court did not err in issuing this ruling.

Norton also contends that the Court improperly precluded Norton's counsel from using "math" during its questioning of Dr. Sullivan to show how Columbia's damages claim would be impacted if the patented technology was given the same value across accused products rather than greater value for more expensive products. (ECF No. 1246, at 27; ECF No. 1245, at 27 (sealed); ECF No. 1216, at 121–29; Apr. 21 Trial Tr. 1789–97.) Columbia objected to this line of questioning on the basis that it wrongly assumed that SONAR/BASH was the smallest saleable patent practicing unit ("SSPPU") and had the same value across all of Norton's accused products, a contention rejected by Columbia's experts. (ECF No. 1216, at 125–26; Apr. 21 Trial Tr. 1793:11–1794:18.)

The Court allowed Norton's counsel "to try to get Dr. Sullivan to adopt" that theory, "[a]nd if he does, then he opens the door" to that line of questioning. (ECF No. 1216, at 128; Apr. 21 Trial Tr. 1796:10–12.) But the Court warned that if Dr. Sullivan rejected that theory as a factual predicate, "then you have to stop." (ECF No. 1216, at 128; Apr. 21 Trial Tr. 1796:12– 13.) The Court clarified that because "no other expert adopts" the theory, and because it lacks factual predicate and is inadmissible, counsel "cannot introduce math based on that theory" if Dr. Sullivan were to reject it. (ECF No. 1216, at 127; Apr. 21 Trial Tr. 1795:9–16.) It was certainly in the Court's discretion to exclude such a line of questioning based on inadmissible, confusing, and prejudicial math from counsel. This is especially true because the Court had already denied Norton's earlier *Daubert* motion seeking to strike portions of Dr. Sullivan's testimony for failing to apportion the patented technology to the SSPPU. (ECF No. 737, at 6–7, 20–21 (sealed).) In denying Norton's motion, the Court found that the SSPPU method Norton pursued was not the only way to measure apportionment. (ECF No. 737, at 20–21 (sealed).)

### c. Closing Arguments

Norton next seeks a new trial on damages based on what it characterizes as prejudicial restrictions imposed by the Court on Norton's arguments during closing. (ECF No. 1246, at 27– 28; ECF No. 1245, at 27–28 (sealed).) Specifically, Norton raises the following issues as error: (1) the Court's exclusion of argument based on Mr. Nachenberg's four percent number; (2) the Court's ruling preventing Norton from arguing that no evidence showed that anyone other than Norton used the infringed technology; and (3) the Court's decision that Norton could not discuss any specific valuation in its closing argument. (ECF No. 1246, at 27–28; ECF No. 1245, at 27– 28 (sealed).) Each argument fails.

14

The Court has already addressed the first issue extensively in connection with Norton's challenges to the Court's evidentiary rulings during Dr. Cole's cross-examination. Prior to closings, the Court again heard argument as to this issue. (ECF No. 1218, at 328–47; Apr. 25 Trial Tr. 2492–2511.) For the same reasons that the Court struck testimony related to the four percent figure during Dr. Cole's cross-examination, the Court correctly found "that Norton cannot mention or use the 4% figure testified to by Carey Nachenberg in its closing argument." (ECF No. 1171.) The Court incorporated its earlier ruling which deemed the number, characterized by the witness himself as a "guess," inadmissible and unreliable. (ECF No. 1171 (citing ECF No. 1155).) The Court further found the figure "irrelevant because it is speculative and pertains to BASH machine learning and not BASH in its entirety." (ECF No. 1171.) Because no expert relied on the four percent figure in making a reasonable royalty calculation and given its speculative and irrelevant nature, the Court precluded Norton from relying on it to support a royalty analysis. (ECF No. 1171.) This certainly cannot serve as a ground for a new trial.

As to the second issue, Norton contends that it should have been allowed to argue that no one but Norton used the infringed technology because that would support minimizing damages. (ECF No. 1246, at 28; ECF No. 1245, at 28 (sealed).) Norton argues that Columbia opened the door to such an argument because its own witness testified that the technology was in high demand and widely adopted in the industry. (ECF No. 1246, at 28; ECF No. 1245, at 28 (sealed).) The Court prohibited any argument that "no one used the technology" as placing "an implicit [and infeasible] requirement for [Columbia] to look for all technology that might be infringing." (ECF No. 1170.) But the Court allowed Norton to argue that Columbia had not *licensed* the technology, including making arguments that "the technology might not be a game-

15

changer because of the lack of demonstrated use." (ECF No. 1170.)  Norton has neither shown error nor prejudice from that ruling.

