**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>*Plaintiff*,<br><br>v.<br><br>GEN DIGITAL INC., f/k/a SYMANTEC CORPORATION f/k/a NORTONLIFELOCK INC.,<br><br>*Defendant*. | Civil Action No. 3:13-cv-00808-MHL |

**COLUMBIA'S RESPONSE TO THE COURT'S APRIL 2, 2026 ORDER**

The Trustees of Columbia University in the City of New York ("Columbia") respectfully submit this response to the Court's April 2, 2026 order. (Dkt. 1388; *see also* Dkt. 1390.) Unfortunately, the parties were unable to reach agreement on how this case should proceed. Columbia first provides its positions and then responds to Gen Digital Inc.'s positions.[1]

To avoid any confusion, the mandate issued by the Federal Circuit on April 17, 2026 (Dkt. 1393) concerns only the separate contempt appeal by the law firm Quinn Emanuel (Appeal No. 24-1244). The mandate concerning Gen Digital's merits appeal (Appeal No. 24-1243) will issue seven days after the Federal Circuit rules on Columbia's pending petition for rehearing.

## I. BACKGROUND: THE FEDERAL CIRCUIT'S OPINION

Gen Digital raised numerous issues on appeal and did not prevail on many. The Federal Circuit affirmed (i) claim construction (*Trs. of Columbia Univ. in the City of N.Y.* v. *Gen Digit.,*

[1] The parties agreed to disclose in writing to each other the positions they would submit to this Court, and Columbia's responses are based on Gen Digital's April 13, 2026 disclosure.

*Inc.*, No. 24-1243, Dkt. 132 at 20 (Fed. Cir. Mar. 11, 2026) ("Op.")); (ii) all of the jury's infringement findings (including by rejecting all Gen Digital's evidentiary arguments and new legal argument based on "divided infringement") (*id.* 20 & n.5, 21); and (iii) the jury's finding that Gen Digital's infringement was *willful*, which is the core basis for enhanced damages (*id.* 22).

On enhanced damages, Gen Digital opted not to challenge this Court's findings on seven of the nine *Read* factors, including this Court's finding of deliberate copying and finding that Gen Digital failed to form a good-faith belief of non-infringement before litigation, which together with the affirmed willful infringement finding, are by far the most important factors that support treble damages. *See Halo Elecs., Inc.* v. *Pulse Elecs., Inc.*, 579 U.S. 93, 105-06 (2016). Despite the Federal Circuit's affirmance of willful infringement and the narrowness of Gen Digital's appeal, the Federal Circuit vacated the enhanced damages and attorneys' fees awards primarily because the Panel wanted this Court to address whether the Panel's separate reversal of the contempt finding against Quinn Emanuel leads to modification of those awards.[2] (Op. 29, 32.) The Federal Circuit also provided guidance on the only two *Read* factors that Gen Digital challenged, so this Court could incorporate that guidance if the Court again reaches the issue of enhancement. (*Id.* 30-31.)

The Federal Circuit reversed on two issues: (i) the jury's royalty award based on foreign sales, and (ii) this Court's decision to strike, shortly before trial, Gen Digital's invalidity defense

[2] This Court stated in its post-trial decision that the contempt finding against Quinn Emanuel did not factor into the award of enhanced damages. (Dkt. 1333 at 19-20 ("On balance, and even without considering the Court's negative inference towards Norton regarding the unproduced communications . . . the *Read* factors as a whole show that Norton's conduct in this case has been sufficiently egregious to warrant enhanced damages.").) The Federal Circuit nevertheless appeared to believe there was an inconsistent statement in this Court's decision. (Op. at 29 n.9 (citing Dkt. 1333 at 39); Oral Arg. at 14:57-15:12.) On remand, it would be sufficient for the Court to confirm that its original decision would have been the same even without contempt.

under 35 U.S.C. § 101, which this Court found failed as a matter of law at Step One of the *Alice* Section 101 analysis. Those issues are addressed below.