Finally, Norton contends that the Court prohibited it from discussing "any specific valuation in its closing argument, even if based on admitted evidence, including evidence elicited through cross-examination." (ECF No. 1246, at 28; ECF No. 1245, at 28 (sealed).)  Norton cites ECF No. 1170 for this purported exclusion but mischaracterizes the Court's ruling.  (ECF No. 1246, at 28; ECF No. 1245, at 28 (sealed).)  That Text Order provides in relevant part:

> Norton can argue that no licenses were entered. . . .  As to value, however, any argument should be constrained to the lack of licensing not the value of a license. Norton can argue that the technology might not be a game-changer because of the lack of demonstrated use, but the basis to speculate as to why that is so cannot identify a specific valuation because that is not supported by the record.

(ECF No. 1170.)  This ruling correctly precluded Norton from proposing a specific valuation number based on the lack of licenses because such a calculation found no support in the record.[5] Again, this is not error and cannot serve as the basis for a new trial on the issue of damages.

### 3.    The Court did not err in instructing the jury on foreign sales

Norton also requests a new trial on damages based on its contention that the Court issued an erroneous jury instruction on foreign sales.  (ECF No. 1241, at 1; ECF No. 1246, at 8; ECF No. 1245, at 8 (sealed).)  The Court has already addressed and rejected this argument through numerous filings, including a motion to strike, objections to jury instructions, and a motion to reconsider the Court's ruling on this issue.  (ECF Nos. 737 (sealed), 926 (sealed), 927, 945,

---

[5] The lack of record evidence about valuation lands entirely at Norton's feet.  Norton instructed their "apportionment" expert to render, improperly, what was essentially damages testimony.  (ECF No. 1020, at 1–2; ECF No. 905, at 1–2 (sealed).)  Dr. Jaeger's expertise is technical, not economics.  (ECF No. 1020, at 1, 3; ECF No. 905, at 1, 3 (sealed).)  Moreover, Dr. Jaeger testified that he was told (improperly) by counsel not to ignore data after 2014, which postdates the hypothetical negotiations.  (ECF No. 1020, at 2; ECF No. 905, at 2 (sealed).)

1048-1, 1066-1.)  The Court has reiterated its findings in the denial of Norton's Renewed Motion

for Judgment as a Matter of Law, also issued today.  (ECF No. 1338.)  Norton's post-trial motion

fails to alter the Court's viewpoint on this matter.  The Court properly instructed the jury on

whether any damages could include sales to customers located outside of the United States.  (*See*

ECF No. 1220, at 38–39; Apr. 27 Trial Tr. 2841:23–2842:18.)  Therefore, for the reasons

previously stated in the Court's rulings on this issue and those stated in Columbia's Opposition,

the Court denies Norton's Motion for a New Trial on this ground.[6]

### B.       Norton Is Not Entitled to a New Trial on Liability and Damages Based on the Court's Curative Instructions

Norton next contends it should receive a new trial on liability and damages because "the

jury's verdict was unduly influenced by this Court's curative instructions throughout the trial."

(ECF No. 1241, at 1; *see also* ECF No. 1246, at 30–32; ECF No. 1245, at 30-32 (sealed).)

---

[6] Norton attempts to bolster this argument by claiming that the jury verdict form "place[d] undue emphasis on Columbia's claim for foreign sales damages by laying out each basis for awarding foreign sales."  (ECF No. 1246, at 30 (emphasis in original) (internal citations omitted); ECF No. 1245, at 30 (sealed); *see also* ECF No. 1208, at 147; Apr. 11 Trial Tr. 147:7–21.)  The Court interprets Norton's argument as objecting to questions 9(a)-(c) of the jury's verdict form, which state:

> (a) Did Columbia University prove by a preponderance of the evidence that the infringing product sold to customers located outside of the United States was made in the United States?
> (b) Did Columbia University prove by a preponderance of the evidence that the infringing product sold to customers located outside of the United States was distributed from the United States?
> (c) Did Columbia University prove by a preponderance of the evidence that Norton's sales to foreign customers were sales that substantially occurred in the United States?

(ECF No. 1206.)  The Court included questions 9(a)-(c) in the verdict form to ensure the jury identified its bases for any damages awarded for foreign sales.  In fact, the jury found in the affirmative for the first two questions, and in the negative for the third.  (ECF No. 1206.)

"Rule 49 of the Federal Rules of Civil Procedure affords the trial judge wide discretion in fashioning an appropriate verdict sheet."  *Helm Builders, LLC*, 2014 WL 1921088, at *6 (citing cases).  The Court properly exercised its discretion in including these questions.  Thus, the Court denies Norton's Motion for a New Trial on this ground.

Specifically, Norton complains of two things: (1) the curative instruction issued regarding Norton's improper cross-examination of Dr. Cole; and (2) the Missing Witness Instruction included in the jury's charge. The Court addresses each in turn.

Regarding the instruction relating to Dr. Cole, and as discussed above, the Court properly issued a curative instruction to address Norton's inappropriate questions on cross-examination. Norton, however, complains that the curative instruction had the broader effect of improperly tainting Norton in the eyes of the jury. (ECF No. 1246, at 32; ECF No. 1245, at 32 (sealed).) This argument fails.