Finally, Quinn Emanuel appealed this Court's contempt finding. The Federal Circuit reversed on what amounts to a technicality—*i.e.*, that this Court's March 15, 2022 disclosure order should have ordered disclosure for *in camera* inspection, not public disclosure on the docket, which the Panel held could have compromised attorney-client privilege. (*Trs. of Columbia Univ. in the City of N.Y.* v. *Gen Digit., Inc.*, No. 24-1244, Dkt. 22 at 17 (Fed. Cir. Mar. 11, 2026) ("Quinn Op.").) To be clear, the Federal Circuit did not endorse Quinn Emanuel's conduct. Quite the opposite, the presiding judge stated that "Quinn has not in this case covered itself with glory in the way it has behaved." (Oral Arg. at 22:42-52.) And the Federal Circuit left open the possibility "of alternative sanctions for Quinn's conduct." (Quinn Op. 17-18.)

## II. FOREIGN SALES

In 2024, while this case was on appeal, the Federal Circuit decided *Brumfield* v. *IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024), which agreed with Columbia's argument and this Court's legal conclusion that the Supreme Court's decision in *WesternGeco LLC* v. *ION Geophysics Corp.*, 585 U.S. 407 (2018) applies to infringement under Section 271(a) and to a reasonable royalty under Section 284. Despite concluding that Columbia's foreign-sales theory could "have been legally valid," the Federal Circuit declined to address the merits because it found that "Columbia did not seek [a jury] instruction" concerning causation. (Op. 27.)

But contrary to the Federal Circuit's finding, Columbia *did* request a causation instruction and parallel question on the verdict form, and Gen Digital's objection invited error before trial. (*See*, *e.g.*, Dkt. 1001 at 61 (Columbia's proposed jury instruction); Dkt. 1002-1 at 4 (Columbia's proposed verdict form); Dkt. 1048-1 at 24-25 (Gen Digital's objection); Dkt. 1208 (Apr. 11, 2022 Trial Tr.) at 167:3-170:8; Dkt. 1218 (Apr. 25, 2022 Trial Tr.) at 2459:5-2460:9.) Because the

Federal Circuit's decision to reverse, rather than remand, was based on a clear factual error, Columbia has filed a petition for panel rehearing. (*Trs. of Columbia Univ. in the City of N.Y.* v. *Gen Digit., Inc.*, No. 24-1243, Dkt. 138 (Fed. Cir. Apr. 10, 2026).) Finding merit to the petition, the Federal Circuit ordered Gen Digital to file a response by April 28, 2026. (*Id.*, Dkt. 140 (Apr. 14, 2026).) If the petition is granted, foreign sales may be remanded to this Court for retrial.

## III. PATENT ELIGIBILITY (SECTION 101)

The Federal Circuit found that Columbia's patent claims are directed to an abstract idea at Step One of the *Alice* Section 101 analysis. But the Federal Circuit found it was correct to deny Gen Digital's motion for judgment on the pleadings because, at Step Two of the *Alice* Section 101 analysis, "the parties' dispute over whether this feature [the claimed model of function calls] was conventional is a ***question of fact that precludes judgment on the pleadings***." (Op. 16 (emphasis added).) The Federal Circuit remanded to this Court for proceedings to resolve that "question of fact," *i.e.*, whether "the 'model of function calls' supplies an inventive concept." (Op. 15-16.) As the Federal Circuit explained, that issue requires a factfinder to determine whether the claimed model of function calls "individually" and "as an ordered combination" with the other claim elements was—at the time of the invention—"well-understood, routine, [and] conventional." (Op. 15 (citing *Alice Corp.* v. *CLS Bank Int'l*, 573 U.S. 208, 217, 225 (2014)).) The proceedings in this Court will therefore focus on resolution of a ***factual*** dispute: whether the claimed model of function calls, alone and in combination with the other claim elements, was well-understood, routine, and conventional to a person of ordinary skill in the art ("POSITA") around the time of the invention.

Under controlling Federal Circuit precedent, factual questions at Step Two of the Section 101 analysis are treated the same as factual questions for any other invalidity defense. First, "whether a claim element or combination of elements is well-understood, routine and

conventional to a skilled artisan in the relevant field is a question of fact . . . [that] must be proven by clear and convincing evidence" by the patent challenger. *Berkheimer* v. *HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Thus, Gen Digital (as the patent challenger) must prove ***by clear and convincing evidence*** that the claimed model of function calls, alone and in combination with the other claim elements, was well-understood, routine, and conventional to a POSITA around the time of the invention. Second, the "presumption of validity" applies to the issue of whether "the patent satisfies . . . § 101." *Astellas Pharma, Inc.* v. *Sandoz Inc.*, 117 F.4th 1371, 1378 (Fed. Cir. 2024); *Cellspin Soft, Inc.* v. *Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019).