The Court, in its broad discretion, issued the curative instruction prior to Dr. Cole's redirect. As previously found by the Court, Norton's improper line of questioning in defiance of the Court's rulings, and Norton's misleading demonstrative exhibits, rendered that instruction necessary to ameliorate prejudice to Columbia and jury confusion. Norton cannot now use it as a ground for a new trial.

Turning to the Missing Witness Instruction, Norton challenges the following instruction included in the jury charge:

> Dr. Marc Dacier's deposition testimony was presented to you by Columbia as part of its case in chief. You have heard testimony that, after the date his deposition was given, Dr. Dacier made certain statements to Dr. Stolfo and Dr. Keromytis about Norton's conduct in identifying inventors on the application of the '643 Patent. Because Norton did not call Dr. Dacier in its case to address any events that occurred after 2014, you may, but are not required to, infer that his testimony would have been unfavorable to Norton.

(ECF No. 1220, at 14; Apr. 27 Trial Tr. 2817:11–21.)[7]

The Court discusses this in depth in the Opinion on Columbia's Motion for an Order to Show Cause, (ECF No. 1331), also entered today, and incorporates that decision and rulings into

---

[7] The '643 Patent refers to Patent Number 8,549,643.

this opinion. As Norton acknowledges, the parties had multiple opportunities to brief both the issue of whether a Missing Witness Instruction should be given and how that instruction should read. (ECF No. 1246, at 31 n.8; ECF No. 1245, at 31 n.8 (citing ECF Nos. 1048-1, 1085, 1088-1, 1096, 1103, 1123, 1126, and 1139) (sealed).)  Norton further recognizes "that the Court has already issued several rulings on this issue." (ECF No. 1246, at 31 n.9; ECF No. 1245, at 31 n.9 (citing ECF Nos. 1083, 1092, 1099, 1116, 1130, 1167) (sealed).)  The Court also heard extensive argument from the parties on this issue both before and during trial. (*See generally* ECF No. 1100; ECF No. 1218, at 309–21; Apr. 25 Trial Tr. 2473–85; ECF No. 1219, at 193–95; Apr. 26 Trial Tr. 2711–13.)

The Court's prior rulings on this issue, as well as the Court's Memorandum Opinion and Order on Columbia's Motion to Show Cause, provide a summary of the factual and procedural background which justified the issuance of the Missing Witness Instruction. As those decisions show, Dr. Dacier, a former employee of Norton and an originally named co-inventor on the '643 Patent, was willing to testify at trial and believed his testimony would be harmful to Norton. Dr. Dacier had made several comments contrary to Norton's position on inventorship. After Columbia identified Dr. Dacier on its witness list, Norton interfered, incorrectly informing Dr. Dacier that the Court had determined that Norton's counsel represented Dr. Dacier and telling him that Norton did not need anything from him. Norton's conduct rendered Dr. Dacier unavailable to Columbia.

In addition to a Missing Witness Instruction, Columbia sought more severe sanctions. Columbia requested a Court order precluding Mr. Shou, Norton's employee and the other listed inventor (and eventually the sole listed inventor) on the '643 Patent, from testifying live at trial to level the playing field. Columbia also sought to admit emails between Norton's counsel and

Dr. Dacier, in which Dr. Dacier stated his testimony would have been harmful to Norton and that

Norton's counsel duped him into not testifying at trial while pretending to represent him. The

Court declined to preclude Mr. Shou's live testimony and excluded the Dacier emails. But the

Court gave the Missing Witness Instruction in an effort to remedy the prejudice caused by

Norton's rendering Dr. Dacier unavailable.

> As summarized by Columbia's counsel in arguing for an appropriate instruction:

> The issue really is that Dr. Dacier isn't here because of what Norton's former counsel did, what Norton did, and the instruction should be what I believe is closer to the model, which is they are not bringing him and you can, but are not required to infer that his testimony would have been adverse to them.

(ECF No. 1218, at 312; Apr. 25 Trial Tr. 2476:12–17.)  While hearing argument from counsel on

the proper instruction, the Court noted:

> [Dr. Dacier's] absence is painful. He really feels pivotal here. . . . So it is a problem that he is not here. . . . I'm going to think about [the appropriate instruction] to make it as fair as possible. I don't think there is a way to make, frankly, Columbia whole. I just don't think there is. So I'm going to do what is fair and appropriate under the law.

(ECF No. 1218, at 320; Apr. 25 Trial Tr. 2484:4–16.)