When this case resumes in this Court, the Court should schedule trial at its earliest convenience. The Federal Circuit stated that Gen Digital's Section 101 defense "was not litigated at trial nor submitted to the jury because the district court struck the issue *sua sponte*." (Op. 7 n.4.) So, the parties should step back into their shoes in December 2021, *i.e.*, just before this Court struck the Section 101 defense. In December 2021, all discovery was completed more than a year earlier, and the parties were close to trial. Gen Digital repeatedly asserted that it was ready for trial of its Section 101 defense. (*See*, *e.g.*, Dkt. 551-1 at 62-63 (listing as "Triable Issues as Contended by [Gen Digital]" whether the asserted claims of the '115 and '332 Patents "are invalid under 35 U.S.C. § 101"), *see also id.* at 64-69; Dkt. 632 at 11 (arguing that "[Gen Digital] is entitled to have the Court address the merits of its section 101 defense"), 13 (Gen Digital arguing that its Section 101 defense should be "decided on the merits at trial"), 16 (Gen Digital arguing that it "preserv[ed] the defense for trial"); Ex. A at 1 (asserting that its Section 101 defense was a "triable issue[]" that "[Gen Digital] believe[d] . . . should be resolved by the Court outside the presence of the jury").) There has been no change in the law nor any new evidence that would change that posture.

Finally, Columbia and Gen Digital appear to agree that a question of fact at Step Two of the Section 101 analysis typically would be resolved by a jury. *See*, *e.g.*, *VS Techs., LLC* v. *Twitter Inc.*, 2012 WL 1481508, at *4-6 (E.D. Va. Apr. 27, 2012); *Maxell, Ltd.* v. *Apple Inc.*, 2020 WL 8269548, at *9 (E.D. Tex. Nov. 11, 2020); *Prolitec Inc.* v. *ScentAir Techs, LLC*, 770 F. Supp. 3d 730, 747 (D. Del. 2025); *see also Optis Cellular Tech., LLC* v. *Apple Inc.*, 139 F.4th 1363, 1380 n.11 (Fed. Cir. 2025). Here, however, Gen Digital waived its right to a jury trial of its Section 101 defense by explicitly requesting a bench trial. (*E.g.*, Dkt. 551-1 at 64 ("issues of patent eligibility . . . are commonly tried via a bench trial"), 69 ("That is precisely what [Gen Digital] contends here, that the issue [of patent eligibility] should be decided by the Court outside the presence of the jury"); Dkt. 632 at 14 n.4 ("[Gen Digital's] position here [is] that the Court should resolve the section 101 issue, not the jury"); Ex. A at 1-2 ("[Gen Digital] believes that the Court should only rule on its Section 101 [defense] after undertaking a Section 101 analysis (including *Alice **steps one and two***)" which Gen Digital contended was a "triable issue[]" that "should be resolved by the Cout outside the presence of the jury") (emphasis added).) Gen Digital's repeated requests for a bench trial of Step One and Step Two constitute a waiver of the right to a jury trial. *See United States* v. *1966 Beechcraft Aircraft*, 777 F.2d 947, 951 (4th Cir. 1985) ("[t]he right to [a] jury trial may . . . be waived by [the] conduct . . . of the parties"); *United States* v. *Garcia-Ochoa*, 2009 WL 331282, at *2 (E.D. Va. Feb. 9, 2009) ("At trial, Defendant requested a bench trial, thereby waiving his constitutional right to trial by a jury of his peers."), *aff'd*, 607 F.3d 371 (4th Cir. 2010); 9 Wright & Miller's Fed. Prac. & Proc. § 2321 (4th ed. 2026) ("Once the opportunity to demand a jury trial has been waived, the right is not revived by a reversal on appeal or by the grant of a new trial.").

Although Gen Digital waived its right to a jury trial, Columbia has not. Whether Columbia is willing to waive its right to a jury trial may depend on the Federal Circuit's resolution of its pending rehearing petition. Columbia therefore respectfully submits that the format of the trial should be addressed after the Federal Circuit resolves Columbia's rehearing petition.