The Court has "broad discretion in framing its jury instructions." *Scott v. Watsontown*

*Trucking Co.*, 920 F. Supp. 2d 644, 651 (E.D. Va. 2013), *aff'd* 533 F. App'x 259 (4th Cir. 2013)

(per curiam). That includes deciding whether or not to issue a Missing Witness Instruction. *Id.*

at 652 (quoting *Cameo Convalescent Ctr., Inc. v. Senn*, 738 F.2d 836, 844 (7th Cir. 1984) ("The

determination of whether a missing witness instruction should be given rests within the trial

court's sound discretion.")).  For the reasons stated above and those discussed in the Court's

prior decisions on this issue, the Court correctly gave the Missing Witness Instruction. This is

even more true considering Norton's gamesmanship relating to Dr. Dacier. *Id.* at 652 (citing

*Dent v. Siegelbaum*, No. CIV.A. DKC 08-0886, 2012 WL 718835, at *3 (D. Md. Mar. 5, 2012)

20

(noting that "an 'aura of gamesmanship' frequently accompanies requests for missing witness instructions and as a result district court judges are afforded considerable discretion in deciding when to give the instruction")).

The Court did not err in issuing the challenged curative instruction. In any event, Norton cannot show any prejudice resulting from the same. Despite its contention that curative instructions were issued throughout the trial, the Court gave the Missing Witness Instruction once during the jury charge, and it directed such instruction to Dr. Dacier only.[8] Moreover, as Columbia points out, Norton prevailed on the fraud and sole inventorship claim relating to the '643 Patent to which Dr. Dacier's testimony related. The jury returned a verdict in Columbia's favor only as to joint inventorship. (ECF No. 1206, at 6.)

Norton also complains that the Court's decision to issue curative instructions to address Norton's conduct created a potential jury bias against it. (*See* ECF No. 1246, at 32; ECF No. 1245, at 32 (sealed).) Far from biasing the jury against Norton, the Court found the curative instructions necessary to remedy prejudice faced by Columbia as a result of instances where Norton engaged in misconduct or flaunted the Court's evidentiary rulings. Norton instead advocates for a rule which would constrain the Court from issuing limiting or curative instructions while rendering immunity to bad actors. The Court declines to adopt such a rule.

_____

[8] Norton takes issue with Columbia's closing argument which asks the jury to question why they did not hear from other people relating to the '115 and '322 Patents. (ECF No. 1246, at 31–32; ECF No. 1245, at 31–32 (citing ECF No. 1219, at 130, 159, 161, 169, 170, 173; Apr. 26 Trial Tr. 2648:3–6; 2677:13–20; 2679:19–25; 2687:25–2688:1; 2691:4–5) (sealed).) But Columbia properly limited its discussion of the Missing Witness Instruction and the permissible, but not required, inference to Dr. Dacier's testimony during its discussion of the '643 Patent: "Use your common sense, and we invite you to make an inference that the Court will instruct you about Dr. Dacier, that you may, although you're not required to, as a result of Dr. Dacier being available to Norton, to infer that Dr. Dacier's testimony would have been unfavorable to Norton." (ECF No. 1219, at 188–89; Apr. 26 Trial Tr. 2706:21–2707:1.)

Moreover, Norton bases its argument as to jury bias on nothing more than speculation. It "cites no indication that the Court's action had any effect on the deliberations of the jury." *Helm Builders, LLC*, 2014 WL 1921088, at *5. Therefore, this cannot serve as the basis for a new trial.

## C.       Issues Raised in Norton's Rule 50(b) Similarly Do Not Entitle Norton to a New Trial

In its final argument, Norton requests a new trial on each issue raised in its Rule 50(b) motion. (ECF No. 1246, at 32–33; ECF No. 1245, at 32–33 (sealed).)  Without further elaboration, Norton contends that "the verdict with respect to each of the issues raised in that motion is against the clear weight of evidence in this case and warrants a new trial." (ECF No. 1246, at 33; ECF No. 1245, at 33 (sealed).)

The Court denies Norton's request for a new trial on these grounds for the same reasons given in denying Norton's Rule 50(b) motion.  Additionally, even after independently assessing witness credibility and weighing the evidence presented at trial, the Court finds that the jury's verdict on liability and damages is neither against the clear weight of the evidence nor based on false evidence.  Indeed, having presided over the trial, actively listened to all witness testimony, considered the evidence presented, and having carefully considered the parties' briefing on this Motion for a New Trial and the Rule 50(b) Motion, the Court holds the firm conviction that this vigilant jury properly weighed the evidence and assessed witness credibility in reaching its verdict.  Therefore, no miscarriage of justice results from allowing the jury's verdict to stand. The Court, therefore, denies Norton's request for a new trial on this ground.

22

## IV. Conclusion

For the foregoing reasons, the Court DENIES Norton's Motion for a New Trial (ECF No.

1241).

An appropriate Order shall issue.

Date: September 30, 2023
Richmond, Virginia

/s/

M. Hannah Lauck
United States District Judge