In summary:

- The Federal Circuit found an unresolved factual dispute, *i.e.*, whether the claimed model of function calls, alone or in combination with the other elements, was well-understood, routine, and conventional to a POSITA around the time of the invention;
- The parties have returned to the same positions they were in when this Court struck Gen Digital's Section 101 defense in December 2021, just after Gen Digital said it was ready for trial on its Section 101 defense;
- Gen Digital waived its right to a jury trial, and requested a bench trial on its Section 101 defense, and Columbia should provide its position on waiver of its right to a jury trial after the Federal Circuit rules on its pending petition for panel rehearing;
- Gen Digital will need to prove by clear and convincing evidence that the claimed model of function calls, alone and in combination with the other claim elements, was well-understood, routine, and conventional to a POSITA around the time of the invention, with the presumption of patent validity in favor of Columbia; and
- If the jury or this Court finds that Gen Digital has not carried its clear-and-convincing-evidence burden of proof, then judgment should be entered for Columbia on Gen Digital's Section 101 defense, and the Court should then address whether its decision on enhanced damages or attorneys' fees has changed without the contempt finding against Quinn Emanuel.

## IV. COLUMBIA'S RESPONSE TO GEN DIGITAL'S PROPOSAL

Columbia strongly disagrees with Gen Digital's competing proposals. This case cannot be an endless string of do-overs until Gen Digital wrongly wins a war of attrition. This case was remanded a second time solely for this Court to resolve a "question of fact," and the way to do that is for the parties to present their competing evidence and for the fact-finder to determine whether Gen Digital has carried its burden by clear and convincing evidence.

***Expert Discovery***. In October 2014, Gen Digital served the expert report of Dr. Richard Ford, which addressed all of Gen Digital's invalidity defenses, including Gen Digital's Section 101 defense against the '115 Patent and the '322 Patent (the two patents at issue). (*See* Ex. B.) Dr. Ford's report articulated the two-step test under *Alice*, including the requirement that Gen Digital show the claim elements were "well-understood, routine, [and] conventional." (Ex. B ¶¶ 92-93.) Dr. Ford's report then provided his opinions on those issues with respect to the '115 and '322 Patents. (Ex. B ¶¶ 1833-1851.) Notably, despite submitting an invalidity report spanning more than 500 pages, Dr. Ford was ***not*** of the opinion that the claimed model of function calls was well-understood, routine, and conventional, which obviously is strong evidence that Gen Digital's new position is wrong and should fail.

On the first remand to this Court, in September 2018, Gen Digital informed Columbia that Dr. Ford could no longer serve as an expert. After substantial negotiation, the parties stipulated:

> On October 17, 2014, Symantec served the Expert Report of Dr. Richard Ford (*i.e.*, Symantec's opening invalidity report). Columbia does not object to Dr. Ford being replaced, but because the parties initially had a disagreement about the scope of the invalidity opinion that Symantec's replacement expert can offer, the parties have agreed on the following with respect to the scope of new or updated expert reports:
>
> - Substantive theories in opening expert reports will not be modified or supplemented except that they may be updated to account for (i) updated fact discovery; (ii) the fact that only two of the six patents originally asserted remain in the case, and that only 18 claims from those patents remain in the case after IPR; (iii) additional claim construction (if any is permitted); and (iv) intervening developments in the law.
>
> - The parties' agreement with respect to the scope of new or updated expert reports is not intended to limit either party's ability to argue that any opinions or evidence in the new or updated report, including the four enumerated categories above, should be excluded.

(Dkt. 194.) Thus, if Gen Digital wanted to provide an updated expert report for its Section 101 defense—including in consideration of the parties' known 2018 competing claim constructions for

the claim term "model of function calls"—it had agreed to do so by the deadline in 2019, and even then, Gen Digital agreed not to ***substantively*** modify or supplement Dr. Ford's opinions. As the Federal Circuit recently held, such stipulations constitute binding contracts between the parties and should be strictly enforced. *See VLSI Tech. LLC* v. *Intel Corp.*, 2026 WL 995276, at *2 (Fed. Cir. Apr. 14, 2026) ("Even if this strategic choice proved unwise in retrospect, we decline to look past the clear language of the stipulation to 'rescue' Intel from its decision to 'freely enter[ ]' an agreement 'which it later finds to be imprudently made.'" (quoting *Kearns* v. *Chrysler Corp.*, 32 F.3d 1541, 1546 (Fed. Cir. 1994)).

Despite the opportunity to serve an updated expert report on Section 101, Gen Digital made the strategic decision ***not*** to serve any updated invalidity report. Notably, the deadline was more than a year ***after*** the Federal Circuit's *Berkheimer* decision, which squarely held that the patent challenger must carry a clear and convincing evidence burden to show conventionality at Step Two of the Section 101 analysis. *Berkheimer*, 881 F.3d at 1368. And Gen Digital appreciated the need to substantiate its Section 101 defense. On December 21, 2018 Gen Digital served an updated response to Columbia's contention interrogatory concerning Section 101, which is the full scope of what Gen Digital has disclosed as support for its Section 101 defense. (*See* Ex. C at 28.)

Gen Digital's failure to serve a timely updated expert report on Section 101 was not an accident. In December 2021, as this case approached trial, Gen Digital repeatedly asserted that (i) it was ready for trial of its Section 101 defense, and (ii) it did not need an expert for its Section 101 invalidity defense. (*See*, *e.g.*, Dkt. 551-1 at 64-69; Dkt. 632 at 5, 11, 13, 16-17; Ex. A.) Indeed, in response to Columbia's observing that Gen Digital failed to provide any expert disclosure regarding its Section 101 defense by the 2019 deadline—noting that Gen Digital's expert Dr. Trent Jaeger, "did not address § 101 invalidity in his expert report" (Dkt. 621 at 5 n.6)—

Gen Digital responded that "Dr. Jaeger had no obligation to provide such testimony. . . ." (Dkt. 632 at 17.) Gen Digital urged trial of Section 101 despite its decision not to submit an expert report.

Given that history in this ***thirteen-year-old*** case, Gen Digital should not get a ***third*** bite at the apple, with the Court allowing Gen Digital to change its theories and contentions with a new expert and expert report. And nothing in the Federal Circuit's opinion suggests such an unfair do-over should happen, as opposed to prompt resolution of one question of fact based on the extraordinary amount of discovery that already occurred. Indeed, in its appeal brief, Columbia told the Federal Circuit what would happen if the Panel remanded for resolution of a question of fact at Step Two of the *Alice* test—*i.e.*, the issue would go to trial, but Gen Digital had elected not to submit any updated expert report on its Section 101 defense. (*Trs. of Columbia Univ. in the City of N.Y.* v. *Gen Digit., Inc.*, No. 24-1243, Dkt. 50 at 41-45 (Fed. Cir. July 15, 2024).) In its reply, Gen Digital did not disagree, and Gen Digital said it was unconcerned about remand only "because it is entitled to prevail as a matter of law." (*Id.*, Dkt. 57 at 15 (Fed. Cir. Sept. 9, 2024).) The Federal Circuit did not take issue with Columbia's characterization, suggest that Gen Digital should get a do-over, or suggest that this Court should do anything other than resolve one factual dispute at trial.

Moreover, nothing in the Federal Circuit's opinion changed the relevant legal test—as it does now, in 2014, 2018, 2019, 2020, 2021 and 2022, Gen Digital had the burden to prove by clear and convincing evidence that the claimed model of function calls was well-understood, routine, and conventional. Nor is there any new evidence about what was well-understood, routine, and conventional more than two decades ago. Faced with an identical issue and burden, Gen Digital should present the case that it was prepared to present at trial in December 2021 and attempt to carry its burden using its disclosed fact witnesses consistent with its Section 101 contentions.

Columbia will respond with its fact witnesses, who have already explained in trial testimony that the claimed model of function calls was contrarian and far from conventional. (*E.g.*, Dkt. 1210 (Apr. 13, 2022 Trial Tr.) at 556-60, 562-63; Dkt. 1211 (Apr. 14, 2022 Trial Tr.) at 788-96.) Again, this case cannot be an endless string of do-overs where *Columbia* is bound to prior positions, but Gen Digital constantly gets to change its defense.

Columbia respectfully asks the Court to find that Gen Digital chose not to submit an expert report concerning Section 101, that Gen Digital was prepared to try its Section 101 defense without an expert in December 2021, and that Gen Digital is not entitled to yet another re-opening of discovery so Gen Digital can create new evidence and make new arguments. Instead, Gen Digital can present the Section 101 defense that it developed over thirteen years of litigation, which it wanted to present at trial in December 2021, and the fact-finder will determine whether Gen Digital has carried its burden of proof after Gen Digital presents its case and Columbia presents its rebuttal. This Court has considerable case-management discretion on these issues, which receive significant deference on appeal.

Finally, if the Court hypothetically decides to allow supplemental expert discovery (it should not), Columbia respectfully requests that the Court (i) hold Gen Digital to its 2018 stipulation, such that Gen Digital's new report would be substantively limited to the opinions in Dr. Ford's 2014 report, and (ii) reject Gen Digital's suggestion that the exchange of new expert reports would be simultaneous. Gen Digital bears the burden of proof, and if the Court allows a third round of expert reports (it should not), those reports should be staggered such that Gen Digital serves one opening report and Columbia serves one responsive report 60 days thereafter.

***Summary Judgment***. Gen Digital's request for new summary judgment motions would be a waste of judicial and party resources. In December 2021, Gen Digital insisted that it would be

"improper" to address its Section 101 defense through summary judgment because the deadline for dispositive motions had passed. (Dkt. 632 at 9; *see also id.* at 1 ("Columbia could have moved for partial summary judgment on [Gen Digital's] section 101 defense before the Court's summary judgment deadline almost eight months ago but did not do so, and it is too late for Columbia to do so now.").) Gen Digital insisted on trial of its Section 101 defense. (*See* Dkt. 551-1 at 62-63, 64-69; Dkt. 632 at 5, 11, 13, 14 n.4, 16; Ex. A.) Nothing has changed—the deadline for summary judgment motions passed more than six years ago—and the Court should hold a trial to resolve the single factual dispute identified by the Federal Circuit. As an excuse for not timely seeking summary judgment, Gen Digital has argued to Columbia that its "motion for judgment on the pleadings was still pending as of the deadline for filing summary judgment motions." That is inaccurate. The Court issued its decision on Gen Digital's motion for judgment on the pleadings on November 19, 2019 (Dkt. 288) and the deadline for summary judgment motions was more than two months later, on January 23, 2020 (*see* Dkt. 287; *see also* Dkt. 312 (Gen Digital's motion for partial summary judgment, filed January 23, 2020); Dkt. 632 (Gen Digital arguing that Columbia had waived the ability to file for summary judgment on Gen Digital's Section 101 defense because Columbia did not move for summary judgment by the January 23, 2020 deadline)).

Finally, Gen Digital does not explain how this Court could grant summary judgment to either party when the Federal Circuit so clearly held that there is a disputed "question of fact" that must be resolved. Even if summary judgement were *theoretically* possible, Columbia respectfully submits that the Court should exercise its case management authority to deny leave for untimely summary judgment motions when the overwhelming likelihood is that they would be denied, especially in light of the intrinsic record, which describes the model of function calls as a "new approach," and the inventor testimony that already occurred during the first trial. That evidence

means that, at the very least, there is a disputed question of fact that must be resolved at trial. Gen Digital has no right to file an untimely summary judgment motion, and the most efficient path to resolution would be to let each party present its evidence and arguments at trial. Nothing prevents Gen Digital from seeking judgment as a matter of law if it believes that is warranted after the presentation of the evidence.

***Jury Trial***. As noted above, Columbia believes that Gen Digital waived its right to a jury trial by requesting a bench trial on Step One and Step Two of the Section 101 analysis. (*See* Dkt. 632 at 14 n.4; Dkt. 551-1 at 64, 68-69; Ex. A.) The Fourth Circuit law on this issue is clear. *Garcia-Ochoa*, 2009 WL 331282, at *2, *aff'd*, 607 F.3d 371 (4th Cir. 2010) ("At trial, Defendant requested a bench trial, thereby waiving his constitutional right to trial by a jury of his peers.") Columbia has not waived its right to a jury trial, and Columbia respectfully suggests that it should state its position on this issue after the Federal Circuit decides Columbia's pending petition for panel rehearing, which could broaden the issues to be decided in this Court.

Dated: April 20, 2026

Respectfully submitted,

*/s/ John M. Erbach*

John M. Erbach (VSB No. 76695)
SPOTTS FAIN, P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Tel.: (804) 697-2065
Fax: (804) 697-2165
jerbach@spottsfain.com

Dustin F. Guzior (*pro hac vice*)
Alexander N. Gross (*pro hac vice*)
Garrard R. Beeney (*pro hac vice*)
Stephen J. Elliott (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel.: (212) 558-4000
Fax: (212) 558-3588
guziord@sullcrom.com
grossa@sullcrom.com
beeneyg@sullcrom.com
elliotts@sullcrom.com

*Counsel for Plaintiff The Trustees of Columbia University in the City of New York*